# EXHIBIT C

# DEPARTMENT OF HOMELAND SECURITY

## U.S. Citizenship and Immigration Services

[CIS No. 2761–23; DHS Docket No. USCIS–2021–0003]

RIN 1615–ZB86

## Extension and Redesignation of Venezuela for Temporary Protected Status

**AGENCY:** U.S. Citizenship and Immigration Services (USCIS), Department of Homeland Security (DHS).

**ACTION:** Notice of Temporary Protected Status (TPS) extension and redesignation.

**SUMMARY:** Through this notice, the Department of Homeland Security (DHS) announces that the Secretary of Homeland Security (Secretary) is extending the designation of Venezuela for Temporary Protected Status (TPS) for 18 months, beginning on March 11, 2024 and ending on September 10, 2025. This extension allows existing TPS beneficiaries to retain TPS through September 10, 2025, if they otherwise continue to meet the eligibility requirements for TPS. Existing TPS beneficiaries who wish to extend their status through September 10, 2025, must re-register during the re-registration period described in this notice. Separately, the Secretary is also redesignating Venezuela for TPS. The redesignation of Venezuela allows additional Venezuelan nationals (and individuals having no nationality who last habitually resided in Venezuela) who have been continuously residing in the United States since July 31, 2023, to apply for TPS for the first time during the initial registration period described under the redesignation information in this notice. In addition to demonstrating continuous residence in the United States since July 31, 2023, and meeting other eligibility criteria, initial applicants for TPS under this designation must demonstrate that they have been continuously physically present in the United States since October 3, 2023, the effective date of this redesignation of Venezuela for TPS. The Secretary's actions represent two distinct TPS designations of Venezuela—the first designation of Venezuela that was announced on March 9, 2021 (Venezuela 2021) and is being extended in this FRN, and this second action, redesignating Venezuela on October 3, 2023 (Venezuela 2023).

**DATES:**

*Extension of Designation of Venezuela for TPS:* The 18-month extension of Venezuela 2021 begins on March 11, 2024 and will remain in effect for 18 months, ending on September 10, 2025. The extension affects existing beneficiaries of TPS and those who filed initial applications for TPS under Venezuela 2021 that were pending as of the date of this notice.

*Re-registration:* The 60-day re-registration period for existing beneficiaries under Venezuela 2021 runs from January 10, 2024, through March 10, 2024. (Note: It is important for re-registrants to timely re-register during the registration period and not to wait until their Employment Authorization Document (EAD) expires. Delaying re-registration could result in gaps in their employment authorization documentation.)

*Redesignation of Venezuela for TPS (Venezuela 2023):* The 18-month redesignation of Venezuela for TPS begins on October 3, 2023, and will remain in effect for 18 months, ending on April 2, 2025. The redesignation affects potential first-time applicants and others who do not currently have TPS.

*First-time Registration:* The initial registration period for new applicants under the Venezuela 2023 TPS redesignation begins on October 3, 2023, and will remain in effect through April 2, 2025.

**FOR FURTHER INFORMATION CONTACT:**

- You may contact René Cutlip-Mason, Chief, Humanitarian Affairs Division, Office of Policy and Strategy, U.S. Citizenship and Immigration Services, Department of Homeland Security, by mail at 5900 Capital Gateway Drive, Camp Springs, MD 20746, or by phone at 800–375–5283.
- For more information on TPS, including guidance on the registration process and additional information on eligibility, please visit the USCIS TPS web page at *https://www.uscis.gov/tps.* You can find specific information about Venezuela's TPS designation by selecting ''Venezuela'' from the menu on the left side of the TPS web page.
- If you have additional questions about TPS, please visit *uscis.gov/tools.* Our online virtual assistant, Emma, can answer many of your questions and point you to additional information on our website. If you cannot find your answers there, you may also call our USCIS Contact Center at 800–375–5283 (TTY 800–767–1833).
- Applicants seeking information about the status of their individual cases may check Case Status Online, available on the USCIS website at *uscis.gov,* or visit the USCIS Contact Center at *https://www.uscis.gov/contactcenter.*
- You also can find more information at local USCIS offices after this notice is published.

**SUPPLEMENTARY INFORMATION:**

### Table of Abbreviations

BIA—Board of Immigration Appeals
CFR—Code of Federal Regulations
DHS—U.S. Department of Homeland Security
DOS—U.S. Department of State
EAD—Employment Authorization Document
FNC—Final Nonconfirmation
Form I–131—Application for Travel Document
Form I–765—Application for Employment Authorization
Form I–797—Notice of Action
Form I–821—Application for Temporary Protected Status
Form I–9—Employment Eligibility Verification
Form I–912—Request for Fee Waiver
Form I–94—Arrival/Departure Record
FR—Federal Register
Government—U.S. Government
IER—U.S. Department of Justice, Civil Rights Division, Immigrant and Employee Rights Section
IJ—Immigration Judge
INA—Immigration and Nationality Act
SAVE—USCIS Systematic Alien Verification for Entitlements Program
Secretary—Secretary of Homeland Security
TPS—Temporary Protected Status
TTY—Text Telephone
USCIS—U.S. Citizenship and Immigration Services
U.S.C.—United States Code

### Purpose of This Action (TPS)

Through this notice, DHS sets forth procedures necessary for nationals of Venezuela (or individuals having no nationality who last habitually resided in Venezuela) to (1) re-register for TPS and apply to renew their EAD with USCIS or (2) submit an initial registration application under the redesignation and apply for an EAD.

Re-registration is limited to individuals who have previously registered for TPS under Venezuela 2021[1] and whose applications have been granted. If you do not re-register properly within the re-registration period, USCIS may withdraw your TPS following appropriate procedures. *See* 8 CFR 244.14.

For individuals who have already been granted TPS under Venezuela 2021, the 60-day re-registration period for existing beneficiaries runs from January 10, 2024, through March 10, 2024. USCIS will issue new EADs with

---

[1] *See Designation of Venezuela for Temporary Protected Status and Implementation of Employment Authorization for Venezuelans Covered by Deferred Enforced Departure,* 86 FR 13574 (Mar. 9, 2021).

a September 10, 2025, expiration date to eligible Venezuelan TPS beneficiaries who timely re-register and apply for EADs. Given the time frames involved with processing TPS re-registration applications, DHS recognizes that not all re-registrants may receive a new EAD before their current EAD expires. Accordingly, through this **Federal Register** notice, DHS automatically extends through March 10, 2025, the validity of certain EADs previously issued under the TPS designation of Venezuela. As proof of continued employment authorization through March 10, 2025, TPS beneficiaries can show their EAD with the notation A–12 or C–19 under Category and a Card Expires date of March 10, 2024, or September 9, 2022. This notice explains how TPS beneficiaries and their employers may determine if an EAD is automatically extended and how this affects the Form I–9, Employment Eligibility Verification, E-Verify, and USCIS Systematic Alien Verification for Entitlements (SAVE) processes.

Individuals who have an initial Venezuela TPS application (Form I–821) or Application for Employment Authorization (Form I–765) pending as of October 3, 2023 under Venezuela 2021, do not need to file either application again. If USCIS approves an individual's pending Form I–821, USCIS will grant the individual TPS through September 10, 2025. Similarly, if USCIS approves a pending TPS-related Form I–765, USCIS will issue the individual a new EAD that will be valid through the same date. Individuals who are current beneficiaries under the Venezuela 2021 designation and have a re-registration application (Form I–821) and/or Application for Employment Authorization (Form I–765) pending as of October 3, 2023, do not need to file either application again. If USCIS approves an individual's pending Form I–821, USCIS will grant the individual TPS through September 10, 2025. Similarly, if USCIS approves a pending TPS-related Form I–765, USCIS will issue the individual a new EAD that will be valid through the same date.

Under the redesignation, Venezuela 2023, individuals who currently do not have TPS may submit an initial application during the initial registration period that runs from October 3, 2023, and runs through the full length of the redesignation period ending April 2, 2025. In addition to demonstrating continuous residence in the United States since July 31, 2023, and meeting other eligibility criteria, initial applicants for TPS under this redesignation (Venezuela 2023) must demonstrate that they have been continuously physically present in the United States since October 3, 2023,[2] the effective date of this redesignation of Venezuela, before USCIS may grant them TPS. DHS estimates that approximately 472,000 individuals may become newly eligible for TPS under the redesignation of Venezuela.

**What is Temporary Protected Status (TPS)?**

• TPS is a temporary immigration status granted to eligible nationals of a foreign state designated for TPS under the INA, or to eligible individuals without nationality who last habitually resided in the designated foreign state, regardless of their country of birth.

• During the TPS designation period, TPS beneficiaries are eligible to remain in the United States, may not be removed, and are authorized to obtain EADs if they continue to meet the requirements of TPS.

• TPS beneficiaries may also apply for and be granted travel authorization as a matter of DHS discretion.

• To qualify for TPS, beneficiaries must meet the eligibility standards at INA section 244(c)(1)–(2), 8 U.S.C. 1254a(c)(1)–(2).

• When the Secretary terminates a foreign state's TPS designation, beneficiaries return to one of the following:

○ The same immigration status or category that they maintained before TPS, if any (unless that status or category has since expired or terminated); or

○ Any other lawfully obtained immigration status or category they received while registered for TPS, if it is still valid beyond the date their TPS terminates.

**When was Venezuela designated for TPS?**

Venezuela was initially designated on the basis of extraordinary and temporary conditions that prevented nationals of Venezuela from returning in safety. *See Designation of Venezuela for Temporary Protected Status and Implementation of Employment Authorization for Venezuelans Covered by Deferred Enforced Departure,* 86 FR 13574 (Mar. 9, 2021). The TPS designation was extended for 18 months on September 8, 2022. *See Extension of the Designation of Venezuela for Temporary Protected Status,* 87 FR 55024 (Sept. 8, 2022).

**What authority does the Secretary have to extend the designation of Venezuela for TPS?**

Section 244(b)(1) of the INA, 8 U.S.C. 1254a(b)(1), authorizes the Secretary, after consultation with appropriate agencies of the U.S. Government, to designate a foreign state (or part thereof) for TPS if the Secretary determines that certain country conditions exist.[3] The decision to designate any foreign state (or part thereof) is a discretionary decision, and there is no judicial review of any determination with respect to the designation, termination, or extension of a designation. *See* INA sec. 244(b)(5)(A), 8 U.S.C. 1254a(b)(5)(A). The Secretary, in their discretion, may then grant TPS to eligible nationals of that foreign state (or individuals having no nationality who last habitually resided in the designated foreign state). *See* INA sec. 244(a)(1)(A), 8 U.S.C. 1254a(a)(1)(A).

At least 60 days before the expiration of a foreign state's TPS designation or extension, the Secretary, after consultation with appropriate U.S. Government agencies, must review the conditions in the foreign state designated for TPS to determine whether they continue to meet the conditions for the TPS designation. *See* INA sec. 244(b)(3)(A), 8 U.S.C. 1254a(b)(3)(A). If the Secretary determines that the foreign state continues to meet the conditions for TPS designation, the designation will be extended for an additional period of 6 months or, in the Secretary's discretion, 12 or 18 months. *See* INA sec. 244(b)(3)(A), (C), 8 U.S.C. 1254a(b)(3)(A), (C). If the Secretary determines that the foreign state no longer meets the conditions for TPS designation, the Secretary must

---

[2] The "continuous physical presence" date is the effective date of the most recent TPS designation of the country, which is either the publication date of the designation announcement in the **Federal Register** or a later date established by the Secretary. The "continuous residence" date is any date established by the Secretary when a country is designated (or sometimes redesignated) for TPS. *See* INA sec. 244(b)(2)(A) (effective date of designation); 244(c)(1)(A)(i–ii) (continuous residence and continuous physical presence date requirements); 8 U.S.C. 1254a(b)(2)(A); 1254a(c)(1)(A)(i–ii).

[3] INA section 244(b)(1) ascribes this power to the Attorney General. Congress transferred this authority from the Attorney General to the Secretary of Homeland Security. See Homeland Security Act of 2002, Public Law 107–296, 116 Stat. 2135 (2002). The Secretary may designate a country (or part of a country) for TPS on the basis of ongoing armed conflict such that returning would pose a serious threat to the personal safety of the country's nationals and habitual residents, environmental disaster (including an epidemic), or extraordinary and temporary conditions in the country that prevent the safe return of the country's nationals. For environmental disaster-based designations, certain other statutory requirements must be met, including that the foreign government must request TPS. A designation based on extraordinary and temporary conditions cannot be made if the Secretary finds that allowing the country's nationals to remain temporarily in the United States is contrary to the U.S. national interest. INA sec. 244(b)(1); 8 U.S.C. 1254a(b)(1).

terminate the designation. *See* INA sec. 244(b)(3)(B), 8 U.S.C. 1254a(b)(3)(B).

**What is the Secretary's authority to redesignate Venezuela for TPS?**

In addition to extending an existing TPS designation, the Secretary, after consultation with appropriate Government agencies, may redesignate a country (or part thereof) for TPS. *See* INA sec. 244(b)(1), 8 U.S.C. 1254a(b)(1); *see also* INA sec. 244(c)(1)(A)(i), 8 U.S.C. 1254a(c)(1)(A)(i) (requiring that "the alien has been continuously physically present since the effective date of *the most recent designation of the state*") (emphasis added).[4]

When the Secretary designates or redesignates a country for TPS, the Secretary also has the discretion to establish the date from which TPS applicants must demonstrate that they have been "continuously resid[ing]" in the United States. *See* INA sec. 244(c)(1)(A)(ii), 8 U.S.C. 1254a(c)(1)(A)(ii). The Secretary has determined that the "continuous residence" date for applicants for TPS under the redesignation of Venezuela will be July 31, 2023. Initial applicants for TPS under this redesignation must also show they have been "continuously physically present" in the United States since October 3, 2023, which is the effective date of the Secretary's redesignation of Venezuela. *See* INA sec. 244(c)(1)(A)(i), 8 U.S.C. 1254a(c)(1)(A)(i). For each initial TPS application filed under the redesignation, USCIS cannot make the final determination of whether the applicant has met the "continuous physical presence" requirement until October 3, 2023, the effective date of this redesignation for Venezuela. USCIS, however, will issue employment authorization documentation, as appropriate, during the registration period in accordance with 8 CFR 244.5(b).

**Why is the Secretary extending the TPS designation for Venezuela 2021 and redesignating Venezuela for TPS?**

DHS has reviewed country conditions in Venezuela. Based on the review, including input received from DOS and other U.S. Government agencies, the Secretary has determined that an 18-month TPS extension is warranted because extraordinary and temporary conditions continue to prevent Venezuelan nationals from returning in safety. The Secretary has further determined that redesignating Venezuela for TPS under INA section 244(b)(3)(C), 8 U.S.C. 1254a(b)(3)(C) is warranted on the same statutory basis of extraordinary and temporary conditions.

*Overview*

Venezuela continues to face a severe humanitarian emergency due to a political and economic crisis, as well as human rights violations and abuses and high levels of crime and violence, that impacts access to food, medicine, healthcare, water, electricity, and fuel, and has led to high levels of poverty. Additionally, Venezuela has recently experienced heavy rainfall in the spring and summer of 2023 which triggered flooding and landslides. Given the current conditions in Venezuela, these issues contribute to the country's existing challenges.

Venezuela is experiencing "an unprecedented political, economic, and humanitarian crisis."[5] "Venezuela is suffering one of the worst humanitarian crises in the history of the Western Hemisphere," which has been characterized by "[h]igh levels of poverty, food insecurity, malnutrition, and infant mortality, together with frequent electricity outages and the collapse of health infrastructure."[6] Though there were some positive developments in Venezuela in 2022 "as the economy stabilized and showed signs of economic growth," the effects of these changes were not felt across the Venezuelan population and did not offset the impact of the large-scale economic contraction which resulted in significant humanitarian challenges that continue today and will take time to address.[7]

*Political Repression and Human Rights*

The Maduro regime has closed off channels for political dissent, restricting enjoyment of civil liberties and "prosecuting perceived opponents without regard for due process."[8] The UN Human Rights Council's Independent International Fact-Finding Mission on the Bolivarian Republic of Venezuela (IIFFM) found in its September 2022 report, "Venezuela's military and civilian intelligence agencies function as well-coordinated and effective structures in the implementation of a plan" to "repress dissent."[9]

*Crime and Insecurity*

Venezuela has one of the highest rates of violent deaths in the world.[10] Additionally, "Venezuelans face physical insecurity and violence from several sources, including irregular armed groups, security forces, and organized gangs."[11] Corruption in Venezuela exacerbates insecurity. InSight Crime has reported that "criminal groups and corrupt state actors together form a hybrid state that combines governance with criminality, and where illegal armed groups act at the service of the state, while criminal networks form within it."[12] Human trafficking remains a serious concern. Traffickers exploit and subject Venezuelans, including those fleeing the country, to egregious forms of exploitation, including sex trafficking and forced labor.[13] Members of non-state armed groups that operate in the

---

[4] The extension and redesignation of TPS for Venezuela is one of several instances in which the Secretary and, before the establishment of DHS, the Attorney General, have simultaneously extended a country's TPS designation and redesignated the country for TPS. *See, e.g.,* "Extension and Redesignation of Haiti for Temporary Protected Status," 76 FR 29000 (May 19, 2011); "Extension and Re-designation of Temporary Protected Status for Sudan," 69 FR 60168 (Oct. 7, 2004); "Extension of Designation and Redesignation of Liberia Under Temporary Protected Status Program," 62 FR 16608 (Apr. 7, 1997).

[5] Clare Ribando Seelke, Rebecca M. Nelson, Rhoda Margesson, & Phillip Brown, Venezuela: Background and U.S. Relations, Congressional Research Service (CRS), p.1, Dec. 6, 2022, available at *https://crsreports.congress.gov/product/pdf/R/R44841* (last visited Jul. 7, 2023).

[6] Michael Penfold & Cynthia J. Arnson, Overcoming Barriers to Humanitarian Aid in Venezuela, Wilson Center, p.1, Mar. 2023, available at *https://www.wilsoncenter.org/sites/default/files/media/uploads/documents/OVERCOMING%20BARRIERS%20TO%20HUMANITARIAN%20AID%20IN%20VENEZUELA_0.pdf* (last visited Aug. 10, 2023).

[7] United Nations Office for the Coordination of Humanitarian Affairs (OCHA), Venezuela Humanitarian Fund Annual Report 2022, p.6, Jun. 14, 2023, available at *https://www.unocha.org/publications/report/venezuela-bolivarian-republic/venezuela-humanitarian-fund-annual-report-2022* (last visited Aug. 10, 2023).

[8] Freedom House, Freedom in the World 2023—Venezuela, Mar. 10, 2023, available at *https://freedomhouse.org/country/venezuela/freedom-world/2023* (last visited Jul. 18, 2023).

[9] United Nations Human Rights Council, Venezuela: new UN report details responsibilities for crimes against humanity to repress dissent and highlights situation in remotes mining areas, Sept. 20, 2022, available at *https://www.ohchr.org/en/press-releases/2022/09/venezuela-new-un-report-details-responsibilities-crimes-against-humanity* (last visited Sept. 27, 2023).

[10] Overseas Security Advisory Council (OSAC), Venezuela Country Security Report, U.S. Department of State, May 10, 2022, available at *https://www.osac.gov/Content/Report/34f99e62-2161-412d-bfeb-1e752539f6bf* (last visited Jul. 19, 2023).

[11] Freedom House, Freedom in the World 2023—Venezuela, Mar. 10, 2023, available at *https://freedomhouse.org/country/venezuela/freedom-world/2023* (last visited Jul. 18, 2023).

[12] Venezuela Investigative Unit, Rise of the Criminal Hybrid State in Venezuela, InSight Crime, p.5, Jul. 2023, available at *https://insightcrime.org/wp-content/uploads/2023/07/Rise-of-the-Criminal-Hybrid-State-in-Venezuela-InSight-Crime-1.pdf* (last visited Jul. 19, 2023).

[13] U.S. Dep't. of State, 2023 Trafficking in Persons Report: Venezuela, June 15, 2023, available at *https://www.state.gov/reports/2023-trafficking-in-persons-report/venezuela/* (last visited Sep. 25, 2023).

country with impunity, subject Venezuelans to forced labor and forced criminality, and recruit or use child soldiers.[14]

*Economic Collapse*

Since 2014, Venezuela has suffered from an "economic recession marked by hyperinflation, shortages of basic goods and a collapse in public services such as electricity and water."[15] Recently, Venezuela's economy has shown some signs of recovery; however, it is still in a precarious condition.[16] In a report covering the period from May 2022 through April 2023, the Office of the High Commissioner for Human Rights (OHCHR) noted that while economic growth which occurred in 2022 "would bring hope for improved economic prospects, persistent challenges and other factors continued to negatively affect essential public services, transport, education, and health."[17]

In its annual report covering 2022, the Inter-American Commission on Human Rights (IACHR) noted "the high rates of poverty and inequality in the country, in which there are estimates that more than 90% of the population lives in poverty."[18] The same report stated that "as of March 2022, HumVenezuela estimated that 94.5% of the population would not have sufficient income to cover items such as food, housing, health, education, transportation and clothing."[19]

*Health Crisis*

Various sources have referred to severe problems with health systems in Venezuela, including the IACHR, Human Rights Watch, and the Congressional Research Service (CRS).[20] Per *The Associated Press,* Venezuela's "health care system crumbled long before" the start of the COVID–19 pandemic.[21] Likewise, in its 2022 annual report, the IACHR acknowledged that while the COVID–19 pandemic "has had significant impacts on the health sector and the population, the serious affectations of the system preceded the health emergency."[22] Elaborating on this topic, the IACHR identified "shortages of medicines, supplies, materials and medical treatment" as of 2018, and that the "situation has been worsening since 2014, and it is important to highlight that the health system has reportedly collapsed due to its persistent precariousness, which would have been exacerbated by the pandemic."[23]

According to OHCHR, health centers in Venezuela "report structural underfunding and understaffing resulting in for example, regular blackouts and water shortages."[24] In its report on the humanitarian situation in Venezuela in 2022, the United Nations Office for the Coordination of Humanitarian Affairs (OCHA) noted that "[h]ealth services continue to be affected by insufficient water and sanitation conditions and the lack of electricity supply in facilities."[25] Similarly, Human Rights Watch stated in its annual report covering 2022 that "[p]ower and water outages at healthcare centers—and emigration of healthcare workers—were further weakening operational capacity."[26] Furthermore, the IACHR has reported that "98% of the hospitals in the country lack medicines, electrical plants and water, as well as failures in laboratories, reagents and wards. As a result, it is estimated that only between 3 and 10% of the hospitals have medical and surgical material to solve medical circumstances."[27]

*Food Insecurity*

In a humanitarian response plan published in 2023, the Food and Agriculture Organization of the United Nations (FAO) identified food insecurity as "the most pressing challenge for the population."[28] Human Rights Watch stated in its annual report covering 2022 that HumVenezuela reported in March 2022 that "most Venezuelans face difficulties in accessing food, with 10.9 million undernourished or chronically hungry. Some 4.3 million are deprived of food, sometimes going days without eating."[29] Moreover, the IACHR noted in its 2022 annual report that "32% of children live in a situation of chronic malnutrition."[30]

---

[14] *Id.*

[15] Andrew Cawthorne and Diego Ore, Venezuela confirms recession, highest inflation in Americas, Reuters, Dec. 30, 2014, available at *https://www.reuters.com/article/us-venezuela-economy/venezuela-confirms-recession-highest-inflation-in-americas-idUSKBN0K81KV20141230* (last visited Jul. 7, 2023); Reuters, Venezuela's largest private company calls government supervision 'arbitrary', Apr. 25, 2020, available at *https://www.reuters.com/article/us-venezuela-economy-polar/venezuelas-largest-private-company-calls-government-supervision-arbitrary-idUSKCN2270U8* (last visited Jul. 7, 2023).

[16] The Economist, Nicolás Maduro, Venezuela's autocrat, is winning, Apr. 25, 2023, available at *https://web.archive.org/web/20230531114303/https://www.economist.com/the-americas/2023/04/25/nicolas-maduro-venezuelas-autocrat-is-winning* (last visited Jul. 10, 2023).

[17] Office of the High Commissioner for Human Rights (OHCHR), Situation of human rights in the Bolivarian Republic of Venezuela—Report of the United Nations High Commissioner for Human Rights, p.2, Jul. 4, 2023, available at *https://reliefweb.int/report/venezuela-bolivarian-republic/situation-human-rights-bolivarian-republic-venezuela-report-united-nations-high-commissioner-human-rights-ahrc5354-advance-unedited-version* (last visited Jul. 12, 2023).

[18] Inter-American Commission on Human Rights (IACHR), Annual Report 2022—Chapter IV.B—Venezuela, p.705, Apr. 20, 2023, available at *https://www.oas.org/en/iachr/docs/annual/2022/Chapters/9-IA2022_Cap_4B_VE_EN.pdf* (last visited Jul. 10, 2023).

[19] Inter-American Commission on Human Rights (IACHR), Annual Report 2022—Chapter IV.B—Venezuela, p.705, Apr. 20, 2023, available at *https://www.oas.org/en/iachr/docs/annual/2022/Chapters/9-IA2022_Cap_4B_VE_EN.pdf* (last visited Jul. 10, 2023).

[20] Inter-American Commission on Human Rights (IACHR), Annual Report 2022—Chapter IV.B—Venezuela, p.674, 706, 708, 709, Apr. 20, 2023, available at *https://www.oas.org/en/iachr/docs/annual/2022/Chapters/9-IA2022_Cap_4B_VE_EN.pdf* (last visited Jul. 12, 2023); Human Rights Watch, World Report 2023: Venezuela, Jan. 13, 2023, available at *https://www.hrw.org/world-report/2023/country-chapters/venezuela* (last visited Jul. 12, 2023); Clare Ribando Seelke, Rebecca M. Nelson, Rhoda Margesson, & Phillip Brown, Venezuela: Background and U.S. Relations, Congressional Research Service (CRS), p.11, Dec. 6, 2022, available at *https://crsreports.congress.gov/product/pdf/R/R44841* (last visited Jul. 12, 2023).

[21] Regina Garcia Cano, Governments pledge money, attention to Venezuela's crisis, The Associated Press, Mar. 17, 2023, *https://apnews.com/article/venezuela-migration-crisis-us-united-nations-805873048d2b0532bfbe53428f4ed2aa* (last visited Jul. 12, 2023).

[22] Inter-American Commission on Human Rights (IACHR), Annual Report 2022—Chapter IV.B—Venezuela, p.705, Apr. 20, 2023, available at *https://www.oas.org/en/iachr/docs/annual/2022/Chapters/9-IA2022_Cap_4B_VE_EN.pdf* (last visited Jul. 12, 2023).

[23] Inter-American Commission on Human Rights (IACHR), Annual Report 2022—Chapter IV.B—Venezuela, p.705–706, Apr. 20, 2023, available at *https://www.oas.org/en/iachr/docs/annual/2022/Chapters/9-IA2022_Cap_4B_VE_EN.pdf* (last visited Jul. 12, 2023).

[24] Office of the High Commissioner for Human Rights (OHCHR), Situation of human rights in the Bolivarian Republic of Venezuela—Report of the United Nations High Commissioner for Human Rights, p.3, Jul. 4, 2023, available at *https://reliefweb.int/report/venezuela-bolivarian-republic/situation-human-rights-bolivarian-republic-venezuela-report-united-nations-high-commissioner-human-rights-ahrc5354-advance-unedited-version* (last visited Jul. 13, 2023).

[25] United Nations Office for the Coordination of Humanitarian Affairs (OCHA), Venezuela Humanitarian Fund Annual Report 2022, p.6, Jun. 14, 2023, available at *https://www.unocha.org/publications/report/venezuela-bolivarian-republic/venezuela-humanitarian-fund-annual-report-2022* (last visited Aug. 10, 2023).

[26] Human Rights Watch, World Report 2023: Venezuela, Jan. 13, 2023, available at *https://www.hrw.org/world-report/2023/country-chapters/venezuela* (last visited Jul. 13, 2023).

[27] Inter-American Commission on Human Rights (IACHR), Annual Report 2022—Chapter IV.B—Venezuela, p.708, Apr. 20, 2023, available at *https://www.oas.org/en/iachr/docs/annual/2022/Chapters/9-IA2022_Cap_4B_VE_EN.pdf* (last visited Jul. 13, 2023).

[28] Food and Agriculture Organization of the United Nations (FAO), The Bolivarian Republic of Venezuela: Humanitarian Response Plan 2022–2023, p.1, 2023, available at *https://www.fao.org/3/cc6775en/cc6775en.pdf* (last visited Jul. 14, 2023).

[29] Human Rights Watch, World Report 2023: Venezuela, Jan. 13, 2023, available at *https://www.hrw.org/world-report/2023/country-chapters/venezuela* (last visited Jul. 14, 2023).

[30] Inter-American Commission on Human Rights (IACHR), Annual Report 2022—Chapter IV.B—

Continued

*Heavy Rains and Flooding*

Since May 26, 2023, as hurricane season began, Venezuela has experienced heavy rains which resulted in flooding that affected several areas of the country.[31] According to ACAPS, ''Between June and July there have been 19 tropical waves, that have brought heavy rains, floods and landslides across the country.'' [32] As of July 11, 2023, the meteorological situation in Venezuela indicated ''that rainfall and resulting damages are expected to be more severe than previous years.'' [33] Reports of the damage caused by the heavy rains include 5,100 people affected with damage to houses and blockages in the drainage system in the state of Portuguesa.[34] In another area—Delta Amacuro state—around 7,500 people are affected by the 2023 floods.[35]

In summary, extraordinary and temporary conditions continue to prevent Venezuelan nationals from returning in safety due to a severe humanitarian emergency which has resulted in food insecurity and the inability to access adequate medicine, healthcare, water, electricity, and fuel. Additionally, human rights violations and abuses, high levels of poverty, high levels of crime and violence, and heavy rains and flooding prevent Venezuelan nationals from returning in safety and permitting Venezuelan noncitizens to remain in the United States temporarily would not be contrary to the interests of the United States.

Based on this review and after consultation with appropriate U.S. Government agencies, the Secretary has determined that:

• The conditions supporting Venezuela's designation for TPS continue to be met. *See* INA sec. 244(b)(3)(A) and (C), 8 U.S.C. 1254a(b)(3)(A) and (C).

• There continues to be extraordinary and temporary conditions in Venezuela that prevent Venezuelan nationals (or individuals having no nationality who last habitually resided in Venezuela) from returning to Venezuela in safety, and it is not contrary to the national interest of the United States to permit Venezuelan TPS beneficiaries to remain in the United States temporarily. *See* INA sec. 244(b)(1)(C), 8 U.S.C. 1254a(b)(1)(C).

• The existing designation of Venezuela for TPS (Venezuela 2021) should be extended for an 18-month period, beginning on March 11, 2024 and ending on September 10, 2025. *See* INA sec. 244(b)(3)(C), 8 U.S.C. 1254a(b)(3)(C).

• Due to the conditions described above, Venezuela should be redesignated for TPS beginning on October 3, 2023, and ending on April 2, 2025. *See* INA sec. 244(b)(1)(C) and (b)(2), 8 U.S.C. 1254a(b)(1)(C) and (b)(2).

• For the redesignation, the Secretary has determined that TPS applicants must demonstrate that they have continuously resided in the United States since July 31, 2023.

• Initial TPS applicants under the redesignation must demonstrate that they have been continuously physically present in the United States since October 3, 2023, the effective date of the redesignation of Venezuela for TPS.

• There are approximately 243,000 current Venezuela TPS beneficiaries who are eligible to re-register for TPS under the extension.

• It is estimated that approximately 472,000 additional individuals may be eligible for TPS under the redesignation of Venezuela. This population includes Venezuelan nationals in the United States in nonimmigrant status or without immigration status.

**Notice of the Designation of Venezuela for TPS**

By the authority vested in me as Secretary under INA section 244, 8 U.S.C. 1254a, I have determined, after consultation with the appropriate U.S. Government agencies, the statutory conditions supporting Venezuela's designation for TPS on the basis of extraordinary and temporary conditions are met and it is not contrary to the national interest of the United States to allow Venezuelan TPS beneficiaries to remain in the United States temporarily. *See* INA sec. 244(b)(1)(C), 8 U.S.C. 1254a(b)(1)(C). On the basis of this determination, I am extending the existing designation of Venezuela for TPS for 18 months, beginning on March 11, 2024, and ending on September 10, 2025.

Additionally, and also on the basis of this determination, I am redesignating Venezuela for TPS for 18 months, beginning on October 3, 2023 and ending on April 2, 2025. *See* INA sec. 244(b)(1) and (b)(2); 8 U.S.C. 1254a(b)(1), and (b)(2). I estimate approximately 472,000 individuals may be newly eligible for TPS under the redesignation of Venezuela.

**Alejandro N. Mayorkas,**
*Secretary, U.S. Department of Homeland Security.*

**Eligibility and Employment Authorization for TPS**

*Required Application Forms and Application Fees To Register or Re-Register for TPS*

To register or re-register for TPS based on the designation of Venezuela, you must submit a Form I–821, Application for Temporary Protected Status. Re-registration under this notice applies to TPS beneficiaries whose re-registration application was approved under the TPS extension announced on September 8, 2022, who have been issued Form I–797, Notice of Action, indicating approval of their TPS application and an EAD with a March 10, 2024, expiration date. Individuals with an EAD with a March 10, 2024, expiration date who want to receive an EAD with the September 10, 2025, expiration date must re-register pursuant to the instructions noted in this FRN. If you are submitting an initial TPS application, you must pay the filing fee for Form I–821 (or request a fee waiver, which you may submit on Form I–912, Request for Fee Waiver). If you are filing an application to re-register for TPS, you do not need to pay the fee. *See* 8 CFR 244.17. You may need to pay the biometric services fee. If you can demonstrate an inability to pay the biometric services fee, you may request to have the fee waived. Please see additional information under the ''Biometric Services Fee'' section of this notice.

TPS beneficiaries are eligible for an Employment Authorization Document (EAD), which proves their authorization to work in the United States. You are not required to submit Form I–765, Application for Employment Authorization, or have an EAD to be granted TPS, but see below for more information if you want an EAD to use as proof that you can work in the United States.

Individuals who have an initial Venezuela TPS application (Form I–821) that was still pending as of October 3, 2023, do not need to file the application again. If USCIS approves an individual's Form I–821, USCIS will grant the individual TPS through April 2, 2025. Individuals who are current beneficiaries under the Venezuela 2021

---

Venezuela, p.709, Apr. 20, 2023, available at *https://www.oas.org/en/iachr/docs/annual/2022/Chapters/9-IA2022_Cap_4B_VE_EN.pdf* (last visited Jul. 14, 2023).

[31] ACAPS, *ACAPS Anticipatory Note: Venezuela—Anticipation of flooding*, 20 July 2023, July 20, 2023, available at *https://reliefweb.int/report/venezuela-bolivarian-republic/acaps-anticipatory-note-venezuela-anticipation-flooding-20-july-2023* (last visited Sept. 19, 2023).

[32] *Id.*

[33] Reliefweb, *Venezuela: Anticipatory Action for Floods—DREF Operation MDRVE008,* July 11, 2023, available at *https://reliefweb.int/report/venezuela-bolivarian-republic/venezuela-anticipatory-actions-floods-dref-operation-mdrve008* (last visited Sep. 19, 2023).

[34] *Id.*

[35] *Id.*

designation and have a re-registration application (Form I–821) and/or Application for Employment Authorization (Form I–765) pending as of October 3, 2023, do not need to file either application again. If USCIS approves an individual's pending Form I–821, USCIS will grant the individual TPS through September 10, 2025. Similarly, if USCIS approves a pending TPS-related Form I–765, USCIS will issue the individual a new EAD that will be valid through the same date.

For more information on the application forms and fees for TPS, please visit the USCIS TPS web page at *https://www.uscis.gov/tps.* Fees for the Form I–821, the Form I–765, and biometric services are also described in 8 CFR 103.7(b)(1) (Oct. 1, 2020). The instructions for Form I–821 and Form I–765 also provide more information on requirements and fees for both initial TPS applicants and existing TPS beneficiaries who are re-registering.

**How can TPS beneficiaries obtain an Employment Authorization Document (EAD)?**

Everyone must provide their employer with documentation showing that they have the legal right to work in the United States. TPS beneficiaries are eligible to obtain an EAD, which proves their legal right to work. If you want to obtain an EAD, you must file Form I–765 and pay the Form I–765 fee (or request a fee waiver, which you may submit on Form I–912, Request for Fee Waiver). TPS applicants may file this form with their TPS application, or separately later, if their TPS application is still pending or has been approved. Beneficiaries with an initial Venezuela TPS-related Form I–765 that was still pending as of October 3, 2023, do not need to file the application again. If USCIS approves a pending TPS-related Form I–765, USCIS will issue the individual a new EAD that will be valid through April 2, 2025. Individuals who are current beneficiaries under the Venezuela 2021 designation and have a re-registration application (Form I–821) and/or Application for Employment Authorization (Form I–765) pending as of October 3, 2023, do not need to file either application again. If USCIS approves an individual's pending Form I–821, USCIS will grant the individual TPS through September 10, 2025. Similarly, if USCIS approves a pending TPS-related Form I–765, USCIS will issue the individual a new EAD that will be valid through the same date.

**Refiling an Initial TPS Registration Application After Receiving a Denial of a Fee Waiver Request**

If USCIS denies your fee waiver request, you can resubmit your TPS application. The fee waiver denial notice will contain specific instructions about resubmitting your application.

**Filing Information**

You may file Form I–821 and related requests for EADs online or by mail. However, if you request a fee waiver, you must submit your application by mail. When filing a TPS application, applicants may request an EAD by submitting a completed Form I–765 with their Form I–821.

*Online filing:* Form I–821 and Form I–765 are available for concurrent filing online.[36] To file these forms online, you must first create a USCIS online account.[37]

*Mail filing:* Mail your application for TPS to the proper address in Table 1.

*Table 1—Mailing Addresses*

Mail your completed Form I–821, Application for Temporary Protected Status; Form I–765, Application for Employment Authorization, if applicable; Form I–912, Request for Fee Waiver (if applicable); and supporting documentation to the proper address in Table 1.

TABLE 1—MAILING ADDRESSES

| If you live in: | Then, mail your application to: |
|---|---|
| California, Texas | *U.S. Postal Service (USPS):* USCIS, Attn: TPS Venezuela, P.O. Box 20300, Phoenix, AZ 85036–0300. *FedEx, UPS, and DHL deliveries:* USCIS, Attn: TPS Venezuela (Box 20300), 2108 E Elliot Rd., Tempe, AZ 85284–1806. |
| Florida | *U.S. Postal Service (USPS):* USCIS, Attn: TPS Venezuela, P.O. Box 660864, Dallas, TX 75266–0864. *FedEx, UPS, and DHL deliveries:* USCIS, Attn: TPS Venezuela (Box 660864), 2501 S State Highway, 121 Business, Suite 400, Lewisville, TX 75067–8003. |
| Illinois, Indiana, Massachusetts, New Jersey, New York, North Carolina, Utah, Virginia. | *U.S. Postal Service (USPS):* USCIS, Attn: Venezuela, P.O. Box 4091, Carol Stream, IL 60197–4091. *FedEx, UPS, and DHL deliveries:* USCIS, Attn: TPS Venezuela (Box 4091), 2500 Westfield Drive, Elgin, IL 60124–7836. |
| All other states, District of Columbia, and U.S. Territories | *U.S. Postal Service (USPS):* USCIS, Attn: TPS Venezuela, P.O. Box 805282, Chicago, IL 60680–5285. *FedEx, UPS, and DHL deliveries:* USCIS, Attn: TPS Venezuela (Box 805282), 131 South Dearborn Street, 3rd Floor, Chicago, IL 60603–5517. |

If you were granted TPS by an immigration judge (IJ) or the Board of Immigration Appeals (BIA) and you wish to request an EAD, please file online or mail your Form I–765 application to the appropriate mailing address in Table 1. If you file online, please include the fee. If you file by mail, please include the fee or fee waiver request. When you request an EAD based on an IJ/BIA grant of TPS, please include a copy of the IJ or BIA order granting you TPS with your application. This will help us verify your grant of TPS and process your application.

---

[36] Find information about online filing at ''Forms Available to File Online,'' *https://www.uscis.gov/file-online/forms-available-to-file-online.*

[37] *https://myaccount.uscis.gov/users/sign_up.*

**Supporting Documents**

The filing instructions on Form I–821 list all the documents needed to establish eligibility for TPS. You may also find information on the acceptable documentation and other requirements for applying (that is, registering) for TPS on the USCIS website at *https://www.uscis.gov/tps* under ''Venezuela.''

**Travel**

TPS beneficiaries may also apply for and be granted travel authorization as a matter of discretion. You must file for travel authorization if you wish to travel outside of the United States. If granted, travel authorization gives you permission to leave the United States and return during a specific period. To request travel authorization, you must file Form I–131, Application for Travel Document, available at *https://www.uscis.gov/i-131.* You may file Form I–131 together with your Form I–821 or separately. When filing Form I–131, you must:

• Select Item Number 1.d. in Part 2 on the Form I–131; and

• Submit the fee for Form I–131, or request a fee waiver, which you may submit on Form I–912, Request for Fee Waiver.

If you are filing Form I–131 together with Form I–821, send your forms to the address listed in Table 1. If you are filing Form I–131 separately based on a pending or approved Form I–821, send your form to the address listed in Table 2 and include a copy of Form I–797 for the approved or pending Form I–821.

TABLE 2—MAILING ADDRESSES

| If you are . . . | Mail to . . . |
| --- | --- |
| Filing Form I–131 together with a Form I–821, Application for Temporary Protected Status. | The address provided in Table 1. |
| Filing Form I–131 based on a pending or approved Form I–821, and you are using the U.S. Postal Service (USPS): You must include a copy of the receipt notice (Form I–797 or I–797C) showing we accepted or approved your Form I–821. | USCIS, Attn: I–131 TPS, P.O. Box 660167, Dallas, TX 75266–0867. |
| Filing Form I–131 based on a pending or approved Form I–821, and you are using FedEx, UPS, or DHL: You must include a copy of the receipt notice (Form I–797 or I–797C) showing we accepted or approved your Form I–821. | USCIS, Attn: I–131 TPS, 2501 S State Hwy. 121 Business, Ste. 400, Lewisville, TX 75067. |

**Biometric Services Fee for TPS**

Biometrics (such as fingerprints) are required for all applicants 14 years of age and older. Those applicants must submit a biometric services fee. As previously stated, if you are unable to pay the biometric services fee, you may request a fee waiver, which you may submit on Form I–912, Request for Fee Waiver. For more information on the application forms and fees for TPS, please visit the USCIS TPS web page at *https://www.uscis.gov/tps.* USCIS may require you to visit an Application Support Center to submit biometrics. For additional information on the USCIS biometric screening process, please see the USCIS Customer Profile Management Service Privacy Impact Assessment, available at *https://www.dhs.gov/publication/dhsuscispia-060-customer-profile-management-service-cpms.*

*General Employment-Related Information for TPS Applicants and Their Employers*

**How can I obtain information on the status of my TPS application and EAD request?**

To get case status information about your TPS application, as well as the status of your TPS-based EAD request, you can check Case Status Online at uscis.gov, or visit the USCIS Contact Center at *https://www.uscis.gov/contactcenter.* If your Form I–765 has been pending for more than 90 days, and you still need assistance, you may ask a question about your case online at *https://egov.uscis.gov/e-request/Intro.do* or call the USCIS Contact Center at 800–375–5283 (TTY 800–767–1833).

**Am I eligible to receive an automatic extension of my current EAD through March 10, 2025, through this Federal Register notice?**

Yes. Regardless of your country of birth, if you currently have a Venezuela TPS-based EAD with the notation A–12 or C–19 under Category and a Card Expires date of March 10, 2024, or September 9, 2022, this **Federal Register** notice automatically extends your EAD through March 10, 2025. Although this **Federal Register** notice automatically extends your EAD through March 10, 2025, you must re-register timely for TPS in accordance with the procedures described in this **Federal Register** notice to maintain your TPS and employment authorization.

**When hired, what documentation may I show to my employer as evidence of identity and employment authorization when completing Form I–9?**

You can find the Lists of Acceptable Documents on Form I–9, Employment Eligibility Verification, as well as the Acceptable Documents web page at *https://www.uscis.gov/i-9-central/acceptable-documents.* Employers must complete Form I–9 to verify the identity and employment authorization of all new employees. Within three days of hire, employees must present acceptable documents to their employers as evidence of identity and employment authorization to satisfy Form I–9 requirements.

You may present any document from List A (which provides evidence of both identity and employment authorization) or one document from List B (which provides evidence of your identity) together with one document from List C (which provides evidence of employment authorization), or you may present an acceptable receipt as described in the Form I–9 Instructions. Employers may not reject a document based on a future expiration date. You can find additional information about Form I–9 on the I–9 Central web page at *https://www.uscis.gov/I-9Central.* An EAD is an acceptable document under List A. See the section ''How do my employer and I complete Form I–9 using my automatically extended EAD for a new job?'' of this **Federal Register** notice for more information. If your EAD states A–12 or C–19 under Category and has a Card Expires date of March 10, 2024, or September 9, 2022, this **Federal Register** notice extends it automatically, and you may choose to present your EAD to your employer as proof of identity and employment eligibility for Form I–9 through March 10, 2025, unless your TPS has been withdrawn or your request for TPS has been denied. Your country of birth noted on the EAD does not have to

reflect the TPS-designated country of Venezuela for you to be eligible for this extension.

**What documentation may I present to my employer for Form I–9 if I am already employed but my current TPS-related EAD is set to expire?**

Even though we have automatically extended your EAD, your employer is required by law to ask you about your continued employment authorization. Your employer may need to re-examine your automatically extended EAD to check the Card Expires date and Category code if your employer did not keep a copy of your EAD when you initially presented it. Once your employer has reviewed the Card Expires date and Category code, they should update the EAD expiration date in Section 2 of Form I–9. See the section ''What updates should my current employer make to Form I–9 if my EAD has been automatically extended?'' of this **Federal Register** notice for more information. You may show this **Federal Register** notice to your employer to explain what to do for Form I–9 and to show that USCIS has automatically extended your EAD through March 10, 2025, but you are not required to do so. The last day of the automatic EAD extension is March 10, 2025. Before you start work on March 11, 2025, your employer is required by law to reverify your employment authorization on Form I–9. By that time, you must present any document from List A or any document from List C on Form I–9 Lists of Acceptable Documents, or an acceptable List A or List C receipt described in the Form I–9 instructions to reverify employment authorization.

Your employer may not specify which List A or List C document you must present and cannot reject an acceptable receipt.

**If I have an EAD based on another immigration status/benefit, can I obtain a new TPS-based EAD?**

Yes, if you are eligible for TPS, you can obtain a new TPS-based EAD, even if you have an EAD or work authorization based on another immigration status or benefit. If you are a current TPS beneficiary under Venezuela 2021 and want to obtain a new TPS-based EAD valid through September 10, 2025, or if you are applying for TPS for the first time under Venezuela 2023 and want to obtain a TPS-based EAD valid through April 2, 2025, then you must file Form I–765, Application for Employment Authorization, and pay the associated fee (unless USCIS grants your fee waiver request).

**Can my employer require that I provide any other documentation such as evidence of my status, proof of my Venezuelan citizenship, or a Form I–797C showing that I registered for TPS for Form I–9 completion?**

No. When completing Form I–9, employers must accept any documentation you choose to present from the Form I–9 Lists of Acceptable Documents that reasonably appears to be genuine and that relates to you, or an acceptable List A, List B, or List C receipt. Employers may not request other documentation, such as proof of Venezuelan citizenship or proof of registration for TPS when completing Form I–9 for new hires or reverifying the employment authorization of current employees. If you present an EAD that USCIS has automatically extended, employers should accept it as a valid List A document if the EAD reasonably appears to be genuine and to relate to you. Refer to the ''Note to Employees'' section of this **Federal Register** notice for important information about your rights if your employer rejects lawful documentation, requires additional documentation, or otherwise discriminates against you based on your citizenship or immigration status or your national origin.

**How do my employer and I complete Form I–9 using my automatically extended EAD for a new job?**

When using an automatically extended EAD to complete Form I–9 for a new job before March 10, 2025:

1. For Section 1, you should:

a. Check ''A noncitizen authorized to work until'' and enter March 10, 2025, as the ''expiration date''; and

b. Enter your USCIS number or A-Number where indicated. (Your EAD or other document from DHS will have your USCIS number or A-Number printed on it; the USCIS number is the same as your A-Number without the A prefix.)

2. For Section 2, employers should:

a. Determine whether the EAD is auto-extended by ensuring it is in category A–12 or C–19 and has a Card Expires date of March 10, 2024 or September 9, 2022;

b. Write in the document title;
c. Enter the issuing authority;
d. Provide the document number; and
e. Write March 10, 2025, as the expiration date.

Before the start of work on March 11, 2025, employers must reverify the employee's employment authorization on Form I–9.

**What updates should my current employer make to Form I–9 if my EAD has been automatically extended?**

If you presented a TPS-related EAD that was valid when you first started your job and USCIS has now automatically extended your EAD, your employer may need to re-examine your current EAD if they do not have a copy of the EAD on file. Your employer should determine whether your EAD is automatically extended by ensuring that it contains Category A–12 or C–19 and has a Card Expires date of March 10, 2024 or September 9, 2022. Your employer may not rely on the country of birth listed on the card to determine whether you are eligible for this extension.

If your employer determines that USCIS has automatically extended your EAD, your employer should update Section 2 of your previously completed Form I–9 as follows:

1. Write EAD EXT and March 10, 2025, as the last day of the automatic extension in the Additional Information field; and

2. Initial and date the correction.

**Note:** This is not considered a reverification. Employers do not reverify the employee until either the automatic extension has ended, or the employee presents a new document to show continued employment authorization, whichever is sooner. By March 11, 2025, when the employee's automatically extended EAD has expired, employers are required by law to reverify the employee's employment authorization on Form I–9.

**If I am an employer enrolled in E-Verify, how do I verify a new employee whose EAD has been automatically extended?**

Employers may create a case in E-Verify for a new employee by entering the number from the Document Number field on Form I–9 into the document number field in E-Verify. Employers should enter March 10, 2025, as the expiration date for an EAD that has been extended under this **Federal Register** notice.

**If I am an employer enrolled in E-Verify, what do I do when I receive a ''Work Authorization Documents Expiring'' alert for an automatically extended EAD?**

E-Verify automated the verification process for TPS-related EADs that are automatically extended. If you have employees who provided a TPS-related EAD when they first started working for you, you will receive a ''Work Authorization Documents Expiring'' case alert when the auto-extension period for this EAD is about to expire.

Before this employee starts work on March 11, 2025, you must reverify their employment authorization on Form I–9. Employers may not use E-Verify for reverification.

**Note to All Employers**

Employers are reminded that the laws requiring proper employment eligibility verification and prohibiting unfair immigration-related employment practices remain in full force. This **Federal Register** notice does not supersede or in any way limit applicable employment verification rules and policy guidance, including those rules setting forth reverification requirements. For general questions about the employment eligibility verification process, employers may call USCIS at 888–464–4218 (TTY 877–875–6028) or email USCIS at *I-9Central@uscis.dhs.gov.* USCIS accepts calls and emails in English and many other languages. For questions about avoiding discrimination during the employment eligibility verification process (Form I–9 and E-Verify), employers may call the U.S. Department of Justice, Civil Rights Division, Immigrant and Employee Rights Section (IER) Employer Hotline at 800–255–8155 (TTY 800–237–2515). IER offers language interpretation in numerous languages. Employers may also email IER at *IER@usdoj.gov* or get more information online at *www.justice.gov/ier.*

**Note to Employees**

For general questions about the employment eligibility verification process, employees may call USCIS at 888–897–7781 (TTY 877–875–6028) or email USCIS at *I-9Central@uscis.dhs.gov.* USCIS accepts calls in English, Spanish and many other languages. Employees or job applicants may also call the U.S. Department of Justice, Civil Rights Division, Immigrant and Employee Rights Section (IER) Worker Hotline at 800–255–7688 (TTY 800–237–2515) for information regarding employment discrimination based on citizenship, immigration status, or national origin, including discrimination related to Form I–9 and E-Verify. The IER Worker Hotline provides language interpretation in numerous languages.

To comply with the law, employers must accept any document or combination of documents from the Lists of Acceptable Documents if the documentation reasonably appears to be genuine and to relate to the employee, or an acceptable List A, List B, or List C receipt as described in the Form I–9 Instructions. Employers may not require extra or additional documentation other than what is required to complete Form I–9. Further, employers participating in E-Verify who receive an E-Verify case result of ''Tentative Nonconfirmation'' (mismatch) must promptly inform employees of the mismatch and give these employees an opportunity to resolve the mismatch. A mismatch means that the information entered into E-Verify from Form I–9 differs from records available to DHS.

Employers may not terminate, suspend, delay training, withhold or lower pay, or take any adverse action against an employee because of a mismatch while the case is still pending with E-Verify. A Final Nonconfirmation (FNC) case result is received when E-Verify cannot confirm an employee's employment eligibility. An employer may terminate employment based on a case result of FNC. Work-authorized employees who receive an FNC may call USCIS for assistance at 888–897–7781 (TTY 877–875–6028). For more information about E-Verify-related discrimination or to report an employer for discrimination in the E-Verify process based on citizenship, immigration status, or national origin, contact IER's Worker Hotline at 800–255–7688 (TTY 800–237–2515). Additional information about proper nondiscriminatory Form I–9 and E-Verify procedures is available on the IER website at *https://www.justice.gov/ier* and the USCIS and E-Verify websites at *https://www.uscis.gov/i-9-central* and *https://www.e-verify.gov.*

**Note Regarding Federal, State, and Local Government Agencies (Such as Departments of Motor Vehicles)**

For Federal purposes, if you present an automatically extended EAD referenced in this **Federal Register** notice, you do not need to show any other document, such as a Form I–797C, Notice of Action, reflecting receipt of a Form I–765 EAD renewal application or this **Federal Register** notice, to prove that you qualify for this extension. While Federal Government agencies must follow the guidelines laid out by the Federal Government, State and local government agencies establish their own rules and guidelines when granting certain benefits. Each state may have different laws, requirements, and determinations about what documents you need to provide to prove eligibility for certain benefits. Whether you are applying for a Federal, State, or local government benefit, you may need to provide the government agency with documents that show you are a TPS beneficiary, show you are authorized to work based on TPS or other status, or that may be used by DHS to determine if you have TPS or another immigration status. Examples of such documents are:

• Your current EAD with a TPS category code of A–12 or C–19, even if your country of birth noted on the EAD does not reflect the TPS-designated country of Venezuela;

• Your Form I–94, Arrival/Departure Record;

• Your Form I–797, Notice of Action, reflecting approval of your Form I–765; or

• Form I–797 or Form I–797C, Notice of Action, reflecting approval or receipt of a past or current Form I–821, if you received one from USCIS.

Check with the government agency requesting documentation about which document(s) the agency will accept. Some state and local government agencies use the SAVE program to confirm the current immigration status of applicants for public benefits.

While SAVE can verify that an individual has TPS, each agency's procedures govern whether they will accept an unexpired EAD, Form I–797, Form I–797C, or Form I–94, Arrival/Departure Record. If an agency accepts the type of TPS-related document you present, such as an EAD, the agency should accept your automatically extended EAD, regardless of the country of birth listed on the EAD. It may assist the agency if you:

a. Give the agency a copy of the relevant **Federal Register** notice showing the extension of TPS-related documentation in addition to your recent TPS-related document with your A-number, USCIS number, or Form I–94 number;

b. Explain that SAVE will be able to verify the continuation of your TPS using this information; and

c. Ask the agency to initiate a SAVE query with your information and follow through with additional verification steps, if necessary, to get a final SAVE response verifying your TPS.

You can also ask the agency to look for SAVE notices or contact SAVE if they have any questions about your immigration status or automatic extension of TPS-related documentation. In most cases, SAVE provides an automated electronic response to benefit-granting agencies within seconds, but occasionally verification can be delayed.

You can check the status of your SAVE verification by using CaseCheck at *https://save.uscis.gov/casecheck/.* CaseCheck is a free service that lets you follow the progress of your SAVE verification case using your date of birth and one immigration identifier number (such as A-number, USCIS number, or Form I–94 number) or Verification Case

Number. If an agency has denied your application based solely or in part on a SAVE response, the agency must offer you the opportunity to appeal the decision in accordance with the agency's procedures. If the agency has received and acted on or will act on a SAVE verification and you do not believe the SAVE response is correct, the SAVE website, *https://www.uscis.gov/save,* has detailed information on how to make corrections or update your immigration record, make an appointment, or submit a written request to correct records.

[FR Doc. 2023–21865 Filed 9–29–23; 4:15 pm]

**BILLING CODE P**

# DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

**[Docket No. FR–7070–N–66]**

**30-Day Notice of Proposed Information Collection: Green and Resilient Retrofit Program (GRRP) Application Forms; OMB Control No.: 2502–0624**

**AGENCY:** Office of Policy Development and Research, Chief Data Officer, HUD.

**ACTION:** Notice.

**SUMMARY:** HUD is seeking approval from the Office of Management and Budget (OMB) for the information collection described below. In accordance with the Paperwork Reduction Act, HUD is requesting comment from all interested parties on the proposed collection of information. The purpose of this notice is to allow for an additional 30 days of public comment.

**DATES:** *Comments Due Date:* November 2, 2023.

**ADDRESSES:** Interested persons are invited to submit comments regarding this proposal. Written comments and recommendations for the proposed information collection should be sent within 30 days of publication of this notice to *www.reginfo.gov/public/do/PRAMain.* Find this particular information collection by selecting ''Currently under 30-day Review—Open for Public Comments'' or by using the search function. Interested persons are also invited to submit comments regarding this proposal and comments should refer to the proposal by name and/or OMB Control Number and should be sent to: Colette Pollard, Clearance Officer, REE, Department of Housing and Urban Development, 451 7th Street SW, Room 8210, Washington, DC 20410–5000; email *PaperworkReductionActOffice@hud.gov.*

**FOR FURTHER INFORMATION CONTACT:** Colette Pollard, Reports Management Officer, REE, Department of Housing and Urban Development, 451 7th Street SW, Washington, DC 20410; email *Colette.Pollard@hud.gov* or telephone 202–402–3400. This is not a toll-free number. HUD welcomes and is prepared to receive calls from individuals who are deaf or hard of hearing, as well as individuals with speech or communication disabilities. To learn more about how to make an accessible telephone call, please visit: *https://www.fcc.gov/consumers/guides/telecommunications-relay-service-trs.*

Copies of available documents submitted to OMB may be obtained from Ms. Pollard.

**SUPPLEMENTARY INFORMATION:** This notice informs the public that HUD is seeking approval from OMB for the information collection described in Section A.

The **Federal Register** notice that solicited public comment on the information collection for a period of 60 days was published on August 1, 2023 at 88 FR 50166.

## A. Overview of Information Collection

*Title of Information Collection:* Green and Resilient Retrofit Program (GRRP) Application Forms.

*OMB Approval Number:* 2502–0624.
*OMB Expiration Date:* 8/31/2023.
*Type of Request:* Revision of a currently approved collection.
*Form Numbers:* HUD 5991, HUD 5992, and HUD 5993.

*Description of the need for the information and proposed use:* The Green and Resilient Retrofit Program (''GRRP'') is newly funding through Title III of the Inflation Reduction Act of 2022, H.R. 5376 (IRA), in section 30002 titled ''Improving Energy Efficiency or Water Efficiency or Climate Resilience of Affordable Housing'' (the ''IRA''), authorizing HUD to make loans, grants to improve energy or water efficiency; enhance indoor air quality or sustainability; implement the use of zero-emission electricity generation, low-emission building materials or processes, energy storage, or building electrification strategies; or address climate resilience of eligible HUD-assisted multifamily properties. The program leverages significant technological advancements in utility efficiency and adds a focus on preparing for climate hazards—both reducing residents' and properties' exposure to hazards and protecting life, livability, and property when disaster strikes. With its dual focus, GRRP is the first program to consider, at the national scale, how best to approach both green and energy efficiency upgrades simultaneously with investment in climate resilience strategies in multifamily housing. HUD is taking a multi-faceted approach to deploy these funds multiple funding rounds and for properties at different development stages.

Funding under this program will be made through multiple cohorts under one or multiple Notices of Funding Opportunity (NOFOs) that will detail the application process for eligible applicants. This collection is necessary in order to receive applications requesting funding under this program.

*Respondents:* HUD-assisted multifamily owners.

*Estimated Number of Respondents:* 680.

*Estimated Number of Responses:* 680.

*Frequency of Response:* Once per application.

*Average Hours per Response:* 15 hours.

*Total Estimated Burden:* 10,200.

## B. Solicitation of Public Comment

This notice is soliciting comments from members of the public and affected parties concerning the collection of information described in Section A on the following:

(1) Whether the proposed collection of information is necessary for the proper performance of the functions of the agency, including whether the information will have practical utility;

(2) The accuracy of the agency's estimate of the burden of the proposed collection of information;

(3) Ways to enhance the quality, utility, and clarity of the information to be collected; and

(4) Ways to minimize the burden of the collection of information on those who are to respond; including through the use of appropriate automated collection techniques or other forms of information technology, *e.g.,* permitting electronic submission of responses.

(5) ways to minimize the burden of the collection of information on those who are to respond, including the use of automated collection techniques or other forms of information technology.

HUD encourages interested parties to submit comment in response to these questions.