<div align="center">

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

</div>

| | |
|---|---|
| CASA, INC. and MAKE THE ROAD NEW YORK<br><br><div align="center">*Plaintiffs,*</div><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, and UNITED STATES DEPARTMENT OF HOMELAND SECURITY<br><br><div align="center">*Defendants.*</div> | Case No. 8:25-cv-00525-GLR |

<div align="center">

**DECLARATION OF GEORGE ESCOBAR, CHIEF OF PROGRAMS AND SERVICES**

**CASA, INC.**

</div>

I, George Escobar, hereby submit this declaration pursuant to 28 U.S.C. § 1746 and declare as follows:

1.      I am the Chief of Programs and Services of CASA, Inc. ("CASA"). I have worked at CASA for fourteen years. In my role, I oversee CASA's portfolio of community-facing direct services, including its health, legal, and educational services; employment and workforce development programs; financial literacy and tax programs; and parent engagement programs. An important part of my role is to understand the needs and experiences of our members so that I can work with my staff to design appropriate interventions to address those needs. I therefore speak frequently with community members and receive feedback from my staff regarding CASA members' fears, concerns, and decisions.

2.      I make this statement based upon personal knowledge, files and documents of CASA that I have reviewed (such as case files, reports, and collected case metrics), as well as

information supplied to me by employees of CASA whom I believe to be reliable. These files, documents, and information are of a type that is generated in the ordinary course of our business and that I would customarily rely upon in conducting CASA business.

3.    CASA is a nonprofit membership organization headquartered in Langley Park, Maryland, with offices in Maryland, Virginia, Pennsylvania, and Georgia.

4.    Founded in 1985, CASA is the largest membership-based immigrant rights organization in the mid-Atlantic region, with more than 173,000 lifetime members from across the United States. CASA's members are predominantly noncitizens in a variety of immigration statuses, including over 2,000 overall who have ties to Venezuela.

**CASA's Mission and Activities**

5.    A CASA member is a person who shares CASA's values, envisions a future where we can achieve full human rights for all, and is convinced that, when united and organized, we can create a more just society by building power in our working-class and immigrant communities. CASA members play an important role in deciding what campaigns we work on and how CASA serves the community.

6.    CASA membership is voluntary. In order to become a member, an individual must apply for membership, pay dues, and subscribe to the principles of CASA. CASA members also must self-identify as members of an immigrant or working-class community.

7.    Currently, the annual fee for CASA membership is $35. Alternatively, individuals may pay a recurring membership fee of $5 per month. The membership fee can be waived for individuals who experience financial hardship or are otherwise unable to pay. Members are also offered the opportunity, for an additional $5, to obtain a CASA ID. This is a physical, picture identification card that contains basic information about the member. For many of our immigrant

members, this card may be the only type of picture identification they have, other than documents from their home country. In certain jurisdictions, CASA IDs are recognized for the purposes of engaging with certain government agencies, including the police.

8.      CASA's mission is to create a more just society by building power and improving the quality of life in working-class Black, Latino/a/e, Afro-descendent, Indigenous, and immigrant communities. From CASA's beginnings in a church basement, we have envisioned a future with diverse and thriving communities living free from discrimination and fear, working together with mutual respect to achieve human rights for all.

9.      In furtherance of this mission, CASA offers a wide variety of social, health, job training, employment, and legal services to immigrant communities, with a particular focus in Maryland, Washington, D.C., Virginia, Pennsylvania, and Georgia. CASA also offers a more limited suite of services remotely to our members across the United States. Those individuals who are not geographically close to a physical CASA office are offered the opportunity to join a national organizing committee, whose members are entitled to vote on CASA's organizational priorities and integrated into our member-led system of internal democratic governance. CASA also conducts campaigns to inform members of immigrant communities of their rights and assists individuals in applying a variety of government benefits. In addition, CASA provides its members with free remote legal assistance, including free legal consultations on immigration issues.

## Harm to CASA's Members From the Vacatur and Termination

10.     CASA has members who have TPS status based on either the initial designation of Venezuela for TPS in March 2021 (the "2021 Designation") or the October 2023 re-designation of Venezuela (the "2023 Designation").

11.     Because of the services that we provide our members, we are acutely aware of the harms that Secretary Noem's January 28, 2025 Vacatur of the January 17, 2025 Extension by Secretary Mayorkas (the "Vacatur") and the February 5, 2025 Termination of the 2023 Designation (the "Termination") will cause to Venezuelan TPS holders.

12.     Since its founding, CASA has provided direct assistance on approximately 1,000 TPS applications for its members, including providing legal services to over 100 Venezuelan members seeking TPS, at least 59 of whom received TPS.  Beyond that, many more CASA members from Venezuela have obtained TPS without being directly represented by CASA.

13.     In addition to the legal services CASA offers members seeking TPS, the organization is also a leader in advocating for TPS nationally. CASA serves as a founding member of the TPS Funding Collaborative, which has raised more than $3 million to support organizations advocating for TPS.

14.     Based on CASA's records and my own conversations with several of the members below, I have determined that the following individuals are TPS holders, which they risk losing as a result of the Vacatur and Termination:

15.     E.B. is a CASA member and TPS holder under the 2021 Designation.[1]

16.     A.E. is a CASA member and TPS holder under the 2021 Designation.

17.     M.B. is a CASA member and TPS holder under the 2021 Designation.

18.     T.G. is a CASA member and a TPS holder under the 2023 Designation.

19.     R.R. is a CASA member and TPS holder under the 2023 Designation.

20.     E.R. is a CASA member and TPS holder under the 2023 Designation.

21.     K.R. is a CASA member and TPS holder under the 2023 Designation.

---

[1] To protect the privacy and security of our members, I am using initials to identify them.  The identities of each of these individuals is known to me personally.

22.    Based on inquiries of our members, I have identified the following additional harms that these individuals are incurring as a result of the Vacatur and Termination:

23.    E.B. lives in Georgia, working as an insurance agent. E.B. is a single mother of a son with a disability, who depends on her for support. Her elderly parents are also living with her, one of whom has a physical disability and both of whom depend on her for support. Losing TPS would expose E.B. to serious emotional pain and increase the risk of her son losing access to the medication and other medical resources he needs should she be forced to return to Venezuela, where she does not feel safe.

24.    A.E. lives in Maryland, working as a food delivery driver. A.E. and his three children, his wife, and another family member all have TPS and would be at risk of losing access to employment and protection from deportation if TPS is ended. Losing TPS would expose A.E.'s family to the risk of severe economic hardship and increase his risk of being removed to a country where he does not feel safe.

25.    M.B. lives in Maryland, working at a construction company and is married. M.B. is the sole breadwinner in his family. Losing TPS would expose M.B.'s family to the risk of severe economic hardship and place him at risk of being removed to a country where he does not feel safe.

26.    T.G. lives in Washington, DC. and has five family members who depend on him for support, including a minor daughter with medical issues, as well as two other children, a young grandchild, and his wife. One of T.G.'s daughters is also a CASA member with a pending TPS application under the 2023 Designation, which has not yet been approved. Losing TPS would place an extreme economic burden on his family and expose him to the risk of being removed to a country where he fears for his safety.

27.    R.R. lives in Maryland, working for a construction company doing electrical work. R.R. has a wife and young daughter who depend on him for their income. Losing TPS would expose R.R.'s family to severe economic hardship and increase his risk of being removed to a country where he does not feel safe.

28.    E.R. lives in Maryland, working as a dishwasher and cook at a restaurant. She is the primary breadwinner for her family, including her partner and three adult children. Her partner is currently very ill and is unable to work. Losing TPS would expose E.R.'s family to the risk of severe economic hardship and place her partner at risk of not being able to access the life-saving medical care he needs.

29.    K.R. lives in Maryland and is a mother and primary income earner to three children, including a minor, and a partner without work authorization. Losing TPS would expose K.R.'s family to severe economic hardship and place her at risk of being removed to a country where she does not feel safe.

30.    As these individuals demonstrate, the communities CASA serves will be harmed by the Vacatur and Termination.

31.    CASA members who received TPS through the 2023 Designation face irreparable harm if it is terminated and they (and other TPS holders) are deported. If TPS is terminated, CASA members may lose their jobs, businesses, and homes. They may be separated from their families and deported to a country facing collapse and dictatorship. They may also lose access to critical medical care and basic services, and face political repression and abuse.

32.    The Vacatur additionally has caused harm to those who received TPS under the 2021 Designation. Secretary Mayorkas consolidated the filing process for the two designations in the January 2025 Extension. The Vacatur ended that consolidation, causing confusion and

anxiety for TPS holders under the 2021 Designation, and placing them in a position where they face increasing instability.

33.    Since the Vacatur and Termination, we have begun to observe the impact on our members. As described above, members have expressed fear over the loss of protection from removal and face increasing anxiety about potential deportation. In addition, members face severe mental anguish at the prospect of losing work authorization, as they rely on their income to provide basic needs and critical medical care to themselves and their family members.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated:  March 3, 2025                                    Respectfully submitted,

George Escobar