**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| CASA, INC. and MAKE THE ROAD NEW YORK<br><br>   *Plaintiffs*,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, and UNITED STATES DEPARTMENT OF HOMELAND SECURITY<br><br>   *Defendants*. | Case No. 8:25-cv-00525-GLR<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STAY PARTIAL SUMMARY JUDGMENT BRIEFING AND IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR A STAY OF AGENCY ACTION** |

## TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................................1

STATEMENT OF THE RELEVANT FACTS.............................................................3

    I.       Background.......................................................................................3

    II.      TPS Designations for Venezuelans ......................................................4

    III.    Defendants' Accelerated and Unlawful Termination of TPS
             for Venezuelans................................................................................5

    IV.    This Lawsuit.....................................................................................6

    V.     Parallel Litigation in California and Massachusetts..............................6

ARGUMENT......................................................................................................7

    I.       Defendants Have Not Shown That a Stay Is Necessary or
             Appropriate......................................................................................7

    II.      Permitting the Vacatur and Termination to Take Effect
             Before This Case Is Heard Would Cause Plaintiffs
             Irreparable Injury. ..........................................................................13

    III.    To the Extent the Court Does Not Grant Summary
             Judgment by April 7, 2025, It Should Alternatively Stay the
             Challenged Agency Action................................................................17

    IV.    Denying the Stay Motion and/or Staying the Vacatur and
             Termination Would Not Prejudice Defendants.....................................21

CONCLUSION.................................................................................................22

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Axon Enter., Inc. v. Fed. Trade Comm'n*,
  598 U.S. 175 (2023) (Gorsuch, J., concurring) ................................................................ 7

*Biden v. Texas*,
  597 U.S. 785 (2022) ........................................................................................................ 18

*CASA de Maryland, Inc. v. Trump*,
  355 F. Supp. 3d 307 (D. Md. 2018) .................................................... 2, 10, 18, 19

*Casa de Maryland, Inc. v. Wolf*,
  486 F. Supp. 3d 928 (D. Md. 2020) ............................................ 15, 18, 19, 21

*CASA, Inc. v. Trump*,
  No. 8:25-cv-201-DLB (4th Cir. February 28, 2025) ........................................ 17

*CASA, Inc. v. Trump*,
  No. 8:25-cv-201-DLB (D.Md. Jan. 31, 2025) .................................................... 17

*Centro Presente v. United States Dep't of Homeland Sec.*,
  332 F. Supp. 3d 393 (D. Mass. 2018) .............................................................. 10

*Clinton v. Jones*,
  520 U.S. 681 (1997) ........................................................................................................ 8

*Dent v. Holder*,
  627 F.3d 365 (9th Cir. 2010) .......................................................................... 11

*District of Columbia v. Dep't of Agric.*,
  444 F. Supp. 3d 1 (D.D.C. 2020) .................................................................... 18

*Haitian-American United, Inc. v. Trump*,
  No. 1:25-cv-10498 (D. Mass. Mar. 3, 2025), ECF No. 1 ................................ 6–7

*Haitian-American United, Inc. v. Trump*,
  No. 1:25-cv-10498 (D. Mass. Mar. 6, 2025), ECF No. 10 .............................. 7

*Heffernan v. City of Paterson*,
  578 U.S. 266 (2016) ........................................................................................ 3

*HIAS, Inc. v. Trump,*
    985 F.3d 309 (4th Cir. 2021) ................................................................ 17, 20

*In re PSLJ, Inc.,*
    904 F.2d 701 (4th Cir. 1990) ......................................................................... 2

*Int'l Refugee Assistance Project v. Trump,*
    323 F. Supp. 3d 726 (D. Md. 2018) ................................................... 9, 12–13

*Joshua M. v. Barr,*
    439 F. Supp. 3d 632 (E.D. Va. 2020) ......................................................... 14

*Landis v. N. Am. Co.,*
    299 U.S. 248 (1936) .................................................................................. 7–8

*Loper Bright Enters. v. Raimondo,*
    603 U.S. 369 (2024) ............................................................................... 20–21

*Matini v. Reliance Standard Life Ins. Co.,*
    No. 1:05-cv-944 (JCC), 2005 WL 2739030 (E.D. Va. Oct. 24, 2005) .................................. 8

*Mayor and City Council of Baltimore v. Mathews,*
    562 F.2d 914 (4th Cir. 1977)*, vacated on other grounds,* 571 F.2d 1273 (4th Cir.
    1978) ...................................................................................................... 17–18

*Nat'l Ass'n for Advancement of Colored People v. United States Dep't of Homeland Sec.,*
    2020 WL 1331998 (D. Md. 2020) ........................................................... 12–13

*Nat'l TPS All. v. Noem,*
    No. 3:25-cv-1766-EMC (N.D. Cal. Feb. 19, 2025), ECF No. 1 ........................................... 6

*Nat'l TPS All. v. Noem,*
    No. 3:25-cv-1766-EMC (N.D. Cal. Mar. 3, 2025), ECF No. 60 ...................... 2, 6–7, 10, 16

*Padilla v. Kentucky,*
    559 U.S. 356 (2010) .................................................................................... 14

*Ramos v. Thornburgh,*
    732 F. Supp. 696 (E.D. Tex. 1989) .............................................................. 15

*Remy Holdings Int'l, LLC v. Fisher Auto Parts, Inc.,*
    No. 5:19-cv-00021, 2022 WL 198851 (W.D. Va. 2022) ..................................... 9

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
   525 U.S. 471 (1999)........................................................................................ 18

*Saget v. Trump*,
   345 F. Supp. 3d 287 (E.D.N.Y. 2018)............................................................. 10

*Sanchez v. McAleenan*,
   2024 WL 1256264 (D. Md. March 25, 2024).................................................. 20

*Speech First, Inc. v. Shrum*,
   92 F.4th 947 (10th Cir. 2024)................................................................... 11–12

*United States for use and benefit of Tusco, Inc. v. Clark Constr. Grp., LLC*,
   235 F. Supp. 3d 745 (D. Md. 2016) ................................................................. 7

*Vargas v. Meese*,
   682 F. Supp. 591 (D.D.C. 1987) .................................................................... 15

*Venturtech II v. Deloitte Haskins & Sells*,
   790 F. Supp. 576 (D.N.C. 1992) ...................................................................... 9

*Virginia Hosp. & Healthcare Ass'n v. Roberts*,
   671 F. Supp. 3d 633 (E.D. Va. 2023)............................................................. 11

*Wanrong Lin v. Nielsen*,
   377 F. Supp. 3d 556 ....................................................................................... 19

*Washington v. Trump*,
   No. 2:25-cv-127-JCC (W.D. Wash. Jan. 31, 2025), ECF No. 84 ................... 17

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) .......................................................................................... 18

**Federal Statutes**

5 U.S.C. § 705.........................................................................................*passim*

5 U.S.C. § 706.................................................................................................. 17

8 U.S.C. § 1182.......................................................................................... 12, 21

8 U.S.C. § 1252(f) ........................................................................................... 18

8 U.S.C. § 1254a....................................................................................*passim*

44 U.S.C. § 1507 ......................................................................................................... 10

**Other Authorities**

86 Fed. Reg. 13574...................................................................................................... 4

87 Fed. Reg. 55024...................................................................................................... 4

88 Fed. Reg. 68130...................................................................................................... 4

90 Fed. Reg. 9040............................................................................................ 2, 5, 21–22

90 Fed. Reg. 5961................................................................................................ 5, 12–13

90 Fed. Reg. 8805............................................................................................................ 2, 5

D. Md. L.R. 103(9)........................................................................................................ 8

D. Md. L.R. 105(6)........................................................................................................ 6

Fed. R. Civ. P. 1 ............................................................................................................ 7

Fed. R. Civ. P 10(c) ..................................................................................................... 19

Fed. R. Civ. P. 16(b)..................................................................................................... 8

Fed. R. Civ. P. 26(a)(1)(B).......................................................................................... 8

Fed. R. Civ. P. 56 ....................................................................................................... 8–9

Fed. R. Civ. P. 57 ......................................................................................................... 6

*Halting Administrative Action in the Supreme Court*, 137 Harv. L. Rev. 2016, 2018
  (2024) ...................................................................................................................... 18

Memorandum on Deferred Enforced Departure for Certain Venezuelans, 2021 Daily
  Comp. Pres. Doc. 45 (Jan. 19, 2021)........................................................................ 4

## INTRODUCTION

Defendants' Motion to Stay Partial Summary Judgment Briefing (ECF No. 27) ("Stay Motion") completely ignores the purpose of this lawsuit, the timeline on which Defendants' own illegal action will otherwise take effect, and the obvious prejudice that would follow from permitting the unlawful termination of Temporary Protected Status ("TPS") for individuals from Venezuela to take effect without judicial review. The indefinite stay of Plaintiffs' request would effectively deprive Plaintiffs of the relief they seek and leave them exposed to potential unlawful removal from the United States.

**On April 7, 2025, the unlawful actions challenged in this lawsuit will take effect.** As of that date, hundreds of thousands of individuals who are lawfully present in the United States will lose TPS and the right to work and support their families that comes with it. Yet, Defendants' motion mentions April 7 only once—and then only to acknowledge that it is the date by which Plaintiffs have asked the Court to act—without bothering to even acknowledge why. Defendants' obvious goal is to foreclose Plaintiffs' right to effective judicial relief by dint of the calendar and delay.

Plaintiffs' Motion for Partial Summary Judgment (ECF No. 8) ("MPSJ") is, as Defendants concede, entirely proper under the Federal Rules of Civil Procedure. It is also the appropriate vehicle for deciding the issues presented. Plaintiffs' motion is *exclusively* concerned with the facial statutory illegality of Defendants' actions. One would presume that Defendants evaluated the legal basis for their actions before trying to strip hundreds of thousands of people of their legal immigration status—so presumably have already developed the arguments they would make in this Court. But in any event, there is no good reason to delay resolving the issue. It does not require and would not be informed by "the certified administrative record." Stay Motion at 5. Nor

does the issue require discovery. The relevant facts were published by Defendants themselves in the Federal Register. And to the extent that Defendants contend (incorrectly) that this Court lacks statutory authority to review their unlawful acts, they can readily make those arguments in response to the MPSJ. Indeed, they've already done so—recently in a parallel case in California in which they are represented by the same counsel, and five years ago unsuccessfully in this Court. *See* Defs.' Resp. in Opp'n to Pls.' Mot. to Postpone Effective Date of Agency Action, *Nat'l TPS All. v. Noem*, No. 3:25-cv-1766-EMC (N.D. Cal. Mar. 3, 2025), ECF No. 60; *CASA de Maryland, Inc. v. Trump*, 355 F. Supp. 3d 307, 320 (D. Md. 2018) (finding jurisdiction to hear APA claims). Plaintiffs' motion is also on track such that it can be fully briefed and ripe for decision *before* the challenged actions take effect, thereby obviating the need that would otherwise exist for emergency or expedited motions practice.

But to the extent that the Court is unable to resolve the MPSJ before April 7, 2025, or agrees with Defendants that a stay of the MPSJ briefing is appropriate, or otherwise finds that additional time should be afforded Defendants, it would be appropriate for the Court to exercise its authority under Section 705 of the Administrative Procedure Act, 5 U.S.C. § 705 ("Section 705"), to stay the February 3, 2025 "vacatur"[1] and February 5, 2025 termination[2] challenged in this case. If Defendants require delay in adjudication of their unlawful actions, then the 348,202 Venezuelan beneficiaries who would otherwise lose the benefit of TPS as a result of the challenged actions on April 7, 2025[3]—*eighteen* months earlier than permitted by law—should not be made to suffer as a result. "Justice delayed is justice denied." *In re PSLJ, Inc.*, 904 F.2d 701, 701 (4th Cir. 1990).

---

[1]    Declaration of Nowell Bamberger ("Bamberger Decl."), Ex. E., ECF No. 8-7, 90 Fed. Reg. 8805 (the "Vacatur").
[2]    Bamberger Decl., Ex. F., ECF No. 8-8, 90 Fed. Reg. 9040 (the "Termination").
[3]    Termination at 3.

Granted, Plaintiffs respectfully ask the Court to act quickly. But they do so only because Defendants themselves have sought to unlawfully accelerate the process for terminating TPS for hundreds of thousands of people who are lawfully present in this country. Defendants cannot be permitted to move with alacrity to violate rights, and then with lethargy when called to answer for having done so, in hopes that the Courts will be too slow to catch up with them. "[I]n the law, what is sauce for the goose is normally sauce for the gander." *Heffernan v. City of Paterson*, 578 U.S. 266, 272 (2016). Defendants' Stay Motion should be denied, and to the extent that Plaintiffs' MPSJ does not result in the entry of summary judgment on or before April 7, 2025, the Vacatur and Termination should be stayed pursuant to Section 705.

## STATEMENT OF THE RELEVANT FACTS

### I.    Background

Congress created TPS to provide temporary immigration relief to foreign nationals in the United States who cannot safely return to their home countries.[4] TPS was designed to bring an orderly and fact-driven process to what had been previously characterized by *ad hoc* decisions to defer immigration enforcement for those displaced by humanitarian or environmental disasters. Because of this previously disjointed process, the statute sets forth specific criteria for when and how the Secretary (the "Secretary") of the Department of Homeland Security ("DHS") can designate countries for TPS protection. Under the Immigration and Nationality Act of 1990 ("INA"), the Secretary may designate a country for protected status for renewable periods of up to eighteen months after following statutorily-designated procedures. 8 U.S.C. § 1254a(b)(2)(B), (3)(C). The Secretary can similarly extend TPS designations in accordance with statutorily-designated review procedures and within a statutorily-prescribed timeframe. *Id.* § 1254a(b)(3)(A).

---

[4]    Plaintiffs' MPSJ, ECF No. 8, contains a more complete statement of relevant facts. This statement addresses only those relevant to the Stay Motion.

Termination of TPS can take effect no earlier than the expiration of the most recent period of designation or extension thereof. *Id*. § 1254a(b)(3)(B).

## II.    TPS Designations for Venezuelans

On January 19, 2021, the second-to-last day of his first term, President Trump acknowledged that Venezuela was the scene of "the worst humanitarian crisis in the Western Hemisphere in recent memory" and directed the Secretary of Homeland Security to defer the removal of Venezuelan nationals for 18 months. Memorandum on Deferred Enforced Departure for Certain Venezuelans, 2021 Daily Comp. Pres. Doc. 45 (Jan. 19, 2021). In March 2021, the Biden administration similarly acknowledged the deteriorating conditions in Venezuela, and then-DHS Secretary Alejandro Mayorkas designated Venezuela for TPS for the first time based on the extraordinary conditions in Venezuela, allowing eligible Venezuelans already living in the United States to apply for TPS. Bamberger Decl., Ex. A, ECF No. 8-3, 86 Fed. Reg. 13574 (the "2021 Designation"). In September of 2022, Secretary Mayorkas extended the 2021 Designation through March 10, 2024. Bamberger Decl., Ex. B, ECF No. 8-4, 87 Fed. Reg. 55024. And then in October 2023, Secretary Mayorkas again extended this designation through September 10, 2025. Bamberger Decl., Ex. C, ECF No. 8-5, 88 Fed. Reg. 68130 (the "2023 Designation").

In this same October 2023 notice, Secretary Mayorkas also redesignated Venezuela for TPS for 18 months, through April 2, 2025, which allowed more Venezuelans residing in the United States to apply for TPS for the first time provided they satisfied the eligibility requirements. *Id*. at 2. This created two tracks for Venezuelan TPS holders: (1) individuals who initially registered under the 2021 Designation and could re-register under the October 2023 extension to receive TPS protections through September 2025; and (2) individuals who initially registered under the 2023 Designation and would receive TPS protections through April 2025. *Id.*

On January 10, 2025, Secretary Mayorkas extended the 2023 Designation for 18 months, through October 2, 2026. A week later, on January 17, 2025, DHS issued a Federal Register Notice formally publishing this extension and consolidating the applicant filing process for all eligible Venezuelan TPS beneficiaries, allowing 2021 Designation beneficiaries to register under the extension. Bamberger Decl., Ex. D, ECF No. 8-6, 90 Fed. Reg. 5961 (the "January 2025 Extension"). The January 2025 Extension also "automatically extend[ed] through April 2, 2026[] the validity of certain EADs previously issued under the TPS designations of Venezuela," without existing TPS holders or applicants taking any further action. *Id.* at 3.

### III.  Defendants' Accelerated and Unlawful Termination of TPS for Venezuelans

A mere three days after being sworn in as DHS Secretary, on January 28, 2025, Secretary Noem announced her intention to "vacate" the January 2025 Extension, citing disagreement with the consolidated filing process. *See* U.S. Citizenship & Immigr. Servs., Temporary Protected Status Designated Country: Venezuela, https://www.uscis.gov/humanitarian/temporary-protected-status/temporary-protected-status-designated-country-venezuela (last visited Mar. 2, 2025); Vacatur at 3–4. Secretary Noem formally published this action in the Federal Register on February 3, 2025. Vacatur at 2–4. There is no statutory or agency precedent for Secretary Noem's Vacatur of the January 2025 Extension. And rather than amend the filing process cited as a basis for the Vacatur, just two days later, on February 5, 2025, Secretary Noem issued a decision terminating the 2023 Designation altogether effective April 7, 2025. *See* Termination. Together, Secretary Noem's actions purport to strip hundreds of thousands of Venezuelans of the right to live and work in the United States afforded by TPS.

### IV.    This Lawsuit

On February 20, 2025, Plaintiffs filed their complaint alleging that Secretary Noem's Vacatur and Termination were contrary to law (Counts I–II), that the actions further violated the APA (Counts III–IV), and that the actions were motivated by racial animus in violation of the Fifth Amendment (Counts V–VI). Complaint, ECF No. 1 ("Compl."). On March 3, 2025, Plaintiffs moved for partial summary judgment as to Counts I and II. *See generally* MPSJ. Plaintiffs subsequently requested a speedy hearing on their MPSJ pursuant to Local Rule 105(6) and Federal Rule of Civil Procedure 57 on March 5, 2025. ECF No. 25. On March 7, 2025, Defendants filed an opposition to Plaintiffs' request for an expedited hearing and moved to stay briefing of the MPSJ. Stay Motion.

### V.    Parallel Litigation in California and Massachusetts

Parallel litigation has been filed in both the Northern District of California (the "California Litigation") and the District of Massachusetts (the "Massachusetts Litigation") alleging that the Vacatur and Termination are unlawful.[5]

The plaintiffs in the California Litigation filed their complaint on February 19, 2025. Compl., *Nat'l TPS All. v. Noem*, No. 3:25-cv-1766-EMC (N.D. Cal. Feb. 19, 2025), ECF No. 1. On February 20, 2025, the California plaintiffs moved to stay the effective date of the Vacatur and Termination under Section 705. Mot. to Postpone Effective Date of Agency Action, *Nat'l TPS All.*, Case No. 3:25-cv-1766, ECF No. 16. Defendants filed their opposition to the 705 motion on March 3, 2025, and a hearing on the motion is set for March 24, 2025. Order Granting Pls.' Mot. to Shorten Time, *Nat'l TPS All.*, No. 3:25-cv-1766-EMC, ECF No. 51; Defs.' Resp. in Opp'n to

---

[5]    The Massachusetts Litigation additionally alleges that DHS's subsequent partial vacatur of TPS for Haiti was unlawful. Compl., *Haitian-American United, Inc. v. Trump,* No. 1:25-cv-10498 (D. Mass. Mar. 3, 2025), ECF No. 1.

Pls.' Mot. to Postpone Effective Date of Agency Action, *Nat'l TPS All.*, No. 3:25-cv-1766-EMC, ECF No. 60.

In the Massachusetts Litigation, the plaintiffs filed their complaint on March 3, 2025, and moved for a stay of the challenged DHS actions on March 6, 2025.  Compl., *Haitian-American United, Inc. v. Trump,* No. 1:25-cv-10498 (D. Mass. Mar. 3, 2025), ECF No. 1; Memorandum of Law in Support of Pls.' Mot. Under 5 U.S.C. § 705 to Stay the Effective Date of DHS' Venezuela and Haiti Temporary Protected Status (TPS) Vacaturs and 2025 Venezuela Termination, *Haitian-American United, Inc.*, No. 25-10498, ECF No. 10.

## ARGUMENT

### I.     Defendants Have Not Shown That a Stay Is Necessary or Appropriate.

Defendants do little to support their motion for a stay, and the arguments they do advance are superficial and fail to engage with the serious implications of this litigation.

The Court has the "inherent" power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  But this power operates against the background principle that the court administer its cases "to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1; *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 216 (2023) (Gorsuch, J., concurring) (recognizing "our legal system's promise of a 'just, speedy, and inexpensive determination of every' case").  Accordingly, this discretionary power calls "for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55.  Thus, in weighing the merits of a stay, a court considers (1) whether a stay would be in "the interests of judicial economy; (2) hardship and inequity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party."  *United States ex rel. Tusco, Inc. v. Clark Constr. Grp., LLC*, 235 F. Supp. 3d 745, 755 (D. Md. 2016).  As to the

second factor, the Supreme Court is clear that such "hardship or inequity" must be shown with a "pressing need." *Landis*, 299 U.S. at 255. Time and time again, the Supreme Court has emphasized that a stay of proceedings is warranted "[o]nly in rare circumstances," perhaps in cases of "extraordinary public moment," where a party is required to "submit to delay not immoderate in extent and not oppressive in its consequences." *Id.* at 255, 256. Ultimately, it is the moving party's burden to "establish[] its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). Defendants have not done so here.

*First*, Defendants argue that Plaintiffs' MPSJ is "an unusual and inappropriate attempt to accelerate this Court's resolution of a matter impinging upon the border and national security and foreign policy of the United States." Stay Motion at 4. But none of those things is true. For one, this motion is not "inappropriate"—it is, as Defendants concede, permitted under the Federal Rules. *Id.* at 4; *see also* Comm. Notes on 2009 Amendment to Fed. R. Civ. P. 56 ("The new rule allows a party to move for summary judgment at any time, even as early as the commencement of the action."); *Matini v. Reliance Standard Life Ins. Co.*, 2005 WL 2739030, at *2 (E.D. Va. Oct. 24, 2005) ("[I]t is not a requirement for a plaintiff to wait to file a motion for summary judgment until a defendant has filed an answer."). That it may be "unusual" is hardly a reason for it not to proceed: this case presents the perhaps "unusual" circumstance in which Defendants' disregard of the law is so facially evident that the case can be resolved at the threshold on summary judgment, and this motion can be briefed and heard on an ordinary schedule. Nor is it reasonable for Defendants to object that no scheduling order is in place in this case, since the Local Rules expressly exempt this action from the requirement to have such an order entered. *See* Md. L.R. 103(9) (exempting cases "in which ordinarily discovery is not conducted" from Fed. R. Civ. P. 16(b)); *see also* Fed. R. Civ. P. 26(a)(1)(B) (exempting such cases from initial disclosures).

*Second*, Defendants contend that permitting the MPSJ to proceed would be "judicially inefficient." Stay Motion at 5. But there is no greater efficiency in requiring an answer, briefing of a motion to dismiss based on legal grounds, and *then* a motion for summary judgment, when the relevant and pressing legal issues at stake may be resolved now through the MPSJ. Moreover, it is also necessary to address those issues now, given the impending April 7, 2025 deadline that Defendants unilaterally imposed. *See, e.g.*, *Int'l Refugee Assistance Project v. Trump ("IRAP")*, 323 F. Supp. 3d 726, 735 (D. Md. 2018) (finding that it was "not unfair to expect that the Government would be required to devote significant resources to litigation defending its action"). It would be cold comfort to the 348,202 men, women, and children who will otherwise unlawfully lose their TPS benefits on April 7, 2025 to hear that this litigation is proceeding "efficiently" and in a manner that is convenient for Defendants. Moreover, the orderly manner in which Plaintiffs have brought this motion obviates the need for the emergency motions practice that often characterizes urgent challenges to agency action under the APA. In any event, the Federal Rules expressly contemplate piecemeal adjudication of summary judgment in appropriate cases. *See* Fed. R. Civ. P. 56; *see also Remy Holdings Int'l, LLC v. Fisher Auto Parts, Inc.*, 2022 WL 198851 *2 (W.D. Va. 2022) (allowing party leave to file a second motion for summary judgment "in the interests of judicial efficiency and economy"); *Venturtech II v. Deloitte Haskins & Sells*, 790 F. Supp. 576, 581 (D.N.C. 1992) ("As a vital part of federal civil procedure, summary judgment facilitates the 'just, speedy and inexpensive determination of every action.'") (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)).

*Third*, Defendants' argument that this Court lacks subject matter jurisdiction is not a reason to delay proceedings; it is a reason to address that issue now. Defendants contend they "intend to file a motion to dismiss," Stay Motion at 2, in which they will challenge the Court's subject matter

jurisdiction. *Id.* at 5. There is absolutely no reason they cannot make those arguments in response to Plaintiffs' MPSJ. That is particularly true here since, just seven days ago, Defendants—represented by the same counsel—filed a brief making precisely that argument in the California Litigation. Defs.' Resp. in Opp'n to Pls.' Mot. to Postpone Effective Date of Agency Action, *Nat'l TPS All. v. Noem*, No. 3:25-cv-1766-EMC (N.D. Cal. Mar. 3, 2025), ECF No. 60. To be sure, their argument is utterly wrong, for the reasons outlined in the MPSJ, and has been rejected by this Court, *Casa de Maryland v. Trump*, 355 F. Supp. 3d 307, 321–22 (D. Md. 2018), and by others. *Saget v. Trump*, 345 F. Supp. 3d 287, 296 (E.D.N.Y. 2018); *Centro Presente v. United States Dep't of Homeland Sec.*, 332 F. Supp. 3d 393, 407 (D. Mass. 2018). But this is not a new argument, or one that the procedural posture of this case forecloses Defendants from trotting out yet again.

*Fourth*, Defendants' argument that time is needed for "filing of the administrative record" and development of a "factual record" is also wrong. Stay Motion at 5, 6. Defendants are perfectly entitled to argue in response to the MPSJ that there are missing facts that the Court requires before it can grant summary judgment. That is an objection to the motion on the merits, not an objection to it being heard. But Defendants' argument is also misleadingly generic. Defendants identify no missing facts or discovery that would be necessary to resolve the MPSJ, which addresses the illegality of the Vacatur and Termination under the governing statute. By law, the facts of Defendants' unlawful actions reflected in the Federal Register are subject to judicial notice. 44 U.S.C. § 1507 ("[T]he contents of the Federal Register shall be judicially noticed."). While adjudication of other claims in this case may require review of the full administrative record, nothing about Counts I or II of the Complaint turns on what is contained therein. Defendants could not have developed an administrative record that would authorize them to take action that is expressly foreclosed by statute. *See* MPSJ at 27–35.

And while Defendants say they "may" challenge the associational standing of Plaintiffs, they plainly cannot do so. Stay Motion at 4. Defendants acknowledge that an organization whose members would otherwise have standing may sue "asserting associational standing." Stay Motion at 4 (quoting *Nat'l Fed'n of the Blind, Inc. v. Wal-Mart Assocs., Inc.*, 566 F. Supp. 3d 383, 395 (D. Md. 2021)). Here, Plaintiffs do not "rely on a 'statistical probability that some of [their] members are threatened with concrete injury.'" *Id.* at 4–5 (quoting *La Union del Pueblo Entero v. Ross*, 353 F. Supp. 3d 381, 391 (D. Md. 2018)). They submitted specific, sworn declarations proving that their members are directly impacted by the challenged conduct. *See* Declaration of George Escobar, ECF No. 8-9 ("Escobar Decl.") ¶¶ 15–21 (identifying CASA members with Venezuelan TPS; Declaration of Sienna Fontaine, ECF No. 8-10 ("Fontaine Decl.") ¶ 11 ("[A]t least 20 [MRNY members] are Venezuelan TPS beneficiaries or prima-facie eligible applicants for TPS."); *see also* Fontaine Decl. ¶ 12 ("In total, MRNY has assisted over 60 Venezuelan clients in applying for TPS."); Escobar Decl. ¶ 12 ("Since its founding, CASA has provided direct assistance on approximately 1,000 TPS applications for its members, including providing legal services to over 100 Venezuelan members seeking TPS, at least 59 of whom received TPS.").[6]

Courts have repeatedly held this to be sufficient. *See Virginia Hosp. & Healthcare Ass'n v. Roberts*, 671 F. Supp. 3d 633, 652 (E.D. Va. 2023) (finding plaintiffs had associational standing and granting summary judgment in their favor where plaintiffs "established by affidavit that all VHHA members have been economically harmed by" the challenged agency action); *Speech First,*

---

[6]     Indeed, a simple search by Defendants for the counsel of record on TPS Venezuela applications submitted to USCIS will show that both CASA and MRNY have represented significant numbers of individuals in their applications, many of whom currently hold TPS. *See Dent v. Holder*, 627 F.3d 365, 368 (9th Cir. 2010) ("An A-file is the file maintained by various government agencies for each alien on record. 'Contents include, but are not limited to passport, driver's license, other identification cards, and photographs; immigration history (prior record); and all documents and transactions' relating to the alien") (quoting INS Det. Man. T, Ch. 1, 2000 WL 35367104 (2000)).

*Inc. v. Shrum*, 92 F.4th 947, 952 (10th Cir. 2024) (acknowledging the "[l]ongstanding and well-established doctrine in the federal courts" that anonymous persons may have standing to bring claims because identifying an injured member as "Member 1" certainly satisfies the need that a particular person must show injury).[7] "[A]nonymity is no barrier to standing on this record," *Advocs. for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 41 F.4th 586, 594 (D.C. Cir. 2022), as Plaintiffs have made out specific allegations of injury which Defendants offer no reason to doubt nor any necessity to link to particular names.  Plaintiffs' credible averments that their members include Venezuelan TPS holders establishes imminent harm from Defendants' Vacatur *ipso facto*, because *all* current Venezuelan TPS holders and applicants enjoyed an automatic extension of their employment authorization under the January 2025 Extension, even those who took no further action.  January 2025 Extension at 3.  Now, those CASA and MRNY members will instead lose employment authorization and begin accruing unlawful presence, such that they may become inadmissible, *see* 8 USC § 1254a(f)(4), 8 USC § 1182(a)(9)(b)(i); and in many cases face removal from the United States as of April 7.  *See infra* Argument, Section II. Defendants have no credible grounds to assert that neither CASA nor MRNY has a single member who holds or has applied for TPS from Venezuela.

In short, Defendants have shown no basis for the lackadaisical schedule they advocate. Indeed, the only cases they cite supporting their request for a stay are cases in which a stay was ordered because of ongoing *appellate* litigation implicating the very issues to be decided.  Stay Motion at 3 (citing *IRAP*, 323 F. Supp. 3d at 734 (granting a limited stay "where the Supreme Court may shortly provide definitive guidance on key legal questions that could impact the viability of some or all of the claims asserted by Plaintiffs"); and *Nat'l Ass'n for Advancement of*

---

[7]    The court in *Speech First, Inc.* further made clear that "to identify" or to name a person does not require the use of the legal name.  *Speech First, Inc. v. Shrum*, 92 F.4th at 952.

*Colored People v. United States Dep't of Homeland Sec.*, 2020 WL 1331998, at \*5 (D. Md. 2020) (granting a stay where the Second Circuit and Ninth Circuit were reviewing on appeal the district court's grant of preliminary injunction)). That is plainly not the case here: no appellate court is considering the issues presented here, nor has any other court acted on Defendants' unlawful actions as of yet.

## II.    Permitting the Vacatur and Termination to Take Effect Before This Case Is Heard Would Cause Plaintiffs Irreparable Injury.

Defendants' *ipse dixit* that a stay "would not prejudice Plaintiffs, where they seek to circumvent conventional litigation procedures," Stay Motion at 5, is obviously wrong. *See IRAP*, 323 F. Supp. 3d at 735–36 (finding harm to plaintiffs "weigh[ing] against a stay" where "human aspects" are of "particular significance in balancing the competing interests of the parties") (quoting *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127–28 (4th Cir. 1983)). Defendants fail to engage with the substantial irreparable harm to Plaintiffs' members set forth in the MPSJ and summarized below.

Defendants' unlawful actions will upend the lives of more than 600,000 Venezuelan TPS holders, causing profound and irreparable harm.[8] On April 7, 2025, nearly 350,000 Venezuelan TPS holders will lose their protected status and related work authorization.[9] In only a few short weeks, these hundreds of thousands of people may lose their jobs and face the imminent risk of deportation to a country that—as DHS has recently reaffirmed—faces "extraordinary" conditions that prevent them from "returning . . . in safety." January 2025 Extension at 7. Shortly afterward, another 250,000 Venezuelan TPS holders expect to face a similar fate. As described in the MPSJ

---

[8]    January 2025 Extension at 7 (stating that there are approximately 607,000 current Venezuelan TPS beneficiaries across the 2021 and 2023 Designations).
[9]    January 2025 Extension at 3 (stating that there are approximately 348,202 Venezuelan beneficiaries registered under the 2023 Designation).

and accompanying declarations, Defendants' actions have already inflicted irreparable injury on thousands of TPS holders and their families who fear the consequences of the coming weeks and months. *See* MPSJ at 23–25; Escobar Decl. ¶¶ 14–29, 31–33; Fontaine Decl. ¶¶ 17–26, 29–31. In particular, the accompanying affidavits of Sienna Fontaine, on behalf of MRNY, and George Escobar, on behalf of CASA, Inc., collectively describe the circumstances of, and injury to, seven beneficiaries of TPS under the 2023 Designation and four beneficiaries of TPS under the 2021 Designation. *See* Escobar Decl. ¶¶ 14–29; Fontaine Decl. ¶¶ 17–26. Were the Vacatur and Termination to go into effect, the beneficiaries of TPS under the 2023 Designation would lose TPS protection *eighteen months* before the earliest date on which it would otherwise terminate, and the beneficiaries of TPS under the 2021 Designation would lose protection *thirteen* months earlier than allowed. MPSJ at 23–24; 8 U.S.C. § 1254a(b)(2)(B) (a designation "shall remain in effect until the effective date of the termination"); *id*. § 1254a(b)(3)(B) (any termination "shall not be effective earlier than 60 days after the date the notice is published or, if later, the expiration of the most recent previous extension").

Loss of TPS will expose numerous individuals to an immediate risk of detention and, at worst, immediate deportation to a country that has been deemed to be experiencing a "humanitarian crisis." *See* MPSJ at 15–17; *see, e.g.*, Fontaine Decl. ¶¶ 24, 25; Escobar Decl. ¶¶ 24–27, 29; Compl. ¶ 59. The result is to force TPS beneficiaries into a state of limbo, without access to legal status or work authorization in the United States, but unable to return to Venezuela due to fear of persecution and other dangers. *See, e.g.*, Fontaine Decl. ¶¶ 23, 25–26. The injuries arising out of deportation and forced relocation are profound and irreparable. *See Padilla v. Kentucky*, 559 U.S. 356, 373 (2010) (describing the "severity of deportation" as "the equivalent of banishment or exile"); *Joshua M. v. Barr*, 439 F. Supp. 3d 632, 680–81 (E.D. Va. 2020) (finding

concern for irreparable harm weighed in favor of staying removal of an individual to a country where they faced likely physical harm); *Vargas v. Meese*, 682 F. Supp. 591, 595 (D.D.C. 1987) (recognizing denial of "the benefits of protection from deportation and work authorization" as conferred by statute as irreparable harm).

Severe economic harm will also ensue once the Termination goes into effect. TPS holders, including members of Plaintiffs' organizations, may rely on their TPS-based employment authorization to provide for themselves and their families. *See, e.g.*, Fontaine Decl. ¶¶ 18–20. Even now, the impending loss of work authorization has already caused many TPS holders residing in the United States to fear an imminent loss of income, which would have devastating consequences on those individuals and their families. T.G., for instance, has five family members reliant on him for support, including a minor daughter with medical issues. Escobar Decl. ¶ 26. Losing TPS would place an extreme economic burden on T.G. and his family. *Id.* Another such individual, E.B., is a single mother of a son with a disability, whom E.B. supports along with her elderly parents, one of whom has a physical disability and both of whom depend on her for support. *Id.* ¶ 23. Losing TPS would expose E.B.'s family to economic hardship and expose her son to the risk of losing access to necessary medication and medical resources. *Id.* The loss of eligibility for work authorization would result in serious and irreparable harm. *Casa de Maryland, Inc. v. Wolf*, 486 F. Supp. 3d 928, 968–69 (D. Md. 2020) (finding agency action caused irreparable harm where plaintiffs' members would be required to wait an additional 215 days to apply for work authorization and then wait indefinitely for a decision); *Ramos v. Thornburgh*, 732 F. Supp. 696, 699 (E.D. Tex. 1989) ("Monetary damages at some future time can never adequately compensate aliens living at or below the poverty line, for the hardships they must endure as a result of presently existing unlawful denials of employment authorization.").

Defendants' impending Termination of TPS for Venezuelans is already inflicting—and will continue to inflict—severe emotional harm on TPS holders and their family members. For both TPS holders and their families, the consequences of the TPS Termination are enormous and multi-faceted. Both the Vacatur and Termination have caused TPS holders to reasonably fear an imminent loss of income and face severe mental anguish at the prospect of returning to a country where their safety is at risk. Fontaine Decl. ¶¶ 29–31; Escobar Decl. ¶¶ 23–29, 33. TPS holders have further lost the security of knowing they will be able to live and work safely and freely in the United States so long as conditions in Venezuela remain unsafe, leading them to experience anxiety, depression, and fear. Escobar Decl. ¶ 33. For example, K.F. has faced mental anguish at the prospect of being forced to return to Venezuela, where she fears persecution due to her participation in anti-government protests in Venezuela before she came to the United States. Fontaine Decl. ¶ 23. In addition, J.Z.'s minor daughters have reported feeling scared, anxious, and dispirited since the TPS rescission due to a fear of forced return to Venezuela, where their safety is at risk. *Id.* ¶ 24. The impending Termination looms large in the eyes of TPS holders, including members of Plaintiffs' organizations, and causes them to fear engaging in simple acts, like taking their children to school, for fear of raids. *Id.* ¶ 30.

Moreover, it is important that this Court hear and decide this case notwithstanding parallel proceedings elsewhere. In those other cases, Defendants are currently arguing that *even if* the Vacatur and Termination are unlawful, any order suspending those actions should be limited to the parties before the court. Defs' Resp. in Opp'n to Pls.' Mot. to Postpone Effective Date of Agency Action, *Nat'l TPS All. v. Noem*, No. 3:25-cv-1766-EMC (N.D. Cal. Mar. 3, 2025), ECF No. 60 at 34 (arguing plaintiffs challenging the Vacatur and Termination have "no basis to request universal relief benefitting non-parties"); *cf.* Defs.' Opp'n to Pls' Mot. for a Temp. Restraining

Order and Prelim. Inj., *CASA, Inc. v. Trump*, No. 8:25-cv-201-DLB (D. Md. Jan. 31, 2025), ECF No. 40 at 31–32 (arguing nationwide relief would be improper in case challenging executive order revoking birthright citizenship); Opp'n to Pls.' Mots for Prelim. Inj., *Washington v. Trump*, No. 2:25-cv-127-JCC (W.D. Wash. Jan. 31, 2025), ECF No. 84 at 57–58 (same).  In other words, Defendants expressly argue that the outcome in parallel litigation should *not* affect the outcome here.  Defendants' arguments in these cases ignore courts' "broad discretion to craft remedies based on the circumstances of a case," and the Fourth Circuit has recognized that nationwide relief "may be appropriate when the government relies on a 'categorical policy'" and "the facts would not require different relief for others similarly situated to the plaintiffs." *HIAS, Inc. v. Trump*, 985 F.3d 309, 326 (4th Cir. 2021); *see* Order Denying Stay, *CASA, Inc. v. Trump*, No. 8:25-cv-201-DLB (4th Cir. February 28, 2025), ECF No. 78 at 3–4, 6 (denying the government's request to stay universal relief where plaintiffs challenged a categorical policy that does not differ based on membership of an organization).  Indeed, Defendants' arguments appear directly contrary to Section 706 of the APA, which provides that the reviewing court "shall" "hold unlawful and set aside agency action" that is "not in accordance with law."  5 U.S.C. § 706.  But given Defendants' position, it can be neither surprising nor objectionable to them that multiple parties would challenge their actions separately in different fora.

### III.    To the Extent the Court Does Not Grant Summary Judgment by April 7, 2025, It Should Alternatively Stay the Challenged Agency Action.

The APA authorizes district courts to, "on such conditions as may be required and to the extent necessary to prevent irreparable injury, . . . issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings."  5 U.S.C. § 705; *Mayor and City Council of Baltimore v. Mathews*, 562 F.2d 914, 919 (4th Cir. 1977)*, vacated on other grounds,* 571 F.2d 1273 (4th Cir. 1978) ("The

Administrative Procedure Act . . . allows the federal agency or federal courts to postpone or stay agency action pending judicial review."); *Wolf*, 486 F. Supp. at 949 ("[A] reviewing court may stay 'agency action' pending judicial review to 'prevent irreparable injury."). "The factors that govern the issuance of a preliminary injunction also govern the issuance of a § 705 stay." *See Wolf*, 486 F. Supp. 3d at 950 (quoting *District of Columbia v. Dep't of Agric.*, 444 F. Supp. 3d 1, 15 (D.D.C. 2020)). This Court has acknowledged that "[t]he standard is the same whether a preliminary injunction against agency action . . . or a stay of that action is being sought." *Wolf*, 486 F. Supp. 3d at 950 (quoting *Cronin v. U.S. Dep't of Agric.*, 919 F.2d 439, 446 (7th Cir. 1990)).[10] That is, courts review whether (1) the requesting party is likely to succeed on the merits of their claim; (2) the requesting party is experiencing irreparable harm that will continue absent preliminary relief; (3) the balance of equities are in the requesting party's favor; and (4) relief would be in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Dep't of Agric.*, 444 F. Supp. at 15 (applying preliminary injunction factors to issuance of a stay under Section 705). These standards are satisfied here.

*First*, Plaintiffs are likely to succeed on the merits. As outlined in greater detail in the MPSJ, nothing in the INA permits the Secretary of Homeland Security to "vacate" a prior TPS determination or to terminate TPS status prior to the expiration of the most recent extension. MPSJ at 27–35; 8 U.S.C. § 1254a(b)(2)(B), (3)(B). In fact, the statute provides for the precise opposite.

---

[10]     Though governed by the same standard by analogy, a stay of action under Section 705 is not an injunction subject to 8 U.S.C. § 1252(f). Rather than running against a party, a stay pursuant to Section 705 "temporarily suspend[s] the source of authority to act—the order or judgment in question—not by directing an actor's conduct." *Halting Administrative Action in the Supreme Court*, 137 Harv. L. Rev. 2016, 2018 (2024) (quoting *Nken v. Holder*, 556 U.S. 418, 428-29 (2009)). Furthermore, the TPS statute, Section 1254a, is not subject to the constraints of Section 1252(f). *Biden v. Texas*, 597 U.S. 785, 797 (2022) (describing Section 1252(f) as restraining the operation of "8 U.S.C. §§ 1221-1232"); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481 (1999) (Section 1252(f) "prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221-1231").

*Id.* Rather than repeat those arguments, Plaintiffs incorporate their MPSJ arguments by reference. *See* Fed. R. Civ. P 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."). Likewise, this Court has jurisdiction to both hear this dispute and issue a stay order under the APA because the Plaintiffs' claims are not subject to the review-preclusion provision of the TPS statute. *See* MPSJ at 17–22; *see also Casa de Maryland v. Trump*, 355 F. Supp. 3d 307, 320–21 (D. Md. 2018) (finding that section 1245a(b)(5)(A) does not constitute an absolute bar on judicial review, but instead bars review of the merits of an individual determination).

*Second*, allowing TPS to terminate on April 7, 2025, contrary to law, would plainly cause irreparable injury on Plaintiffs' members for the reasons discussed above. *See supra* at Argument, Section II.

*Third*, the final two considerations—the balance of the equities and public interest—merge when the government is a party. *Wolf*, 486 F. Supp. 3d at 969–70 (finding that the balance of equities favors Section 705 relief when balancing "[p]laintiffs['] irreparable harms against the Government's asserted harms that arise from temporarily enjoining the enforcement of the challenged rules against two of the parties, until the Court can reach final judgment on the merits"). Indeed, the public interest is served where agencies are required to "comport with [their] own rules and regulations." *Wanrong Lin v. Nielsen*, 377 F. Supp. 3d 556, 565 (finding injunctive relief in the public interest because "it requires DHS to comport with its own rules and regulations"); *see also Wolf*, 486 F. Supp. 3d at 970 ("The agency cannot itself violate [the rule of law], then claim irreparable harm because it is held to account for such violations.").

In contrast, Defendants will suffer no material harm. *See infra* at Argument, Section IV. In the face of these concrete and sweeping irreparable harms, any argument that a temporary stay

of the agency actions here is "contrary to the public interest" simply will not suffice when the Termination is a categorical policy that will implicate hundreds of thousands of people nationwide in direct contravention of the INA's goals. *See HIAS, Inc. v. Trump*, 985 F.3d 309, 327 (4th Cir. 2021) (upholding a nationwide injunction because the policy in question categorically impacts refugees "throughout the country" and "enjoining [the policy] only as to plaintiffs . . . would cause inequitable treatment of refugees and undermine the very national consistency that the Refugee Act is designed to protect"). Termination of TPS will also undermine public welfare by forcing thousands of people out of productive jobs. TPS holders work, pay taxes, and contribute to the American economy, with Venezuelans eligible for TPS contributing an estimated $11.5 billion to the U.S. economy each year. Compl. ¶ 78. TPS holders are home health aids, airport employees and construction workers. Fontaine Decl. ¶¶ 23, 26; Escobar Decl. ¶¶ 25, 27. Their sudden loss of employment would inflict harm not only on them, but also thousands of dependents, including minor children, as well as the U.S. economy as a whole.

But most importantly, if this Court postpones the Termination to revert to the *status quo ante*, then Defendants' ability to enforce the relevant TPS decisions will merely be delayed pending resolution of this case on the merits. On one hand, if the Court deems the Defendants' conduct to be "in accordance with law," then the Termination will experience only a slight delay. On the other hand, if Plaintiffs win on the merits of their MPSJ, then the public interest will have succeeded, as Defendants have no interest in enforcing unlawful or unconstitutional decisions. *Sanchez v. McAleenan*, 2024 WL 1256264, at *14 (D. Md. March 25, 2024) ("[The government] cannot suffer harm from an injunction that merely ends an unlawful practice.") (citing *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)).

## IV.    Denying the Stay Motion and/or Staying the Vacatur and Termination Would Not Prejudice Defendants.

There is no prejudice to Defendants in the Court swiftly adjudicating the lawfulness of their actions, or in temporarily staying the effectiveness of the Vacatur and Termination while it does so. *See Wolf*, 486 F. Supp. 3d at 970 ("The agency cannot itself violate [the law], then claim irreparable harm because it is held to account for such violations.").

Defendants' sole argument appears to be scaremongering that this case implicates "public safety and national security." Stay Motion at 5–6. But that strains credulity. *All* TPS applications are individually reviewed by USCIS and all applicants submit to a background check. USCIS, "Temporary Protected Status," https://www.uscis.gov/humanitarian/temporary-protected-status (last accessed March 8, 2025) (providing that USCIS receives a TPS application and that biometrics are collected to conduct background checks). And the statute is clear—an individual cannot be eligible for TPS if, among other things, they have been convicted of more than a single misdemeanor, have been involved in drug trafficking, could be reasonably regarded as "a danger to the security of the United States," or are involved in a "terrorist organization." 8 U.S.C. § 1254a(c)(2); *id*. § 1158(b)(2)(A); *id*. §§ 1182(a)(2)(A)–(C), (3)(B). The Secretary may also withdraw TPS from any individual later determined to lack eligibility. *Id*. § 1254a(c)(3).

Plaintiffs here neither challenge Secretary Noem's findings with respect to the Tren de Aragua criminal organization, nor would granting the relief requested in this motion interfere with Defendants' authority to remove members of that organization from the country. *See* Stay Motion at 5–6.[11] But Defendants' argument is also beside the point given the facial challenge embodied

---

[11]    Plaintiffs do not challenge this finding because it is unnecessary to do so, but do note that it is wholly unsupported even on its face. Secretary Noem asserts that allowing the extension of TPS to Venezuela is contrary to the "national interest" because some Venezuelan TPS holders are, or are associated with, a Venezuelan gang. Termination at 4. But instead of citing to a DHS-conducted study or

in the MPSJ.  Either the Vacatur and Termination are legal, or they are not.  That is a question for the Court to decide.  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385–86 (2024).  If, as Plaintiffs submit is evident, the Vacatur and Termination are unlawful, they cannot be justified on the basis that Defendants believe them to be good policy. [12]

Nor would there be any conceivable prejudice to Defendants in simply delaying the effective date of the Vacatur and Termination beyond April 7, 2025 to permit this Court additional time to consider the arguments in this case.  Defendants have effectively conceded as much by *not* terminating the 2021 TPS Designation.  Termination at 3.  In other words, even giving effect to Defendants' unlawful actions, TPS for Venezuelans covered by the 2021 TPS Designation would not end until September 10, 2025.  This case will certainly be concluded by then.  Allowing the January 2025 Extension to remain in effect by staying the Vacatur and Termination under Section 705 of the APA would have the effect of only permitting those who benefit under the 2023 Designation to also remain in the United States and to work and support their families while this case is adjudicated.  Other than the inability to frustrate judicial review, Defendants would not be prejudiced by such an extension in any conceivable way.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Stay Partial Summary Judgment Briefing should be denied.  And, in the event the Court is not able to grant Plaintiffs' Motion for Partial

---

other data-driven source, Secretary Noem's sole basis for this assertion is a single Associated Press article.  *Id.* at 4 n.7.  A single press article cannot serve as the basis for a determination of a national threat, particularly when dwarfed by even more articles challenging its veracity.  *See e.g.*, Compl. ¶¶ 90; 95 (citing sources).

[12]     Indeed, Defendants' arguments for urgency support *denying* their requested stay of briefing, not granting it.  If revision of TPS status for those from Venezuela is so urgent that the Secretary can take action on the issue in ten days, then surely her lawyers can respond to this lawsuit to defend her action in the weeks permitted under the Local Rules.

Summary Judgment, ECF No. 8, by April 7, 2025, Plaintiffs respectfully request that this Court

stay the effective date of the Vacatur and the Termination.


Date: March 10, 2025

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By:    /s/ Nowell D. Bamberger
        Nowell D. Bamberger (21111)
        Matthew D. Slater (05582)
        Rathna J. Ramamurthi (*pro hac vice*)
        Madeline Hundley (*pro hac vice*)
        Gillian Isabelle (*pro hac vice*)
        Ava Kazerouni (*pro hac vice*)
        2112 Pennsylvania Ave NW
        Washington, D.C. 20037
        Tel. (202) 974-1500
        Fax (202) 974-1999
        nbamberger@cgsh.com
        mslater@cgsh.com
        rramamurthi@cgsh.com
        mhundley@cgsh.com
        gisabelle@cgsh.com
        akazerouni@cgsh.com

WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS

        Ryan Downer (*pro hac vice*)
        Sarah L. Bessell (30969)
        Madeleine Gates (*seeking admission to D.Md.*)
        Ellie M. Driscoll (*pro hac vice*)
        700 14th St. #400
        Washington, D.C. 20005
        Tel. (202) 319-1000
        Fax (202) 319-1010
        ryan_downer@washlaw.org
        sarah_bessell@washlaw.org
        madeleine_gates@washlaw.org
        ellie_driscoll@washlaw.org

CASA, INC.

    Nicholas Katz, Esq. (21920)
    8151 15th Avenue
    Hyattsville, MD 20783
    Tel. 240-491-5743
    nkatz@wearecasa.org

MAKE THE ROAD NEW YORK

    Harold A. Solis (*pro hac vice*)
    Paige Austin (*pro hac vice*)
    301 Grove Street
    Brooklyn, NY 11237
    Tel. (718) 418-7690
    Fax (866) 420-9169
    harold.solis@maketheroadny.org
    paige.austin@maketheroadny.org

*Attorneys for Plaintiffs*