YAAKOV M. ROTH
Acting Assistant Attorney General
SARAH L. VUONG
Assistant Director
WILLIAM H. WEILAND
Senior Litigation Counsel
ANNA L. DICHTER
LAUREN BRYANT
LUZ MARIA RESTREPO
CATHERINE ROSS
ERIC SNYDERMAN
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## SOUTHERN DIVISION

|  |  |
|---|---|
| CASA INC., *et al.,* <br><br>          PLAINTIFFS, <br><br>     v. <br><br> KRISTI NOEM, Secretary of Homeland Security, *et al.,* <br><br>          DEFENDANTS. | Case No. 8:25-cv-00525 |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR A STAY OF AGENCY ACTION

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ...........................................................................................................1

BACKGROUND .............................................................................................................3

     I.  Statutory Background ...........................................................................3

     II. Factual Background .............................................................................5

STANDARDS OF REVIEW ...........................................................................................7

ARGUMENT ..................................................................................................................8

   I.     THIS COURT LACKS JURISDICTION TO GRANT PLAINTIFFS
        THE RELIEF THEY SEEK ...............................................................8

       A.  Section 1252(f) Precludes Plaintiffs' Requested Relief ...................8

       B.   The TPS Statute Bars Plaintiffs' Claims....................................12

           1.  The 2025 Vacatur is a Determination Under 8 U.S.C.
              § 1254a(b)(5)(A)....................................................................14

           2.  Plaintiffs' Challenge to the Substantive Considerations
              Underlying the 2025 Vacatur and 2025 Termination are Not Subject
              to Judicial Review....................................................................16

  II. Plaintiffs Have Failed to Demonstrate a Likelihood of Success on the Merits because the
      Secretary of Homeland Security Has the Authority to Vacate a Prior Extension of a
      Country's TPS Designation and Terminate TPS .............................................19

  III. Any Harm Plaintiffs May Suffer is Based on the Inherent Nature of the TPS Statute......23

  IV. The Balance of the Equities and Public Interest Weigh Against Preliminary Injunctive
      Relief...........................................................................................25

  V. PLAINTIFFS REQUESTED RELIEF IS OVERBROAD ...............................27

CONCLUSION..............................................................................................28

# **TABLE OF AUTHORITIES**

## **CASES**

*Albertson v. FCC*,
    182 F.2d 397 (D.C. Cir. 1950) ................................................................. 20

*Ali v. Fed. Bureau of Prisons*,
    552 U.S. 214 (2008) ............................................................................... 14

*Amgen, Inc. v. Smith*,
    357 F.3d 103 (D.C. Cir. 2004) ............................................................... 13

*Arizona v. United States*,
    567 U.S. 387 (2012) .......................................................................... 20, 27

*Babb v. Wilkie*,
    589 U. S. 399 (2020) ......................................................................... 15, 16

*Biden v. Texas*,
    597 U.S. 785 (2022) ................................................................................. 9

*Block v. Comty. Nutrition Inst.*,
    467 U.S. 340 (1984) ............................................................................... 13

*Cal. Tow Truck Ass'n v. City & Cty. of San Francisco*,
    807 F.3d 1008 (9th Cir. 2015) ............................................................... 14

*California v. Texas*,
    593 U.S. 659 (2021) ............................................................................... 27

*CASA de Maryland, Inc. v. Trump*,
    355 F. Supp. 3d 307 (D. Md. 2018) ....................................................... 15

*CASA de Maryland, Inc. v. Trump*,
    971 F.3d 220 (4th Cir. 2020) ................................................................. 27

*CASA, Inc. v. Trump*,
    No. 25-1153, 2025 WL 654902 (4th Cir. Feb. 28, 2025) ....................... 28

*Ctr. for Biological Diversity v. Regan*,
    597 F. Supp. 3d 173 (D.D.C. 2022) ....................................................... 11

*Dan's City Used Cars, Inc. v. Pelkey*,
    569 U.S. 251 (2013) ............................................................................... 15

*Di Biase v. SPX Corp.*,
    872 F.3d 224 (4th Cir. 2017) ................................................... 7, 23, 24, 25

*Finley v. United States*,
  490 U.S. 545 (1989)................................................................................................ 8

*Florida v. Mayorkas*,
  No. 23- 09962, 2023 WL 3567851 (N.D. Fla. May 16, 2023) ................................ 12

*Garland v. Aleman Gonzalez*,
  596 U.S. 543 (2022)........................................................................................... 9, 10

*Gill v. Whitford*,
  138 S. Ct. 1916 (2018)............................................................................................ 27

*Gun South, Inc. v. Brady*,
  877 F.2d 858 (11th Cir. 1989) ................................................................................ 20

*Harisiades v. Shaughnessy*,
  342 U.S. 580 (1952)................................................................................................ 20

*Harrell v. Univ. of Maryland Sch. of Pharm*,
  2024 WL 2155023 (D. Md. May 13, 2024).............................................................. 25

*Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*,
  14 F.4th 322 (4th Cir. 2021) ................................................................................... 14

*Huffington v. T.C. Group, LLC*,
  637 F.3d 18 (1st Cir. 2011)..................................................................................... 14

*Lamar, Archer & Cofrin, Llp v. Appling*,
  584 U.S. 709 (2018)................................................................................................ 15

*Last Best Beef, LLC v. Dudas*,
  506 F.3d 333 (4th Cir. 2007) ............................................................................ 19, 20

*Lee v. USCIS*,
  592 F.3d 612 (4th Cir. 2010) ............................................................................ 13, 18

*Lewis v. Casey*,
  518 U.S. 343 (1996)................................................................................................ 27

*Lin v. Heffron*,
  No. 3:21-cv-647-MOC-D,CK, 2022 WL 820937 (W.D.N.C. Mar. 17, 2022) ......... 13

*Lincoln v. Vigil*,
  508 U.S. 182 (1993)................................................................................................ 18

*Macktal v. Chao*,
  286 F.3d 822 (5th Cir. 2002) .................................................................................. 20

*Marx v. Gen. Revenue Corp.*,
    568 U.S. 371 (2013).................................................................................. 17

*McNary v. Haitian Refugee Center, Inc.*,
    498 U.S. 479 (1991).................................................................................. 14

*Miranda v. Garland*,
    34 F.4th 338 (4th Cir. 2022) .............................................................. 25, 26

*Moore v. Frazier*,
    941 F.3d 717 (4th Cir. 2019) ................................................................. 13

*Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*,
    467 F.3d 999 (6th Cir. 2006) ................................................................. 12

*DHS v. New York*,
    140 S. Ct. 599 (2020).............................................................................. 28

*Nken v. Holder*,
    556 U.S. 418 (2009).................................................................................. 25

*NRDC v. U.S. Dep't of Energy*,
    362 F. Supp. 3d 126 (S.D.N.Y. 2019)..................................................... 11

*Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps., AFL-CIO*,
    473 U.S. 1301 (1985).............................................................................. 12

*Pagliara v. Fed. Home Loan Mortg. Corp.*,
    203 F. Supp. 3d 678 (E.D. Va. 2016) .................................................... 14

*Patel v. Garland*,
    596 U.S. 328 (2022).................................................................................. 15

*Poursina v. USCIS*,
    936 F.3d 868 (9th Cir. 2019) ............................................................ 21, 22

*Ramos v. Wolf*,
    975 F.3d 872 (9th Cir. 2020) ............................................. 14, 17, 19, 27

*Reno v. Catholic Soc. Servs., Inc.*,
    509 U.S. 43 (1993).................................................................................. 14

*Rusu v. INS*,
    296 F.3d 316 (4th Cir. 2002) ................................................................. 26

*Safety-Kleen Corp. v. EPA*,
    1996 U.S. App. LEXIS 2324 (D.C. Cir. Jan. 19, 1996).......................... 11

*Sampson v. Murray,*
    415 U.S. 61 (1974) ................................................................................. 7, 10, 24

*Sanchez v. Mayorkas,*
    593 U.S. 409 (2021) ................................................................................. 4

*Scripps-Howard Radio v. FCC,*
    316 U.S. 4 (1942) ................................................................................. 10

*Sorenson v. Sec'y of Treasury,*
    475 U.S. 851 (1986) ................................................................................. 11

*State v. U.S. Bureau of Land Mgmt.,*
    277 F. Supp. 3d 1106 (N.D. Cal. 2017) ................................................ 11

*Students for Fair Admissions v. U.S. Naval, Acad.*
    707 F. Supp. 3d 486 (D. Md. Dec. 20, 2023) ...................................... 25

*Trump v. Hawaii,*
    585 U.S. 684 (2018) ................................................................................. 21

*U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.,*
    508 U.S. 439 (1993) ................................................................................. 8

*United States v. Carroll,*
    105 F.3d 740 (1st Cir. 1997) ................................................................. 8

*United States v. Hasson,*
    26 F.4th 610 (4th Cir. 2022) ................................................................. 17

*United States v. Mendoza,*
    464 U.S. 154 (1984) ................................................................................. 27

*United States v. Texas,*
    599 U.S. 670 (2023) ................................................................................. 28

*Va. Soc'y for Human Life, Inc. v. Fed. Election Comm'n,*
    263 F.3d 379 (4th Cir. 2001) ................................................................. 3, 27

*Washington-Dulles Transp., Ltd. v. Metro. Washington Airports Auth.,*
    263 F.3d 371 (4th Cir. 2001) ................................................................. 8

*Webster v. Doe,*
    486 U.S. 592 (1988) ................................................................................. 18

*Winter v. NRDC,*
    555 U.S. 7 (2008) ................................................................................. 7, 23

*Youngstown Sheet and Tube Co. v. Sawyer*,
  343 U.S. 579 (1952)................................................................................ 20

*Zhu v. Gonzales*,
  411 F.3d 292 (D.C. Cir. 2005)................................................................ 18

## **<u>STATUTES</u>**

1 U.S.C. § 112 ........................................................................................... 8

1 U.S.C. § 204(a) ...................................................................................... 8

5 U.S.C. § 553 ........................................................................................... 21

5 U.S.C. § 554 ........................................................................................... 21

5 U.S.C. § 701(a)(1) .................................................................................. 13

5 U.S.C. § 701(a)(2) .................................................................................. 18

5 U.S.C. § 705 ................................................................................. 2, passim

6 U.S.C. § 202 ........................................................................................... 17

6 U.S.C. § 202(1) ...................................................................................... 21

6 U.S.C. § 202(2) ...................................................................................... 21

6 U.S.C. § 202(3) ...................................................................................... 21

6 U.S.C. § 202(4) ...................................................................................... 21

6 U.S.C. § 202(5) ...................................................................................... 21

6 U.S.C. § 557 ........................................................................................... 4

8 U.S.C. § 1103 ......................................................................................... 4

8 U.S.C. § 1103(a) .................................................................................... 17

8 U.S.C. § 1103(a)(1) ............................................................................... 21

8 U.S.C. § 1103(a)(3) ............................................................................... 21

8 U.S.C. § 1226(a) .................................................................................... 26

8 U.S.C. § 1252(f) ............................................................................ 2, 3, 11

8 U.S.C. § 1252(f)(1) ...................................................................... 2, passim

8 U.S.C. § 1254a ................................................................................................ 3, 8, 9, 10, 26

8 U.S.C. § 1254a(a) ........................................................................................................ 4

8 U.S.C. § 1254a(b) ........................................................................................ 1, 3, 17, 24

8 U.S.C. § 1254a(b)(1) .................................................................................................... 4

8 U.S.C. § 1254a(b)(1)(B)(i) ........................................................................................ 23

8 U.S.C. § 1254a(b)(1)(B)(ii) ...................................................................................... 23

8 U.S.C. § 1254a(b)(1)(C) ........................................................................ 17, 21, 22, 23

8 U.S.C. § 1254a(b)(2) ............................................................................................... 4, 5

8 U.S.C. § 1254a(b)(2)(B) ............................................................................................ 23

8 U.S.C. § 1254a(b)(3) .................................................................................... 6, 7, 21, 23

8 U.S.C. § 1254a(b)(3)(A) ................................................................................ 5, 18, 19, 20

8 U.S.C. § 1254a(b)(3)(B) ......................................................................................... 5, 20

8 U.S.C. § 1254a(b)(3)(C) ......................................................................................... 5, 20

8 U.S.C. § 1254a(b)(5)(A) ................................................................................... 1, passim

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 7(a) ......................................................................................................... 2

Fed. R. Civ. P. 10(c) ....................................................................................................... 2

## FEDERAL REGISTER

86 Fed. Reg. 13,574 ........................................................................................................ 5

87 Fed. Reg. 55,024 ........................................................................................................ 5

88 Fed. Reg. 40,282 .................................................................................................. 1, 21

88 Fed. Reg. 40,285 ........................................................................................................ 1

88 Fed. Reg. 68,130 ........................................................................................................ 5

90 Fed. Reg. 5,961 ......................................................................................................... 6

90 Fed. Reg. 8,443 .................................................................................................. 22, 25

90 Fed. Reg. 8,446 ................................................................................................ 26

90 Fed. Reg. 8,805 ........................................................................................ 2, 6, 12

90 Fed. Reg. 8,807 ........................................................................................... 6, 22

90 Fed. Reg. 9,040 ............................................................................... 2, 6, 17, 26

90 Fed. Reg. 9,041 ................................................................................................. 6

90 Fed. Reg. 9,042 .................................................................................. 6, 7, 22, 26

90 Fed. Reg. 9,043 ..................................................................................... 7, 22, 26

90 Fed. Reg. 12,200 ............................................................................................. 20

**EXECUTIVE ORDER**

Exec. Order No. 14159 ............................................................................ 22, 26, 27

# INTRODUCTION

Defendants, Kristi Noem, in her official capacity as Secretary of Homeland Security, and the U.S. Department of Homeland Security, submit this Memorandum in Opposition to Plaintiffs' Cross-Motion for a Stay of Agency Action ("PI Mot."). ECF No. 32.

In 1990, Congress created the Temporary Protected Status ("TPS") program to provide, on a discretionary basis, temporary status to aliens who cannot safely return in the short-term to their home nation because of a natural disaster, armed conflict, or other "extraordinary and temporary conditions in the foreign state." 8 U.S.C. § 1254a(b). The Secretary of Homeland Security may designate a country for TPS only if the Secretary determines that certain statutory criteria justifying the designation are met. When a country is designated, eligible aliens from that country who are present in the United States on the effective date of the designation may apply for TPS and, if TPS is granted, are temporarily protected from removal and receive authorization to work in the United States during the designation period. Consistent with the temporary nature of TPS, Congress dictated that the Secretary must regularly review a country's TPS designation and must terminate that designation if she determines that the conditions giving rise to the designation are no longer met. Congress further provided that "determinations" concerning TPS "with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection" are not subject to "judicial review." 8 U.S.C. § 1254a(b)(5)(A). Indeed, as recognized by the prior administration, "the TPS statute does not limit the Secretary's inherent authority to reconsider any TPS-related determination, and upon reconsideration, to change the determination."[1]

Notwithstanding the Secretary's clear authority and Congress's decision to commit her

---

[1] *Reconsideration and Rescission of Termination of the Designation of El Salvador for [TPS]; Extension of the [TPS] Designation for El Salvador*, 88 Fed. Reg. 40,282, 40,285 (Jun. 21, 2023) ("2023 El Salvador Reconsideration, Rescission, and Extension").

determination to her discretion alone, Plaintiffs, CASA, Inc. and Make the Road New York—non-profit membership organizations—bring this suit challenging the Venezuela TPS Vacatur and Termination and asserting claims under the APA and the Due Process Clause of the Fifth Amendment. Plaintiffs also ask this Court to stay the effective date of Secretary Noem's Vacatur of a recently-published decision extending the 2023 Designation for Venezuela, *Vacatur of 2025 [TPS] Decision for Venez.*, 90 Fed. Reg. 8,805 (Feb. 3, 2025) ("2025 Vacatur"), and the 2025 Termination of TPS for Venezuela. *Termination of the October 3, 2023 Designation of Venez. for [TPS]*, 90 Fed. Reg. 9,040 (Feb. 5, 2025) ("*2025 Termination*"). The Court should reject those extraordinary requests.[2]

To start, the Court lacks jurisdiction to issue the requested relief. Although Plaintiffs style their request as a motion to stay the challenged agency action under 5 U.S.C. § 705, what they actually seek is an injunction enjoining the exercise of her authority. But 8 U.S.C. § 1252(f) prohibits any court, "other than the Supreme Court," from exercising "jurisdiction or authority to *enjoin or restrain* the operation of the provisions of part IV of this subchapter … other than with respect to the application of such provisions to an individual alien against whom proceedings … have been initiated." 8 U.S.C. § 1252(f)(1) (emphasis added). Section 1254a is a covered

---

[2] Significantly, Plaintiffs' "Cross-Motion For A Stay of Agency Action" advances little legal argument and instead relies almost entirely upon their incorporation by reference arguments made in their Partial Motion for Summary Judgment. *See* ECF No. 32-1 at 25 ("Rather than repeat those arguments, Plaintiffs incorporate their MPSJ arguments by reference."). In doing so, Plaintiffs cite Fed. R. Civ. P. 10(c) as authority for the incorporation of statements from a pleading, despite the fact that a motion is not a pleading. Fed. R. Civ. P. 7(a). Regardless, Plaintiffs' Motion for Partial Summary Judgment pertained only to Counts I and II of Plaintiffs' complaint, which alleged narrow violations of the APA. Plaintiffs "Cross-Motion" does not raise any additional argument related to any other count of their complaint, such that any assertions related to those additional counts are not before the Court for consideration. Given this, Defendants' response limits itself to only those assertions that might be reasonably considered to be incorporated from Plaintiffs' Motion for Partial Summary Judgment.

provision, and a stay enjoining or restraining the Secretary's decisions from having any legal effect is the sort of coercive order § 1252(f) prohibits.

Additionally, the TPS statute broadly prohibits judicial review of "any determination of the Secretary with respect to" designations, terminations, or extensions. 8 U.S.C. § 1254a(b)(5)(A). Each of the Secretary's decisions is precisely such a "determination" relating to an "extension" or "termination" of a designation under § 1254a. *Id.* Plaintiffs' claims challenging the basis for Secretary Noem's Vacatur and Termination decisions and seeking to set those decisions aside, fit squarely within the statute's bar on judicial review.

Plaintiffs' claims lack merit too. Plaintiffs' APA claims fail because Congress granted the Secretary broad authority to review TPS determinations consistent with the mandate that she ensure the continued designation of a country does not adversely affect the national interest. Furthermore, in seeking a nationwide injunction, the scope of Plaintiffs' requested relief is vastly overbroad. The relief sought goes much further than redressing the injuries to the Plaintiffs and contravenes equitable principles that require relief to be no more burdensome to the defendant than is necessary to provide plaintiff relief. *Va. Soc'y for Human Life, Inc. v. Fed. Election Comm'n*, 263 F.3d 379, 393 (4th Cir. 2001), *overruled on other grounds by Real Truth About Abortion, Inc. v. Fed. Election Comm'n*, 681 F.3d 544 (4th Cir. 2012). Should the Court grant Plaintiffs' requested injunction-like "stay," it should be limited to the individual Plaintiffs.

## **BACKGROUND**

### I.    **Statutory Background**

The Immigration Act of 1990 established a program for providing temporary shelter in the United States on a discretionary basis for aliens from designated countries experiencing ongoing armed conflict, environmental disaster, or "extraordinary and temporary conditions" that temporarily prevent the aliens' safe return or, in the case of environmental disasters, temporarily

render the country unable to handle adequately the return of its nationals. Pub. L. No. 101-649, 104 Stat. 4978. The statute authorizes the Secretary of Homeland Security,[3] "after consultation with appropriate agencies of the Government," to designate countries for "Temporary [P]rotected [S]tatus," if she finds:

> (A) … that there is an ongoing armed conflict within the state and, due to such conflict, requiring the return of aliens who are nationals of that state to that state (or to the part of the state) would pose a serious threat to their personal safety;
>
> (B) … that—
>
>> (i) there has been an earthquake, flood, drought, epidemic, or other environmental disaster in the state resulting in a substantial, but temporary, disruption of living conditions in the area affected,
>>
>> (ii) the foreign state is unable, temporarily, to handle adequately the return to the state of aliens who are nationals of the state, and
>>
>> (iii) the foreign state officially has requested designation under this subparagraph; or
>
> (C) … there exist extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety, unless the [Secretary] finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States.

8 U.S.C. § 1254a(b)(1).

When the Secretary designates a country for TPS, eligible aliens who are granted TPS may not be removed from the United States and are authorized to work for the duration of the country's TPS designation, so long as they remain in valid temporary protected status. 8 U.S.C. § 1254a(a), (c); *see Sanchez v. Mayorkas*, 593 U.S. 409, 412 (2021). Initial designations may not exceed eighteen months. 8 U.S.C. § 1254a(b)(2). The Secretary must consult with appropriate agencies

---

[3] The statute originally vested the Attorney General with the power to make TPS designation, extension, and termination decisions. Congress transferred these powers to the Secretary of Homeland Security. *See* 8 U.S.C. § 1103; 6 U.S.C. § 557.

and review each designation before it ends to determine whether the conditions for the country's designation continue to be met. *Id.* § 1254a(b)(3)(A). If the Secretary finds that the foreign state "no longer continues to meet the conditions for designation," she "shall terminate the designation" by publishing notice in the Federal Register of the determination and the basis for the termination. *Id.* § 1254a(b)(3)(B). If the Secretary "does not determine" that the foreign state "no longer meets the conditions for designation," then "the period of designation of the foreign state is extended for an additional period of 6 months (or, in the discretion of the [Secretary], a period of 12 or 18 months)." *Id.* § 1254a(b)(3)(C). Finally, the statute makes the Secretary's TPS determinations unreviewable. Section 1254a(b)(5)(A) states: "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection."

## II.    Factual Background

On March 9, 2021, former Secretary of Homeland Security Alejandro Mayorkas designated Venezuela for TPS based on extraordinary and temporary conditions that prevented nationals of Venezuela from returning in safety.[4] The former Secretary extended Venezuela's TPS designation twice.[5] On October 3, 2023, in addition to extending the 2021 Venezuela TPS status through September 10, 2025, the former Secretary redesignated Venezuela for TPS, effective from October 3, 2023, through April 2, 2025. *2023 Venez. Designation*, 88 Fed. Reg. 68,130. This notice not only provided procedures for initial applicants registering for TPS under the 2023 Venezuela

---

[4] *Designation of Venez. for [TPS] and Implementation of Emp. Authorization for Venezuelans Covered by Deferred Enforced Departure*, 86 Fed. Reg. 13,574 (Mar. 9, 2021) ("2021 Designation").

[5] *See Extension of the Designation of Venez. for [TPS]*, 87 Fed. Reg. 55,024 (Sept. 8, 2022); *see also Extension and Redesignation of Venez. For Temporary Protected Status*, 88 Fed. Reg. 68,130 (Oct. 3, 2023) ("2023 Designation").

Designation but also allowed Venezuelan nationals who had previously registered for TPS under the 2021 Venezuela Designation to re-register for TPS and apply to renew their Employment Authorization Document (EAD) with USCIS. *Id*. On January 17, 2025, former Secretary Mayorkas published a Federal Register Notice extending the 2023 Venezuela Designation for 18 months, allowing a consolidation of filing processes such that all eligible Venezuela TPS beneficiaries (whether under the 2021 or 2023 designations) could obtain TPS through October 2, 2026.[6]

On January 28, 2025, Secretary Noem vacated the 2025 Venezuela Extension and restored the status quo that preceded that decision. *See 2025 Vacatur*, 90 Fed. Reg. at 8,805. She explained that the 2025 Extension "did not acknowledge the novelty of its approach" or "explain how it is consistent with the TPS statute." *Id*. at 8,807; *see* 8 U.S.C. § 1254a(b)(3). The Secretary determined that the "lack of clarity" warranted a vacatur to "untangle the confusion and provide an opportunity for informed determinations regarding the TPS designations and clear guidance." *Id*.

After reviewing the Venezuelan country conditions and consulting with the appropriate U.S. Government agencies, on February 1, 2025, Secretary Noem determined that Venezuela no longer continued to meet the conditions for the 2023 Designation and that it was "contrary to the national interest to permit the covered Venezuelan nationals to remain temporarily in the United States." *2025 Termination*, 90 Fed. Reg. at 9,040-41. Due to this determination, Secretary Noem terminated the 2023 Designation of Venezuela, effective April 7, 2025. *Id*. In making this determination she highlighted the "notable improvements in several areas, such as the economy, public health, and crime," that allow for Venezuelan nationals to be "safely returned to their home country." *Id*. at 9042. However, even assuming that extraordinary and temporary conditions

---

[6] *Extension of the 2023 Designation of Venez. for [TPS]*, 90 Fed. Reg. 5,961 (Jan. 17, 2025) (hereinafter "2025 Extension").

remained, the Secretary explained that that the termination of the 2023 Venezuela TPS designation is necessary because it is contrary to the national interest to permit the Venezuelan nationals to remain temporarily in the United States. *Id*. The national interest is "an expansive standard that may encompass an array of broad considerations" which "calls upon the Secretary's expertise and discretionary judgment." *Id*. Secretary Noem explained that the significant population of TPS holders has resulted in "associated difficulties in local communities where local resources have been inadequate to meet the demands caused by increased numbers," and further underscored that, across the United States, "city shelters, police stations and aid services are at maximum capacity." *Id*. In considering national interests, she further found that this population includes members of Tren de Aragua, a transnational criminal organization recently determined to "pos[e] threats to the United States." *Id*. at 9,042-43. Secretary Noem also observed that "U.S. foreign policy interests, particularly in the Western Hemisphere, are best served and protected by curtailing policies that facilitate or encourage illegal and destabilizing migration." *Id*. at 9,043.

## **STANDARDS OF REVIEW**

The standards of review for relief under 5 U.S.C. § 705 and for preliminary injunctions are the same. *See Sampson v. Murray*, 415 U.S. 61, 80 (1974). A preliminary injunction is an "extraordinary remedy [… which may] be granted only where the moving party clearly establishes entitlement to the relief sought." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017). A plaintiff seeking a preliminary injunction must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id*. (citing *Winter v. NRDC*, 555 U.S. 7, 20 (2008)).

## ARGUMENT

### I.    THIS COURT LACKS JURISDICTION TO GRANT PLAINTIFFS THE RELIEF THEY SEEK

#### A.    Section 1252(f) Precludes Plaintiffs' Requested Relief

Here, the relief Plaintiffs seek would have the effect of enjoining or restraining DHS's implementation of the TPS provisions in section 244 of the INA, 8 U.S.C. § 1254a. But 8 U.S.C. § 1252(f)(1) explicitly bars such relief. It provides: "[r]egardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to *enjoin or restrain* the operation of the provisions of part IV of this subchapter … other than with respect to the application of such provisions to an individual alien against whom proceedings … have been initiated." 8 U.S.C. § 1252(f)(1) (emphasis added). Contrary to Plaintiffs' contentions, ECF No. 32-1 at 24 n.10, Section 1254a is one of the statutory provisions § 1252(f)(1) covers. Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), div. C, Pub. L. No. 104-208, §§ 306, 308, 110 Stat. 3009-546. Although Section 1254a appears in Part V of the U.S. Code, the U.S. Code is inconsistent with the INA, wherein the TPS provisions in Section 244 appear in Chapter 4. *Id*. When there is a conflict, the INA prevails. *See Washington-Dulles Transp., Ltd. v. Metro. Washington Airports Auth.*, 263 F.3d 371, 378–79 (4th Cir. 2001) ("[I]t will not be inferred that Congress, in revising and consolidating the laws, intended to change their effect unless such intention is clearly expressed.") (quoting *Finley v. United States*, 490 U.S. 545, 554 (1989)); *see also U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 448 (1993) ("Though the United States Code is 'prima facie' evidence that a provision has the force of law, 1 U.S.C. § 204(a), it is the Statutes at Large that provides the 'legal evidence of laws,' [1 U.S.C.] § 112...."); *United States v. Carroll*, 105 F.3d 740, 744 (1st Cir. 1997) ("Conflicts between the text of a statute as it appears

in the Statutes at Large, on one hand, and in usually reliable but unofficial sources such as the United States Code Annotated, on the other hand, are rare, but, when they occur, the rendition of the law contained in the Statutes at Large controls."). INA § 244 lies within chapter 4 of title II of the INA, as amended. Section 1252(f)(1) thus eliminates any court's (other than the Supreme Court's) authority to issue coercive orders enjoining or restraining implementation of 8 U.S.C. § 1254a.

By invoking 5 U.S.C. § 705 and asking this Court to postpone the effective date of the challenged decisions, Plaintiffs seek the type of coercive order prohibited by 8 U.S.C. § 1252(f)(1); ECF No. 32-1 at 23-29. Regardless of how Plaintiffs name their motion or frame their claims, their requested relief is barred. An order pursuant to 5 U.S.C. § 705 prevents – i.e. "enjoin[s] or restrain[s]" – DHS from implementing the Secretary's 2025 determinations vacating the decision to extend the designation of Venezuela for TPS and is thus jurisdictionally barred under § 1252(f)(1). The Supreme Court has held that 8 U.S.C. § 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or *to refrain from taking* actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Biden v. Texas*, 597 U.S. 785, 797 (2022) (quoting *Garland v. Aleman Gonzalez*, 596 U.S. 543, 544 (2022)) (emphasis added); *see* Black's Law Dictionary (12th ed. 2024) (defining injunction as "[a] court order commanding or preventing an action"). As the Supreme Court held in *Aleman Gonzalez*, to "restrain" means to "check, hold back, or prevent (a person or thing) from some course of action," to "inhibit particular actions," or to "stop (or perhaps compel)" action. 596 U.S. at 549 (quoting 5 Oxford English Dictionary 756 (2d ed. 1989)). An order postponing the effective date of implementation or enforcement of the vacatur and termination determinations would necessarily

constitute an order "restraining" federal officials. *Id*. at 550.

Plaintiffs argue that stays differ from injunctions. ECF No. 32-1 at 24 n.10. But that argument relies on the incorrect assumption that 5 U.S.C. § 705 creates a new form of remedy—a district court stay of agency action that is distinct from an injunction. Section 705 does not, however, create any new remedies beyond the traditional equitable relief that existed at the time of the APA's passage. *See Scripps-Howard Radio v. FCC*, 316 U.S. 4, 16–17 (1942). When Congress adopted § 705, there is no evidence that it intended to create a wholly new, never-before-seen species of remedy. Instead, Congress simply codified existing equitable remedies. Section 705 allows a court to issue only that "process" that is "necessary and appropriate." And the Supreme Court long ago concluded "[t]he relevant legislative history of that section … indicates that it was primarily intended to reflect existing law" permitting courts of appeals to stay certain agency actions pending direct review authorized by statute in the same manner that appellate courts can in certain circumstances stay a district court decision pending appeal. *Sampson*, 415 U.S. at 68 n.15; *see Scripps-Howard Radio*, 316 U.S. at 9-10 ("a federal court can stay the *enforcement of a judgment pending the outcome of an appeal*" (emphasis added)). Section 705 was not intended "to fashion new rules of intervention for District Courts." *Id*. Thus, the text, context, legislative history, sources contemporary to the APA's passage, and relevant case law all show 5 U.S.C. § 705 does nothing more than preserve traditional equitable relief—relief that 8 U.S.C. § 1252(f)(1) bars.

Plaintiffs do not seek an order that would operate on the individual removal proceedings or some other agency adjudication pending judicial review. Plaintiffs instead ask this Court to "prevent" the government from implementing its chosen "course of action" with respect to 8 U.S.C. § 1254a. *See Aleman Gonzalez*, 596 U.S. at 549, 551 (orders requiring government to "refrain from actions that (again in the Government's view) are allowed" by covered provisions

are barred by § 1252(f)). Such an order, even if labeled a stay, is injunctive in effect and barred by 8 U.S.C. § 1252(f)(1). Thus, Plaintiffs' stay request is no different from an injunction—an equivalence underscored by the preliminary-injunction standard applying to it.

Even if 8 U.S.C. § 1252(f)(1) did not apply, 5 U.S.C. § 705 by its own terms does not authorize relief here, namely a stay of agency action, because the Vacatur has already taken effect. Courts construing 5 U.S.C. § 705 have concluded that the phrase "postpone the effective date" of an agency action authorizes the "postpone[ment of] the effective date of *a not yet effective rule*, pending judicial review"—but not suspension of a policy that is *already in effect*. *Ctr. for Biological Diversity v. Regan*, 597 F. Supp. 3d 173, 204 (D.D.C. 2022) (quoting *Safety-Kleen Corp. v. EPA*, Nos. 92-1629, 92-1639, 1996 U.S. App. LEXIS 2324, at *2–3 (D.C. Cir. Jan. 19, 1996)) (emphasis added); *accord, e.g.*, *NRDC v. U.S. Dep't of Energy*, 362 F. Supp. 3d 126, 151 (S.D.N.Y. 2019) (same); *State v. U.S. Bureau of Land Mgmt.*, 277 F. Supp. 3d 1106, 1118 (N.D. Cal. 2017) (same). While these cases address an agency decision to "postpone the effective date," 5 U.S.C. § 705 uses identical language when referring to "the reviewing court ... postpon[ing] the effective date of an agency action." The use of an identical phrase in the first and second sentences of § 705 must be presumed to be intentional. *See, e.g.*, *Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 860 (1986) ("The normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning."). Given its plain meaning, the language in 5 U.S.C. § 705 allowing a court or agency to "postpone the effective date" can only be read to mean that the statute allows the court "to put off until a future time," "defer," or "delay" the "operative" date of the agency action. *See* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/effective (last visited Mar. 2, 2025); *see also* Black's Law Dictionary Online (2d ed.),

https://thelawdictionary.org/?s=postpone (last visited Mar. 3, 2025) (defining "postpone" as "to put off; defer; delay; continue"). One cannot "defer" or "put off" an action that has already occurred; thus, the issuance of a stay after the effective date of the challenged policy has already passed is beyond what § 705 permits. *See Florida v. Mayorkas*, No. 23-09962, 2023 WL 3567851, at *4 (N.D. Fla. May 16, 2023) (Section 705 stay unavailable because the policy was in effect when the complaint was filed).

The 2025 Vacatur Plaintiffs seek to stay was published on February 3, 2025, with an immediate effective date. *2025 Vacatur*, 90 Fed. Reg. at 8,805. Thus, the determination is already in effect. *See id.* at 8,806 ("The vacatur is effective immediately"). That 5 U.S.C. § 705 is disjunctive, permitting reviewing courts to "postpone the effective date of an agency action *or to preserve status or rights* pending conclusion of the review proceedings" (emphases added), does not change this result. An order staying a policy after it has already gone into effect thus does not preserve the status quo, but rather, *alters* it. *See, e.g.*, *Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps., AFL-CIO*, 473 U.S. 1301, 1305 (1985) (had the district court issued an order stopping rule from taking effect that would alter the "status quo"); *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*, 467 F.3d 999, 1006 (6th Cir. 2006) (explaining an order "preventing the implementation of new regulations" would "disturb[]" rather than preserve "the status quo").

## B.    The TPS Statute Bars Plaintiffs' Claims

Additionally, the TPS statute itself unambiguously provides that "[t]here is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS. 8 U.S.C. § 1254a(b)(5)(A). The statute makes clear that TPS designation, extension, and termination determinations are committed to the unreviewable authority of the Secretary. Accordingly, APA challenges to such determinations are

prohibited. *See* 5 U.S.C. § 701(a)(1)) (review is not available "to the extent that" a relevant statute precludes it); *Block v. Comty. Nutrition Inst.*, 467 U.S. 340, 345 (1984) (APA cause of action is unavailable "to the extent the relevant statute 'preclude[s] judicial review'" (quoting 5 U.S.C. § 701(a)(1)); *see also Moore v. Frazier*, 941 F.3d 717, 721-22 (4th Cir. 2019); *Lee v. USCIS*, 592 F.3d 612, 619-20 (4th Cir. 2010); *Lin v. Heffron*, No. 3:21-cv-647-MOC-DCK, 2022 WL 820937, at *4 (W.D.N.C. Mar. 17, 2022), *aff'd*, No. 22-1380, 2023 WL 566343 (4th Cir. Jan. 27, 2023) (holding that the court had no jurisdiction to review a denial of a petition under the APA because the decision whether to grant or deny the petition was committed to agency discretion by law, and the INA precluded judicial review); *Amgen, Inc. v. Smith*, 357 F.3d 103, 113 (D.C. Cir. 2004) ("If a no-review provision shields particular types of administrative action, a court may not inquire whether a challenged agency decision is arbitrary, capricious, or procedurally defective.").

Plaintiffs acknowledge that the statutory language of § 1254a(b)(5)(A) clearly applies to "any determination" made "with respect to the designation, or termination, or extension" of TPS. ECF No. 8-1 at 19.[7] To avoid the judicial review limitation in § 1254a(b)(5)(A), Plaintiffs characterize the Secretary's 2025 Vacatur and Termination of TPS for Venezuela as "not authorized by law." ECF No. 8-1 at 20. Specifically, Plaintiffs argue that "[n]o provision of law authorized Secretary Noem to vacate a prior TPS extension" and that the "procedures she followed and the timing of the Termination's effective date" were unlawful. *Id.* Plaintiffs fail to understand, however, that the 2025 Vacatur is a "determination" under § 1254a(b)(5)(A). Additionally, upon a close examination of how they frame their claims with respect to both the 2025 Vacatur and Termination, it is evident that Plaintiffs are actually challenging "the substantive considerations underlying the Secretary's specific TPS considerations, over which the statute prohibits judicial

---

[7] In their motion to stay agency action, Plaintiffs incorporate by reference their motion for partial summary judgment; as such we address the arguments made in that motion here. ECF No. 32-1 at 25.

review." *Ramos v. Wolf*, 975 F.3d 872, 889 (9th Cir. 2020), *vacated by Ramos v. Wolf*, 59 F.4th 1010, 1011 (9th Cir. 2023).[8]

1.    The 2025 Vacatur is a Determination Under 8 U.S.C.
§ 1254a(b)(5)(A)

Plaintiffs contend that because the statute does not contain the word vacatur, then any such decision falls outside the scope of the statutory language. ECF No. 32-1 at 24; ECF No. 1 at ¶ 65. Not only is this argument incorrect, but this Court lacks jurisdiction to review the analysis of any such vacatur. This Court is prohibited from reviewing "*any determination … with respect to* the designation, or termination or extension of a designation" of TPS. 8 U.S.C. § 1254a(b)(5)(A). In its now vacated decision, the Ninth Circuit reviewed the exact statute at issue here. *Ramos*, 975 F.3d at 889.[9] Comparing the term "determination" in § 1254a(b)(5)(A) with similar uses of the word in provisions analyzed by the Supreme Court in *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 486 n.6 (1991), and *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 53 (1993), the Ninth Circuit stated that the reference to a determination "generally precludes direct review of the secretary's country-specific TPS determinations." *Ramos*, 975 F.3d at 891. The inquiry does not end here, but rather this Court must look to the surrounding text to understand what types of determinations are restricted from review. The word "any," modifying "determination" in § 1254a(b)(5)(A), indicates a broad sweep. *See, e.g.*, *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind'" (citation omitted)). The phrase "with respect to" in § 1254a(b)(5)(A) is likewise broad in scope, as that phrase "is generally understood to be synonymous with the phrase 'relating to'" or "'related to.'" *Pagliara v. Fed. Home Loan Mortg. Corp.*, 203 F. Supp. 3d 678, 688 (E.D. Va. 2016) (quoting *Cal. Tow Truck Ass'n v. City & Cty. of*

---

[8] This decision has been vacated and therefore has no precedential effect; however, it still carries precedential value. *See Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 14 F.4th 322, 328 (4th Cir. 2021) ("[W]e note that the public and the 'legal community as a whole,'. . . will still retain some benefit from the panel opinion even if vacated, because the exchange of ideas between the panel and dissent will remain available as a persuasive source.").

[9] *See supra*.

*San Francisco*, 807 F.3d 1008, 1021 (9th Cir. 2015); *accord Huffington v. T.C. Group, LLC*, 637 F.3d 18,22 (1st Cir. 2011). And the Supreme Court has underscored that the ordinary meaning of "related to" is "a broad one," meaning "having a connection with or reference to . . ., whether directly or indirectly." *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013).

The Supreme Court recently undertook a similar review of the phrase "any judgment regarding the granting of relief" under enumerated provisions. *Patel v. Garland*, 596 U.S. 328 (2022). There, the Supreme Court pointed out that it "has repeatedly explained, the word 'any' has an expansive meaning." *Id*. at 338 (quotations omitted) (citing *Babb v. Wilkie*, 589 U. S. 399, 405, n.2 (2020); Webster's Third New Int'l Dictionary, at 97 (defining "any" as "one or some indiscriminately of whatever kind")). The phrase "with respect to" is the equivalent of "regarding" or "concerning." *Lamar, Archer & Cofrin, Llp v. Appling*, 584 U.S. 709, 717 (2018); *see also Patel*, 596 U.S. at 339. The use of these phrases "in a legal context generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." *Patel*, 596 U.S. at 339.

Within this framework, Secretary Noem's Vacatur determination falls well within the statute's "any determination" language and is a country-specific TPS determination relating to the prior extension. For this reason, § 1254a(b)(5)(A) eliminates this Court's jurisdiction to review any APA claim regarding the 2025 Vacatur determination, including those raised by Plaintiffs regarding the substance of the Federal Register Notice and facts that the Secretary considered. *See* ECF No. 1 at ¶ 66. Likewise, this Court lacks jurisdiction to review the Termination, as it falls firmly within the statute's jurisdictional bar. *See* 8 U.S.C. § 1254a(b)(5)(A).[10]

---

[10] In a 2018 decision concerning the then-Secretary's termination of TPS for El Salvador, Judge Hazel of this court held that the court had jurisdiction to review the APA claims raised, which are similar to those raised in the instant matter. *CASA de Maryland, Inc. v. Trump*, 355 F. Supp. 3d 307, 320-21 (D. Md. 2018). However, that decision did not benefit from the more recent Supreme

2.      Plaintiffs' Challenge to the Substantive Considerations Underlying the 2025 Vacatur and 2025 Termination are Not Subject to Judicial Review

Plaintiffs represent that their claims "do not challenge actions taken by the Secretary of Homeland Security 'under'" 8 U.S.C. § 1254a(b)(5)(A), but rather, they argue that the "agency acted outside statutory limits." ECF No. 8-1 at 20, 14. However, neither their motion for a stay of agency action nor their motion for partial summary judgment explain how the Secretary allegedly acted outside of statutory limits. Instead, Plaintiffs challenge how the Secretary weighed the evidence in reaching her decision, which the Court may not review.

For example, in challenging the 2025 Vacatur, Plaintiffs allege that the Vacatur

> reflected no consideration of country conditions whatsoever. Instead, the Vacatur objected to the registration requirements established by Secretary Mayorkas, stating that the January 2025 Extension took a "novel approach" in combining the 2021 and 2023 Venezuela designations. The Vacatur concluded that "vacatur is warranted to untangle the confusion, and provide an opportunity for informed determinations regarding the TPS designations and clear guidance.

ECF No. 1 ¶ 66. But in alleging that the Secretary failed to consider country conditions and objected to the Prior Secretary's actions, Plaintiffs directly challenge how the Secretary exercised her authority to render a determination in the form of a vacatur. Similarly, with respect to the 2025 Termination, Plaintiffs question whether the Secretary consulted with the Department of State concerning country conditions in Venezuela, and whether she sufficiently considered the impact

---

Court caselaw reaffirming the expansive use of the phrases "any" and "related to." *Patel*, 596 U.S. at 338-39; *Babb v. Wilkie*, 589 U. S. at 405 n.2. Judge Hazel, in his 2018 decision, also held that the court had jurisdiction to review the constitutional claims raised in that case, but as discussed in footnote 2 of this response, Plaintiffs address only their APA claims—not their constitutional claims—in their Motion for Partial Summary Judgment, which they rely entirely upon here by incorporating those arguments by reference. As such, Defendants do not address the issue of whether this Court has jurisdiction to review Plaintiffs' constitutional claims in this response. However, Defendants reserve the right to challenge Plaintiffs' position in this regard at the appropriate juncture.

Venezuela's TPS has on the national interest prior to terminating TPS for Venezuela due to the timing of the termination. *See id.* ¶¶ 69-73. Plaintiffs also challenge the reasons the Secretary provided for the 2025 Termination. *Id.* at ¶ 74. Plaintiffs are clearly questioning the manner in which the Secretary exercised her authority to terminate TPS for Venezuela, as well as the reasons she gave for that termination.

Yet, the clear intent of Congress was to grant the Secretary broad and unreviewable discretion in the exercise of her responsibilities under the TPS statute. *See* 8 U.S.C. §§ 1103(a), 1254a(b); 6 U.S.C. § 202; *see also United States v. Hasson*, 26 F.4th 610, 623 (4th Cir. 2022) ("'As in all statutory construction cases, we assume that the ordinary meaning of the statutory language accurately expresses the legislative purpose.'") (quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 376 (2013)). And the categorical review preclusion language in 8 U.S.C. § 1254a(b)(5)(A) makes clear that Congress did not intend to permit *anyone*, including an alien or organization of aliens, to obtain review of the Secretary's determinations regarding whether a determination was proper. This includes the way the Secretary weighs how the determination impacts that the administration of the program and the security conditions within the United States. 8 U.S.C. § 1254a(b)(1)(C); *see Ramos*, 975 F.3d at 891 ("[T]he Secretary's discretion to consider and weigh various conditions in a foreign country in reaching her TPS determinations is not only broad, but unreviewable."); *see also id.* ("[S]ection 1254a(b)(5)(A) generally precludes courts from inquiring into the underlying considerations and reasoning employed by the Secretary in reaching her country-specific TPS determinations.").

Plaintiffs also allege that the Secretary procedurally erred in stating that the 2025 Termination was effective April 7, 2025. ECF No. 1 ¶ 72. But as explained, the 2025 Vacatur was a valid exercise of her authority under 8 U.S.C. § 1254a(b)(5)(A) and the effective date for the

17

2025 Termination was, in fact, procedurally proper. *See* 2025 Termination, 90 Fed. Reg. at 9,040 (stating that the 2023 Designation was set to expire on April 2, 2025 and that the Secretary has determined that Venezuela no longer continues to meet the conditions for the 2023 Designation); 8 U.S.C. § 1254a(b)(3)(A) (stating that at least 60 days before the end of a designation period, the Secretary shall determine whether the conditions for the designation continue to be met after consulting with other appropriate government agencies and reviewing the country conditions of the affected foreign state).

The APA also precludes review where the agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see Lee*, 592 F.3d at 619 ( "[a]lthough the APA embodies a 'basic presumption of judicial review' of final agency action...its judicial review provisions do not apply where 'statutes preclude judicial review.'") (citations omitted). While "rare," this section of the APA is used "where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993). A determination, based on the Secretary's discretionary judgment, as to what constitutes the national interest is one of these rare circumstances. *See Trump v. Hawaii*, 585 U.S.667, 684-86 (2018) (explaining that where the President has statutory discretion to determine if an alien's entry "would be detrimental to the interests of the United States," federal courts should not inquire "into the persuasiveness of the President's justifications"). The determination of "national interest" is one that calls upon the Secretary's "expertise and judgment" and is not a manageable legal standard. *See Zhu v. Gonzales*, 411 F.3d 292, 295 (D.C. Cir. 2005); *see also Webster v. Doe*, 486 U.S. 592, 600 (1988) (statute allowing Director of Central Intelligence to terminate employee whenever he "'shall deem such termination necessary or advisable in the interests of the United States' ... fairly exudes deference"). Because there is no manageable

standard by which this Court can judge whether the Secretary's determination is contrary to the national interest, this Court lacks jurisdiction to review any determination based upon that finding. *See* 2025 Venez. Termination.

Based on the foregoing, despite Plaintiffs' arguments to the contrary, their claims are not reviewable under § 1254a(b)(5)(A). *Ramos*, 975 F.3d at 893 (citation omitted).

## II.     PLAINTIFFS HAVE FAILED TO DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS BECAUSE THE SECRETARY OF HOMELAND SECURITY HAS THE AUTHORITY TO VACATE A PRIOR EXTENSION OF A COUNTRY'S TPS DESIGNATION AND TERMINATE TPS

Congress granted the Secretary "undoubtedly broad" authority to "make TPS determinations" and ensure the continued designation of a country complies with the law. *Ramos v. Wolf*, 975 F.3d at 890 (finding statutory constraints "on the Secretary's discretion, [are] in favor of limiting unwarranted designations or extensions…") (cleaned up). Even if this Court had jurisdiction to review the Secretary's determinations, Plaintiffs have not shown a likelihood of success on the merits that the 2025 Vacatur and Termination determinations are contrary to law.

When Congress authorized the Secretary to designate foreign countries for TPS, it committed several underlying policy questions to her discretion by statute and explicitly barred judicial review of sensitive foreign relations determinations. The Secretary's continuing border and national security responsibilities require her to evaluate any potential threats to the safety and security of the United States and permit her to reconsider a prior TPS determination in order to address deficiencies in the prior determination, and to issue a new determination consistent with her informed judgment regarding the relevant country conditions and national interest considerations. *See* 8 U.S.C. § 1254a(b)(3)(A) (The Secretary "… shall determine whether the conditions for such designation under this subsection continue to be met.") (emphasis added); *The Last Best Beef, LLC v. Dudas*, 506 F.3d 333, 340 (4th Cir. 2007) (federal agencies have broad

authority to reconsider their prior decisions, particularly when the prior decision contained an error); *see also Albertson v. FCC*, 182 F.2d 397, 399 (D.C. Cir. 1950) ("The power to reconsider is inherent in the power to decide.").[11] The statute requires the Secretary to review conditions within foreign states designated for TPS, but any subsequent action turns on the Secretary's findings about whether the conditions for such designation continue to exist. 8 U.S.C. § 1254a(b)(3)(A)-(C). Indeed, the statute inevitably requires the Secretary to make determinations affecting the conduct of United States foreign policy. *See Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952) ("[A]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations [and] the war power."). When the Executive Branch acts in the field of foreign policy "… pursuant to an express or implied authorization of Congress, [its] authority is at its maximum, for it includes all that [it] possesses in [its] own right plus all that Congress can delegate." *Youngstown Sheet and Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring) (cleaned up).

Plaintiffs' analysis fails to acknowledge that the Secretary's determinations are rooted in foreign policy considerations. *See Arizona v. United States*, 567 U.S. 387, 409 (2012) (holding the federal government must speak "with one voice" in determining "whether it is appropriate to allow a foreign national to continue living in the United States"); *cf.* U.S. Secretary of State, *Determination: Foreign Affairs Functions of the United States*, 90 Fed. Reg. 12,200 (Mar. 14,

---

[11] Circuit courts, including the Fourth Circuit, have long recognized that an administrative agency has inherent or statutorily implicit authority to reconsider and change a decision within a reasonable period if Congress has not foreclosed this authority by requiring other procedures. *See The Last Best Beef*, 506 F.3d at 340; *see also, e.g.*, *Macktal v. Chao*, 286 F.3d 822, 825-26 (5th Cir. 2002) (holding agency acted lawfully by exercising inherent authority to reconsider decisions) (collecting cases); *Gun South, Inc. v. Brady*, 877 F.2d 858, 862 (11th Cir. 1989) ("[T]he Supreme Court and other courts have recognized an implied authority in other agencies to reconsider and rectify errors even though the applicable statute and regulations do not expressly provide for such reconsideration.").

2025) ("[A]ll efforts, conducted by any agency of the federal government, to control the status, entry, and exit of people, and the transfer of goods, services, data, technology, and other items across the borders of the United States, constitute a foreign affairs function of the United States under the Administrative Procedure Act, 5 U.S.C. 553, 554."). Congress requires the Secretary to determine whether "permitting aliens to remain temporarily in the United States is contrary to the national interest of the United States." 8 U.S.C. § 1254a(b)(1)(C); *Cf. Poursina v. USCIS*, 936 F.3d 868, 874 (9th Cir. 2019) (observing, in an analogous INA context, "that the 'national interest' standard invokes broader economic and national-security considerations, and such determinations are firmly committed to the discretion of the Executive Branch—not to federal courts" (citing *Hawaii*, 585 U.S. at 684-86)). The Secretary's 2025 Venezuela Termination determination exercised that authority as intended.

Employing Plaintiffs' logic that the Venezuela extension of TPS was irrevocably binding, no Secretary of Homeland Security could ever vacate a designation or extension of a designation, no matter the type of national security threat posed or the seriousness of the error or legal defect in the prior determination. But the TPS statute itself does not mandate such a severe and unworkable limitation of the Secretary's ability to fulfill her border and national security responsibilities and exercise her broad authority to administer and enforce the immigration laws, *see, e.g.*, 6 U.S.C. § 202(1)-(5), 8 U.S.C. § 1103(a)(1), (a)(3), and to do so consistent with the President's Executive Orders. Indeed, even former Secretary Mayorkas agreed he had the inherent authority to revisit a prior TPS decision when he vacated his predecessor's termination of the TPS designation of El Salvador. *2023 El Salvador Reconsideration, Rescission, and Extension*, 88 Fed. Reg. 40,282. As Secretary Mayorkas explained, "[t]he TPS statute does not limit the Secretary's inherent authority to reconsider any TPS-related determination, and upon reconsideration, to

change the determination." *Id.* at 40,285 (citing 8 U.S.C. § 1254a(b)(3), (b)(5)(A)). And here, Secretary Noem has done the exact same thing—she has exercised her clear and unreviewable statutory authority to revisit previous TPS-related determinations and, upon reconsideration, vacated the prior determination to restore the status quo preceding that decision.

Plaintiffs' argument that the 2025 Vacatur is impermissible because Secretary Noem's actions attempt to circumvent the statutory procedures for termination of TPS also fails. ECF No. 8-1 at 33-34. In issuing the 2025 Vacatur, Secretary Noem indicated that her decisions provided an opportunity to make informed determinations and to clarify procedures. 2025 Vacatur, 90 Fed. Reg. at 8,807 (citing Exec. Order No. 14159, *Protecting the American People Against Invasion*, § 16(b), 90 Fed. Reg. 8,443 (Jan. 20, 2025)). Vacatur is a permissible exercise of the Secretary's implicit authority under the INA to reconsider a prior decision that she deemed deficient and to make a reasoned decision of her own. The Secretary's 2025 Vacatur determination complied with the statute and was consistent with her continuing obligation to safeguard the border and national security of the United States and to administer and enforce the immigration laws.

Moreover, as discussed above, § 1254a(b)(1)(C) allows for the Secretary to consider whether the national interest of the United States is impacted by extending a TPS country designation. Secretary Noem appropriately engaged in this inquiry and provided her reasons for terminating the 2023 Designation, including valid concerns for the safety of the U.S. communities, impact that the TPS designation has had on local community resources, and adverse impacts on border security and foreign relations. *Id.* at 9,042-43. Secretary Noem's reasoned determination was unquestionably a lawful exercise of her authority to determine whether "permitting aliens to remain temporarily in the United States is contrary to the national interest of the United States." 8 U.S.C. § 1254a(b)(1)(C); *Poursina*, 936 F.3d at 874.

### III.    ANY HARM PLAINTIFFS MAY SUFFER IS BASED ON THE INHERENT NATURE OF THE TPS STATUTE

A plaintiff seeking a preliminary injunction must show that he is likely to suffer irreparable harm in the absence of granting such relief. *Di Biase*, 872 F.3d at 230; *see also Winter*, 555 U.S. at 20. The plaintiff must show "more than just the 'possibility' of irreparable harm." *Di Biase*, 872 F.3d 230. Plaintiffs have failed to make the requisite showing here.

Plaintiffs allege numerous injuries resulting from Secretary Noem's Vacatur and Termination determinations that are inherent in the temporary nature of TPS. For example, Plaintiffs allege that 2023 TPS beneficiaries "would lose TPS protection 18 months before the earliest date on which it would otherwise terminate" and 2021 TPS beneficiaries "will lose a 13-month extension of their TPS." ECF Nos. 8-1, 23-24. As a result of losing TPS, Plaintiffs claim they could potentially lose their TPS employment authorizations and suffer economic hardship, be unable to support their families, and endure injuries to their mental health due to fear of having to return to an unsafe country. *Id.*, 24. Plaintiffs further allege that their family members—many of whom are not even TPS beneficiaries—would lose access to medical care if TPS is vacated. ECF Nos. 5-6, 8-9.

While Plaintiffs heavily focus on the burden that TPS beneficiaries will face should the termination be permitted to go into effect, the underlying cause of this harm flows from the statute ("temporary" protected status) itself. *See* 8 U.S.C. § 1254a(b)(1)(B)(i) ("substantial, but temporary"), (b)(1)(B)(ii) ("unable, temporarily"), (b)(1)(C) ("extraordinary and temporary," "remain temporarily in the United States"). Undeniably, the alleged harms would exist with or without the termination at issue. As explained, a country's TPS designation must be reviewed at least every 18 months, and there is no guarantee of further extension. 8 U.S.C. § 1254a(b)(2)(B), (b)(3). A TPS beneficiary is therefore always subject to the same uncertainties and concerns that

Plaintiffs allege here. In this regard, Plaintiffs' contention that TPS has created "hard-won stability" that "[t]he Termination threatens to unravel" (ECF No. 8-1, 34) wholly ignores the inherently temporary nature of the statute. Indeed, Plaintiffs acknowledge that TPS would ultimately have been subject to termination and that Secretary Noem's decision merely expedited the deadline. ECF Nos. 8-1, 23-24, 34-35. Because the very nature of TPS is temporary, as dictated by law, the potential for economic hardship, loss of access to medical care, fear of instability and other mental health concerns are not irreparable harms arising from the termination of TPS for Venezuela, but rather the nature of the status.

Furthermore, "'[t]he possibility that [...] other corrective relief will be available at a later date … weighs heavily against a claim of irreparable harm.'" *Di Biase*, 872 F.3d at 230 (citing *Sampson*, 415 U.S. at 90). There may be alternative avenues of relief based on Plaintiffs' circumstances such as asylum, withholding of removal under the Immigration and Nationality Act, or withholding of removal or deferral of removal under the Convention Against Torture regulations. ECF Nos. 6-7, 8-10. For example, Make the Road New York (MRNY) member C.M. already has a pending asylum application and does not risk possible removal to her country of feared persecution while her application is pending, even if TPS is terminated. *Id.*, 7. To the extent these and other CASA and MRNY members fear for their safety at the prospect of returning to Venezuela, they are free to pursue alternative pathways to more durable protection that would address their individual circumstances (e.g., asylum) as opposed to TPS, which offers only temporary status to a group of people based on "extraordinary and temporary conditions in the[ir home] state." 8 U.S.C. § 1254a(b). *See, e.g.*, *Di Biase*, 872 F.3d at 235 ("Given the extraordinary nature of the remedy, a preliminary injunction is not warranted where, as here, the moving parties have not shown that they have availed themselves of opportunities to avoid the injuries of which

they now complain").

Finally, even if Plaintiffs have identified concrete harms, those harms will not be remedied by the requested injunction. The assurances that Plaintiffs seek can only be truly safeguarded through legislative action, not an injunction by this Court. Consequently, Plaintiffs have failed to show a likelihood of irreparable harm that could be remedied by this Court, and their request for a preliminary injunction should be denied. *See Miranda v. Garland*, 34 F.4th 338, 346 (4th Cir. 2022) (denying plaintiffs' preliminary injunction because they failed to "sho[w] that they are likely to suffer irreparable harm in the absence of preliminary relief"); *see also Di Biase*, 872 F.3d at 235 ("Plaintiffs failed to demonstrate they were likely to suffer irreparable harm without the injunction"); *Students for Fair Admissions v. U.S. Naval Acad.*, 707 F. Supp. 3d 486, 509 (D. Md. Dec. 20, 2023) (accord); *Harrell v. Univ. of Maryland Sch. of Pharm.*, No. CV MJM-24-104, 2024 WL 2155023, at *5 (D. Md. May 13, 2024) (accord).

## IV.    THE BALANCE OF THE EQUITIES AND PUBLIC INTEREST WEIGH AGAINST PRELIMINARY INJUNCTIVE RELIEF

Plaintiffs also fail to show that the remaining equitable factors tip the balance in their favor. As the Supreme Court has explained in an immigration context, the questions of harm to the defendant and the public interest "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The government and the public share an interest in ensuring that the process established by Congress—under which the Secretary of Homeland Security has unreviewable authority to carefully weigh the statutory factors governing TPS designations—is followed as Congress intended. The government has an "obligation to prioritize the safety, security, and financial and economic well-being of Americans." *Protecting the American People Against Invasion*, Exec. Order No. 14159, § 1, 90 Fed. Reg. at 8,443. In this vein, "[e]nforcing [the n]ation's immigration laws is critically important to the national security and public safety of the United States." Among the Venezuelan

nationals currently residing in the United States are members of the Tren de Aragua, a Venezuelan gang that poses a threat to the public safety. *See 2025 Termination*, 90 Fed. Reg. at 9,040, 9,042-43. And, as explained in Secretary Noem's 2025 Termination, Congress expressly required that the national interest of the United States be considered in determining whether to extend or terminate Venezuela's TPS designation. Vacating the 2025 Extension allowed the government to take necessary steps to "ensur[e] that designations of [TPS] are consistent with the provisions of [...] 8 U.S.C. 1254a[], and that such designations are appropriately limited in scope and made for only so long as may be necessary to fulfill the textual requirements of that statute"–in other words, to make certain the TPS designation is not being abused by individuals who threaten national security and public safety. Exec. Order No. 14159, § 16(b), 90 Fed. Reg. at 8,446.

Ultimately, the injunctive relief Plaintiffs seek would frustrate Secretary Noem's substantive judgment as to how to implement the TPS statute in accordance with the government's established interests. *See Miranda*, 34 F.4th at 365-366 (balancing the equities and public interest, the Court held that it was improper to grant a preliminary injunction which infringed upon the Attorney General's discretion under 8 U.S.C. § 1226(a) to detain aliens pending their removal proceedings, stressing that "[t]he enforcement of our immigration laws is the government's 'sovereign prerogative'") (citing *Rusu v. INS*, 296 F.3d 316, 320 (4th Cir. 2002)).

Congress has given the Secretary, in consultation with the appropriate agencies, the broad discretion to assess conditions in foreign countries and reach determinations regarding TPS. It is in the public interest that where the Secretary follows the statutory requirements, the Court deny the extraordinary remedy of preliminary injunctive relief and allow this matter to proceed along the ordinary course.

## V.        PLAINTIFFS REQUESTED RELIEF IS OVERBROAD

Even if a preliminary injunction (or "stay" accomplishing the same effect) were warranted here, Plaintiffs have no basis to request universal relief benefitting non-parties. *CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 258–59 (4th Cir. 2020) (Wilkinson, J.), reh'g en banc granted, 981 F.3d 311 (2020) ("Relatedly, nationwide injunctions are incompatible with the well-recognized bar against litigants raising the rights of others."). Under settled constitutional and equitable principles, the Court may not issue relief that is broader than necessary to remedy actual harm shown by specific Plaintiffs. *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018); *Lewis v. Casey*, 518 U.S. 343, 358 n.5 (1996) ("[S]tanding is not dispensed in gross[.]"). A valid remedy "operate[s] with respect to specific parties," not with respect to a law "in the abstract." *California v. Texas*, 593 U.S. 659, 672 (2021) (quotation marks omitted).

In this case, where sensitive foreign policy decisions of the Executive Branch are implicated, an injunction should go no further than redressing any cognizable injuries to individual named plaintiffs. *See Arizona,* 567 U.S. at 409 (holding the federal government must speak "with one voice" in determining "whether it is appropriate to allow a foreign national to continue living in the United States"). Universal injunctive relief here circumvents the requirement to limit relief to the Parties. Plaintiffs, who do not raise class claims in their Complaint and have not moved to certify a class under Rule 23, have made no effort to explain why they should be entitled to such sweeping relief.

Granting universal relief in this situation is also contrary to the principle that "a federal court of appeals's decision is only binding within its circuit" and it "'substantially thwarts the development of important questions of law by freezing the first final decision rendered on a particular legal issue.'" *Va. Soc'y for Human Life, Inc.*, 263 F.3d at 393 (quoting *United States v. Mendoza*, 464 U.S. 154, 160 (1984)); *Ramos*, 975 F.3d. at 902–06 (Nelson, J., concurring). Allowing a nationwide injunction would be particularly egregious in the instant matter given that

there are, as of the date of this filing, at least three other TPS cases in different jurisdictions entertaining the same or similar issues raised in this case[12]; a nationwide injunction would deny other federal courts an opportunity to reflect on these important issues. *See United States v. Texas*, 599 U.S. 670, 693 (2023) (Gorsuch, J., joined by Thomas and Barrett, J.J., concurring) ("Universal injunctions continue to intrude on powers reserved for the elected branches. They continue to deprive other lower courts of the chance to weigh in on important questions before this Court has to decide them."). Nationwide injunctions also encourage forum shopping and effectively nullify the decisions of other district or circuit courts nationwide. *Texas*, 599 U.S. at 693; *CASA, Inc. v. Trump*, No. 25-1153, 2025 WL 654902, at *3 (4th Cir. Feb. 28, 2025) (Niemeyer, J., dissenting) ("Thus, the district court's order in this case could have the effect of preempting or at least interfering with the orders in these other districts. It implicates unnecessarily potentially conflicting orders or reasoning, claims preclusion, res judicata, and other similar principles that order the work of different courts."); *DHS v. New York*, 140 S. Ct. 599, 601 (2020) (Gorsuch, J., concurring).

## <u>CONCLUSION</u>

This Court lacks jurisdiction to review both determinations by Secretary Noem relating to the 2023 Designation of Venezuela for TPS and to grant Plaintiffs' requested relief. Even if this Court were to find that neither of the two clear jurisdictional bars applies, Plaintiffs' claims fail on the merits and the remaining factors do not support issuance of equitable relief.

---

[12] *See National TPS Alliance, et al. v. Noem, et al.*, No. 25-1766 (N.D. Cal. filed Feb. 19, 2025); *Haitian-Americans United Inc., et al. v. Trump, et al.*, No. 25-10498 (D. Mass. filed Mar. 3, 2025); *Haitian Evangelical Clergy Ass'n, et al. v. Trump, et al.*, No. 25-1464 (E.D.N.Y. filed Mar. 14,

Dated: March 21, 2025                    Respectfully submitted,

                                         YAAKOV M. ROTH
                                         Acting Assistant Attorney General
                                         Civil Division

                                         WILLIAM H. WEILAND
                                         (Mass. Bar 661433)
                                         Senior Litigation Counsel

                                         ERIC SNYDERMAN (VA Bar 99563)
                                         ANNA DICHTER (NJ Bar 304442019)
                                         LAUREN BRYANT (NY Bar 5321880)
                                         CATHERINE ROSS (DC Bar 9007404)
                                         LUZ MARIA RESTREPO (NY Bar 4907077)
                                         Trial Attorneys

                                         /s/ *Sarah L. Vuong*
                                         SARAH L. VUONG
                                         (CA Bar. 258528)
                                         Assistant Director
                                         U.S. Department of Justice, Civil Division
                                         Office of Immigration Litigation
                                         General Litigation and Appeals Section
                                         P.O. Box 868, Ben Franklin Station
                                         Washington, DC 20044
                                         Tel: (202) 305-1263
                                         Sarah.L.Vuong@usdoj.gov

                                         *Attorneys for the Defendants*