# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## SOUTHERN DIVISION

| | |
|---|---|
| CASA, INC. and MAKE THE ROAD NEW YORK<br><br>   *Plaintiffs*,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, and UNITED STATES DEPARTMENT OF HOMELAND SECURITY<br><br>   *Defendants*. | Case No. 8:25-cv-00525-GLR<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR CROSS-MOTION FOR A STAY OF AGENCY ACTION** |

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................. 1

I.  This Court Has Jurisdiction and Authority to Grant Relief. ................................... 2

    A.  8 U.S.C. § 1252(f)(1) Does Not Bar Postponement Under 5 U.S.C. § 705 ................................................................................................................. 2

    B.  Section 705 Authorizes a Stay of the Unlawful TPS Actions. ................... 5

    C.  Section 1254a(b)(5)(A) Does Not Bar Plaintiffs' Claims.......................... 6

II. Plaintiffs Are Likely to Prevail on Their APA Claims. ......................................... 8

    A.  Defendants Do Not Challenge Plaintiffs' Standing. ................................... 8

    B.  DHS Lacks Authority to Vacate or Early-Terminate TPS Extensions. ...... 8

III. Plaintiffs Have Established Irreparable Harm. ..................................................... 12

IV. The Equities and Public Interest Favor Postponement. ........................................ 14

V.  The Requested Relief Is Not Overbroad. .............................................................. 15

CONCLUSION.................................................................................................................. 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Alberston v. FCC*,
182 F.2d 397 (D.C. Cir. 1951) ........................................................................... 10

*Americans for Beneficiary Choice v. U.S. Dep't Health and Human Servs.*,
No. 4:24-cv-00439, 2024 WL 3297527 (W.D. Tex. July 3, 2024) .................... 2

*Biden v. Texas*,
597 U.S. 785 (2022) ........................................................................................... 2

*Bufkin v. Collins*,
145 S. Ct. 728 (2025) .......................................................................................... 9

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*,
98 F.4th 220 (5th Cir. 2024), *cert. granted in part*, No. 24-413, — U.S. —, 2025 WL
65914 (Jan. 10, 2025) ........................................................................................ 15

*CASA de Maryland, Inc. v. Trump*,
355 F. Supp. 3d 307 (D. Md. 2018) ................................................................... 6, 8

*Casa de Maryland v. Wolf*,
486 F. Supp. 3d 928 (D. Md. 2020) ................................................................... 3, 5, 14

*Centro Presente v. United States Dep't of Homeland Sec.*,
332 F. Supp. 3d 393 (D. Mass. 2018) ................................................................ 6, 8

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
603 U.S. 799 (2024) (Kavanaugh, J., concurring) ............................................ 15

*Cuozzo Speed Tech. v. Commerce for Intell. Prop.*,
579 U.S. 261 (2016) ........................................................................................... 7

*D.C. v. U.S. Dep't of Agric.*,
444 F. Supp. 3d 1 (D.D.C. 2020) ....................................................................... 2

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000) ........................................................................................... 11

*Florida v. Mayorkas*,
2023 WL 3567851 (N.D. Fla. May 16, 2023) ...................................................... 5

*Florida v. United States*,
660 F. Supp. 3d 1239 (N.D. Fla. 2023)................................................................. 4

*Gun South v. Brady*,
877 F.2d 858 (11th Cir. 1989) ............................................................................. 10

*Hor v. Gonzalez*,
400 F.3d 482 (7th Cir. 2005) ............................................................................... 3

*Kidd v. Mayorkas*,
734 F. Supp. 3d 967 (C.D. Cal. 2024) ................................................................. 4

*Macktal v. Chao*,
286 F.3d 822 (5th Cir. 2002) ............................................................................... 10

*Make the Road New York v. Pompeo*,
475 F. Supp. 3d 232 (S.D.N.Y. 2020).................................................................. 13

*Maryland v. U.S. Dep't. of Agric.*,
No. JKB-25-0748, — F. Supp. 3d —, 2025 WL 800216 (D. Md., Mar 13, 2025) ............ 15

*Nat. Res. Def. Council v. Regan*,
67 F.4th 397 (D.C. Cir. 2023)............................................................................... 9, 10

*Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*,
595 U.S. 109 (2022)............................................................................................... 9

*New Jersey v. EPA*,
517 F.3d 574 (D.C. Cir. 2008).............................................................................. 9, 10

*Nielsen v. Preap*,
586 U.S. 392 (2019)............................................................................................... 4

*Nken v. Holder*,
556 U.S. 418 (2009)............................................................................................... 3

*Ohio Valley Env't Coal., Inc. v. Apogee Coal Co., LLC*,
555 F. Supp. 2d 640 (S.D.W.Va. 2008)............................................................... 10

*Orquera v. Ashcroft*,
357 F.3d 413 (4th Cir. 2003) ............................................................................... 6

*Ramos v. Nielsen*,
336 F. Supp. 3d 1075 (N.D. Cal. 2018) *vacated and remanded sub nom. Ramos v. Wolf,*
975 F.3d 872 (9th Cir. 2020), *reh'g en banc granted,* 59 F.4th 1010 (2023), *appeal
dismissed sub nom. Ramos v. Mayorkas,* No. 18-16981, 2023 WL 4363667 .................... 11

*Reno v. Am.-Arab Anti-Discrimination Comm.,*
525 U.S. 471 (1999)..................................................................................................... 2

*Reno v. Catholic Soc. Servs., Inc.,*
509 U.S. 43 (1993)....................................................................................................... 6

*Rodriguez v. Hayes,*
591 F.3d 1105 (9th Cir. 2010) .................................................................................... 4

*Sampson v. Murray,*
415 U.S. 61 (1974)....................................................................................................... 4

*Scripps-Howard Radio v. FCC,*
316 U.S. 4 (1942)...................................................................................................... 4–5

*Sierra Club v. U. S. Dep't of the Interior,*
899 F.3d 260 (4th Cir. 2018) ...................................................................................... 15

*Texas v. Biden,*
646 F. Supp. 3d 753 (N.D.Tex. 2022) ................................................................... 3, 4, 5

*Texas v. United States,*
40 F.4th 205 (5th Cir. 2022) ....................................................................................... 4

*Wanrong Lin v. Nielsen,*
377 F. Supp. 3d 556 (D. Md. 2019)....................................................................... 14–15

*Washington v. DHS,*
408 F. Supp. 3d 1191 (E.D. Wash. 2019) .................................................................. 3

*Washington v. Trump,*
847 F.3d 1151 (9th Cir. 2017) .................................................................................... 13

*Youngstown Sheet and Tube Co. v. Sawyer,*
343 U.S. 579 (1952) (Jackson, J., concurring).......................................................... 12

## Rules and Statutes

5 U.S.C. § 701(a)(2)....................................................................................................... 8

5 U.S.C. § 705 ........................................................................................... *passim*

5 U.S.C. § 706 ........................................................................................... 1, 2, 15

8 U.S.C. § 1252(f)(1) ................................................................................. 1, 2, 3, 4

8 U.S.C. § 1254a ....................................................................................... *passim*

Alien Enemies Act of 1798, 50 U.S.C. § 21 *et seq*. ............................. 13

## **Other Authorities**

101 Cong. Rec. 25811 (Oct. 25, 1989) (Statement of Rep. Richardson) .......................... 10

90 Fed. Reg. 5961 ..................................................................................... 12

## INTRODUCTION

A stay of DHS's unlawful actions regarding TPS for Venezuelans is necessary and is a matter of rapidly increasing urgency.  Nothing in Defendants' Opposition undermines this basic conclusion:  the Vacatur and ensuing Termination of TPS for Venezuelans were facially unlawful and should be stayed.[1]  Allowing them to stand would likely result in irreparable injury for those who, in mere days, may lose employment or face imminent deportation.

Defendants' argument that this Court lacks jurisdiction to enter the requested order is incorrect.  Controlling Supreme Court authority establishes that a stay of agency action, as is sought here, is not an "injunction" and accordingly is not barred by 8 U.S.C. § 1252(f)(1).  Neither are Plaintiffs challenging any discretionary exercise of judgment or any "determination" by Secretary Noem such that 8 U.S.C. § 1254a(b)(5)(A) would bar relief.  Plaintiffs argue Secretary Noem had no "discretion" to make any "determination" to terminate TPS outside of the statutory framework established by Congress.  Her action was thus "contrary to law."  5 U.S.C. § 706(2)(A).

Plaintiffs are likely to prevail on the merits.  Congress established TPS as a temporary status, but one with an established duration subject to renewal or termination.  There are statutory provisions that govern the termination process, recognizing the important reliance interests that are implicated by losing one's lawful immigration status.  The DHS Secretary cannot simply avoid those statutory restrictions on termination of TPS before the end of an existing extension through the artificial expedient of purporting to first "vacate" the extension.  If that were permitted, the termination provisions of 8 U.S.C. § 1254a would be meaningless.

The prejudice to Plaintiffs' members of allowing their immigration status to be stripped from them 18 months earlier than permitted by law should be obvious.  Were it not, it is established

---

[1]    Capitalized terms not defined in this Reply have the meanings specified in Plaintiffs' opening brief, ECF No. 32-1 (hereinafter "Motion" or "Mot.").

in detail in the declarations of George Escobar from CASA and Sienna Fontaine from Make the Road New York. And, notably, Defendants do not challenge Plaintiffs' standing to assert these claims. Nor do they prove any harm to Defendants that could tip the scales against a stay. Indeed, the requested stay is particularly appropriate here given that—at Defendants' request—further proceedings on Plaintiffs' Motion for Partial Summary Judgment and the merits of these claims have also been stayed pending Defendants' answer.

Finally, Defendants' argument that any relief in this case should be limited to these Plaintiffs is wrong. This is not a case seeking an *in personam* injunction against DHS or Secretary Noem. It is a judicial review proceeding under the APA, under which this Court "shall" "set aside agency action," found to be "not in accordance with law," 5 U.S.C. § 706, and may "postpone the effective date of [the] agency action [to] preserve status or rights pending conclusion of the review proceedings" 5 U.S.C. § 705.

## ARGUMENT

## I.      THIS COURT HAS JURISDICTION AND AUTHORITY TO GRANT RELIEF.

### A.      8 U.S.C. § 1252(f)(1) Does Not Bar Postponement Under 5 U.S.C. § 705.

Defendants' Section 1252(f)(1) arguments, Opp. 8–12, fail at the threshold, as the Supreme Court has consistently described that section as applying to 8 U.S.C. §§ 1221–1232, *Biden v. Texas*, 597 U.S. 785, 797 (2022); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481 (1999), which does not encompass TPS, 8 U.S.C. § 1254a. But even if Section 1252(f) were relevant to an action concerning TPS, relief under 5 U.S.C. § 705 is not injunctive relief prohibited by Section 1252(f)(1). Section 705's mandate to "postpone the effective date of an agency action" allows courts to issue a stay. 5 U.S.C. § 705; *see D.C. v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 48 (D.D.C. 2020) (Section 705 "plainly and simply 'authorizes courts to stay agency rules pending judicial review'"); *Americans for Beneficiary Choice v. U.S. Dep't Health and Human Servs.*, 2024

WL 3297527, at *7 (W.D. Tex. July 3, 2024) ("[B]y 'postpon[ing] the effective date of an agency action,' a section 705 stay stops the portions of the rule which are deemed to be almost certainly unlawful.").  As the Supreme Court has held, Section 1252(f) does not prevent a court from staying agency action, as opposed to enjoining agency action.  *Nken v. Holder*, 556 U.S. 418, 428–30 (2009) (agency action was a removal order).  While a stay and an injunction "[b]oth can have the practical effect of preventing some action before the legality of that action has been conclusively determined," "a stay achieves this result by temporarily suspending the source of authority to act— the order or judgment in question—not by directing an actor's conduct."  *Id.* at 428–29. Accordingly, "Congress could limit [courts'] authority to issue stays, just as it has limited district judges' authority to issue injunctions.  But treating a rule addressed to 'injunctions' as covering 'stays' would impoverish the language[.]"  *Hor v. Gonzalez*, 400 F.3d 482, 484 (7th Cir. 2005).

Section 705 authorizes the Court to suspend the effectiveness of agency rules or other actions.  "Although the standard for a preliminary injunction and a stay pursuant to [Section 705] are the same, . . . [S]ection 705 is a congressionally conferred remedy exclusive in the APA context and available to the Court when necessary to 'prevent irreparable injury.'"  *Casa de Maryland v. Wolf*, 486 F. Supp. 3d 928, 971 (D. Md. 2020); *see also Texas v. Biden,* 646 F. Supp. 3d 753, 768– 69 (N.D.Tex. 2022) (explaining that Section 705 stay "would not 'order federal officials to take or to refrain'" from pursuing their statutory prerogatives) (quoting *Garland v. Aleman Gonzalez*, 596 U.S. 543, 544 (2022)); *Washington v. DHS*, 408 F. Supp. 3d 1191, 1212 (E.D. Wash. 2019) ("Section 705 and preliminary injunctions under Rule 65, although determined by application of similar standards, offer different forms of relief.").

A Section 705 stay can "be seen as an interim or lesser form of [relief than] vacatur," *Texas*, 646 F. Supp. 3d at 768–69, and yet Defendants cite no case in which any court has held that Section

1252(f)(1) prevents a court from exercising its statutory authority under the APA to vacate an unlawful agency action.  Rather, every court to consider the question has ruled the opposite.  *See, e.g.*, *Texas v. United States*, 40 F.4th 205, 219–20 (5th Cir. 2022) (holding Section 1252(f)(1) does not apply to vacatur and, thus, DHS "unlikely to demonstrate" a lack of "jurisdiction to vacate unlawful agency action"); *Kidd v. Mayorkas*, 734 F. Supp. 3d 967, 987 (C.D. Cal. 2024) (Section 1252(f) inapplicable because vacating ICE policy neither "compel[s] nor restrain[s] further agency decision-making"); *Florida v. United States*, 660 F. Supp. 3d 1239, 1284–85 (N.D. Fla. 2023) (Section "1252(f)(1) does not strip [the court] of the authority to vacate either of the challenged policies under the APA."); *Texas v. Biden*, 646 F. Supp. 3d 753, 768 (N.D. Tex. 2022) (Section 1252(f)(1) "does not prohibit issuance of a 'stay' under Section 705").

Defendants further argue that APA relief "would have the effect of enjoining or restraining DHS's implementation" of the TPS statute.  Opp. 8.  Virtually all orders against the government have the "effect" of restraining federal officials in some form.  Yet the Supreme Court has expressly recognized that Section 1252(f)(1) does not bar the court from issuing declarative relief—relief that, if entered here, would restrain the Government's action in precisely the same way as a stay order, only permanently.  *Nielsen v. Preap*, 586 U.S. 392, 402 (2019) (Section 1252(f)(1) preserves "jurisdiction to entertain the plaintiffs' request for declaratory relief."); *Rodriguez v. Hayes*, 591 F.3d 1105, 1119 (9th Cir. 2010) (same).[2]  Had Congress intended in Section 1252(f)(1) to strip courts of the ability to issue stay orders pursuant to Section 705, it would have said so clearly.  *Scripps-Howard Radio*, 316 U.S. at 11 ("Congress would not, without clearly expressing such a purpose, deprive the [court] of its customary power to stay orders under

---

[2]  Defendants cite a footnote, Opp. 10, in *Sampson v. Murray*, 415 U.S. 61, 68 n.15 (1974), which relied on legislative history to suggest that Section 705 codified the remedies described in a pre-APA case, *Scripps-Howard Radio v. FCC*, 316 U.S. 4 (1942).  Defendants misconstrue *Scripps-Howard*, which did not read a "general legislative policy regarding the power to stay administrative orders pending [judicial] review" into the statute.  *Id.* at 16.

review."). Because Section 1252(f)(1) does not bar this Court from issuing a declaratory judgment that the challenged actions are of no effect, the Court necessarily retains its lesser included authority under Section 705 to stay the actions' effective date, giving the Court time to fully consider whether to exercise that more significant power.

**B.    Section 705 Authorizes a Stay of the Unlawful TPS Actions.**

Defendants next attempt to weave together dictionary definitions with inapposite cases to contend that Section 705 "does not authorize relief here . . . because the Vacatur has already taken effect." Opp. 11. That is wrong and ignores the posture of this case.

First, TPS for all Venezuelans would continue unabated were it not for the *Termination*, which will not take effect until April 7. *See* Mot. 5. And more critically, "[c]ourts – including the Supreme Court – routinely stay already-effective agency action under Section 705." *Texas*, 646 F. Supp. 3d at 770; *Wolf*, 486 F. Supp. 3d 928 (finding requirements for a stay met after rule's effective date had passed). The Vacatur purportedly took effect when it was published and "rescinded" the automatic EAD extensions, Vacatur at 8807, such that EADs of 2023 Designation beneficiaries would expire on April 2, 2025. ECF No. 8-5, 88 Fed. Reg. 68130, 68135. Thus, relief "under Section 705 (even after the effective date) [would] restore[] the . . . status quo *ex ante*" to the conditions under the January 2025 Extension. *Texas*, 646 F. Supp. 3d at 771.

Defendants' cases are not to the contrary. Opp. 11–12. Neither *Northeast Ohio Coal* nor *OPM* involve a Section 705 stay. 467 F.3d 999, 1066 (6th Cir. 2006); 473 U.S. 1301, 1305 (1985). *Florida v. Mayorkas* is likewise distinguishable because it involved a policy "in effect" and the court did not reach the question of whether a Section 705 stay was proper. 2023 WL 3567851, at *4 (N.D. Fla. May 16, 2023). Defendants' remaining cases are inapposite because they concerned *agencies'*, not courts', authority to postpone rules after an effective date. Opp. 11.

**C.     Section 1254a(b)(5)(A) Does Not Bar Plaintiffs' Claims.**

Defendants' attempt to rely on Section 1254a(b)(5)(A) also fails because they have not provided "clear and convincing evidence," *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 63–64 (1993), that Congress intended to bar Plaintiffs' claims.  Nor can they: Section 1254a(b)(5)(A) does not withdraw the right to seek judicial review for agency action that is precluded by statute. *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991) (holding statutory bar on "a determination" did not preclude judicial review of the "practice or procedure" to make the determination"); *CASA de Maryland, Inc. v. Trump*, 355 F. Supp. 3d 307, 320 (D. Md. 2018) ("This language closely resembles the language found in *McNary* and *Reno* not to constitute an absolute bar on judicial review, but instead to bar review on the merits of an individual determination."). This statutory bar applies only to review of "any determination with respect to the designation, or termination or extension" of TPS, which is not what Plaintiffs seek here.  If Congress wished to foreclose judicial review of a TPS termination that simply ignored the timing provisions enacted by statute, it needed to do so clearly and expressly.  *Orquera v. Ashcroft,* 357 F.3d 413, 422 (4th Cir. 2003) (acknowledging the "well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action").  Congress did not do so here.

The Motion and Plaintiffs' claims more generally do not require this Court to review, let alone set aside, any "determination" by Secretary Noem or DHS.  Rather, Plaintiffs' argument is that the INA did not grant Secretary Noem discretion to vacate and terminate TPS for Venezuelans prior to October 2, 2026.  8 U.S.C. § 1254a(b)(3)(B).  Rather than a challenge "to the content of any particular adjudication," Plaintiffs bring statutory claims framed as challenges to "Defendants' process of adjudication."  *Centro Presente v. United States Dep't of Homeland Sec.*, 332 F. Supp.

6

3d 393, 408 (D. Mass. 2018) (following *McNary* that Section 1254a(b)(5)(A) does not bar "sufficiently collateral" statutory claims).

Defendants acknowledge that the "Court must look to the surrounding text to understand what types of determinations are restricted from review." Opp. 14. But they ignore the statutory language and structure that undermines their argument. Section 1254a(b)(5)(A) does not foreclose judicial review wholesale "with respect to the designation, or termination or extension of a designation" under the Section. It only forecloses judicial review of "any *determination* of the [Secretary] with respect" to such designations or terminations. *Id.* (emphasis added). The distinction is crucial: the statute does grant discretionary authority to the Secretary to make various "determinations"—such as "whether the conditions for such designation . . . continue to be met" or "that a foreign state . . . no longer continues to meet the conditions for designation." *Id.* § 1254a(b)(3)(A)–(B). But nothing in the statute grants the Secretary discretion to "determine" that she will vacate or terminate TPS before the end of the preceding extension. Rather, the statute expressly provides that she cannot. *Id.* § 1254a(b)(3)(B). That the Secretary has "determined" to act unlawfully cannot insulate her actions from judicial review because such a "determination" was never committed to her discretion. *Cuozzo Speed Tech. v. Commerce for Intell. Prop.*, 579 U.S. 261, 275 (2016) (holding that statutory bar on review of "determinations" did not "categorically preclude review" or "enable the agency to act outside its statutory limits").

While Defendants acknowledge that the Motion rests on Counts I and II of the Complaint, which they aptly describe as "alleg[ing] narrow violations of the APA," Opp. 2 n.2, they nonetheless pretend those Counts challenge her "country-specific TPS determination." Opp. 14–15. Rather, those Counts (and the Motion) show that Secretary Noem lacked authority to issue her Vacatur and Termination, without regard to any "determinations" she contends to have made to

support those actions. That the statute precludes judicial review of *any* determination is irrelevant, as Plaintiffs are not seeking review of *any* determination. *See also Casa de Maryland*, 355 F. Supp. 3d at 321 ("[T]he statute's reference to '*any* determination' does not subsume 'any' general policies or practices. Rather, the word 'any' must be understood in its grammatical context."); *Centro Presente*, 332 F. Supp. 3d at 408 (seeking to "se[t] aside the Secretary's earlier TPS decisions does not convert Plaintiffs' claims about unlawful process into a substantive challenge to each [determination]").

For the same reasons, Defendants' argument that the decision to vacate the 2023 Designation was "committed to agency discretion by law" and thus is unreviewable pursuant to 5 U.S.C. § 701(a)(2) fails. Nothing in the relevant statute commits the decision to early-terminate a TPS designation to agency discretion. To the contrary, the statute expressly precludes it.

## II.    PLAINTIFFS ARE LIKELY TO PREVAIL ON THEIR APA CLAIMS.

### A.    Defendants Do Not Challenge Plaintiffs' Standing.

As a threshold matter, Defendants do not challenge Plaintiffs' standing to sue in this case. Nor could they. Plaintiffs are organizations that have presented clear and sworn evidence that their members are beneficiaries of the TPS designations for Venezuela and that they would lose their immigration status and right to work absent judicial review. Escobar Decl. ¶¶ 14–33; Fontaine Decl. ¶¶ 17–30. That is more than sufficient. Mot. 11–12.

### B.    DHS Lacks Authority to Vacate or Early-Terminate TPS Extensions.

Plaintiffs have established a strong likelihood of success on the merits of their claims because, by the INA's plain terms, Secretary Noem has no authority to "vacate" a TPS extension already granted. And once the date of Venezuela's most recent extension is reverted to October 2, 2026, the Termination must be vacated because it improperly terminates Venezuela's designation

prior to the end of that extension period.

Defendants' arguments to the contrary are unmoored from the text of the statute, instead relying on the Secretary's "broad" discretion to consider the national interest in making TPS determinations. Defendants correctly note that the INA requires the Secretary to regularly review TPS designations, "determine whether the conditions for such designation . . . continue to be met," and consider the national interest as one potential factor when designating a country for TPS. Opp. 19–21. But Defendants attempt to divorce these provisions from the remainder of the statutory scheme, which makes clear that once a foreign state is designated for TPS, as the January 2025 Extension did as to Venezuela, such designation "*shall* remain in effect until the effective date of [any subsequent] termination of the designation," and "[s]uch termination . . . *shall not be effective earlier* than 60 days after the date the notice is published or, if later, *the expiration of the most recent previous extension*." 8 U.S.C. § 1254a(b)(2)(B), (3)(B) (emphasis added); *see Bufkin v. Collins*, 145 S. Ct. 728, 737 (2025) ("It is undisputed that the word 'shall' imposes a mandatory command.").

Defendants' claim of "inherent authority" to reconsider their decisions is of no avail. Opp. 21–22. The Supreme Court has repeatedly emphasized that agencies "are creatures of statute" and "accordingly possess only the authority that Congress has provided." *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.,* 595 U.S. 109, 117 (2022). DHS thus "has no inherent authority," but "only the authority given it by" the INA. *Nat. Res. Def. Council v. Regan*, 67 F.4th 397, 401 (D.C. Cir. 2023). Congress "undoubtedly can limit an agency's discretion to reverse itself," *New Jersey v. EPA*, 517 F.3d 574, 583 (D.C. Cir. 2008), and it has done so here. Secretary Noem's Vacatur and Termination "contravene an express statutory command": that any termination "shall" take effect no sooner than the most recent previous

extension. *Nat. Res. Def. Council*, 67 F.4th at 404. To read the statute otherwise would "nullif[y] textually applicable provisions meant to limit [the Secretary's] discretion." *Id.* at 402 (quoting *New Jersey*, 517 F.3d at 583).[3] There is no dispute that the INA authorizes Secretary Noem in the future to decide whether to extend or terminate Venezuela's existing TPS designations, but any such termination "must follow a process consistent with applicable law and regulations." *Ohio Valley Env't Coal., Inc. v. Apogee Coal Co., LLC*, 555 F. Supp. 2d 640, 647 (S.D.W.Va. 2008).

Defendants' cases purportedly supporting inherent authority are inapposite. Opp. 19–20. *The Last Best Beef v. Dudas* focused on instances where federal agencies can correct themselves if they "take erroneous or unlawful action." 506 F.3d 333, 340 (4th Cir. 2007). But here, Secretary Noem did not claim any "error" in Secretary Mayorkas's extension for Venezuela. *See* Vacatur at 8807. She cited only his "novel approach" to consolidating the two Venezuela designations, and what she considered his "inadequately developed" explanation for it. *Id.* The Vacatur's reliance on this policy disagreement is ironic: the statute *does* afford the Secretary broad discretion to establish the "manner" by which a TPS applicant "registers for [TPS] under this section," 8 U.S.C. § 1254a(c)(1)(A), but no discretion to vacate or early-terminate a designation once made. In any event, a policy disagreement provides no "inherent authority" to violate the statute. *See Ohio Valley Env't Coal., Inc.*, 555 F. Supp. 2d at 647 (distinguishing *Last Best Beef* and finding permit modification ineffective where "[a]ny mistake made by the agency was to issue a permit inconsistent not with the law, but with a policy choice").[4]

---

[3]    Indeed, Congress established fixed time periods for TPS precisely to eliminate confusion under prior humanitarian programs about "how long [beneficiaries] will be able to stay." 101 Cong. Rec. 25811, 25837 (Oct. 25, 1989) (Statement of Rep. Richardson) (debate on precursor to TPS statute).

[4]    Even Defendants' out-of-circuit authority recognizes that any implied reconsideration authority must yield to statutory limitations. Opp. 20. *See Alberston v. FCC*, 182 F.2d 397, 399 (D.C. Cir. 1951) (finding agency had authority to hear a motion for reconsideration where "nothing in the statute or rules opposed such a motion"); *Macktal v. Chao*, 286 F.3d 822, 825–26 (5th Cir. 2002) (noting that courts have recognized implied reconsideration authority "in the absence of a specific statutory limitation"); *Gun South v. Brady*, 877 F.2d 858, 862–64 (11th Cir. 1989) (finding

Defendants also argue that Secretary Noem was entitled to vacate the prior TPS designation because, years earlier, Secretary Mayorkas had vacated the TPS *termination* for El Salvador and other countries. Opp. 1 n.1 and 21–22. Setting aside that two wrongs would not make a right, this is also a false equivalency. For one, the TPS statute creates an asymmetric framework—granting relatively broad designation authority while carefully regulating termination power. Indeed, the TPS statute authorizes the Secretary to determine to *designate* a country for TPS benefits at any time, but permits *termination* of existing benefits only following the expiration of the most recent designation or extension. *See* 8 U.S.C. §§ 1254a(a)(1), (b)(1), (b)(3). Thus, Secretary Mayorkas's actions to continue TPS protection were consistent with the statutory discretion afforded to the Secretary, but vacating an *extension* would circumvent the TPS statute's termination process. In any event, Secretary Mayorkas's actions were uniquely situated: the relevant terminations had been enjoined for years and had never taken effect,[5] Secretary Mayorkas rescinded them to bring agency rules in line with judicial determinations, and the rescission was not challenged in court.

Finally, Defendants cannot circumvent the plain text of the statute by relying on purported foreign policy or national security considerations. "Regardless of how serious the [purported] problem an administrative agency seeks to address, . . . it may not exercise its authority 'in a manner that is inconsistent with the administrative structure that Congress enacted into law.'" *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125 (2000). While Defendants emphasize the Secretary's "border and national security responsibilities," the breadth of the "national interest" standard, and "foreign policy" implications, they do not (and could not) argue

---

implied authorization for agency's temporary suspension of firearms importation where "no provision precludes the suspension").

[5]    *See Ramos v. Nielsen,* 336 F. Supp. 3d 1075, 1082–84, 1108 (N.D. Cal. 2018) *vacated and remanded sub nom. Ramos v. Wolf,* 975 F.3d 872 (9th Cir. 2020), *reh'g en banc granted,* 59 F.4th 1010 (2023), *appeal dismissed sub nom. Ramos v. Mayorkas,* 2023 WL 4363667.

that these factors authorize vacatur if the TPS statute does not.  Opp. 19–22.  And Defendants concede vacatur authority is "foreclosed" if Congress has "require[d] other procedures."  *Id.* at 20 n.11.  Congress has.  MPSJ 19–26; 8 U.S.C. § 1254a(b)(2)(B), 3(B).  Secretary Noem's attempt to erase Venezuela's "most recent previous extension" and then terminate TPS eighteen months before the "expiration of" that extension violates the statute.[6]

## III.    PLAINTIFFS HAVE ESTABLISHED IRREPARABLE HARM.

Plaintiffs' record on irreparable harm, most notably through their affidavits from MRNY's Sienna Fontaine and CASA's George Escobar, is unrefuted and clear that these harms are far from a mere "possibility."  Opp. 23.  Plaintiffs have repeatedly emphasized that Secretary Noem's actions have already caused TPS holders—including members of Plaintiffs' organizations—to toil under severe anxiety for months.  *See* Escobar Decl. ¶¶ 14–29, 31–33; Fontaine Decl. ¶¶ 17–26, 29–31.  Absent a stay of the Vacatur, employment authorization for 2023 TPS holders will expire on April 2;[7] and absent a stay of the Vacatur and Termination, 2023 TPS holders will lose their legal status just days later on April 7.  Mot. 13.  These TPS holders will be immediately exposed to a risk of detention, and potentially, immediate deportation to a country where they face persecution and threats to their physical safety.  *See, e.g.*, *id.* at 19–22; Fontaine Decl. ¶¶ 23–26.  Indeed, this risk has already materialized: since at least last week, Defendants have *already* begun detaining and deporting individuals nationwide, a fact conveniently omitted from their brief.  Declaration of Nowell D. Bamberger ("2d Bamberger Decl."), Exs. A–F.  These deportations are

---

[6]       Because the Vacatur is "incompatible with the expressed or implied will of Congress," *Youngstown Sheet and Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring), Defendants' reliance on *Youngstown* is misplaced.  Opp. 20 (citing *Youngstown*, 343 U.S. at 635 (Jackson, J., concurring)).

[7]       The January 2025 Extension instructed TPS holders that "this Federal Register notice automatically extends [certain identified EADs] through April 2, 2026 without any further action on your part."  ECF No. 8-6, 90 Fed. Reg. 5961, at 5967.  It likewise instructed employers to "accept" an expired EAD accompanied by a copy of the January 17, 2025 Federal Register Notice as proof of work authorization through April 2, 2026.  *Id.* at 5969–70.  The January 2025 Extension likewise extended employment authorization for 2021 TPS holders from September 10, 2025, to April 2, 2026.  *Id.* at 5967.

widely publicized and their veracity unchallenged if not touted by Defendants.  *See e.g., id.*, Exs. A–C, E.  It is no longer a question of if or who, but rather *when* each of the hundreds of thousands of TPS holders will succumb to the same irreparable fate if this Court does not act.  Further, Defendants dismiss the harms to TPS holders' families, Opp. 23, but courts regularly find that even "temporar[y]" agency decisions can cause "irreparable harms" when they threaten to "separate[] families."  *See e.g.*, *Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017); *Make the Road New York v. Pompeo*, 475 F. Supp. 3d 232, 268 (S.D.N.Y. 2020) (collecting cases).

Defendants offer no dispute, evidence, or law to the contrary, but instead ask this Court to ignore real, concrete harm to human beings and this nation because these harms (1) are simply "inherent" byproducts of TPS's "temporary nature" and (2) do not preclude Plaintiffs from pursuing "alternative pathways."  Opp. 23–24.  Neither save them here.

*First,* Defendants are wrong to assert that *these* harms are "inherent" to the statute.  While TPS is not permanent, the statute provides for TPS to remain in effect for a defined period of time—through the end of the most recent extension.  8 U.S.C. § 1254a(b)(2)(B), 3(B).  However temporary it may be in the abstract, in this case the January 2025 Extension concretely provides for TPS through October 2, 2026.  Unlawfully losing 18 months of lawful immigration status (including the right to work in this country) is a cognizable and irreparable injury.

*Second*, Defendants argue that Plaintiffs' members could seek immigration status under alternative statutory regimes such as asylum.  Opp. 24–25.  It is ironic that Defendants make that argument while at the same time acting virtually around the clock to destroy all possible avenues for relief.  2d Bamberger Decl., Exs. A–G.  Indeed, just last Friday, the Administration revoked so-called CHNV parole relief for individuals from multiple countries, including Venezuela.  *Id.*, Ex. G.  Likewise, the Administration's apparently unlawful invocation of the 1798 Alien Enemies Act, 50 U.S.C. § 21 *et seq*., and subsequent summary deportation of Venezuelan individuals

13

despite a contrary judicial order have been well publicized.  *See e.g.*, *id.*, Exs. A–F.  Defendants cannot come to this Court with a straight face to assert that TPS is redundant because other avenues for relief exist, while acting elsewhere every day to close those avenues to Plaintiffs' members.  *See Wolf*, 486 F. Supp. 3d at 969 (finding the Government's claimed "alternative 'avenues'" to be "dead ends" where loss of work authorization strips asylum applicants from "the necessities to apply for asylum in the first instance").

In any event, Defendants' speculation that some of Plaintiffs' members might qualify under other statutes for other forms of relief in the future does not negate the fact that Plaintiffs and their members face irreparable injury *now* in the absence of a stay under Section 705, for which the speculative alternatives would provide no relief.  Even if some members could obtain such relief, others presumably could not—and in the meantime they will have lost work authorization and will face the risk of imminent deportation.

## IV.    THE EQUITIES AND PUBLIC INTEREST FAVOR POSTPONEMENT.

Nor have Defendants shown that the balance of equities and public interest weigh in their favor.  Instead, their arguments to the contrary rest on nothing more than unsubstantiated assertions from the challenged Termination itself.  Opp. 25–26.  Defendants trumpet scaremongering about Tren de Aragua, but Plaintiffs are not seeking relief on behalf of Tren de Aragua members—who are and would remain ineligible for TPS.  Mot. 21.  More fundamentally, Defendants' contentions do not excuse them from Plaintiffs' *facial* challenge to the legality of Defendants' actions, which sweep well beyond that group.  Mot. 21–22 (citing *Loper Bright Enters. v. Raimondo*).

Defendants' remaining arguments about the public interest in enforcing immigration laws are of no avail, Opp. 25–26, because "[an] agency cannot itself violate [the law], then claim irreparable harm [when] it is held to account for such violations."  *Wolf*, 486 F. Supp. 3d at 970.  The public interest is not *harmed* but rather *served* when agencies are required to "comport with

14

[their] own rules and regulations." *Wanrong Lin v. Nielsen*, 377 F. Supp. 3d 556, 565 (D. Md. 2019).

## V.    THE REQUESTED RELIEF IS NOT OVERBROAD.

Defendants are wrong that the relief Plaintiffs seek is overbroad.  Opp. 27–28.  Their contention that a stay under Section 705 should be limited to protecting "individual named plaintiffs," *id.* at 27, makes no sense.  The "APA's default rule . . . empowers this Court to 'hold unlawful and set aside agency action.'"  *Sierra Club v. U. S. Dep't of the Interior*, 899 F.3d 260, 295 (4th Cir. 2018) (citing 5 U.S.C. § 706(2)(A)).  The APA authorizes any aggrieved person to obtain a set-aside of agency action that is not in accordance with law.  *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 828 (2024) (Kavanaugh, J., concurring).  Such a vacatur order under the APA permits all affected individuals to obtain relief, not just the individual plaintiff.  *Id.* at 827.  "When a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed."  *Maryland v. U.S. Dep't. of Agric.*, — F. Supp. 3d —, 2025 WL 800216 (D. Md., Mar 13, 2025); *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024) ("[W]e conclude that the scope of preliminary relief under Section 705 aligns with the scope of ultimate relief under Section 706, which is not party-restricted and allows a court to 'set aside' an unlawful agency action."), *cert. granted in part*, — U.S. —, 2025 WL 65914 (Mem.) (Jan. 10, 2025).  Accordingly, relief here should mirror the agency's action, which applies to all Venezuelan TPS holders.

## CONCLUSION

The Court should postpone the effective date of the Vacatur and Termination until it can finally resolve the merits.

Date: March 26, 2025

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By:    _/s/ Nowell D. Bamberger_____
Nowell D. Bamberger (21111)
Matthew D. Slater (05582)
Rathna J. Ramamurthi (*pro hac vice*)
Madeline Hundley (*pro hac vice*)
Gillian Isabelle (*pro hac vice*)
Ava Kazerouni (*pro hac vice*)
2112 Pennsylvania Ave NW
Washington, D.C. 20037
Tel. (202) 974-1500
Fax (202) 974-1999
nbamberger@cgsh.com
mslater@cgsh.com
rramamurthi@cgsh.com
mhundley@cgsh.com
gisabelle@cgsh.com
akazerouni@cgsh.com


WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS

Ryan Downer (*pro hac vice*)
Sarah L. Bessell (30969)
Madeleine Gates (seeking admission to D.Md.)
Ellie M. Driscoll (*pro hac vice*)
700 14th St. #400
Washington, D.C. 20005
Tel. (202) 319-1000
Fax (202) 319-1010
ryan_downer@washlaw.org
sarah_bessell@washlaw.org
madeleine_gates@washlaw.org
ellie_driscoll@washlaw.org

CASA, INC.

Nicholas Katz, Esq. (21920)
Hyattsville, MD 20783
Tel. 240-491-5743
nkatz@wearecasa.org

16

MAKE THE ROAD NEW YORK

Harold A. Solis (*pro hac vice*)
Paige Austin (*pro hac vice*)
301 Grove Street
Brooklyn, NY 11237
Tel. (718) 418-7690
Fax (866) 420-9169
harold.solis@maketheroadny.org
paige.austin@maketheroadny.org

*Attorneys for Plaintiffs*