YAAKOV M. ROTH
Acting Assistant Attorney General
SARAH L. VUONG
Assistant Director
WILLIAM H. WEILAND
Senior Litigation Counsel
ANNA L. DICHTER
LAUREN BRYANT
JEFFREY HARTMAN
CATHERINE ROSS
AMANDA SAYLOR
ERIC SNYDERMAN
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
Telephone: (202)-305-7082
Facsimile: (202)-305-7000
E-mail: catherine.ross@usdoj.gov
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| CASA INC., *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>KRISTI NOEM, Secretary of Homeland Security, *et al.*,<br><br>    Defendants. | Case No. 8:25-cv-00525 |

**DEFENDANTS'MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS .................................................................................................. 3

I.   Statutory Background ................................................................................................. 3

II.  Factual Background .................................................................................................... 4

STANDARDS OF REVIEW .............................................................................................. 6

ARGUMENT ...................................................................................................................... 7

I.   This Court Lacks Jurisdiction over Plaintiffs' Entire Action.....................................7

   A. The TPS Statute Bars Judicial Review of Plaintiffs' Claims................................ 7

   B. The APA Precludes Review of an Agency's Discretionary Determinations........ 9

   C. 8 U.S.C. § 1252(f)(1) Bars the Relief Plaintiffs Seek ...................................... 10

II.  Plaintiffs' APA Claims Should be Dismissed Because the Secretary's Determinations were not Contrary to Law, in Excess of Statutory Limitations, or Otherwise Unlawful...................... 13

   A. Count I- Review of Vacatur under 5 U.S.C. § 706(2) ....................................... 14

   B. Count II- Review of Termination under 5 U.S.C. § 706(2)................................ 17

   C. Count III and IV- Vacatur and Termination Violate the APA ........................... 18

III.  Plaintiffs' Constitutional Claims Fail as a Matter of Law Because the Secretary's Determinations did not Violate Equal Protection Principles............................20

CONCLUSION.................................................................................................................. 23

## TABLE OF AUTHORITIES

<u>CASES</u>

Page(s)

*Aberdeen & Rockfish R.R. v. Students Challenging Regulatory Agency Procedures (SCRAP),*
422 U.S. 289 (1975) ................................................................................................. 12

*Albertson v. FCC,*
182 F.2d 397 (D.C. Cir. 1950) ................................................................................. 15

*Ali v. Fed. Bureau of Prisons,*
552 U.S. 214 (2008) ................................................................................................... 8

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................................... 7

*Biden v. Texas,*
597 U.S. 785 (2022) ................................................................................................. 12

*Brito v. Garland,*
22 F.4th 240 (4th Cir. 2021) .................................................................................... 14

*Burnette v. Fahey,*
687 F.3d 171 (4th Cir. 2012) ..................................................................................... 7

*California v. Grace Brethren Church,*
457 U.S. 393 (1982) ................................................................................................. 14

*Chao v. Russell P. Le Frois Builder, Inc.,*
291 F.3d 219 (2d Cir. 2002) .................................................................................... 15

*Clay v. Consol. Penn. Coal Co., LLC.,*
955 F. Supp. 2d 588 (N.D. W.Va. Jul. 3, 2013) ....................................................... 7

*Dan's City Used Cars, Inc. v. Pelkey,*
569 U.S. 251 (2013) ................................................................................................... 8

*Dep't of Commerce v. New York,*
588 U.S. 752 (2019) ................................................................................................. 20

*Dep't of Homeland Sec. v. Regents of Univ. of Cal.,*
591 U.S. 1 (2020) ..................................................................................................... 23

*Direct Mktg. Ass'n v. Borhl*,
    575 U.S. 1 (2015) ................................................................ 12

*Evans v. B.F. Perkins Co.*,
    166 F.3d 642 (4th Cir. 1999) ............................................... 7

*China Unicom (Ams.) Ops. Ltd. v. FCC*,
    124 F.4th 1128 (9th Cir. 2024) ........................................... 15

*Galvez v. Jaddou*,
    52 F.4th 821 (9th Cir. 2022) ...............................................11

*Garland v. Aleman Gonzalez*,
    596 U.S. 543 (2022) .............................................. 12, 13, 14

*Gun South, Inc. v. Brady*,
    877 F.2d 858 (11th Cir. 1989) ........................................... 15

*Harisiades v. Shaughnessy*,
    342 U.S. 580 (1952) ...................................................... 17, 21

*Ivy Sports Med., LLC v. Burwell*,
    767 F.3d 81 (D.C. Cir. 2014) ............................................. 15

*Kleindienst v. Mandel*,
    408 U.S. 753 (1972) ........................................................... 21

*Lamar, Archer & Cofrin, LLP v. Appling*,
    584 U.S. 709 (2018) ............................................................. 8

*Last Best Beef, LLC v. Dudas*,
    506 F.3d 333 (4th Cir. 2007) ............................................. 15

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) ........................................................... 10

*Macktal v. Chao*,
    286 F.3d 822 (5th Cir. 2002) ............................................. 15

*Marshall Cnty. Health Care Auth. v. Shalala*,
    988 F.2d 1221 (D.C. Cir. 1993) ..................................... 7, 13

*Mathews v. Diaz*,
    426 U.S. 67 (1976) ............................................................. 21

iii

*Newdow v. Roberts*,
    603 F.3d 1002 (D.C. Cir. 2010) ............................................................... 14

*Patel v. Garland*,
    596 U.S. 328 (2022) ............................................................... 8, 9, 10

*Poursina v. USCIS*,
    936 F.3d 868 (9th Cir. 2019) ............................................................... 16, 19

*Ramos v. Nielsen*,
    975 F.3d 872 (9th Cir. 2020) ............................................................... 9, 16, 20, 23

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States*,
    945 F.2d 765 (4th Cir. 1991) ............................................................... 7

*Rockville Cars, LLC v. City of Rockville*,
    891 F.3d 141 (4th Cir. 2018) ............................................................... 7

*Sampson v. Murray*,
    415 U.S. 61 (1974) ............................................................... 14

*Sanchez v. Mayorkas*,
    593 U.S. 409 (2021) ............................................................... 4

*Scripps-Howard Radio v. FCC*,
    316 U.S. 4 (1942) ............................................................... 13, 14, 18, 19

*Trump v. Hawaii*,
    585 U.S. 667 (2018) ............................................................... *passim*

*U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*,
    508 U.S. 439 (1993) ............................................................... 11

*United States v. Carroll*,
    105 F.3d 740 (1st Cir. 1997) ............................................................... 11

*United States v. Texas*,
    599 U.S. 670 (2023) ............................................................... 12

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977) ............................................................... 2, 22, 23

*Webster v. Doe*,
    486 U.S. 592 (1988) ............................................................... 10

*Youngstown Sheet and Tube Co. v. Sawyer*,

   343 U.S. 579 (1952) ............................................................................. 17

*Zhu v. Gonzales*,

   411 F.3d 292 (D.C. Cir. 2005) ............................................................ 10

## STATUTES

### Immigration and Nationality Act of 1952:

1 U.S.C. § 204(a) ....................................................................................11

5 U.S.C. § 701(a)(1) ................................................................................ 2

5 U.S.C. § 701(a)(2) ........................................................................... 2, 10

5 U.S.C. § 706(2) ..................................................................... i, 11, 15, 18

6 U.S.C. § 202(1)-(5) ............................................................................ 17

6 U.S.C. § 552(d) .................................................................................... 3

8 U.S.C. 1254a(b)(3)(B) ........................................................................ 18

8 U.S.C. § 1103(a)(1) ............................................................................ 17

8 U.S.C. § 1252(f)(1) ...................................................................... passim

8 U.S.C. § 1254a ............................................................................ 12, 14

8 U.S.C. § 1254a(a) ................................................................................ 4

8 U.S.C. § 1254a(b) ................................................................................ 4

8 U.S.C. § 1254a(b)(1)(C) ............................................... 1, 18, 16,19,24

8 U.S.C. § 1254a(b)(3) ................................................................ 5, 6, 8,10

8 U.S.C. § 1254a(b)(5)(A) ............................................................ 1, 8, 9, 10

8 U.S.C. § 1103(a) ................................................................................ 15

### The Immigration Act of 1990:

Pub. L. No. 101-649, 104 Stat. 4978 ......................................................3

### Illegal Immigration Reform and Immigrant Responsibility Act of 1996

Pub. L. No. 104-208, 110 Stat. 3009-546 ...............................................11

<u>FEDERAL RULES OF  CIVIL PROCEDURE</u>

Fed. R. Civ. P. 12(b)(1) ............................................................................ 2, 3, 7, 24

Fed. R. Civ. P. 12(b)(6) ................................................................................ 3, 7

FEDERAL REGISTER

86 Fed. Reg. 13,574 (Mar. 9, 2021)............................................................................4

88 Fed. Reg. 40,282 (June 21, 2023)……………………………...…………...……16, 17, 20

88 Fed. Reg. 55,024 (Sept. 8, 2022) ......................................................................4

88 Fed. Reg. 68,130 (Oct. 3, 2023) ......................................................................4

90 Fed. Reg. 5,961 (Jan. 17, 2025)…..................................................................... 5

90 Fed. Reg. 8,805 (Feb. 3, 2025)…................................................................. *passim*

90 Fed. Reg. 9,040 (Feb. 5, 2025) .......................................................................*passim*

<u>MISCELLANEOUS</u>

H.R. Rep. No. 101-245 (1989) .......................................................................8,13

## INTRODUCTION

Secretary of Homeland Security Kristi Noem vacated her predecessor's extension of Venezuela's Temporary Protected Status (TPS) 2023 designation and, thereafter, terminated the designation. TPS is a humanitarian program that affords temporary relief from removal to certain aliens who are in the United States when their country of nationality experiences armed conflict, a natural disaster, or other extraordinary and temporary conditions and who are thus temporarily unable to return home safely. The TPS statute vests the Secretary with broad discretion over TPS designations. In Secretary Noem's assessment, her predecessor failed to evaluate the key statutory question: whether permitting Venezuelan nationals "to remain temporarily in the United States is contrary to the national interest." 8 U.S.C. § 1254a(b)(1)(C).

Plaintiffs are two national nonprofit organizations, CASA de Maryland, Inc., (CASA) and Make the Road New York (MRNY). Plaintiffs bring claims under the Administrative Procedure Act (APA), alleging that Secretary Noem's determinations were an arbitrary and capricious action in excess of her statutory authority under 8 U.S.C. § 1254a(b)(3)(A)-(B). Plaintiffs also claim that the Secretary's determinations were motivated by discriminatory animus toward Venezuelans in violation of the Equal Protection component of the Fifth Amendment Due Process Clauses of the Constitution. Secretary Noem and the Department of Homeland Security (DHS) (collectively, "Defendants") respectfully move to dismiss Plaintiffs' Complaint in its entirety. *See* ECF No. 1 ("Compl.").

The Court should dismiss Plaintiffs' Complaint. As a threshold matter, this Court lacks jurisdiction over all of Plaintiffs' claims, for three independent reasons. *First*, Congress has explicitly barred judicial review of TPS determinations. *See* 8 U.S.C. § 1254a(b)(5)(A) ("There is no judicial review of any determination of the [Secretary] with respect to the designation, or

termination or extension of a designation, of a foreign state" for TPS); 5 U.S.C. § 701(a)(1) (precluding review under the APA "to the extent" that other "statutes preclude judicial review."). *Second*, the APA precludes judicial review where agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The Secretary's vacatur and termination—like the previous Secretary's extension of the 2023 TPS designation for Venezuela—are not subject to judicial review. *Third*, another provision bars any court other than the Supreme Court from granting Plaintiffs the relief they seek—a sweeping order that "enjoin[s] or restrain[s]" the Secretary from exercising her authority under the TPS statute and enforcing immigration law how she deems appropriate. 8 U.S.C. § 1252(f)(1). Thus, the Court should dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

Even if the Court had jurisdiction, Plaintiffs fail to state a claim on the merits. Secretary Noem's determinations were not arbitrary and capricious. They were based on the determination that her predecessor's extension contained flaws warranting reconsideration, particularly in light of evidence that it was "contrary to national interest to permit Venezuelan nationals to remain temporarily in the United States."[1] Plaintiffs' equal protection and substantive due process claims are equally unavailing because they fail to plausibly allege that the Secretary was motivated by discriminatory animus. Secretary Noem's determinations are facially legitimate and are not motivated by racially discriminatory intent. That is true under the correct standard—the deferential review applicable to such claims in the immigration context, *see Trump v. Hawaii*, 585 U.S. 667 (2018)–and, in the alternative, under the standard sometimes applied in other contexts, *see Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977).

---

[1] *Termination of the October 3, 2023, Designation of Venezuela for [TPS],* 90 Fed. Reg. 9040 (Feb. 5, 2025).

The Court should dismiss this action with prejudice, under Federal Rule 12(b)(1) or 12(b)(6).

## STATEMENT OF FACTS

### I.    Statutory Background

The Immigration Act of 1990 established a program for providing temporary shelter in the United States on a discretionary basis for aliens from designated countries experiencing ongoing armed conflict, environmental disaster, or "extraordinary and temporary conditions" that temporarily prevent the aliens' safe return or, in the case of environmental disasters, temporarily render the country unable to handle adequately the return of its nationals. Pub. L. No. 101-649, 104 Stat. 4978. The statute authorizes the Secretary of Homeland Security,[2] "after consultation with appropriate agencies of the Government," to designate countries for "Temporary [P]rotected [S]tatus," if she finds:

> (A) … that there is an ongoing armed conflict within the state and, due to such conflict, requiring the return of aliens who are nationals of that state to that state (or to the part of the state) would pose a serious threat to their personal safety;
>
> (B) … that—
> (i) there has been an earthquake, flood, drought, epidemic, or other environmental disaster in the state resulting in a substantial, but temporary, disruption of living conditions in the area affected,
> (ii) the foreign state is unable, temporarily, to handle adequately the return to the state of aliens who are nationals of the state, and
> (iii) the foreign state officially has requested designation under this subparagraph; or
>
> (C)  … there exist extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety, unless the [Secretary] finds that permitting the aliens to remain

---

[2] Although the statute continues to refer to the Attorney General, the TPS authority now lies with the Secretary of Homeland Security by operation of the Homeland Security Act of 2002. *See* 6 U.S.C. §§ 552(d), 557 (providing that statutory references to the Attorney General in the INA generally are deemed to refer to DHS).

> temporarily in the United States is contrary to the national interest of the
> United States.

8 U.S.C. § 1254a(b).

When the Secretary designates a country for TPS, eligible aliens who are granted TPS may not be removed from the United States and are authorized to work for the duration of the country's TPS designation, so long as they remain in valid temporary protected status. 8 U.S.C. § 1254a(a), (c); *see Sanchez v. Mayorkas*, 593 U.S. 409, 412 (2021). Initial designations may not exceed eighteen months. *Id*. § 1254a(b)(2). The Secretary must consult with appropriate agencies and review each designation before it ends to determine whether the conditions for the country's designation continue to be met. *Id.* § 1254a(b)(3)(A). If the Secretary finds that the foreign state "no longer continues to meet the conditions for designation," she "shall terminate the designation" by publishing notice in the Federal Register of the determination and the basis for the termination. *Id.* § 1254a(b)(3)(B). If the Secretary "does not determine" that the foreign state "no longer meets the conditions for designation," then "the period of designation of the foreign state is extended for an additional period of 6 months (or, in the discretion of the [Secretary], a period of 12 or 18 months)." *Id.* § 1254a(b)(3)(C).

Finally, the statute makes the Secretary's TPS determinations unreviewable. "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." *Id.* § 1254a(b)(5)(A).

## II.    Factual Background

On March 9, 2021, former Secretary of Homeland Security Alejandro Mayorkas designated Venezuela for TPS based on extraordinary and temporary conditions that prevented nationals of

Venezuela from safely returning (the 2021 Designation).[3] The former Secretary extended Venezuela's TPS designation twice.[4] On October 3, 2023, in addition to extending the 2021 Designation through September 2025, the former Secretary redesignated Venezuela for TPS, effective from October 3, 2023, through April 2, 2025 (the 2023 Designation).[5] This notice provided procedures for initial applicants registering for TPS under the 2023 Designation, and it also allowed Venezuelan nationals who had previously registered for TPS under the 2021 Designation to re-register for TPS and apply to renew their employment authorization documentation with USCIS. *Id*. On January 10, 2025, former Secretary Mayorkas issued a notice extending the 2023 Designation for 18 months, allowing a consolidation of filing processes such that all eligible Venezuela TPS beneficiaries (whether under the 2021 or 2023 designations) could obtain TPS through October 2, 2026 (2025 Extension).[6]

On January 28, 2025, Secretary Noem vacated the 2025 Extension and restored the status quo that preceded that decision (2025 Vacatur).[7] *See 2025 Termination*, 90 Fed. Reg. at 9041. She explained that the 2025 Extension "did not acknowledge the novelty of its approach" or "explain how it is consistent with the TPS statute." *Id*. at 8,807; *see* 8 U.S.C. § 1254a(b)(3). The Secretary determined that the "lack of clarity" warranted a vacatur to "untangle the confusion and provide an opportunity for informed determinations regarding the TPS designations and clear guidance." *Id*.

---

[3] *See Designation of Venezuela for [TPS] and Implementation of Employment Authorization for Venezuelans Covered by Deferred Enforced Departure*, 86 Fed. Reg. 13,574 (Mar. 9, 2021)
[4] *See Extension of the Designation of Venez. for [TPS]*, 87 Fed. Reg. 55,024 (Sept. 8, 2022*); see also Extension and Redesignation of Venez. for [TPS]*, 88 Fed. Reg. 68,130 (Oct. 3, 2023).
[5] *2023 Venez. Designation*, 88 Fed. Reg. 68,130.
[6] *Extension of the 2023 Designation of Venez. for [TPS]*, 90 Fed. Reg. 5,961 (Jan. 17, 2025).
[7] *See Vacatur of 2025 Temporary Protected Status Decision for Venezuela*, 90 Fed. Reg. at 8,805 (Feb. 3, 2025).

After reviewing the Venezuelan country conditions and consulting with the appropriate U.S. Government agencies, on February 1, 2025, Secretary Noem determined that Venezuela no longer continued to meet the conditions for the 2023 Designation and that it was "contrary to the national interest to permit the covered Venezuelan nationals to remain temporarily in the United States."[8] Accordingly, Secretary Noem terminated the 2023 Designation, effective April 7, 2025 (2025 Termination). *Id*. In making this determination, she highlighted the "notable improvements in several areas, such as the economy, public health, and crime," that allow for Venezuelan nationals to be "safely returned to their home country." *Id*. at 9042. The Secretary determined that, even assuming extraordinary and temporary conditions remained, termination of the 2023 Designation is necessary because it is contrary to the national interest to permit the Venezuelan nationals to remain temporarily in the United States. *Id*. The national interest is "an expansive standard that may encompass an array of broad considerations" which "calls upon the Secretary's expertise and discretionary judgment." *Id*. Secretary Noem explained that the significant population of TPS holders has resulted in "associated difficulties in local communities where local resources have been inadequate to meet the demands cause by increased numbers," and further underscored that, across the United States, "city shelters, police stations and aid services are at maximum capacity." *Id*. In considering the national interest, she found that this population includes members of Tren de Aragua, a transnational criminal organization recently determined to "pos[e] threats to the United States." *Id*. at 9,042-43. Secretary Noem also observed that "U.S. foreign policy interests, particularly in the Western Hemisphere, are best served and protected by curtailing policies that facilitate or encourage illegal and destabilizing migration." *Id*. at 9,043.

---

[8] *2025 Termination*, 90 Fed. Reg. at 9040.

**STANDARDS OF REVIEW**

A court should dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate" the case. *Clay v. Consol. Penn. Coal Co., LLC.*, 955 F. Supp. 2d 588, 594 (N.D. W.Va. Jul. 3, 2013); Fed. R. Civ. P. 12(b)(1). In reviewing a Rule 12(b)(1) motion, the Court must accept all material factual allegations in the complaint as true, but it should not draw inferences favorable to the plaintiff. *Burnette v. Fahey*, 687 F.3d 171, 180 (4th Cir. 2012).

A court should dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) when a complaint fails to plead enough facts to state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In the APA context, the Court "may consider evidence outside the pleadings without converting [the motion to dismiss] into one for summary judgment." *Evans v. B.F. Perkins Co*., 166 F.3d 642, 647 (4th Cir. 1999) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018) ("While considering a 12(b)(6) motion, we 'may consider documents attached to the complaint or the motion to dismiss 'so long as they are integral to the complaint and authentic"). When a district court reviews agency action under the APA, "the district court sits as an appellate tribunal, not as a court authorized to determine in a trial-type proceeding whether the [agency's] study was factually flawed." *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1225 (D.C. Cir. 1993).

# ARGUMENT

## I.    This Court Lacks Jurisdiction over Plaintiffs' Entire Action

### A.  The TPS Statute Bars Judicial Review of Plaintiffs' Claims

The TPS statute provides that "[t]here is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS relief. 8 U.S.C. § 1254a(b)(5)(A). This provision bars all of Plaintiffs' claims in this Court, whether statutory or constitutional, each of which challenges Secretary Noem's vacatur and termination. *Id.*; *see also* H.R. Rep. No. 101-245, at 14 (1989) ("Moreover, none of the [Secretary's] decisions with regard to granting, extending, or terminating TPS will be subject to judicial review.") (emphasis added). The statute's broad terms confirm its broad sweep. The word 'any' carries an expansive meaning. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) ("of whatever kind"). And the phrase "with respect to" similarly "has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717 (2018); s*ee also Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (the similar phrase "related to" means "having a connection with or reference to . . . whether directly or indirectly"); Webster's New Collegiate Dictionary 1004 (9th ed. 1990) (defining "respect" as "a relation to or concern with something usually specified"). Indeed, the Supreme Court held that materially similar jurisdiction stripping language in the INA precludes a whole category of judicial review. *Patel v. Garland*, 596 U.S. 328, 337-40 (2022) (statute barring review of "any judgment regarding the granting of relief" covers "any authoritative decision" on the matter).

Section 1254a plainly precludes judicial review of the Secretary's 2025 Termination because it is a "determination with respect to the termination" of the 2023 TPS designations for

Venezuela. *See 2025 Termination*, 90 Fed. Reg. 9,040. A decision to terminate a TPS designation is at the core of the jurisdictional statute's broad sweep. Because the Secretary's determination to terminate the 2023 Designation was clearly a determination "with respect to" the TPS extension or termination, this Court lacks jurisdiction to review it. *See Ramos v. Nielsen*, 975 F.3d 872, 889 (9th Cir. 2020) (this bar "preclude[s] direct review of the Secretary's country-specific TPS determinations"), *vacated*, 59 F.4th 1010, 1011 (9th Cir. 2023).

The Secretary's 2025 Vacatur likewise falls within § 1254a(b)(5)(A)'s bar. A determination to vacate an extension of a designation is undoubtedly a determination "with respect to" the "extension of a designation." 8 U.S.C. § 1254a(b)(5)(A).; s*ee Merriam-Webster's Dictionary* (2025), Determination ("the act of deciding definitely and firmly"), *The American Heritage Dictionary* (2022), Determination ("The act of making or arriving at a decision[;] The decision reached[;] The settling of a question by an authoritative decision or pronouncement"); Black's Law Dictionary 450 (defining determination as "[t]o settle or decide by choice of alternatives or possibilities."); Webster's New Collegiate Dictionary 346 ("the act of deciding definitively and firmly"); Webster's Encyclopedic Unabridged Dictionary 393 ("the act of coming to a decision or of fixing or settling a purpose"). That determination is therefore not subject to any judicial review—full stop. *See Patel*, 596 U.S. at 338 (acknowledging importance of broadening terms "any" and "regarding" in similar jurisdiction-stripping provision).

The application of § 1254a(b)(5)(A)'s bar on judicial review is not complicated. Plaintiffs challenge the Secretary's 2025 Vacatur and 2025 Termination determinations. But both were determinations with respect to "termination or extension of a [TPS] designation." 8 U.S.C. § 1254a(b)(5)(A). This Court thus lacks jurisdiction to review them, and this case should end now. Plaintiffs try to overcome this jurisdictional bar by challenging the factors and criteria that

Secretary Noem used in making the determinations. Compl. ¶¶ 122-135. Specifically, they allege that "neither the INA nor any other statute authorizes the Secretary to vacate a previously-issued TPS determination," *id.* at ¶ 126, and that the termination was not in accordance with the procedures set forth in 8 U.S.C. § 1254a(b)(3)(B). *Id.* at ¶¶ 130-134. But the TPS statute encompasses those decisions by barring review of "any determination" "with respect to" the "termination or extension of a designation" of Venezuela for TPS. 8 U.S.C. § 1254a(b)(5)(A); *see Patel*, 596 U.S. at 338-39 (similar jurisdictional bar did not "restrict itself to certain kinds of decisions," but instead covered both subsidiary determinations and the ultimate, "last-in-time judgment" on the matter).

Because judicial review is foreclosed by § 1254a(b)(5)(A), this Court should dismiss this case for lack of jurisdiction.

B.  The APA Precludes Review of an Agency's Discretionary Determinations

The APA also precludes review where the agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). While "rare," this section of the APA is used "where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993). A determination as to what constitutes the national interest is one of these rare circumstances. *See Hawaii*, 585 U.S. at 684-86 (explaining that where the President has statutory discretion to determine if an alien's entry "would be detrimental to the interests of the United States," federal courts should not inquire "into the persuasiveness of the President's justifications"). The determination of "national interest" is one that calls upon the Secretary's "expertise and judgment" and is not a manageable legal standard. *See Zhu v. Gonzales*, 411 F.3d 292, 295 (D.C. Cir. 2005); *see also Webster v. Doe*, 486 U.S. 592, 600 (1988). Because there is no manageable

standard by which this Court can judge the Secretary's finding that permitting TPS holders from Venezuela is contrary to the national interest, this Court lacks jurisdiction to review any determination based upon that finding. *See 2025 Vacatur*; *2025 Termination.*

C.   8 U.S.C. § 1252(f)(1) Bars the Relief Plaintiffs Seek

By seeking to have the Secretary's determinations "set aside and declared inoperative" under 5 U.S.C. § 706(2), Compl. ¶¶ 127, 135, Plaintiffs also seek the type of coercive order prohibited by 8 U.S.C. § 1252(f)(1). Section 1252(f)(1) bars district courts and courts of appeals from entering an order that "enjoin[s] or restrain[s]" the operation of the statutory provisions § 1252(f)(1) covers. Section 1254a is one of those covered provisions. Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), div. C, Pub. L. No. 104-208, §§ 306, 308, 110 Stat. 3009-546. Although Section 1254a appears in Part V of the U.S. Code, the U.S. Code is inconsistent with the INA, wherein the TPS provisions in Section 244 appear in Chapter 4. *Id*. When there is a conflict, the INA prevails. *See Galvez v. Jaddou*, 52 F.4th 821, 830-31 (9th Cir. 2022); *see also U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 448 (1993) ("Though the United States Code is 'prima facie' evidence that a provision has the force of law, 1 U.S.C. § 204(a), it is the Statutes at Large that provides the 'legal evidence of laws,' [1 U.S.C.] § 112...."); *United States v. Carroll*, 105 F.3d 740, 744 (1st Cir. 1997) ("Conflicts between the text of a statute as it appears in the Statutes at Large, on one hand, and in usually reliable but unofficial sources such as the United States Code Annotated, on the other hand, are rare, but … the rendition of the law contained in the Statutes at Large controls."). INA § 244 lies within chapter 4 of title II of the INA, as amended.

Regardless of how Plaintiffs frame the relief sought, an order that would have the effect of enjoining or restraining DHS's implementation of the TPS provisions in § 1254a, is jurisdictionally

barred under § 1252(f)(1). *See Biden v. Texas*, 597 U.S. 785, 797 (2022) (§ 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or *to refrain from taking* actions to enforce, implement, or otherwise carry out the specified statutory provisions.") (quoting *Garland v. Aleman Gonzalez*, 596 U.S. 543, 544 (2022)) (emphasis added); *see* Black's Law Dictionary (12th ed. 2024) (An injunction is "[a] court order commanding or preventing an action"). To "restrain" means to "check, hold back, or prevent (a person or thing) from some course of action," to "inhibit particular actions," or to "stop (or perhaps compel)" action. *Aleman Gonzalez*, 596 U.S. at 549 (quoting 5 Oxford English Dictionary 756 (2d ed. 1989)). An order setting aside the Secretary's vacatur of the 2025 Extension and termination of the 2023 Designation would be an order "restraining" federal officials. *Id*. at 550.

It does not matter for purposes of Section 1252(f)(1) whether Plaintiffs request an order setting aside the Secretary's determinations or an injunction, or both. Like an injunction, an order to "set aside" the vacatur and termination determinations "restrict[s] or stop[s] official action," *Direct Mktg. Ass'n v. Borhl*, 575 U.S. 1, 13 (2015), by prohibiting officials from relying on the agency's determinations—the practical equivalent of an injunction compelling Defendants to stop enforcing the termination and vacatur decisions, determinations pursuant to 8 U.S.C. § 1254a. *See United States v. Texas*, 599 U.S. 670, 691 (2023) (Gorsuch, J., concurring) (questioning the validity of the district court's finding that § 1252(f)(1) does not bar vacatur orders and that § 706(2) authorizes courts to issue them). The Supreme Court has repeatedly given a broad interpretation to terms such as "injunction" in other statutes. For example, the Court interpreted a statute conferring jurisdiction over appeals from "injunction[s] in certain civil actions to apply to orders with a "coercive" effect. *Aberdeen & Rockfish R.R. v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 422 U.S. 289, 307 (1975). The Court commented that it had "repeatedly

exercised jurisdiction under [the provision] over appeals from orders" that were "not cast in injunctive language but which by their terms simply 'set aside' or declined to 'set aside' orders of the [agency]." *Id.* at 308 n.11 (quotation omitted). Here, too, setting aside the Secretary's determinations qualifies as an injunction barred by § 1252(f)(1) because it would coerce and restrain the agency's operation of covered statutes.

In any event, the plain language of Section 1252(f)(1) does not limit itself to injunctions. Instead, it prohibits lower-court orders that "enjoin *or restrain*" the Executive Branch's operation of the covered provisions. 8 U.S.C. § 1252(f)(1) (emphasis added). The common denominator of those terms is that they involve coercion. *See* Black's Law Dictionary 529 (6th ed. 1990) ("[e]njoin" means to "require," "command," or "positively direct" (emphasis omitted)); *id.* at 1314 ("[r]estrain" means to "limit" or "put compulsion upon" (emphasis omitted)). Together, they indicate that a court may not impose coercive relief that "interfere[s] with the Government's efforts to operate" the covered provisions in a particular way. *Aleman Gonzalez*, 596 U.S. at 551. That meaning easily encompasses judicial vacatur, and orders setting aside agency action. Indeed, it is precisely what Congress intended in codifying Section 1252(f) and limiting such remedial authority to the Supreme Court. *See* H.R. Rep. No. 104-469, pt. 1, at 161 (Conference Report) ("These limitations do not preclude challenges to the new procedures, but the procedures will remain in force while such lawsuits are pending."). Thus, the INA prohibits this Court from granting the relief that Plaintiffs seek in this action.

The passage of the APA created no new remedy beyond the traditional equitable relief that existed at the time of the APA's passage. *See Scripps-Howard Radio v. FCC*, 316 U.S. 4, 16–17 (1942). There is no evidence that Congress intended to create a new species of remedy when it enacted the APA. Instead, Congress simply codified existing equitable remedies. *See, e.g.,*

*Sampson*, 415 U.S. at 68 n.15, ("[t]he relevant legislative history of [section 705] … indicates that it was primarily intended to reflect existing law."). Similar to how section 705 embodied the concept of a temporary or preliminary injunction to preclude an agency action from going into effect pending review, s*ee id.*; *Scripps-Howard Radio*, 316 U.S. at 9-10, Section 706 creates no new remedy, and merely allows a court to "hold unlawful and set aside" an agency action. The setting aside of an agency decision is the functional equivalent of permanently enjoining the decision from taking effect. *Compare Stay*, Black's Law Dictionary ("The postponement or halting of a proceeding, judgment, or the like.") with *Vacatur* ("The act of annulling or setting aside."). Thus, the text, context, legislative history, sources contemporary to the APA's passage, and relevant case law all show that the APA does nothing more than preserve traditional equitable relief—relief that 8 U.S.C. § 1252(f)(1) bars when the relief would "enjoins or restrain" a Secretary's discretionary determinations under 8 U.S.C. § 1254a from taking effect.

Finally, it remains the government's view that § 1252(f)(1) also bars declaratory relief. *See Aleman Gonzalez*, 596 U.S. at 551 n.2; *cf. California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982) (Tax Injunction Act barred declaratory relief as well as injunctive relief); *Newdow v. Roberts*, 603 F.3d 1002, 1012 (D.C. Cir. 2010). The government recognizes, however, that the Fourth Circuit has held otherwise. *Brito v. Garland*, 22 F.4th 240, 250 (4th Cir. 2021) ("declaratory relief remains available under Section 1252(f)(1)").

## II.    Plaintiffs' APA Claims Should be Dismissed Because the Secretary's Determinations were not Contrary to Law, in Excess of Statutory Limitations, or Otherwise Unlawful

Even if the Court finds it has jurisdiction, the Court should dismiss Plaintiffs' four APA claims because the Secretary's determinations were lawful and consistent with 8 U.S.C. § 1254a.

14

A. <u>Count I – Review of Vacatur under 5 U.S.C. § 706(2)</u>

The Secretary has inherent authority under 8 U.S.C. §§ 1103(a) and 1254a to reconsider past actions. Plaintiffs, however, contend that the 2025 Vacatur should be set aside as unlawful because "neither the INA nor any other statute authorizes the Secretary to vacate a previously-issued TPS determination." Compl. ¶ 126. Statutory authorization to make a decision "must be understood as carrying with it an implied incidental authority" to revoke that decision, *China Unicom (Ams.) Ops. Ltd. v. FCC*, 124 F.4th 1128, 1143 (9th Cir. 2024), especially because the TPS statute gives the Secretary discretion over both the length of a TPS designation and the timing of periodic review. 8 U.S.C. § 1254a(b)(3)(A)-(C); *see Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014) (collecting cases and explaining that "administrative agencies are assumed to possess at least some inherent authority to revisit their prior decisions..."). Indeed, Courts have long recognized that an administrative agency has inherent or statutorily implicit authority to reconsider and change a decision within a reasonable period if Congress has not foreclosed this authority by requiring other procedures. *See Albertson v. FCC*, 182 F.2d 397, 399 (D.C. Cir. 1950) ("The power to reconsider is inherent in the power to decide."); *Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 229 n. 9 (2d Cir. 2002) (agency's power to reconsider "applies regardless of whether the applicable statute and agency regulations expressly provide for such review, but not where there is contrary legislative intent or other affirmative evidence") (emphasis in original) (quotations omitted); *see also The Last Best Beef, LLC v. Dudas*, 506 F.3d 333, 340 (4th Cir. 2007) (federal agencies have broad authority to reconsider their prior decisions, particularly when the prior decision contained an error); *Macktal v. Chao*, 286 F.3d 822, 825-26 (5th Cir. 2002) (holding agency acted lawfully by exercising inherent authority to reconsider decisions) (collecting cases); *Gun South, Inc. v. Brady*, 877 F.2d 858, 862 (11th Cir. 1989) ("[T]he Supreme Court and other

courts have recognized an implied authority in other agencies to reconsider and rectify errors even though the applicable statute and regulations do not expressly provide for such reconsideration."). And the Secretary has asserted and exercised this authority previously. *See Reconsideration and Recission of Termination of the Designation of El Salvador for [TPS]; Extension of the [TPS] Designation for El Salvador*, 88 Fed. Reg. 40,282, 40,285 & n.16 (June 21, 2023) ("*2023 El Salvador Reconsideration*") (Secretary Mayorkas exercising "inherent authority to reconsider any TPS-related determination, and upon reconsideration, to change the determination" to vacate his predecessor's termination of El Salvador's TPS designation).

Here, Congress gave the Secretary "undoubtedly broad" authority to "make TPS determinations" and ensure the continued designation of a country complies with the law. *Ramos*, 975 F.3d at 890 (finding statutory constraints "on the Secretary's discretion, [are] in favor of limiting unwarranted designations or extensions…") (cleaned up). Section 1254a requires the Secretary to review conditions within foreign states designated for TPS periodically, but any subsequent action turns on the Secretary's findings about whether the conditions for such designation continue to exist. 8 U.S.C. § 1254a(b)(3)(A)-(C). The statute also requires the Secretary to determine whether "permitting aliens to remain temporarily in the United States is contrary to the national interest of the United States." 8 U.S.C. § 1254a(b)(1)(C); *cf. Poursina v. USCIS*, 936 F.3d 868, 874 (9th Cir. 2019) (observing, in an analogous INA context, "that the 'national interest' standard invokes broader economic and national-security considerations, and such determinations are firmly committed to the discretion of the Executive Branch—not to federal courts" (citing *Hawaii*, 585 U.S. at 684-86)). Secretary Noem took the steps provided for by the TPS statute; Plaintiffs simply disagree with her decision.

Flexibility to reconsider decisions makes especially good sense in the TPS context. The Secretary's TPS authority inevitably requires her to make sensitive assessments affecting United States foreign policy. *See Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952) ("[A]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations [and] the war power."). When the Executive Branch acts in the field of foreign policy "… pursuant to an express or implied authorization of Congress, [its] authority is at its maximum, for it includes all that [it] possesses in [its] own right plus all that Congress can delegate." *Youngstown Sheet and Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring) (cleaned up).

Plaintiffs' view that § 1254a bars such reconsideration would mean that no Secretary of Homeland Security could ever alter a designation or extension of a designation, no matter the type of national security threat posed or the seriousness of the error in a prior determination. Section 1254a does not mandate such an unworkable and potentially detrimental limitation of the Secretary's ability to fulfill her border security, national security, and foreign policy responsibilities by exercising her broad authority to administer and enforce the immigration laws, *see, e.g.*, 6 U.S.C. § 202(1)-(5), 8 U.S.C. § 1103(a)(1), (a)(3), and to do so consistent with the President's Executive Orders.

Secretary Noem acted promptly to reconsider Secretary Mayorkas's last-minute TPS extension and did so months before the extension's effective date of April 3, 2025. If agencies hold *any* inherent power to reconsider past actions, as the law says they do, this was, as Secretary Mayorkas previously recognized, a quintessential exercise of that power. *See 2023 El Salvador Reconsideration*, 88 Fed. Reg. 40,282, 40,285 & n.16 (June 21, 2023). The 2025 Vacatur was lawful, so Count I fails to state a claim.

B.  <u>Count II – Review of Termination under 5 U.S.C. § 706(2)</u>

Plaintiffs' allegations that the 2025 Termination was unlawful also fail. Plaintiffs challenge the termination for two reasons, but neither persuades.

First, Plaintiffs say the termination of the 2023 TPS designation for Venezuela failed to meet the statutory requirements because it lacked a finding that Venezuela "no longer continues to meet the conditions for designation [under 8 U.S.C. 1254a(b)(3)(B)," because it was instead "based on a determination that continuing TPS is 'contrary to the national interest.'" Compl. ¶ 133. That argument is mistaken. The relevant portion of the TPS statute permits a TPS designation only if the designation is not "contrary to the national interest of the United States," 8 U.S.C. § 1254a(b)(1)(C), and the Secretary must terminate the designation if it no longer meets the requirements, *id.* § 1254a(b)(3)(B).

Consistent with that requirement, Secretary Noem conducted a review of Venezuela's 2023 TPS designation and, after consulting with the appropriate Government agencies, determined that Venezuela no longer continues to meet the conditions for the 2023 designation. *2025 Venez. Termination,* 90 Fed. Reg. at 9,042. Based on  an assessment conducted by the U.S. Department of State, Secretary Noem noted "improvements in several areas such as the economy, public health and crime that allow for [Venezuelan] nationals to be safely returned to their home country," and that "even assuming relevant conditions in Venezuela remain both 'extraordinary' and 'temporary,' termination…is 'required' because it is contrary to national interest…" *Id.* at 9,042. The Secretary explained that the "'[n]ational interest' is an expansive standard that may encompass an array of broad considerations, including foreign policy, public safety, national security, migration factors, immigration policy, and economic considerations." *Id.* (cleaned up); *see id.* n.5 (citing cases). In her termination notice, Secretary Noem appropriately considered these factors and provided her

reasons for terminating the 2023 Designation, including valid concerns for the safety of the U.S. communities, impact that the TPS designation has had on local community resources, and adverse impacts on border security and foreign relations. *Id*. at 9,042-43. Secretary Noem's reasoned determination was unquestionably a lawful exercise of her authority to determine whether "permitting aliens to remain temporarily in the United States is contrary to the national interest of the United States." 8 U.S.C. § 1254a(b)(1)(C); *see Poursina*, 936 F.3d at 874.

Second, Plaintiffs argue that the 2025 Termination was unlawful because it "purports to terminate TPS Status for Venezuela prior to [October 2, 2026]." Compl. ¶ 134. In Plaintiffs' view, a "termination cannot become effective until ... the expiration of the most recent previous extension." *Id*. This argument depends on Plaintiffs' challenge to the 2025 Vacatur, which vacated the 2025 Extension. If the 2025 Vacatur was effective (and as explained, Plaintiffs' challenges to it fail), there is no basis for challenging the 2025 Termination, which appropriately became effective after the expiration of the previous non-vacated extension, on April 2, 2025. *See 2025 Vacatur*, 90 Fed. Reg. 8807.

Plaintiffs have not shown that the 2025 Termination was unlawful, so Count II should also be dismissed.

C. <u>Counts III and IV – Vacatur and Termination Violate the APA</u>

Next, Plaintiffs make an overarching argument that the Secretary's Vacatur and Termination determinations "should be declared unlawful and void under the [APA]." Compl. ¶¶ 138, 142. None of Plaintiffs' five unelaborated grounds for that conclusion are persuasive.

First, Plaintiffs allege that the determinations "did not follow a periodic review of the conditions for designation and contained no determination that the conditions for designation were no longer met, as required for [*termination*] under the INA." Compl. ¶ 138(a). This argument fails

with respect to the 2025 Vacatur because that determination was not a termination under the statute. *2025 Vacatur*, 90 Fed. Reg. at 8807. Further, Plaintiffs argument that the 2025 Termination "was not issued in compliance with the consultation and other requirements provided for in the INA," Compl. ¶ 142 (f), fails for the reasons explained above. *See supra* Section II.B.

Second, Plaintiffs allege that the 2025 "Vacatur improperly assumed that prior TPS designations or extensions could be revoked solely due to policy disagreements with prior administrations." Compl. ¶ 138(b). But "[i]t is hardly improper for an agency head to come into office with policy preferences and ideas, discuss them with affected parties, sound out other agencies for support, and work with staff attorneys to substantiate the legal basis for a preferred policy." *Dep't of Commerce v. New York*, 588 U.S. 752, 78 (2019). As the Supreme Court has explained, "a court may not set aside an agency's policymaking decision solely because it may have been influenced by political considerations or prompted by Administrative priorities …. Such decisions are routinely informed by unstated considerations of politics, the legislative process, public relations, interest groups, foreign relations, and national security concerns (among others). *Id.* at 782; *see Ramos*, 975 F.3d at 897-98 ("It is expected—perhaps even critical to the functioning of government—for executive officials to conform their decisions to the administration's policies.").

Nor did the Secretary's decisions "deviate from past DHS practice," Compl. ¶¶ 138(c), 142(g), (h), as they were consistent with the previous Secretary's decisions revisiting and rescinding prior TPS determinations. *See 2023 El Salvador Reconsideration*, 88 Fed. Reg. 40,282. Finally, for the reasons discussed below, Plaintiffs cannot not adequately allege that the Secretary's determinations were "pretextual," Compl. ¶¶ 138(d), 142(i), or otherwise "based on discriminatory

motives." *Id*. ¶¶ 138(e), 142(j); *see supra* Section III. This Court should accordingly dismiss Counts III and IV.

### III.    Plaintiffs' Constitutional Claims Fail as a Matter of Law Because the Secretary's Determinations did not Violate Equal Protection Principles

Even if the Court finds that it has jurisdiction to consider Plaintiffs' constitutional claims, Secretary Noem's Vacatur and Termination determinations did not violate the Equal Protection Clause of the Fifth Amendment of the Constitution or Plaintiffs' due process rights. The Court should dismiss Counts V and VI for failure to state a claim.

Plaintiffs' claims that the Secretary's determinations were motivated by "discriminatory intent" are baseless. Compl. ¶ 146.[9] The Supreme Court has been clear that where, as here, a decision is based on a national interest finding, courts cannot look behind facially legitimate actions to hunt for illicit purposes. *See Hawaii*, 585 U.S. at 703-04. Decisions by the political branches about which classes of aliens to exclude or expel will generally be upheld against constitutional challenges so long they satisfy deferential rational-basis review. *Id*. at 704-05; *see also Mathews v. Diaz*, 426 U.S. 67, 82 (1976) (a "narrow standard of review" applies to "decisions made by Congress or the President in the area of immigration and naturalization"); *Kleindienst v. Mandel*, 408 U.S. 753, 769-70 (1972) (judicial review of "[p]olicies pertaining to the entry of aliens and their right to remain here" is limited to whether the Executive gave a "facially legitimate and bona fide" reason for its action); *Shaughnessy*, 342 U.S. at 588-89.

The deferential standard set out in *Hawaii* applies here, and the Secretary's decisions easily passes muster under it. *Hawaii's* deferential rational-basis standard governs these immigration

---

[9] To the extent that Plaintiffs allege that the Secretary's determinations were "pretextual" and "discriminatory," those arguments fail for the same reasons articulated in this Section. Compl. ¶¶ 138(d), (e), 142(i), (j).

policy decisions, which depend upon the Secretary's determination of the national interest. *See Hawaii*, 585 U.S. at 684 (considering determination "that entry of the covered aliens would be determinantal to the national interest"). Under that standard, if "there is persuasive evidence that the [decision] has a legitimate grounding in national security concerns," courts "must accept that independent justification." *Id.* at 706.

The Secretary's actions readily pass that test. Secretary Noem consulted with appropriate governmental agencies, including the Department of State, and determined that prolonging Venezuela's 2023 TPS designation was contrary to the national interest in light of the factors—such as gang activity and public safety concerns, adverse impact on U.S. communities, foreign policy interests, immigration and border policies, and the potential magnet effect of TPS on illegal immigration of Venezuelans—that are rational and related to the Government's legitimate interests in immigration, national security, and foreign policy. 2025 *Termination,* 90 Fed. Reg. at 9040, 9042-43. That determination was thus facially legitimate. And because the Secretary's determinations are closely tied—far more than "plausibly related"—to those interests and TPS's objectives, Plaintiffs fail to state a claim under the Equal Protection Clause of the Constitution. *Hawaii,* 585 U.S. at 704-05.

The Court should not apply a stricter test. *Hawaii* made clear that courts are "highly constrained" in this context; any "rule of constitutional law that would inhibit the flexibility' of the President 'to respond to changing world conditions should be adopted only with the greatest caution,' and [the Court's] inquiry into matters of entry and national security is highly constrained." *Id*. at 704.

But even under the standard set forth in *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252 (1977), Plaintiffs' Equal Protection claim would still fail. Under that test,

Plaintiffs must prove that a racially "discriminatory purpose [was] a motivating factor in the [government's] decision"—something that they cannot do through statements taken out of context and without direct links to the Secretary's determinations. *Id.* at 266; *see DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 34-35 (2020) (explaining that disparate impact, unusual recission history, and pre- and post-election statements failed "to raise a plausible inference that the recission was motivated by animus").

Plaintiffs allege that the Secretary's TPS determinations were "motivated by animus or discriminatory intent based on "race, ethnicity, and national origin." Compl. ¶¶ 146, 150. In support of their contention, Plaintiffs cite statements, social media posts, and media appearances from the Secretary to suggest discriminatory motives for the 2025 Vacatur and Termination. *Id.* ¶¶ 5, 8, 80-83, 114-118. But none of these statements reflect animus based on race or national origin; they are instead taken grossly out of context. For example, Plaintiffs repeatedly allege that Secretary Noem referred to Venezuelans as "dirtbags," *Id.* ¶¶ 5, 8, 67, 80, 114, 146,—despite clear context indicating that she was referring to members of the violent, terrorist Tren de Aragua gang, not Venezuelans writ large.  *Id.* ¶¶ 5 n.1, 114 n.90.  And Plaintiffs' reliance on the President's statements, *id.* ¶¶ 88-113, 146, emphasizes the paucity of evidence of an invidious discriminatory purpose on the Secretary's determinations. Indeed, the Ninth Circuit rejected a "cat's paw" theory in the executive agency context. *See Ramos*, 975 F.3d at 889 (emphasizing Plaintiffs' failure to "provide any case where such a theory of liability has been extended to governmental decisions in the foreign policy and national security realm"). Further, some of these quotes date back *years*, long before Venezuela was ever designated for TPS in the first instance. *See* Compl. ¶ 106 n.74 and n.75, ¶ 107 n.76 and n.77. Some—similar to statements challenged and rejected in *Hawaii*— arose on the campaign trail. *Id.* ¶¶ 91-94, 100-110.

None of the evidence outlined in the Complaint is sufficient to prove that the Secretary's TPS determinations were motivated by "racial animus, in contravention of the Fifth Amendment." *Id.* at ¶ 9. President Trump and Secretary Noem seek to reduce illegal immigration and crime-policy goals that are reflected in their public statements and that Americans elected President Trump to prioritize. Allowing Plaintiffs' claims to move forward would leave virtually any immigration policy adopted by this Administration susceptible to an Equal Protection challenge. That is untenable. Even if the *Arlington Heights* test applied, Plaintiffs fail to state an equal protection or due process claim under the Fifth Amendment because the Secretary's determinations were consistent with Congress's goal of providing TPS to eligible aliens so long as it is not contrary to the U.S. national interest. 8 U.S.C. § 1254a(b)(1)(C); *see also Hawaii*, 585 U.S. at 704-05.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed in its entirety for lack of subject matter jurisdiction and for failure to state a claim. Fed. R. Civ. P. 12(b)(1), (6).

Dated: April 28, 2025

YAAKOV M. ROTH
Acting Assistant Attorney General

SARAH L. VUONG
Assistant Director

WILLIAM H. WEILAND
Senior Litigation Counsel

LAUREN BRYANT
ERIC SNYDERMAN
ANNA L. DICHTER
JEFFREY HARTMAN
AMANDA SAYLOR
LUZ MARIA RESTREPO
Trial Attorneys


s/ Catherine Ross
CATHERINE ROSS
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044

24

*Counsel for Defendants*