# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## SOUTHERN DIVISION

| | |
|---|---|
| CASA, INC. and MAKE THE ROAD NEW YORK,<br><br>*Plaintiffs*,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, and UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>*Defendants*. | Case No.: 8:25-cv-00525-GLR<br><br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT** |

## <u>TABLE OF CONTENTS</u>

**Page(s)**

INTRODUCTION……………………………………………………………………...1

BACKGROUND………………………………………………………………………1

    I.     Statutory Framework……………………………………………………1

    II.    History of TPS Designations and Extensions for Venezuela…………………………4

    III.   Plaintiffs' Claims………………………………………………………...5

STANDARD OF REVIEW……………………………………………………………6

ARGUMENT…………………………………………………………………………...6

    I.     This Court Has Jurisdiction Over Plaintiffs' Entire Case……………………….........6

    II.    Plaintiffs Have Shown That Secretary Noem's Actions Are Contrary to Law Under Section 706 (Counts I–II)…………………………………………………...9

    III.   Plaintiffs Have Shown That Secretary Noem's Actions Are Arbitrary and Capricious and Otherwise Unlawful Under the APA (Counts III–IV)…………………………...15

    IV.   Plaintiffs Have Plausibly Alleged That Secretary Noem's Actions Are Unconstitutional (Counts V–VI)………………………………………………………………...19

    V.    Plaintiffs' Claims Are Not Barred by Statute………………………………...25

CONCLUSION………………………………………………………………………..30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Albertson v. FCC*,
    182 F.2d 397 (D.C. Cir. 1950) ................................................................9

*Alexandria Hosp. v. Heckler*,
    586 F. Supp. 581 (E.D. Va. 1984) ........................................................16

*Am. Trucking Ass'ns v. Frisco Transp. Co.*,
    358 U.S. 133 (1958)................................................................................13

*Am. Wild Horse Pres. Campaign v. Perdue*,
    873 F.3d 914 (D.C. Cir. 2017)...............................................................18

*Arbaugh v. Y & H Corp.*,
    546 U.S. 500 (1986)............................................................................7–8

*Arce v. Douglas*,
    793 F.3d 968 (9th Cir. 2015) ................................................................22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................6

*Ave. 6E Invs., LLC v. City of Yuma*,
    818 F.3d 493 (9th Cir. 2016) ................................................................24

*Biden v. Texas*,
    597 U.S. 785 (2022)..............................................................................29

*Bolling v. Sharpe*,
    347 U.S. 497 (1954)..............................................................................19

*Bowen v. Mich. Acad. of Fam. Physicians*,
    476 U.S. 667 (1986)........................................................................26–27

*Bufkin v. Collins*,
    145 S. Ct. 728 (2025)............................................................................10

*Bureau of Alcohol, Tobacco & Firearms v. Fed. Lab. Rels. Auth.*,
    464 U.S. 89 (1983)................................................................................17

*CASA de Maryland, Inc. v. Trump*,
355 F. Supp. 3d 307 (D. Md. 2018) ................................................................... *passim*

*CASA de Maryland v. U.S. DHS*,
924 F.3d 684 (4th Cir. 2019) ................................................................... 17

*Centro Presente v. U.S. Dep't of Homeland Sec.*,
332 F. Supp. 3d 393 (D. Mass. 2018) ................................................................... 22

*Chao v. Russell P. Le Frois Builder, Inc.*,
291 F.3d 219 (2d Cir. 2002)................................................................... 9–10

*City of Cleburne v. Cleburne Living Ctr.*,
473 U.S. 432 (1985)................................................................... 22

*Civil Aeronautics Bd. v. Delta Airlines Inc.*,
367 U.S. 316 (1961)................................................................... 10

*Cnty. of Sacramento v. Lewis*,
523 U.S. 833 (1998)................................................................... 25

*Cuozzo Speed Tech. v. Com. for Intell. Prop.*,
579 U.S. 261 (2016)................................................................... 26

*Dep't of Com. v. New York*,
588 U.S. 752 (2019)................................................................... 17, 19

*DHS v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020)................................................................... 27

*Encino Motorcars, LLC v. Navarro*,
579 U.S. 211 (2016)................................................................... 18

*Exela Pharma Sciences, LLC v. Kappos*,
No. 1:12-cv-469, 2012 WL 3638552 (E.D. Va. Aug. 22, 2012) ............................. 8

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009)................................................................... 18

*Florida v. United States*,
660 F. Supp. 3d 1239 (N.D. Fla. 2023)................................................................... 30

*Graham v. Richardson*,
403 U.S. 365 (1971)................................................................... 22

*Gun South, Inc. v. Brady*,
  877 F.2d 858 (11th Cir. 1989) .............................................................................10

*Heckler v. Chaney*,
  470 U.S. 821 (1985)............................................................................................29

*Inova Alexandria Hosp. v. Shalala*,
  244 F.3d 342 (4th Cir. 2001) ..............................................................................28

*INS v. St. Cyr*,
  533 U.S. 289 (2001)............................................................................................27

*Ivy Sports Med., LLC v. Burwell*,
  767 F.3d 81 (D.C. Cir. 2014) ..............................................................................13

*Kidd v. Mayorkas*,
  734 F. Supp. 3d 967 (C.D. Cal. 2024) ................................................................30

*Kucana v. Holder*,
  558 U.S. 233 (2010).......................................................................................26–27

*Kwong Hai Chew v. Colding*,
  344 U.S. 590 (1953)............................................................................................21

*Lee v. USCIS*,
  592 F.3d 612 (4th Cir. 2010) ................................................................................7

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024) (Gorsuch, J., concurring)...................................................10

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)..............................................................................................7

*Macktal v. Chao*,
  286 F.3d 822 (5th Cir. 2002) ..............................................................................10

*McLaughlin v. Florida*,
  379 U.S. 184 (1964)............................................................................................22

*McNary v. Haitian Refugee Ctr.*,
  498 U.S. 479 (1991)..................................................................................7, 25, 27

*Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Automobile Ins. Co.*,
  463 U.S. 29 (1983) (Rehnquist, J., concurring in part and dissenting in part) ......17

*Mylan Labs., Inc. v. Matkari,*
  7 F.3d 1130 (4th Cir. 1993) .......................................................................6, 15

*Nat. Res. Def. Council v. Regan,*
  67 F.4th 397 (D.C. Cir. 2023) ............................................................................9

*Nat'l Fed'n of Indep. Bus. v. Dep't of Lab.,*
  595 U.S. 109 (2022) .............................................................................................9

*Nat'l TPS All. v. Noem,*
  No. 3:25-cv-01766, 2025 WL 957677, – F. Supp. 3d – (N.D. Cal. Mar. 31, 2025) ........ *passim*

*New Jersey v. EPA,*
  517 F.3d 574 (D.C. Cir. 2008) .........................................................................10

*Nielsen v. Preap,*
  586 U.S. 392 (2019) ...........................................................................................29

*Nken v. Holder,*
  556 U.S. 418 (2009) .............................................................................................8

*Ohio Valley Env't Coal., Inc. v. Apogee Coal Co., LLC,*
  555 F. Supp. 2d 640 (S.D. W.Va. 2008) ....................................................11, 13

*Orgain v. City of Salisbury,*
  305 F. App'x 90 (4th Cir. 2008) .......................................................................22

*Ragsdale v. Wolverine World Wide, Inc.,*
  535 U.S. 81 (2002) .............................................................................................12

*Ramos v. Nielsen,*
  321 F. Supp. 3d 1083 (N.D. Cal. 2018) ......................................................22, 24

*Ramos v. Nielsen,*
  336 F. Supp. 3d 1075 (N.D. Cal. 2018) *vacated and remanded sub nom. Ramos v. Wolf,* 975 F.3d 872 (9th Cir. 2020), *reh'g en banc granted,* 59 F.4th 1010 (2023), *appeal dismissed sub nom. Ramos v. Mayorkas,* 2023 WL 4363667 ................................12, 24

*Scripps-Howard Radio v. FCC,*
  316 U.S. 4 (1942) ...............................................................................................30

*Sebelius v. Auburn Regional Med. Ctr.,*
  568 U.S. 145 (2013) .............................................................................................7

*Sierra Club v. U.S. Army Corps of Eng'rs*,
909 F.3d 635 (4th Cir. 2018) ........................................................11

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977).........................................................................22

*W. Va. Coal Workers Pneumoconiosis Fund v. Bell*,
781 Fed. App'x 214 (4th Cir. 2019) .............................................16

*Washington v. Davis*,
426 U.S. 229 (1976)........................................................................19

*Webster v. Doe*,
486 U.S. 592 (1988)........................................................................28

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Servs.*,
586 U.S. 9 (2018)......................................................................27, 28

*Wood v. U.S. Dep't of Agric.*,
No. 2:19-cv-00897, 2020 WL 1521801 (S.D. W.Va. Mar. 30, 2020) ....................27

**Federal Statutes**

5 U.S.C. § 701....................................................................................27

5 U.S.C. § 706................................................................................5, 15

6 U.S.C. § 557......................................................................................2

8 U.S.C. § 1254a ........................................................................ *passim*

8 U.S.C. §§ 1101 to 1537 ("The Immigration and Nationality Act of 1990") ................2

28 U.S.C. § 1331..................................................................................6

Pub. L. No. 107-296, 116 Stat. 2135 (2002).....................................2

**Other Authorities**

8 C.F.R. § 244.2............................................................................2, 21

8 C.F.R. § 244.4............................................................................2, 21

8 C.F.R. § 244.9..................................................................................2

8 C.F.R. § 244.14(a)(1) ................................................................................................3

86 Fed. Reg. 13574 ......................................................................................................4

87 Fed. Reg. 55024 ......................................................................................................4

88 Fed. Reg. 68130 ...............................................................................................*passim*

90 Fed. Reg. 5961 ................................................................................................*passim*

90 Fed. Reg. 8805 ................................................................................................*passim*

90 Fed. Reg. 9040 ................................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) ..............................................................................................9

Fed. R. Civ. P. 56(a) ..................................................................................................9

H.R. Rep. No. 100-627 (1988) ....................................................................................2

## INTRODUCTION

Plaintiffs respectfully submit this Memorandum of Law in Opposition to Defendants' Motion to Dismiss, ECF No. 54 ("Motion" or "Mot."). The Complaint challenges two actions by Defendants Department of Homeland Security ("DHS") and DHS Secretary Kristi Noem. First, on February 3, 2025, Defendants purportedly "vacated" (the "Vacatur") the January 17, 2025 extension (the "January 2025 Extension") of Temporary Protected Status ("TPS") for Venezuelans. Second, two days later, Defendants terminated the 2023 TPS designation for Venezuela (the "Termination"). As a result of these actions, hundreds of thousands of Venezuelans who have legally resided in the United States since at least 2023 will lose protected status and face returning to a country still in the throes of a humanitarian crisis.

The Complaint demonstrates that Defendants' actions are subject to review and set-aside under the Administrative Procedure Act ("APA"). *First*, both the Vacatur and Termination facially violate Congress's statutorily prescribed procedures intended to ensure stability and predictability for TPS beneficiaries. *Second*, Defendants' actions were arbitrary and capricious or otherwise unlawful, including because they failed to adhere to clear statutory directives, deviated from past DHS practice, and were animated by discriminatory motives. *Third*, Plaintiffs have plausibly alleged that Defendants' actions were motivated by racial animus in violation of the Fifth Amendment's guarantee of equal protection under the law and due process. *Finally*, Defendants' reliance on several statutes to bar relief is inapposite and does not defeat this Court's subject-matter jurisdiction. For these reasons, Plaintiffs respectfully ask that the Motion be denied.

## BACKGROUND

### I.    Statutory Framework

TPS provides temporary immigration relief to foreign nationals in the United States who

cannot safely return to their home nation. 8 U.S.C. § 1254a(a)(1), (b). The Immigration and Nationality Act of 1990, 8 U.S.C. §§ 1101 to 1537 ("INA"), authorizes the DHS Secretary[1] to designate a country for TPS if the Secretary, after consulting with appropriate Government agencies, finds that one of three sets of conditions exists: (1) an armed conflict; (2) an environmental disaster; or (3) other "extraordinary and temporary conditions in the foreign state." 8 U.S.C. § 1254a(b)(1). TPS allows nationals of a designated country (and individuals with no nationality who last habitually resided in the country), who are present in the United States at the time of the designation and meet other stringent eligibility criteria, to remain lawfully in the United States during the designation period. *Id.* § 1254a(a), (c). To be eligible for TPS, individuals from a designated country must submit an application, documentation, and fees, and they must also show that they meet the criteria for TPS, including not having a disqualifying criminal history, i.e., more than one misdemeanor or single felony. *Id.* § 1254a(c)(1); 8 C.F.R. §§ 244.2, 244.4, 244.9.

Congress created TPS to provide "a more formal and orderly mechanism for the selection, processing, and registration" of individuals "from countries experiencing turmoil," H.R. Rep. No. 100-627, at 4, rather than rely on *ad hoc* presidential action for those purposes. The INA thus authorizes TPS beneficiaries to work in the United States, prevents DHS from detaining them because of their immigration status, and forbids DHS from removing them from the United States. 8 U.S.C. § 1254a(a)(1), (d)(4). In so doing, Congress made clear its intention that TPS beneficiaries could live and work in the United States without fear of deportation.

After the initial TPS designation, the INA provides a process for periodic review of that status. At least 60 days before the end of the initial designation period or any extended designation

---

[1]    Although the statute originally (and textually) delegated this authority to the Attorney General, in 2003, Congress transferred authority for TPS designation, extension, and termination to the DHS Secretary. 6 U.S.C. § 557; 8 U.S.C. § 1103(a); *see* Pub. L. No. 107-296, 116 Stat. 2135 (2002). Thus, references to the Attorney General in the original provisions of the INA now refer to the DHS Secretary. *See* 8 U.S.C. § 1103(a).

period, the Secretary shall, "after consultation with appropriate agencies of the Government," "review the conditions in the foreign state (or part of such foreign state) for which a designation is in effect" and "determine whether the conditions for such designation under this subsection continue to be met." *Id.* § 1254a(b)(3)(A). The INA grants the Secretary authority for extending TPS, "after consultation with appropriate agencies of the Government." *Id.* § 1254a(b)(1).

The INA also provides a specific process for termination of a country's TPS.[2] The Secretary may terminate TPS only if, following her periodic review (which is to occur at least 60 days before the end of the TPS designation), she determines the designated country "no longer continues to meet the conditions of designation." 8 U.S.C. § 1254a(b)(3)(A)–(B). The statute provides no other permissible bases for termination. *See id.* The effective date of any TPS termination must be at least 60 days after the termination notice is published and no earlier than "the expiration of the most recent previous extension." *Id.* § 1254a(b)(3)(B). Thus, while the Secretary cannot cut a TPS period short, she can extend the period "to provide for an orderly transition." *Id.* § 1254a(b)(3), (d)(3). These provisions reflect an express legislative determination that TPS, while temporary, should be predictable and not arbitrarily revoked.

If, after the review process, the Secretary does *not* determine that a country's TPS should terminate, the country's TPS automatically extends for at least six months or, by the Secretary's discretion, a period of 12 or 18 months. *Id.* § 1254a(b)(3)(C). The INA does not authorize the Secretary to "vacate" a prior TPS determination, and any such procedure would be incompatible with the termination procedures specified by statute.

---

[2]     Further, there is a regulatory mechanism that allows the Government to withdraw the TPS of an *individual* TPS beneficiary that is distinct from termination of TPS of an entire country. *See* 8 C.F.R. § 244.14(a)(1) (authorizing USCIS to withdraw TPS granted to an alien who "at any time thereafter becomes ineligible for such status"). One such ground for individual TPS inadmissibility is, upon proper showing, "national security." *Id.* § 244.3(c).

## II.    History of TPS Designations and Extensions for Venezuela

For the first time in March 2021, then-Secretary of DHS Alejandro Mayorkas designated Venezuela for TPS based on extraordinary and temporary conditions, including Venezuela's economic, health, and political crises; human rights abuses; and rising levels of violence (the "2021 Designation").  86 Fed. Reg. 13574.  The 2021 Designation enabled Venezuelans already residing in the United States as of March 2021 to apply for TPS.  *Id.*  On September 8, 2022, Secretary Mayorkas extended Venezuela's designation until March 10, 2024.  87 Fed. Reg. 55024.

In October 2023, Secretary Mayorkas again extended Venezuela's TPS designation until September 10, 2025.  88 Fed. Reg. 68130.  In the same October 2023 notice, Secretary Mayorkas also redesignated Venezuela for TPS for 18 months, through April 2, 2025 (the "2023 Designation").  *Id.* at 68134.  The redesignation allowed more Venezuelans to apply for TPS, provided they had continuously resided in the United States since July 31, 2023, and were continuously physically present in the United States since October 3, 2023.  *Id.*  The October 2023 decision thus created two tracks for Venezuelan TPS holders: (1) those who registered under the 2021 Designation, whose TPS was extended through September 10, 2025; and (2) those who registered under the 2023 Designation, who would receive TPS through April 2, 2025.  *See id.* at 68131.

On January 17, 2025, DHS published an extension of the 2023 Designation through October 2, 2026.  90 Fed. Reg. 5961.  Consistent with the INA, 8 U.S.C. § 1254a(b)(3)(A), Secretary Mayorkas's decision to extend the 2023 Designation occurred approximately 80 days before the designation was set to expire on April 2, 2025.  The January 2025 Extension also consolidated the applicant filing processes, allowing all eligible Venezuelan TPS beneficiaries (from both the 2021 and 2023 Designations) to obtain TPS through October 2, 2026.  90 Fed Reg.

at 5962.  It also provided for extension of work authorization until that date.  *Id.*

On January 25, 2025, Secretary Noem was sworn in as DHS Secretary.  On January 28, 2025, she announced, and on February 3 she formally published, a "vacatur" of the January 2025 Extension, "effective immediately."  90 Fed. Reg. at 8806.  By purporting to override the January 2025 Extension, Secretary Noem claimed the right to decide anew whether to extend the 2021 and 2023 Designations by February 1, 2025 and July 12, 2025, respectively.  *Id.* at 8807.  On February 5, 2025, Secretary Noem terminated the 2023 Designation.  90 Fed. Reg. at 9040–41.  The Termination stated that it would take effect April 7, 2025.  *Id.* at 9044.

### III.    Plaintiffs' Claims

The Complaint pleads six counts, four of which are under the APA and two of which arise under the Constitution.  In Count I, Plaintiffs ask the Court to declare unlawful and set aside the Vacatur because the TPS statute clearly does not authorize the Secretary to vacate a prior TPS designation and therefore the Vacatur was "not in accordance with law" within the meaning of 5 U.S.C. § 706(2).  ECF No. 1 ¶¶ 122–127 ("Compl.").  In Count II, Plaintiffs similarly ask the Court to declare unlawful and set aside the Termination as "not in accordance with law" because TPS for Venezuela had previously been extended until October 2, 2026, and under 8 U.S.C. § 1254a(b)(3)(B) any termination of TPS status cannot take effect before that date.  *Id.* ¶¶ 129–135. In Counts III and IV, Plaintiffs claim that both the Vacatur and Termination should be declared unlawful and void under the APA because (i) each decision failed to follow the requirements for a designation under the TPS statute; (ii) DHS failed to engage in any meaningful process prior to issuing the decisions, thereby deviating from past practice, (iii) DHS improperly assumed that a prior TPS designation could be revoked *solely* due to policy disagreements with prior administration, (iv) and the circumstances and timeframe of both the Vacatur and Termination

suggest that the decisions were pretextual and instead improperly based on discriminatory motives. *Id.* ¶¶ 136–143.

*Finally*, Counts V and VI seek relief because Defendants' repeated remarks describing Venezuelan migrants as "dirtbags" and "criminals" create a reasonable inference that the Vacatur and Termination were motivated by the Administration's animus against Venezuelans in violation of the Fifth Amendment's Equal Protection and Due Process protections. *Id.* ¶¶ 144–151.

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may not be granted so long as the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). In conducting its review, the Court should accept as true these allegations and should "view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). For reasons discussed below in Section I.A, Defendants do not actually challenge the Court's subject-matter jurisdiction, so the standard for Rule 12(b)(1) need not be considered separately.

## ARGUMENT

### I.    This Court Has Jurisdiction Over Plaintiffs' Entire Case.

Defendants do not contest that the Court has federal question jurisdiction. Compl. ¶¶ 10–11. Nor can they. Section 1331 grants federal courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, which comprises Plaintiffs' APA and Fifth Amendment claims. Compl. ¶¶ 127, 135, 138, 142, 147, 151. Plaintiffs have further established standing, and Defendants do not argue otherwise. Plaintiffs are organizations that have pleaded that their members are beneficiaries of the TPS designations for

Venezuela and that they would lose their immigration status and right to work absent judicial review. *Id.* ¶¶ 13–31. That is more than sufficient. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim.") (cleaned up).

Instead, Defendants argue that this Court purportedly lacks subject-matter jurisdiction under three separate statutes. But none precludes the Court's jurisdiction here.[3] Their plain terms do not address a court's "jurisdiction": both Section 1254a(b)(5)(A) and Section 701(A)(2) limit "judicial review," whereas Section 1252(f)(1) limits the "scope of the relief" available. *Cf. Lee v. USCIS*, 592 F.3d 612, 619–20 (4th Cir. 2010) (finding no jurisdiction based on provision that "no court shall have *jurisdiction* to review" "any judgment" or "other decision" (emphasis added)). And the absence of the word "jurisdiction" is not merely semantics. The Supreme Court has repeatedly emphasized that Congress must "clearly state that a threshold limitation on a statute's scope shall count as jurisdictional." *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (1986) ("[W]hen Congress does not rank a statutory limitation on [the scope of a statute] as jurisdictional, courts should treat the restriction as nonjurisdictional in character."); *Sebelius v. Auburn Regional Med. Ctr.*, 568 U.S. 145, 153 (2013) (requiring Congress to "clearly state[]" that a statutory provision is jurisdictional); *see also McNary v. Haitian Refugee Ctr.*, 498 U.S. 479, 486 n.6, 494 (1991) (holding that the language "[t]here shall be no administrative or judicial review of a determination respecting an application for adjustment of status" did not strip the court of jurisdiction to hear "challenges to the procedures used by INS"

---

[3]     Judge Chen has already rejected the same jurisdictional challenges under sections 1254a(b)(5)(A) and 1252(f)(1) in parallel litigation challenging the Vacatur and Termination. *See Nat'l TPS All. v. Noem*, 2025 WL 957677, – F. Supp. 3d –, *10–19 (N.D. Cal. Mar. 31, 2025).

and thus the district court's "general federal-question jurisdiction under 28 U.S.C. § 1331 to hear this action remain[ed] unimpaired" (quoting 8 U.S.C. § 1160(e)).

By contrast, elsewhere in the INA, Congress clearly *did* strip courts of jurisdiction in specific circumstances not present here. *See* 8 U.S.C § 1252(a)(2)(B)(i) ("[N]o court shall have jurisdiction to review any judgment regarding the granting of relief under [various sections] of this title[.]"); *Nken v. Holder*, 556 U.S. 418, 430 (2009) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (cleaned up)). For that reason, Defendants' reliance on *Patel v. Garland*, Mot. 8, is misplaced, because the provision at issue there explicitly provided that "no court shall have *jurisdiction*." 596 U.S. 328, 332–33 (2022) (quoting 8 U.S.C. § 1252(a)(2)(B)).

Defendants' arguments therefore go to whether relief is available for Plaintiffs' claims—a Rule 12(b)(6) issue—and not to alleged defects in this Court's subject-matter jurisdiction under Rule 12(b)(1). *Arbaugh*, 546 U.S. at 511 (cautioning against "drive-by jurisdictional rulings" that do not "explicitly consider[] whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim" (internal quotations omitted)). Thus, because the APA gives rise to a presumption "confer[ring] a general *cause of action* upon all persons adversely affected by an agency action," Defendants cannot rely on provisions barring "judicial review" or limiting the scope of relief to bar jurisdiction. *See Exela Pharma Sciences, LLC v. Kappos*, 2012 WL 3638552, at *4 (E.D. Va. Aug. 22, 2012) (citing *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984)). Absent a basis to strip this Court of federal question jurisdiction, Defendants' claim of a lack of subject-matter jurisdiction is unfounded.

## II.    Plaintiffs Have Shown That Secretary Noem's Actions Are Contrary to Law Under Section 706 (Counts I–II).

As a preliminary matter, Defendants do not challenge any of Plaintiffs' APA claims on the basis that Plaintiffs "fail[] to state a claim." Fed. R. Civ. P. 12(b)(6). In so doing, Defendants effectively concede that Plaintiffs' claims should not be dismissed at this stage. Instead, Defendants' argument is that Plaintiffs' APA claims must be dismissed *on the merits*, Mot. 14, which is not the relevant inquiry on a motion to dismiss but rather on a motion for summary judgment. *See* Fed. R. Civ. P. 56(a). In any event, Plaintiffs have stated a claim that Defendants acted contrary to the INA's plain terms in issuing the Vacatur and Termination.

### A.  Secretary Noem's Vacatur Was Contrary to Law.

Defendants concede that the INA contains no express grant of authority to the Secretary to "vacate" a TPS extension already granted. Instead, Defendants claim to rely on an "inherent authority" to "reconsider" the January 2025 Extension under 8 U.S.C. §§ 1103(a) and 1254a. Mot. 15. By the INA's plain text, no such "inherent authority" exists.

As the Supreme Court has repeatedly emphasized, agencies "are creatures of statute" and "possess only the authority that Congress has provided." *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab.*, 595 U.S. 109, 117 (2022). Accordingly, DHS "has no inherent authority," but "only the authority given it by" the INA. *See Nat. Res. Def. Council v. Regan*, 67 F.4th 397, 401 (D.C. Cir. 2023). As Defendants concede, courts recognize an agency's inherent authority to reconsider its decisions only where "Congress has not foreclosed this authority by requiring other procedures." Mot. 15; *see Albertson v. FCC*, 182 F.2d 397, 399 (D.C. Cir. 1950) (finding "nothing in the statute or rules opposed [agency's authority to hear] a motion [for reconsideration]"); *Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 229 n.9 (2d Cir. 2002) (explaining that an agency lacks inherent authority to reconsider "where there is contrary legislative intent or other affirmative

evidence" (cleaned up)); *Macktal v. Chao*, 286 F.3d 822, 825–26 (5th Cir. 2002) (noting that courts have recognized implied reconsideration authority "in the absence of a specific statutory limitation"); *Gun South, Inc. v. Brady*, 877 F.2d 858, 862–64 (11th Cir. 1989) (finding implied authorization for agency's temporary suspension of firearms importation where "no provision precludes the suspension"). Congress "undoubtedly can limit an agency's discretion to reverse itself," *New Jersey v. EPA*, 517 F.3d 574, 583 (D.C. Cir. 2008), and it has done so here.

The claim for vacatur authority here fails because it would eviscerate the stringent timing and process constraints for terminating a TPS designation that Congress mandated in the INA. *See Civil Aeronautics Bd. v. Delta Airlines Inc.*, 367 U.S. 316, 325 (1961) (explaining that where statutes provide "specific instructions," those instructions "are to be followed scrupulously" and "should not be modified by resort to such generalities as 'administrative flexibility' and 'implied powers'"); *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 428 (2024) (Gorsuch, J., concurring) ("[I]t is Congress's view of 'good government' . . . that controls."). The INA clearly provides that once a foreign state has been designated for TPS, such designation "*shall* remain in effect until the effective date of [any subsequent] termination of the designation under paragraph (3)(B)," and "[s]uch termination . . . *shall not be effective earlier* than 60 days after the date the notice is published or, if later, *the expiration of the most recent previous extension*." 8 U.S.C. § 1254a(b)(2)(B), (3)(B) (emphasis added); *see Bufkin v. Collins*, 145 S. Ct. 728, 737 (2025) ("It is undisputed that the word 'shall' imposes a mandatory command."). At the time of the Vacatur, the January 2025 Extension provided that TPS for Venezuela could not be terminated prior to October 2, 2026. 90 Fed. Reg. 5961. Defendants cannot circumvent the INA's procedures for terminating TPS by rebranding a termination as a "vacatur" of a prior extension. To hold otherwise would allow DHS to employ a "back-door mechanism . . . to circumvent Congress's intended

[processes]" for termination and extensions under the statute. *Sierra Club v. U.S. Army Corps of Eng'rs*, 909 F.3d 635, 654 (4th Cir. 2018).

Defendants cite no authority to the contrary. *The Last Best Beef, LLC v. Dudas* focused on instances where federal agencies can correct themselves if they "take erroneous or unlawful action." 506 F.3d 333, 340 (4th Cir. 2007). But here, Secretary Noem did not claim any "error" in Secretary Mayorkas's extension for Venezuela. *See* 90 Fed. Reg. at 8807. She cited only his "novel approach" to consolidating registration for the two Venezuela designations, and what she considered his "inadequately developed" explanation for it. *Id.* Indeed, in a parallel litigation, Defendants concede that the registration was neither novel nor contrary to the statute. *See Nat'l TPS All. v. Noem*, No. 3:25-cv-1766 (N.D. Cal. Mar. 24, 2025), ECF No. 46-1 at 69:25–70:2 ("Plaintiffs are correct that these overlapping registrations . . . [are] within the discretion of the Secretary[.]"). Thus, Secretary Noem's Vacatur was rooted in nothing more than a policy disagreement, which provides no "inherent authority" to violate the statute. *See Ohio Valley Env't Coal., Inc. v. Apogee Coal Co., LLC*, 555 F. Supp. 2d 640, 647 (S.D. W.Va. 2008) (distinguishing *Last Best Beef* and finding permit modification ineffective where "[a]ny mistake made by the agency was to issue a permit inconsistent not with the law, but with a policy choice").

Defendants also argue that Secretary Noem was entitled to vacate the prior TPS designation because "the Secretary has asserted and exercised this authority previously." Mot. 16. But DHS has never before vacated a TPS designation. Defendants point to Secretary Mayorkas's rescission of the TPS *termination* for El Salvador and other countries, but this cannot justify the unlawful vacatur at issue here. For one, the TPS statute creates an asymmetric framework—providing limited prescriptions as to the timing of *designations* while carefully regulating the process and timing of *terminations*. *Compare* 8 U.S.C. § 1254a(b)(1) (authorizing the Secretary to designate

a country for TPS benefits at any time) *with id.* § 1254a(b)(3)(B) (providing that termination of existing benefits can take effect no "earlier than 60 days after the date the notice is published" and no earlier than "the expiration of the most recent previous extension").   Thus, Secretary Mayorkas's actions to continue TPS protection were consistent with the statutory discretion afforded to the Secretary, but vacating an *extension* would circumvent the TPS statute's termination process.   Moreover, his actions were taken to conform to longstanding injunctions against the terminations at issue.[4]   Regardless, Defendants cannot assert that prior agency practice overrides Congress's clear intent: even consistent prior agency practice would not render a vacatur lawful when the vacatur violates express statutory requirements.

Nor can Defendants circumvent the plain text of the statute by relying on ostensible foreign policy or national security considerations.   "Regardless of how serious the [purported] problem an administrative agency seeks to address, . . . it may not exercise its authority in a manner that is inconsistent with the administrative structure that Congress enacted into law." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 91 (2002) (cleaned up).   While Defendants emphasize the Secretary's "border security, national security, and foreign policy responsibilities," they do not (and could not) argue that these factors authorize vacatur if the TPS statute does not.   Mot. 17. Similarly unavailing is Defendants' argument that, absent an implied vacatur power, the Secretary "could [n]ever alter a designation or extension of a designation, no matter the type of national security threat posed or the seriousness of the error." *Id.*   As discussed above, Secretary Noem did not seek to correct an error, but to make new policy.   Regardless, the parties do not dispute that the INA authorizes Secretary Noem in the future to decide whether to extend or terminate

---

[4]        *See Ramos v. Nielsen,* 336 F. Supp. 3d 1075, 1082–84, 1108 (N.D. Cal. 2018) *vacated and remanded sub nom. Ramos v. Wolf,* 975 F.3d 872 (9th Cir. 2020), *reh'g en banc granted,* 59 F.4th 1010 (2023), *appeal dismissed sub nom. Ramos v. Mayorkas,* 2023 WL 4363667.

Venezuela's existing TPS designations, but any such termination "must follow a process consistent with applicable law and regulations." *Ohio Valley Env't Coal., Inc.*, 555 F. Supp. 2d at 647. Accordingly, the termination may occur only *after* the next periodic review process. 8 U.S.C. § 1254a(b)(3)(B). She unequivocally may *not* terminate (or "vacate") the designation before "the expiration of the most recent previous extension." *Id.*; *see Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81, 87–88 (D.C. Cir. 2014) (recognizing that the statutory reclassification process, "while somewhat burdensome, serves important purposes, both generally and in [the governing] statute").

Finally, while Defendants invoke Section 1103(a) to support their claim of inherent authority, that section is a general grant "for carrying out [Secretary Noem's] authority under the provisions of" the immigration laws, which provide no vacatur authority. 8 U.S.C. § 1103(a)(3). Such "broad enabling statute[s]" at most provide authority to correct "inadvertent ministerial errors," *Am. Trucking Ass'ns v. Frisco Transp. Co.*, 358 U.S. 133, 145–46 (1958), not a complete reversal of a lawful extension of TPS in contravention of statutory procedures. Because Plaintiffs have stated a claim that the Vacatur violated the INA's plain terms, Count I should not be dismissed.

### B.  Secretary Noem's Termination Is Likewise Unlawful.

Defendants' arguments that the Termination was lawful are also unavailing. As they did with the Vacatur, DHS failed to comport with the INA's procedures in issuing the Termination.

*First*, the unlawfulness of the Termination follows inexorably from the unlawfulness of the purported Vacatur. Because the Vacatur is unlawful*, see supra* Section II.A., the January 2025 Extension remains in effect. Pursuant to the January 2025 Extension, the 2023 Designation will expire on October 2, 2026. 90 Fed. Reg. 5961. Thus, under the INA, any subsequent termination of the 2023 Designation may not take effect before October 2, 2026. *See* 8 U.S.C. § 1254a(b)(3)(B). The Termination's purported effective date is April 7, 2025. 90 Fed. Reg. at

9041.  Secretary Noem therefore seeks to unlawfully cut short the TPS designation of Venezuela by nearly a year and a half.  *See* 8 U.S.C. § 1254a(b)(3)(B).  Indeed, Defendants themselves tie the legality of the Termination to the legality of the Vacatur.  *See* Mot. 19 ("If the 2025 Vacatur was effective, . . . there is no basis for challenging the 2025 Termination[.]").

*Second*, Secretary Noem arrived at the Termination without adhering to the INA's express requirements.  The INA provides that, prior to terminating a TPS designation, the DHS Secretary must "review the conditions in the foreign state . . . for which a designation is in effect" and "determine whether the conditions for such designation under this subsection continue to be met."  8 U.S.C. § 1254a(b)(3)(A)–(B).  Here, it is clear from the face of the Termination that Secretary Noem failed to follow those requirements.  The publication notice provides that, "[i]n particular, the Secretary has determined that it is contrary to the national interest to permit the covered Venezuelan nationals to remain temporarily in the United States," without any discussion of the exigent conditions in Venezuela that prompted TPS.  90 Fed. Reg. at 9041.  Indeed, despite noting that "certain conditions for the 2023 TPS designation of Venezuela may continue," Secretary Noem nevertheless concluded termination was warranted "*even assuming* the relevant conditions in Venezuela remain both 'extraordinary' and 'temporary.'"  *Id.* at 9042 (emphasis added); *see id.* (commenting that there were "notable improvements in several areas" without an accompanying list of those improvements or any sources).  The INA on its face does not permit the Secretary to "assume" that the conditions in Venezuela are unimproved and then to terminate TPS anyway.  Rather, the statute requires that the Secretary "review the *conditions in the foreign state*" and allows the Secretary to terminate a country's TPS only if she finds that it "no longer continues to meet the conditions for designation."  8 U.S.C. § 1254a(b)(3)(A)–(B) (emphasis added).  Because the Termination makes no finding regarding conditions in Venezuela, it is deficient under the INA.

14

III.    **Plaintiffs Have Shown That Secretary Noem's Actions Are Arbitrary and Capricious and Otherwise Unlawful Under the APA (Counts III–IV).**

Defendants further contend that Counts III and IV of Plaintiffs' Complaint must be dismissed for the same reason as Counts I and II because Secretary Noem's determinations were "lawful and consistent with 8 U.S.C. § 1254a."  Again, Defendants' arguments are not apt for a motion to dismiss, but instead a motion for summary judgment.  *Mylan Labs.*, 7 F.3d at 1134 ("[A] motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief.").  Regardless, Plaintiffs' APA claims should not be dismissed now because the Complaint contains a plausible claim for relief.

A.    **Plaintiffs Have Sufficiently Alleged That the Secretary Failed to Conduct a Periodic Review as Required Under the Statute.**

As a threshold matter, Defendants argue that the Secretary was not required to make any determinations regarding the conditions for designation with respect to the Vacatur, which they contend is not a termination under the statute.  Mot. 19.  But their argument proves too much, because the Vacatur terminated a prior extension.  As discussed *supra* Section II.A, the DHS Secretary can terminate a prior designation or extension only by adhering to the INA's required termination procedures.  Secretary Noem did not do so here.  At a minimum, Defendants concede that the Vacatur made no findings regarding country conditions that could justify the de facto termination of the January 2025 Extension.  *See id.*; *see also* 90 Fed. Reg. at 8807 (stating that the "reason for the vacatur" was the alleged deficiencies in the January 2025 Extension notice).  Secretary Noem's failure to engage in any review of the conditions in Venezuela when purportedly "vacating" the January 2025 Extension renders her decision unlawful and requires that this Court set it aside.  5 U.S.C. § 706(2)(d) (a reviewing court shall "hold unlawful and set aside agency action" found to be "without observance of procedure required by law").

Defendants similarly contest Plaintiffs' argument that the Termination was not issued pursuant to the INA and is thus in violation of the APA. Mot. 18. But Defendants do not dispute the incredibly short timeframe within which the required review purportedly took place, a fact which undermines their claim that the Termination was *not* "arbitrary" or "capricious." *See W. Va. Coal Workers Pneumoconiosis Fund v. Bell*, 781 Fed. App'x 214, 229 (4th Cir. 2019) ("[Courts] must hold [an] agency's feet to the fire, ensuring that it has taken a hard look at the record before it."). Secretary Noem was sworn in as DHS Secretary on January 25, 2025. Compl. ¶ 63. A mere three days later, on January 28, 2025, Secretary Noem purported to vacate the January 2025 Extension. *Id*. ¶ 64. And then six days after that, on February 3, 2025, she signed the decision to terminate Venezuela's TPS designation. *Id.* ¶ 65. The INA requires the Secretary to "review the conditions in the foreign state for which a designation is in effect" only "after consultation with appropriate agencies of the Government." 8 U.S.C. § 1254a(b)(3)(A). Defendants offer no basis for this Court to conclude that the statutorily required review was undertaken in the span of a *maximum* of ten days. *See Alexandria Hosp. v. Heckler*, 586 F. Supp. 581, 588 (E.D. Va. 1984) ("Common sense suggests that adequate consideration could not take place" where a final rule was published just 15 days after the close of a comment period where over 600 comments were received).

And even assuming a dispute as to the comprehensiveness of Secretary Noem's review, this Court should allow Plaintiffs' claims to move forward so that the Court can evaluate based on the full context, including the administrative record. In determining whether an agency acted appropriately, the reviewing court must "engage in a searching and careful inquiry of the [administrative] record, so that [it] may consider whether the agency considered the relevant factors and whether a clear error of judgment was made." *Casa de Maryland v. U.S. DHS*, 924

F.3d 684, 703 (4th Cir. 2019) (internal quotations omitted); *see Nat'l TPS All.*, 2025 WL 1276229 at *3 (finding extra-record discovery is warranted for Plaintiffs' APA claims). Because such a review cannot be conducted at this stage, Plaintiffs' APA claims should not be dismissed.

### B. Defendants Are Wrong That an Agency Action Can Be Revoked Solely Due to Policy Disagreements With a Prior Administration.

Defendants are also wrong that that they may revoke prior agency action, outside of the procedures provided by statute, because of a "policy disagreement." Mot. 20. While Plaintiffs do not dispute that an agency head can enter into their role with policy preferences, Mot. 20, Defendants point to no authority that allows the DHS Secretary to implement their preferences in violation of the law. *Cf. Bureau of Alcohol, Tobacco & Firearms v. Fed. Lab. Rels. Auth.*, 464 U.S. 89, 98, n.8 (1983) ("[A]n agency acting within its authority [can] make policy choices consistent with the congressional mandate [so long as] its actions conform to applicable procedural requirements and are not 'arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law'"); *Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 59 (1983) (Rehnquist, J., concurring in part and dissenting in part) ("As long as [an] agency remains within the bounds established by Congress, it is entitled to assess administrative records and evaluate priorities in light of the philosophy of the administration.").

Defendants' own cases do not support their claim. Mot. 20 (citing *Ramos*, 975 F.3d at 897–98 (finding insufficient allegations to support a *constitutional*, not APA, claim)). The opposite is true. *Dep't of Com. v. New York*, 588 U.S. 752, 783 (2019) ("It is hardly improper for an agency head to . . . work with staff attorneys to *substantiate the legal basis* for a preferred policy."). (emphasis added). Thus, Plaintiffs have sufficiently alleged that Secretary Noem's actions were unlawful and should be set aside.

### C. Secretary Noem's Actions Deviated From Past DHS Practice and Undermined the Purpose of the INA.

Defendants do not dispute that departure from long-standing policy and practice may violate the APA. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515–16 (2009) ("[T]he requirement that an agency provide [a] reasoned explanation for its action would ordinarily demand that it display awareness that it *is* changing position. An agency may not . . . depart from a prior policy sub silentio[.]") (emphasis in original); *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 223–24 (2016) (finding agency violated APA when it promulgated a regulation "inconsistent with the Department's longstanding earlier position" without providing "good reasons").

Plaintiffs have plausibly alleged facts reflecting a novel approach undertaken by Secretary Noem to vacate a prior TPS designation and then prematurely terminate such a designation. *Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 924 (D.C. Cir. 2017) (rejecting agency argument that the challenged action did not reflect policy change where the argument "flatly defie[d] . . . two decades of agency practice"). Secretary Noem's sole basis for this novel approach is a disagreement with Secretary Mayorkas's consolidated filing process for the 2021 and 2023 Designations. 90 Fed. Reg. at 8807. But this is not (nor do Defendants contend that this is) enough. Further, such a drastic change is especially problematic in the TPS context, where serious reliance interests are at stake. *Encino Motorcars*, 579 U.S. at 223–24 (holding that the APA required "a more reasoned explanation" of agency policy change where reliance interests were at stake); *see* Compl. ¶¶ 18–24, 28–31 (Plaintiffs' members rely on TPS for work authorization, legal residence in the United States, and protection from deportation to a country where their safety is at risk).

Defendants' sole counterargument is that Secretary Noem's decisions did not deviate from past practice because they were "consistent with the previous Secretary's decisions revisiting and rescinding prior TPS determinations." Mot. 20. As noted above, however, their comparison to

and reliance on Secretary Mayorkas's vacatur of the TPS termination for El Salvador is a false equivalency and affords no support for the Vacatur and Termination. *See supra* Section II.A.

### D. Plaintiffs' Complaint Plausibly Shows That Secretary Noem's Decisions Were Pretextual and Based on Discriminatory Motives.

As discussed below, the reasons provided for the Termination and Vacatur were pretextual and the decisions were in actuality motivated by animus against Venezuelan migrants. *See infra* Section IV.C. Defendants argue, without more, that Plaintiffs cannot "adequately allege" that the Secretary's actions were pretextual. Mot. 20–21. However, Plaintiffs' allegations create a reasonable inference that the Vacatur and Termination were based on animus against Venezuelan migrants, and non-European migrants more generally. Regardless, disputes regarding the existence of animus warrant a review of at least the full administrative record. *See Dep't of Com.*, 588 U.S. at 785 (holding that the reasons provided by the agency were pretextual after conducting a thorough review of the administrative record). Secretary Noem's stated rationale of vacating the January 2025 Extension due to a procedural concern and subsequently terminating the 2023 Designation due to "national security" concerns is a thinly veiled cover for the apparent goal of terminating immigration protections for Venezuelans and other non-white immigrants.

### IV. Plaintiffs Have Plausibly Alleged That Secretary Noem's Actions Are Unconstitutional (Counts V–VI).

Discriminatory conduct is prohibited by the Fifth Amendment's Due Process Clause, which "contains an equal protection component" prohibiting federal government officials from discriminating on the basis of race, ethnicity, or national origin. *Washington v. Davis*, 426 U.S. 229, 239 (1976). Courts have emphasized that "[t]he central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." *Id.*; *see Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).

Secretary Noem's decisions to vacate and terminate were motivated, at least in part, by

racial animus against Venezuelan TPS beneficiaries, violating the Fifth Amendment's implicit guarantees of equal protection. Defendants contend that this Court should "dismiss Counts V and VI for failure to state a claim" without any demonstrable support for dismissing these claims. Mot 21. Indeed, the racist statements repeatedly perpetuated by Secretary Noem and President Trump are clear evidence of the discriminatory intent motivating the Vacatur and Termination.

### A. Defendants Are Incorrect That Trump v. Hawaii Is the Standard of Review.

Defendants assert that this Court should apply the rational basis standard from *Trump v. Hawaii*. But this Court has already expressly rejected the application of *Hawaii* to constitutional claims in the TPS context. *CASA de Maryland, Inc. v. Trump*, 355 F. Supp. 3d 307, 322–25 (D. Md. 2018). In recognizing that *Hawaii* "dealt with aliens seeking admission to the United States for the first time, while this case deals with residents who have lived in the United States for years," the Court distinguished between individuals who seek entry into this country with no constitutional rights and those who lawfully reside in the United States. *Id.* at 322–23. To apply rational-basis review to "claims challenging the constitutionality of removal of legally present aliens" would "threaten [the] entire body of law" applying the principle that "lawfully present aliens are not subject to removal processes that violate the Constitution." *Id.* at 323 & n.8 (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953), *superseded by statute* for the principle that "aliens who have [] passed through our gates . . . may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law").[5]

Defendants' assertion that *Hawaii* is the proper standard fails here just as it did in *CASA*. Plaintiffs allege that racial animus was a motivating factor in Secretary Noem's Vacatur and Termination of TPS for Venezuelans *already living* in the United States, not individuals attempting

---

[5] The court in *CASA* explicitly rejected any idea that *Shaughnessy* would be inapplicable in this context because it applied the Due Process Clause rather than the Equal Protection Clause. 355 F. Supp. 3d at 323.

to enter the United States. They are therefore beneficiaries of the constitutional rights afforded to those within U.S. borders. *CASA*, 355 F. Supp. 3d at 323; *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596 n.5 (1953). [6] As in *CASA*, the national security concerns supporting rational-basis review in *Hawaii* do not exist here. The Vacatur and Termination apply to TPS beneficiaries who are already residing in the United States without any evidence that they pose a risk to national security. *See id.* at 322–25 (rejecting defendants' argument that *Hawaii* analysis applies to plaintiffs' Equal Protection allegations for termination of TPS for El Salvador). Indeed, anyone with TPS or seeking it would be ineligible if they engaged in serious criminal conduct. 5 U.S.C. § 1254a(c)(2); 8 C.F.R. §§ 244.2, 244.4.

Defendants' remaining cases fail to resuscitate their argument. *Kleindienst*, for example, pertains to the "entry of aliens," as opposed to individuals already residing in the United States. *See* Mot. 21. *Mathews v. Diaz* is inapposite because it involves decisions with much lower stakes than removal. 426 U.S. 67, 82 (1976) (reviewing Congress's ability to condition "an alien's eligibility for participation in a federal medical insurance program"). *Harisiades v. Shaugnessy* is equally distinguishable. There, the Supreme Court reviewed the validity of deportation proceedings for former members of the Communist Party after "Congress received evidence that the Communist movement [had] been heavily laden with aliens" specifically involved in threats of violence. 342 U.S. 580, 581–82, 588–89 (1952).

### B.  Strict Scrutiny Is the Proper Standard of Review.

Instead, where there are plausible allegations that a defendant was motivated, at least in part, by a discriminatory purpose based on race or color, strict scrutiny applies. *CASA*, 355 F.

---

[6]    Furthermore, as recognized by Judge Chen, "the decision to vacate the extension did not cite national security as a rationale [n]or did it cite an interest in effecting foreign relations . . . Thus, the deferential standard of *Trump v. Hawaii* does not apply to Secretary Noem's vacatur decision." *Nat'l TPS All.*, 2025 WL 957677, at *38.

Supp. 3d at 325; *Ramos v. Nielsen*, 321 F. Supp. 3d 1083, 1127 (N.D. Cal. 2018) (rejecting rational-basis review of equal protection challenge to TPS terminations for Haiti, Sudan, Nicaragua, and El Salvador); *Centro Presente v. U.S. Dep't of Homeland Sec.*, 332 F. Supp. 3d 393, 412 (D. Mass. 2018) (similar).  Laws based in considerations "deemed to reflect prejudice" are "seldom relevant to the achievement of any legitimate state interest" and must be "subjected to strict scrutiny and [] sustained only if they are suitably tailored to serve a compelling interest."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985); *see McLaughlin v. Florida*, 379 U.S. 184, 192, (1964); *Graham v. Richardson*, 403 U.S. 365, 371–72 (1971).  Importantly, strict scrutiny does not require a plaintiff "to prove that the discriminatory purpose was the sole purpose of the challenged action, but *only that it was a 'motivating factor.*'"  *Arce v. Douglas*, 793 F.3d 968, 977 (9th Cir. 2015) (quoting *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)) (emphasis added); *Orgain v. City of Salisbury*, 305 F. App'x 90, 98 (4th Cir. 2008) (same).

### C.  Plaintiffs Plausibly Allege Sufficient Facts to Establish a Violation of Equal Protection and Substantive Due Process.

Plaintiffs have plausibly alleged facts sufficient to establish a violation of Equal Protection under the proper standard of review laid out in *Arlington Heights*.  429 U.S. at 266–68.  In *Arlington Heights*, the Supreme Court recognized that "a clear pattern, unexplainable on grounds other than race, [emerging] from the effect of [governing legislation that] appears neutral on its face . . . is rare," thereby requiring the Court to conduct "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available."  *Id.* at 266–67 (recognizing the need for an inquiry to determine whether racial animus existed as a motivating factor).  Specifically, the Court must examine "[t]he impact of the official action whether it bears more heavily on one race than another"; "[t]he historical background of the decision . . . particularly if it reveals a series of official

actions taken for invidious purposes"; "[t]he specific sequence of events leading up to the challenged decision"; "[d]epartures from the normal procedural sequence," which "might afford evidence that improper purposes are playing a role"; and "[t]he legislative or administrative history . . . especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports." *Id.* at 266–68 (internal quotations marks omitted).

Secretary Noem's and President Trump's statements satisfy this standard. For example, Plaintiffs allege that beginning in April 2024, then-candidate, now-President Trump made false statements about Venezuelans, including that "[c]rime is down in Venezuela by 67 percent because they're taking their gangs and the criminals and depositing them very nicely into the United States." Compl. ¶ 88. President Trump has continued to repeat these sentiments: he has referred to Venezuelan migrants as "criminals" over seventy times on the 2024 campaign trail—singling out Venezuelans for this false accusation far more than migrants from any other country. *Id.* ¶ 96.

Secretary Noem also has a history of derogatory remarks towards Venezuelan migrants, once stating: "Venezuela didn't send us their best. They emptied their prisons and sent criminals to America. Deportations need to start on DAY ONE of [President Trump's] term." *Id.* ¶ 115. In a February 2025 interview, Secretary Noem described the TPS program as being "abused" and that "folks from Venezuela that have come into this country are members of [the Tren de Aragua]" criminal gang. *Id.* ¶ 118. She alleged that the administration was evaluating all of its programs, including TPS, to ensure "they're not to the benefit of criminals." *Id; see also id.* ¶¶ 88–121.

Defendants' sole contention is that these statements are "taken grossly out of context," but cite to no case supporting dismissal on this ground. Mot. 23. To the contrary, numerous courts have held similar statements sufficient to demonstrate racial animus. *See CASA*, 355 F. Supp. 3d at 325–26 (denying motion to dismiss constitutional claims because President Trump's statements

were sufficient to establish racial animus in DHS's termination of El Salvador's TPS); *Nielsen*, 321 F. Supp. 3d at 1132 (similar); *see also Ave. 6E Invs., LLC v. City of Yuma*, 818 F.3d 493, 505–07 (9th Cir. 2016) (acknowledging that the use of "code words" or "veiled" references by decisionmakers can "provide plausible circumstantial evidence [of decisions] motivated in part by animus" even absent "express[] refer[ences] to race or national origin" (cleaned up)).

Defendants' reliance on *Ramos* similarly fails. Mot. 23. While Defendants contend that *Ramos* disallows a "cat's paw theory of liability," the *Ramos* Court dismissed discriminatory intent because no evidence showed that "any administration officials involved in the TPS decision-making process were themselves motivated by animus against 'non-white, non-European' countries." *Ramos*, 975 F.3d at 879. But here, Secretary Noem's statements are strikingly similar to President Trump's and reflect her adherence to his views in the decision to terminate TPS for Venezuela. *See Nielsen*, 321 F. Supp. 3d at 1132; *Nat'l TPS All.*, 2025 WL 957677, at *39–44 (finding discriminatory intent evident in the decision to terminate TPS for Venezuela based on plaintiffs' catalogue of Secretary Noem's and President Trump's statements while acknowledging a clearer nexus between President Trump and the TPS decisions than existed in *Ramos*). The Termination exemplifies this influence, going so far as to reference President Trump's "recent, immigration and border-related executive orders and proclamations" and the "President['s] direct[ion] . . . to terminate, as contrary to the policy of the United States, the parole program known as the 'Processes for . . . Venezuelans.'" 90 Fed. Reg. at 9042. However, even if this Court were to find President Trump's statements did not influence Secretary Noem's decision, Plaintiffs have "sufficiently established animus based [solely] on Secretary Noem's discriminatory statements." *Nat'l TPS All.*, 2025 WL 957677, at *44. "An action is not cured of discriminatory taint because it is taken by an unprejudiced decision-maker who is manipulated or controlled by

another *who is* motivated by discriminatory intent." *CASA*, 355 F. Supp. 3d at 325. (emphasis added).

There can be no doubt that Secretary Noem's decision to vacate and terminate TPS was motivated in some part by racial animus and the intent to discriminate against Venezuelan TPS beneficiaries. This conduct violates equal protection principles. Moreover, such arbitrary conduct that is also motivated by racial animus violates the basic tenets of due process, *see Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998), and rises to the conscience-shocking level that violates substantive due process, *see id.* at 849. Accordingly, Counts V–VI should not be dismissed.

## V.    Plaintiffs' Claims Are Not Barred by Statute.

Defendants' purported "jurisdictional" arguments do not encompass Plaintiffs' claims and thus do not warrant—under Rules 12(b)(6) or 12(b)(1)—dismissal here.

### A.   Section 1254a's Statutory Bar Does Not Apply to Plaintiffs' Claims.

Contrary to Defendants' assertions, Section 1254a(b)(5)(A) does not bar Plaintiffs' claims. Defendants' contentions about the "broad sweep" of that provision, Mot. 8–10, miss the mark here. Again, Plaintiffs' claims are that Defendants' actions were contrary to the statute and therefore fall outside of the statute and do not constitute "determinations." The term "determination" is a term of art and "describes a single act rather than a group of decisions or a practice or procedure employed in making decisions." *McNary*, 498 U.S. at 492.

Plaintiffs do not challenge the Secretary's "determinations" but rather contend that (1) her Vacatur is not an action allowed by and is contrary to Section 1254a; and (2) the *method* underlying the Secretary's actions is contrary to law. To begin, Defendants can point to no law authorizing Secretary Noem to *vacate* a prior TPS extension, *see supra* Section II.A, and without a *legal* basis for her decision to "vacate," the Vacatur "literally and textually" is *not* a determination within the

contours of Section 1254a.  *Nat'l TPS All.*, 2025 WL 957677 at *16.  Likewise, Section 1254a(b)(5)(A) does not preclude review of Plaintiffs' claims regarding the Termination, which allege that the Secretary failed to follow the INA's mandates when she (1) unlawfully purported to terminate TPS prior to the earliest date permitted by statute; (2) without adhering to required statutory terms; and (3) in violation of equal protection.  Indeed, courts have held that challenges to TPS determinations based on constitutional or statutory irregularities are excluded from Section 1254a's bar on judicial review.  *See, e.g.*, *id.* at *16–18 (rejecting Defendants' argument that Section 1254a bars review because plaintiffs' procedural and constitutional challenges to the Vacatur and Termination do not "dictate how the Secretary should ultimately rule on a TPS [determination]"); *CASA*, 355 F. Supp. 3d at 320–22 (finding that Section 1254a(b)(5) does not "constitute an absolute bar on judicial review, but instead [acts] to bar review of the merits of an individual determination").

Section 1254a's review-limiting provision against "determinations" is therefore inapplicable to Plaintiffs' claims.  *Cuozzo Speed Tech. v. Com. for Intell. Prop.*, 579 U.S. 261, 275 (2016) (because statutory bar on review of "determinations" did not "categorically preclude review" or "enable the agency to act outside its statutory limits"; "such 'shenanigans' may be properly reviewable . . . under the [APA]"); *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 675–76 (1986) (holding that statutory bar on review of "determinations" "simply does not speak to challenges mounted against the *method* by which such amounts are to be determined rather than the *determinations* themselves") (emphasis in original).

While this is not a close question, any doubt should be resolved in favor of permitting judicial review.  It is a longstanding principle of statutory interpretation that there is a "presumption favoring judicial review of administrative action," *Kucana v. Holder*, 558 U.S. 233, 251 (2010),

and the APA in particular "establishes a basic presumption of judicial review [for] one suffering legal wrong because of agency action." *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16 (2020) (internal quotation marks omitted); *INS v. St. Cyr*, 533 U.S. 289, 298 (2001) ("For the INS to prevail it must overcome . . . the strong presumption in favor of judicial review of administrative action[.]"). Applying this "strong presumption," the Supreme Court has allowed judicial review even where the statutory language is far more preclusive than Section 1254a. *See, e.g.*, *Bowen*, 476 U.S. 667, 678–81 (1986) (construing statute stating "[n]o action . . . shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter" as inapplicable to general statutory and constitutional challenges). Had Congress wanted to bar "all causes . . . arising under" the statute, or "on all questions of law and fact" in such suits, rather than merely review of a "determination," it "could easily have used broader statutory language," *McNary*, 498 U.S. at 494, similar to that in 8 U.S.C. § 1252(a)(2)(B). Congress has not done so here. Thus, Defendants have not provided "clear and convincing evidence" to rebut the well-settled presumption that Plaintiffs' claims can be heard in this Court. *Bowen*, 476 U.S. at 671.

### B. Secretary Noem Acted Contrary to Section 1254a, Not Pursuant to Any Discretion Afforded Her by It.

Defendants are also wrong that Secretary Noem's actions were "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), and therefore they remain reviewable under the APA. Defendants concede that preclusion under Section 701(a)(2) is "rare." Mot. 10. Courts have "restrict[ed] it to those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Servs.*, 586 U.S. 9, 23 (2018) (cleaned up). Indeed, in only a few cases have courts applied the 701(a)(2) exception. *Wood v. U.S. Dep't of Agric.*, 2020 WL 1521801, at *3 (S.D. W.Va. Mar. 30, 2020) (listing the few Supreme Court cases applying

27

701(a)(2), i.e., administrative decisions over the allocation of funds from a lump-sum appropriation, decisions not to institute enforcement proceedings, and decisions by an intelligence agency to terminate an employee in the interest of national security). None are present here.

Defendants' sole basis for invoking this "rare" exception is that a "determination as to what constitutes the national interest" cannot be evaluated under a "manageable legal standard." Mot. 10. But that is not what is at stake here. Plaintiffs' primary claims are that the Secretary took actions that she is not entitled to take as a matter of law, regardless of the merit (or lack thereof) of any purported national security concerns she may have. Section 1254a does not allow for vacating a prior extension of TPS status, and terminations of TPS (when allowed) must follow prescribed procedures and may take effect no sooner than the end of the last extension period. The statute does not afford Secretary Noem discretion to violate those requirements. Even with respect to Plaintiffs' constitutional claims, it is "well settled that even if agency action is committed to its discretion by law, a court may still determine whether the action is constitutional," because "the Due Process Clause provides a manageable standard that allows for review." *Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 347 (4th Cir. 2001). Indeed, Defendants' own case compels the same result. *Webster v. Doe*, 486 U.S. 592 (1988) (rejecting defendants' claim of national security and holding that plaintiff's constitutional claims were not precluded under 701(a)(2)).

Nor can Defendants contend no manageable standard exists for Plaintiffs' APA claims, Compl. ¶¶ 122–143, which "involve[] the sort of routine dispute that federal courts regularly review: [a]n agency issues an order affecting the rights of a private party, and the private party objects that the agency did not properly justify its determination under a standard set forth in the statute." *Weyerhaeuser*, 586 U.S. at 23–24. Plaintiffs' statutory claims ask the Court to determine whether the Secretary violated clearly enumerated statutory terms and requirements, which is well

28

within the province of the federal courts, and not matters committed to agency discretion. *Heckler v. Chaney*, 470 U.S. 821, 832 (1985) ("[W]hen an agency *does* act to enforce, that action itself provides a focus for judicial review. . . . The action at least can be reviewed to determine whether the agency exceeded its statutory powers.") (emphasis in original).[7]

### C.  Section 1252(f)(1) Does Not Apply to Plaintiffs' Claims.

Nor can Defendants rely on Section 1252(f)(1) to warrant dismissal.  To begin, Defendants' Section 1252(f)(1) arguments fail at the threshold, as the Supreme Court has described it as applying only to 8 U.S.C. §§ 1221–1232, *Biden v. Texas*, 597 U.S. 785, 797 (2022), which excludes the TPS statute, 8 U.S.C. § 1254a; *see also Nat'l TPS All.*, 2025 WL 957677 at *10 (same).

Further, even if Section 1252(f)(1) applied to a TPS-related action, Defendants concede that courts have held that Section 1252(f)(1) does not apply to declaratory relief, which Plaintiffs seek.  Mot. 14 (citing *Brito v. Garland*, 22 F.4th 240, 250 (4th Cir. 2021) ("[D]eclaratory relief remains available under Section 1252(f)(1)")); *see also Nielsen v. Preap*, 586 U.S. 392, 402 (2019) (Section 1252(f)(1) preserves "jurisdiction to entertain the plaintiffs' request for declaratory relief").

Defendants contest that Plaintiffs' request to "set aside" the Vacatur and Termination would "coerce and restrain the agency's operation" of the INA in a manner equivalent to an injunction prohibited by Section 1252(f)(1).  Mot. 12–13.  But *not one* of Defendants' cases adopt this position in the Section 706(2) context.  Mot. 11–13 (citing *Brohl*, *Texas*, *Aberdeen*).  Nor should the Court here.  To the contrary, "all courts that have addressed the issue have rejected" it. *Nat'l TPS All.*, 2025 WL 957677  at *12 (collecting cases); *see also Kidd v. Mayorkas*, 734 F.

---

[7]       None of Defendants' cases mandate a contrary result.  Neither *Zhu* or *Hawaii* respectively reach or even raise the 701(a)(2) question.  Mot. 10.  The remainder of Defendants' cases involve other statutory schemes, not the INA, *id.* (citing *Lincoln* and *Webster*), and *Webster* emphasized that Section 701(a)(2) "requires careful examination of the statute on which the claim of agency illegality is based."  486 U.S. at 600–01.

Supp. 3d 967, 987 (C.D. Cal. 2024) (Section 1252(f) inapplicable because vacating ICE policy neither "compel[s] nor restrain[s] further agency decision-making") (citations omitted); *Florida v. United States*, 660 F. Supp. 3d 1239, 1285 (N.D. Fla. 2023) (Section "1252(f)(1) does not strip [the court] of the authority to vacate either of the challenged policies under the APA.").

Further, Section 706 relief is not, as Defendants contend, Mot. 13–14, simply a codification of traditional equitable relief, including injunctions. *Nat'l TPS All.*, 2025 WL 957677 at *14 (rejecting Defendants' contention that Section 1252(f)(1) bars a Section 706 vacatur because "the distinction between an injunction and a vacatur is material"). Had Congress intended Section 1252(f)(1) to strip courts of Section 706 vacatur ability, it would have said so clearly. *Scripps-Howard Radio v. FCC*, 316 U.S. 4, 11 (1942) ("Congress would not, without clearly expressing such a purpose, deprive the [court] of its customary power to stay orders under review.").

## <u>CONCLUSION</u>

For these reasons, this Court should deny Defendants' motion to dismiss Plaintiffs' Complaint.

Date: May 19, 2025

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By:    */s/ Nowell D. Bamberger*
Nowell D. Bamberger (21111)
Matthew D. Slater (05582)
Rathna J. Ramamurthi (*pro hac vice*)
Madeline Hundley (*pro hac vice*)
Gillian Isabelle (*pro hac vice*)
Ava Kazerouni (*pro hac vice*)
2112 Pennsylvania Ave NW
Washington, D.C. 20037
Tel. (202) 974-1500
Fax (202) 974-1999
nbamberger@cgsh.com
mslater@cgsh.com
rramamurthi@cgsh.com
mhundley@cgsh.com
gisabelle@cgsh.com
akazerouni@cgsh.com

WASHINGTON LAWYERS' COMMITTEE FOR CIVIL
RIGHTS AND URBAN AFFAIRS

Ryan Downer (*pro hac vice*)
Sarah L. Bessell (30969)
Madeleine Gates (31508)
Ellie M. Driscoll (*pro hac vice*)
700 14th St. #400
Washington, D.C. 20005
Tel. (202) 319-1000
Fax (202) 319-1010
ryan_downer@washlaw.org
sarah_bessell@washlaw.org
madeleine_gates@washlaw.org
ellie_driscoll@washlaw.org

CASA, INC.

Nicholas Katz, Esq. (21920)
Hyattsville, MD 20783
Tel. (240) 491-5743

31

nkatz@wearecasa.org

MAKE THE ROAD NEW YORK

Harold A. Solis (*pro hac vice*)
Paige Austin (*pro hac vice*)
301 Grove Street
Brooklyn, NY 11237
Tel. (718) 418-7690
Fax (866) 420-9169
harold.solis@maketheroadny.org
paige.austin@maketheroadny.org

*Attorneys for Plaintiffs*