IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CASA, INC. et.al.,

    Plaintiffs,

v.

KRISTI NOEM,
Secretary of Homeland Security, et.al.,

    Defendants.

Case No. 8:25-cv-00525

# DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

YAAKOV M. ROTH
Acting Assistant Attorney General

SARAH L. VUONG
Assistant Director

WILLIAM H. WEILAND
Senior Litigation Counsel

CATHERINE ROSS
CARLTON SHEFFIELD
ERIC SNYDERMAN
LAUREN BRYANT
ANNA L. DICHTER
JEFFREY HARTMAN
AMANDA SAYLOR
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044

*Attorneys for Defendants*

June 2, 2025

## INTRODUCTION

The issues before this Court are straightforward. First, the Court lacks subject-matter jurisdiction because the Immigration and Nationality Act ("INA") reflects Congress' clear choice to preclude judicial review of "*any* determination . . . with respect to the designation, or termination, or extension of a designation of foreign state" for Temporary Protected Status ("TPS"). 8 U.S.C. § 1254a(b)(5)(A) (emphasis added). Secretary of Homeland Security Kristi Noem's determination to vacate her predecessor's extension of Venezuela's 2023 TPS designation is plainly within the ambit of the INA's bar to judicial review over TPS determinations. A separate provision of the INA—8 U.S.C. § 1252(f)(1)—likewise bars this Court from "enjoin[ing] or restrain[ing]" the Secretary's authority to designate, extend, or terminate TPS under 8 U.S.C. § 1254a(b).

Second, even if judicial review were available, Plaintiffs have not plausibly alleged how the Secretary's reasoned decision making, pursuant to a broad delegation of authority by Congress, was nonetheless "contrary to law" or "arbitrary and capricious." Nor have Plaintiffs plausibly alleged that the Secretary's actions violate their rights to equal protection or substantive due process. The Supreme Court has long held—and has recently reaffirmed—that constitutional challenges to immigration policy choices are reviewed for rational basis. Properly reviewed under the rational basis standard, Plaintiffs' constitutional claims do not state a claim that is plausible on its face. Even under a heightened review standard, the Court should dismiss Plaintiffs' constitutional claims because their claims of discriminatory animus rest entirely public statements of the Secretary and the President that are remote in time from the challenged TPS determinations and made in unrelated contexts. And more fundamentally, the statements on

1

which Plaintiffs rely simply reflect concern regarding illegal immigration and criminal activity and have nothing to do with race or ethnicity.

The Supreme Court's May 19, 2025 order in *Noem v. National TPS Alliance*, No. 24A1059 (S. Ct. May 19, 2025), which granted the government's application for a stay of a district court order in a nearly identical lawsuit, *National TPS Alliance*, --- F.Supp.3d ----, 2025 WL 957677, at *47 (N.D. Cal. Mar. 31, 2025), underscores the strength of the government's position in this case. The Supreme Court ruled in *National TPS Alliance*, with only one justice publicly dissenting, that the government is likely to succeed in challenging the district court's order, which was premised on the same legal theories advanced by Plaintiffs in this case. *See Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curium) (in order to "obtain a stay pending the filing and disposition of a petition for writ of certiorari, an applicant must show," among other things, "a fair prospect that a majority of the Court will vote to reverse the judgment below."). By the same measure, the Court should grant Defendants' motion to dismiss in this case.

**ARGUMENT**

**I.    The Court Lacks Subject-Matter Jurisdiction Over All of Plaintiffs' Claims.**

As a preliminary matter, Plaintiffs incorrectly contend that the provisions barring review of their claims are not jurisdictional in nature simply because they do not use the word "jurisdiction." *See* ECF No. 57 ("Pls.' Opp.") at 7-8. None of the cases on which Plaintiffs rely hold that only statutes employing the word "jurisdiction" can be characterized as jurisdictional in nature. To the contrary, the Supreme Court has explicitly observed that "Congress *need not incant magic words*, but the traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences." *Boechler v. Commissioner*, 596 U.S.

199, 203 (2022) (emphasis added) (internal quotation marks omitted). In this case, the statutory bars to review of Plaintiffs' claims are not simply "nonjurisdictional rules [that] promote the orderly progress of litigation [and which] do not bear on the court's power." *Id*. (internal quotation marks omitted). Rather, 8 U.S.C. § 1254a(b)(5)(A) states in no uncertain terms that "*there is no judicial review* of any determination . . . with respect to the designation, termination or extension of a designation, of a foreign state under this subsection." 8 U.S.C. § 1252(f)(1) just as clearly provides that "*no court (other than the Supreme Court) shall have jurisdiction* or authority to enjoin or restrain the operation of" covered provisions of the INA. (emphasis added). Regardless, the distinction between jurisdictional and nonjurisdictional barriers to review is immaterial here, where the statute speaks in mandatory terms and there is no question of waiver or forfeiture.

    A.    <u>8 U.S.C. § 1254A(B)(5)(a) Expressly Excludes Review of TPS Determinations</u>

The Plaintiffs' opposition to Defendants' motion to dismiss reprises many of the same arguments that appear in their memorandum in support of their motion for summary judgment. See ECF No. 8-1 (Pls.' MSJ) at 11-14. As explained in Defendants' opposition to that motion, neither *McNary v. Haitian Refugee Ctr.*, 498 U.S. 479, 492 (1991) nor any of the other cases cited by Plaintiffs support the view that the word "determination" as it appears in 8 U.S.C. § 1254a(b)(5)(A) is a narrow term of art. *See* Defs' Opp. at 8. This is particularly true in this case where the word "determination" is preceded in the statute by the broadening word "any" and followed by the phrase "with respect to." Rather, the "statutory language, specific legislative history, and inferences of intent drawn from the statutory scheme as a whole" are sufficient here to overcome any presumption in favor of judicial review. Defs' Opp at 9 (citing *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 273-74 (2016)). Indeed, § 1254a(b)(5)(A)'s clear language satisfies even the heightened showing required to preclude constitutional claims. *See Webster v.*

*Doe*, 486 U.S. 592, 603 (1988); *see Jennings v. Rodriguez*, 583 U.S. 281, 298 (2018) ("Spotting a constitutional issue does not give a court the authority to rewrite a statute as it pleases. Instead, the canon [of constitutional avoidance] permits a court to choos[e] between competing plausible interpretations of a statutory text.").

Although Plaintiffs assert that they are not challenging the Secretary's determinations regarding the extension and termination of TPS for Venezuela, see Pls.' Opp. at 25, their Complaint plainly reveals otherwise. *See* Compl. ¶¶ 43, 66, 70, 74-80, 87. Plaintiffs should not be allowed to recast their claim as collateral while seeking the same underlying relief so as to benefit from the APA's substantive provisions while avoiding its strictures. Because Congress precluded review of TPS determinations, and because Plaintiffs' claims go directly to that prohibited subject matter, the Court lacks authority to consider those claims and this Court lacks subject matter jurisdiction.

B.      8 U.S.C. § 1252(f)(1) Bars the Relief Plaintiffs Seek

The Court also lacks jurisdiction to enter the relief Plaintiffs seek. As Defendants have already explained, § 1252(f)(1) bars lower courts from entering an order that "enjoin[s] or restrain[s]" federal officials from enforcing, implementing, or otherwise carrying out "the specified statutory provisions." ECF No. 54, Defendants' Motion to Dismiss at 11 ("Def. Mot."); *see Garland v. Aleman Gonzalez*, 596 U.S. 543, 549–50 (2022). Here, Plaintiffs seek an order to "set aside" the Secretary's determinations. *See* Pls.' Opp. at 5; *see also* Compl. ¶¶122-127, 129-135. That order would "enjoin or restrain" the operations of § 1254a because the Secretary and DHS would be unable to exercise their authority under § 1254a. Plaintiffs never explain what "or restrain" means in § 1252(f)(1), instead pretending that the statute bars only injunctions. Nor does Plaintiffs' request for declaratory relief change matters. *See Aleman Gonzalez*, 596 U.S. at 551 n.2;

4

cf. *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982) (Tax Injunction Act barred declaratory relief as well as injunctive relief); *Newdow v. Roberts*, 603 F.3d 1002, 1012 (D.C. Cir. 2010); *Comm. on Judiciary of U.S. House of Reps. v. Miers*, 542 F.3d 909, 910-11 (D.C. Cir. 2008) (declaratory judgment against the government was functionally equivalent to an injunction). This Court cannot grant Plaintiffs the relief they seek, and thus, these claims should be dismissed.

## II.     Plaintiffs Failed to State an APA Claim.

The Secretary's decisions were lawful and consistent with the procedures required by 8 U.S.C. § 1254a. Plaintiffs have thus failed to state a claim, and the Court should dismiss under Rule 12(b)(6).

### A.     The 2025 Vacatur and 2025 Termination were consistent with the INA.

The Secretary has inherent authority to reconsider previous determinations. As Defendants explain in their motion, an administrative agency has inherent or statutorily implicit authority to reconsider and change a decision within a reasonable period if Congress has not foreclosed this authority by requiring other procedures. *See* Def. Mot. at 15. Although Plaintiffs acknowledge that an agency has an inherent authority to revisit its prior decisions, they argue that such authority exists only in the absence of specific statutory time limits. Pls.' Opp. at 9. According to Plaintiffs, the "timing and process constraints for terminating a TPS designation" constitute a Congressional limitation on the Secretary's inherent authority. *Id*. But the Vacatur determination was not a "termination" under the TPS statute. *See 2025 Vacatur*, 90 Fed. Reg. at 8805. Rather, it was a reconsideration of a prior extension. No statutory time limits bar the Secretary from correcting her predecessor's error.

Plaintiffs agree that federal agencies can correct themselves if they "take erroneous or unlawful action." Pls.' Opp. at 11 (*quoting The Last Best Beef, LLC v. Dudas*, 506 F.3d 333, 340

(4th Cir. 2007)). But they argue that Secretary Noem "did not claim any error in her predecessors' extension for Venezuela." *Id*. Not so. After carefully reviewing the decision of former Secretary Mayorkas, Secretary Noem found that the decision "did not acknowledge the novelty of its approach or explain how it is consistent with the TPS statute." *2025 Vacatur*, 90 Fed. Reg. at 8809. "Given these deficiencies," Secretary Noem determined that a vacatur is warranted to "untangle the confusion" caused by her predecessors' determination, which consolidated filing processes and allowed all eligible TPS beneficiaries to obtain TPS through the same extension date of October 2, 2026, regardless of whether they are under the 2023 designation or the 2021 designation. *See 2025 Venez. Extension,* 90 Fed. Reg. 5,961. Secretary Noem explained that the vacatur was necessary to provide an "opportunity for informed determinations regarding the TPS designations." *2025 Vacatur*, 90 Fed. Reg. at 8807. And this determination was consistent with her "broad authority" to "make TPS determinations." *See Ramos v. Wolf*, 975 F.3d 872, 890 (9th Cir. 2020)

Plaintiffs further contend that the Vacatur was contrary to Section 1254a(b)(3)(B) in that it terminates an extension prior to the "expiration of the most recent previous extension," which, in Plaintiffs' view, is October 2, 2026. Pls' Opp. at 10. But, as addressed above, this argument incorrectly relies on Plaintiffs' mischaracterization of the vacatur as a "termination." As noted, the Vacatur restored the status quo preceding former Secretary Mayorkas' decision. Accordingly, the initial statutory deadline for the 2023 Venezuela TPS designation remained in effect, which required Secretary Noem to determine whether to extend or terminate the TPS designation by February 1, 2025. And she did so, consistent with the requirements under 8 U.S.C. § 1254a(b)(3*)*.

6

*See 2025 Venez. Termination*, 90 Fed. Reg. at 9,040-41. Plaintiffs' argument that the Secretary "circumvent[ed] the INA's procedures for terminating TPS" thus fails. Pls.' Opp at 10.

Moreover, Secretary Noem's vacatur was consistent with past agency actions of reconsidering prior determinations. *See 2023 El Salvador Reconsideration, Rescission, and Extension*, 88 Fed. Reg. 40,282 (2023) (Secretary Mayorkas exercising "inherent authority to reconsider any TPS-related determination, and upon reconsideration, to change the determination" to vacate his predecessor's termination of El Salvador's TPS designation). Despite Plaintiffs' attempts to distinguish Secretary Mayorkas' recission of a TPS termination from Secretary Noem's vacatur of a TPS extension, Pls.' Opp. at 11-12, both decisions reconsidered a prior TPS determination. Plaintiffs identify no workable way to say that Secretary Mayorkas can reconsider a TPS termination, but Secretary Noem cannot reconsider a TPS extension is not permissible. Here, the Vacatur was consistent with her congressional authority in making TPS determinations, and the decision complied with the procedures laid out in the TPS statute. Plaintiffs simply disagree with the decision.

Nor did the Termination "fail[] to comport with the INA's procedures." Pls.' Opp at 13. Plaintiffs' argument depends on their view that the Vacatur was unlawful. *Id*. ("the unlawfulness of the Termination follows inexorably from the unlawfulness of the purported Vacatur."). In making this argument, Plaintiffs employ the same logic as above, claiming that that termination of a TPS designation can only take effect after "the expiration of the most recent previous extension," which Plaintiffs' theorize to be October 2, 2026. *Id*. But because the 2025 Extension was vacated by the 2025 Vacatur, the status quo preceding that decision was restored, and the "expiration of the most recent previous extension" for the 2023 Venezuela TPS designation was April 2, 2025. *See 2025 Vacatur*, 90 Fed. Reg. 8807. The Termination, which was published on February 5, 2025,

became effective on April 7, 2025. *See 2025 Termination*, 90 Fed. Reg. at 9,040-41. As the termination went into effect after the "expiration of the most recent previous extension," it was lawful under the statute, and Plaintiffs' claim fails.

Plaintiffs also contend that the Termination failed to "adhere to the INA's express requirements." Pls.' Opp at 14. Plaintiffs overlook 8 U.S.C. § 1254a(b)(3)(C), which plainly permits TPS designation where the Secretary "finds that there exist extraordinary and temporary conditions in the foreign state… *unless* [she] finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States." Consistent with this statutory provision, Secretary Noem reviewed Venezuela's 2023 TPS designation and, after consulting with the appropriate Government agencies, determined that Venezuela no longer continues to meet the conditions for 2023 designation. *See 2025 Termination*, 90 Fed. Reg. at 9,042. In this notice, Secretary Noem identified that there were "improvements in several areas such as the economy, public health and crime that allow for [Venezuelan] nationals to be safely returned to their home country," and that these findings were based on information provided by U.S. Citizenship and Immigration Services and the U.S. Department of State. *Id*. But she emphasized that, "even assuming the relevant conditions remain both 'extraordinary and temporary,'" termination of the 2023 TPS designation for Venezuela is required because "it is contrary to the national interest to permit Venezuelan nationals to remain temporarily in the United States," in accordance with her statutory authority under 8 U.S.C.§ 1254a(b)(3)(C). *Id*. As a result, Secretary Noem reasonably determined that Venezuela "no longer continues to meet the conditions for designation." *Id*. Accordingly, the Termination complied with the INA's requirements.

### B. The 2025 Vacatur and 2025 Termination were not Arbitrary, Capricious, or Otherwise Violative of the APA

Plaintiffs argument that the Vacatur should be set aside because it "made no findings regarding country conditions," Pls.' Opp at 15, fails because—again—it was not a termination under the statute. Further, Plaintiffs fail to allege that the Termination violates the APA. Nor can they. Instead, Plaintiffs focus on the "timeframe" Secretary Noem took in making these determinations as a basis for their arguments that the determinations were "arbitrary and capricious." Pls.' Opp. at 16. But these assertions fall short. Here, Secretary Noem promptly issued a determination in accordance with the time limitations. As Plaintiffs acknowledge, a TPS termination "shall not be effective earlier than 60 days after the date the notice is published." Pls.' Opp. at 10 (quoting 8 U.S.C. §1254a(b)(2)(B)). Again, in vacating the TPS extension and restoring the status quo, Secretary Noem had until February 5, 2025 to make a (separate) determination whether to extend or terminate the 2023 TPS designation, which she did. *See 2025 Termination*, 90 Fed. Reg. at 9,040-41. And this termination went into effect on April 7, 2025. *Id*. And Secretary Noem, complying with the statutorily required procedures, reviewed the country conditions after consulting with the appropriate government agencies. *Id*. Therefore, these claims should be dismissed. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983) (agency action should be set aside only "if the agency relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."); s*ee also Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir.2009) "[r]eview under this standard is highly deferential, with a presumption in favor of finding the agency action valid.").

9

Plaintiffs' argument that the Vacatur was issued due to "policy disagreement," Pls.' Opp. at 17, also fails. But contrary to Plaintiffs' unsupported assertions, Pls.' Opp. at 18, Secretary Noem thoroughly explained her reasons for vacating her predecessor's extension, as it provides an opportunity for "clear guidance" regarding the TPS designations. 2025 Vacatur, 90 Fed. Reg. at 8807. Nevertheless, Plaintiffs acknowledge that "an agency acting within its authority can make policy choices consistent with the congressional mandate so long as its actions conform to applicable procedural requirements ….'" *Id*. (quoting *Cf. Bureau of Alcohol, Tobacco & Firearms v. Fed. Lab. Rels. Auth.*, 464 U.S. 89, 98, n.8 (1983). As these determinations were consistent with the previous Secretary's decisions revisiting and rescinding prior TPS determinations, Plaintiffs have not shown that the determinations "deviate from past DHS practice." Pls.' Opp. at 18.

Finally, for the reasons discussed below, Plaintiffs have not adequately alleged that the Secretary's determinations were "pretextual and based on discriminatory motives." Pls.' Opp. at 19; *see infra* Section III.

### III.  Plaintiffs' Constitutional Claims Fail as a Matter of Law

#### A.  <u>Plaintiffs' Constitutional Claims are Subject to Rational Basis Review.</u>

As explained in Defendants' motion to dismiss, rational basis review governs Equal Protection Clause challenges to immigration policy choices because "'[a]ny rule of constitutional law that would inhibit the flexibility' of the President 'to respond to changing world conditions should be adopted only with the greatest caution.'" 585 U.S. at 704 (quoting *Mathews v. Diaz*, 426 U.S. 67, 81-82 (1976)); *see* Defs' Mot. at 21-22. TPS determinations in particular are precisely the kind of immigration policy decisions where there is a "lack of competence on the part of the courts," *Trump v. Hawaii*, 585 U.S. 667, 704 (2018)) (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 31 (2010)), to probe the Executive Branch's decision making. *See Harisiades*

*v. Shaughnessy*, 342 U.S. 580, 591 (1952) ("However desirable worldwide amelioration of the lot of aliens, we think it is peculiarly a subject for international diplomacy. It should not be initiated by judicial decision . . . [and] must be entrusted to the branches of the Government in control of our international relations and treaty-making powers."). TPS determinations involve unique, country-specific analysis that "implicate[s] relations with foreign powers" and "involve[s] classifications defined in the light of changing political and economic circumstances." *Hawaii*, 585 U.S. at 702. Congress's decision to shield TPS determinations from judicial review underscores the conclusion that the courts have limited competence in this area. *See* 8 U.S.C. § 1252a(b)(5)(A).

Contrary to Plaintiffs' suggestion, the Supreme Court has never held that rational basis review applies *only* to immigration policy decisions affecting aliens seeking entry, and not to those already within U.S. borders. *See* Pls.' Opp, at 20-21. Indeed, in summarizing the "upshot of [its] cases" on this issue in *Hawaii*, 585 U.S. at 704, the Court quoted directly from *Mathews*, a case in which *resident* aliens challenged the constitutionality of limitations on eligibility for federal medical insurance, and where the Court upheld the constitutionality of the limitations because they were not "wholly irrational." *Mathews*, 426 U.S. at 83. *Hawaii* also approvingly cited *Rajah v. Mukasey*, a Second Circuit case that upheld as "not wholly irrational" the requirement that aliens of certain nationalities *within the United States* register in the wake of the terrorist attacks on September 11, 2001. 585 U.S. at 704 (citing 544 F.3d 427, 433 (2d Cir. 2008)). In earlier constitutional challenges brought by aliens *already within* the United States as well, the Supreme Court repeatedly cautioned against applying a rigorous standard of review. *See Galvan v. Press*, 347 U.S. 522, 531 (1954) (upholding the Internal Security Act of 1950 while noting that "the formulation of these policies is entrusted exclusively to Congress"); *Harisiades*, 342 U.S. at 590

11

("[N]othing in the structure of our Government or the text of our Constitution would warrant judicial review by standards which would require us to equate our political judgment with that of Congress"). Plaintiffs acknowledge in passing that the Court applied rational basis review in both *Mathews* and *Harisiades*, but they present no principled way to reconcile the holdings in those cases with their proposed rule to limit rational basis review to only immigration policy decisions involving aliens seeking entry. *see* Pls' Opp. at 21.

      B.    <u>Plaintiffs have failed to state a claim even under a heightened standard of review.</u>

Even under heightened scrutiny, Counts V and VI of the Complaint necessarily fail because they have not alleged a plausible claim that a racially "discriminatory purpose was a motivating factor" in the Secretary's determinations. See *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977). Plaintiffs' constitutional claims rest entirely on an attempt to label as "discriminatory" various public statements by the Secretary and the President in which they advocated for a reduction of illegal immigration and crime. *See* Compl. ¶¶ 88-121.

The statements and sources highlighted by Plaintiffs in their opposition reflect that their racial animus claims are entirely without foundation. Pls.' Opp. at 23 (citing Compl. ¶¶ 88, 96, 115, 118). For example, Plaintiffs quote from a social media post in which Secretary Noem stated that Venezuela is "emptying [its] prisons of dangerous criminals to send them to America." Compl. ¶ 115 (citing https://x.com/KristiNoem/status/1762195636491825295). Plaintiffs neglect to mention, however, that the post in question was in response to a news article describing how the Venezuelan national charged with the murder of Laken Riley had crossed into the United States illegally. *Id*. Plaintiffs' opposition also notes that Secretary Noem expressed concern during in a February 2025 interview that *some* individuals who have entered the United States from Venezuela are members of Tren de Aragua. Pls' Opp at 22. Here the Secretary's statement is plainly

non-discriminatory in nature and simply mirrors the legitimate "national security, border enforcement, public safety, immigration policy, and economic and public welfare concerns" that informed the Secretary's termination determination. 90 Fed. Reg. at 9043; see 90 Fed. Reg. at 9042 (recognizing that "among the Venezuelan nationals who have crossed into the United States are members of . . . Tren de Aragua").

Plaintiffs' attempt to rely on statements by President Trump—which in some cases date back many years—should be rejected here for the same reason the Supreme Court rejected reliance on similar statements in *DHS v. Regents*: "even as interpreted by [plaintiffs], these statements—remote in time and made in unrelated contexts—do not qualify as 'contemporary statements' probative of the decision at issue." 591 U.S. 1, 35 (2020) (citing *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 268 (1977)). Moreover, the sources Plaintiffs choose to highlight in their opposition underscore the truly unsubstantial nature of their racial animus claims against the President. *See* Pls' Opp at 23 (citing Compl. ¶¶ 88, 96. For example, Plaintiffs cite an article from the "Opinion" section of *The Hill* in which a columnist criticizes the President for "harp[ing] on crime and immigration." Compl. ¶ 88 (citing https://thehill.com/opinion/4819898-trump-venezuela-crime-claims). Plaintiffs also highlight the fact that the President frequently discussed criminal activity by Venezuelan migrants during the 2024 presidential campaign. Compl. ¶ 96. These statements self-evidently reflect the President's concern about *criminal activity*, not about people of any specific race or ethnicity.

The Court should reject Plaintiffs' far-fetched attempt to locate discriminatory animus in a collection of statements that say nothing whatsoever about race or ethnicity. To the contrary, the statements that appear in the Complaint simply reflect the general view of the current administration that the prior administration's border policies encouraged a mass illegal influx of

13

aliens and created an unsustainable situation. Plaintiffs' untenable position would mean that these statements vitiate *every* ensuing immigration policy of this administration based on equal protection grounds. The Court should reject this reasoning and should dismiss Plaintiffs' constitutional claims because they are not facially plausible. *Ashcroft*, 556 U.S. at 664.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed in its entirety for lack of subject matter jurisdiction and for failure to state a claim. Fed. R. Civ. P. 12(b)(1), (6). Alternatively, Plaintiffs' Motion for Partial Summary Judgment should be denied and judgment entered in favor of Defendants.

Dated: April 15, 2025

| | |
|---|---|
| YAAKOV M. ROTH<br>Acting Assistant Attorney General | LAUREN BRYANT<br>CATHERINE ROSS<br>ERIC SNYDERMAN |
| SARAH L. VUONG<br>Assistant Director | ANNA L. DICHTER<br>JEFFREY HARTMAN<br>AMANDA SAYLOR |
| WILLIAM H. WEILAND<br>Senior Litigation Counsel | Trial Attorneys |
| | s/ Carlton F. Sheffield<br>CARLTON F. SHEFFIELD<br>Trial Attorney<br>U.S. Department of Justice, Civil Division<br>Office of Immigration Litigation<br>P.O. Box 868 Ben Franklin Station<br>Washington, D.C. 20044 |
| | *Counsel for Defendants* |

TO:  Raymond Audain
     *Counsel for Plaintiff*
     GISKAN, SOLOTAROFF & ANDERSON, LLP
     New York

14

90 Broad Street
Second Floor
New York, NY 10004
646-835-0773

Ira J Kurzban
*Counsel for Plaintiffs*
KURZBAN, KURZBAN, TETZELI & PRATT, P.A.
131 Madeira Avenue
Coral Gables, FL 33134
305-444-0060

Madisen Hursey
Geoffrey Pipoly
Alexa Jane Thein
*Counsel for Plaintiffs*
BRYAN CAVE LEIGHTON PAISNER
161 N Clark St
Ste 4300
Chicago, IL 60607
847-894-3712

Andrew Tauber
*Counsel for Plaintiffs*
BRYAN CAVE LEIGHTON PAISNER LLP
1155 F Street, NW
Washington, DC 20004
202-508-6111

Sejal Zota
*Counsel for Plaintiffs*
JUST FUTURES LAW
1629 K Street N.W.
Suite 300
District of Columbia, DC 20006
919-698-5015