YAAKOV M. ROTH
Acting Assistant Attorney General
SARAH L. VUONG
Assistant Director
WILLIAM H. WEILAND
Senior Litigation Counsel
ANNA L. DICHTER
LAUREN BRYANT
JEFFREY HARTMAN
CARLTON SHEFFIELD
AMANDA SAYLOR
ERIC SNYDERMAN
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-7082
Facsimile: (202) 305-7000
E-mail: Catherine.ross@usdoj.gov
*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## SOUTHERN DIVISION

| | |
|---|---|
| CASA INC., *et al.,* <br><br> Plaintiffs, <br><br> v. <br><br> KRISTI NOEM, Secretary of Homeland Security, *et al.,* <br><br> Defendants. | Case No. 8:25-cv-00525 |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
## FOR PARTIAL SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS

    I.     Statutory Background ........................................................................... 3

    II.    Factual Background ............................................................................. 4

STANDARD OF REVIEW .............................................................................................. 6

ARGUMENT .................................................................................................................... 7

    I.     Secretary Noem's Challenged Actions Are Not Reviewable Under The
          Administrative Procedure Act ............................................................... 7

          A.    Plaintiffs' Claims are Unreviewable Under the APA Because the
                 TPS Statute Precludes Judicial Review ........................................ 7

          B.    Additional Barriers to Review of Plaintiffs' Claims ................................ 11

    II.    The Secretary's Vacatur Of The January 2025 Extension Was In
           Accordance With Law ............................................................................ 13

          A.    The Secretary Has Statutory Authority to Vacate a Prior
                 Extension of a Country's TPS Designation and Terminate TPS ............... 13

          B.    The Vacatur Does Not Conflict with the TPS Statute .............................. 16

    III.   The Secretary's Termination Of The 2023 Designation Was Issued In
           Accordance With The Law ...................................................................... 17

CONCLUSION ................................................................................................................. 19

## TABLE OF AUTHORITIES

### CASES

*Albertson v. FCC*,
    182 F.2d 397 (D.C. Cir. 1950) ............................................................................. 13

*Ali v. Fed. Bureau of Prisons*,
    552 U.S. 214 (2008) ............................................................................................ 8

*Casa de Maryland v. Trump*,
    355 F. Supp. 3d 307 (D. Md. 2018) ..................................................................... 10

*Chao v. Russell P. Le Frois Builder, Inc.*,
    291 F.3d 219 (2d Cir. 2002) ................................................................................ 13

*Ctr. for Sci. in the Pub. Interest v. Perdue*,
    438 F. Supp. 3d 546 (D. Md. 2020) ..................................................................... 6

*Cuozzo Speed Techs., LLC v. Lee*,
    579 U.S. 261 (2016) ......................................................................................... 9, 10

*Dan's City Used Cars, Inc. v. Pelkey*,
    569 U.S. 251 (2013) ............................................................................................ 8

*China Unicom (Ams.) Ops. Ltd. v. FCC*,
    124 F.4th 1128 (9th Cir. 2024) ........................................................................... 13

*Fiallo v. Bell*,
    430 U.S. 787 (1977) ........................................................................................ 8, 10

*Gun South, Inc. v. Brady*,
    877 F.2d 858 (11th Cir. 1989) ............................................................................. 14

*Harisiades v. Shaughnessy*,
    342 U.S. 580 (1952) ............................................................................................ 15

*Hollingsworth v. Perry*,
    558 U.S. 183 (2010) ............................................................................................ 2

*Hotel & Rest. Emps. Union, Loc. 25 v. Smith*,
    846 F.2d 1499 (D.C. Cir. 1988) ........................................................................ 8, 10

*Ivy Sports Med., LLC v. Burwell*,
    767 F.3d 81 (D.C. Cir. 2014) ............................................................................... 13

*Jama v. Immigration and Customs Enforcement*,
    543 U.S. 335 (2005) ........................................................................................... 10

*Lamar, Archer & Cofrin, LLP v. Appling*,
    584 U.S. 709 (2018) ........................................................................................... 8

*Last Best Beef, LLC v. Dudas*,
    506 F.3d 333 (4th Cir. 2007) ............................................................................ 14

*Macktal v. Chao*,
    286 F.3d 822 (5th Cir. 2002) ............................................................................ 14

*McNary v. Haitian Refugee Ctr.*,
    498 U.S. 479 (1991) ................................................................................... 8, 9, 10

*Medical Mutual Ins. Co. of N.C. v. Littaua*,
    35 F.4th 205 (4th Cir. 2022) ............................................................................. 12

*National TPS Alliance*,
    --- F.Supp.3d ----, 2025 WL 957677 (N. D. Cal. Mar. 31, 2025) ..................... 2

*Nat'l Ass'n of Home Builders v. Defs'. of Wildlife*,
    551 U.S. 644 (2007) ........................................................................................... 7

*Noem v. National TPS Alliance*,
    No. 24A1059 (S. Ct. May 19, 2025) .................................................................. 2

*Patel v. Garland*,
    596 U.S. 328 (2022) ........................................................................................... 7

*Poursina v. USCIS*,
    936 F.3d 868 (9th Cir. 2019) ....................................................................... 12, 14

*Profiles, Inc. v. Bank of America Corp.*,
    453 F. Supp. 3d 742 (D. Md. 2020) .................................................................. 12

*Ramos v. Wolf*,
    975 F.3d 872 (9th Cir. 2020) ............................................................................ 14

*Ru Jun Zhang v. Lynch*,
    2018 WL 1157756 (E.D.N.Y. Mar. 1, 2018) .................................................... 18

*Sanchez v. Mayorkas*,
    593 U.S. 409 (2021) ........................................................................................... 4

*Sanitary Bd. of Charleston v. Wheeler*,
    918 F.3d 324 (4th Cir. 2019) ................................................................. 7

*Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Housing and Urban Dev.*,
    480 F.3d 1116 (Fed. Cir. 2007) .............................................................. 10

*The Last Best Beef, LLC v. Dudas*,
    506 F.3d 333 (4th Cir. 2007) ................................................................. 14

*Trump v. Hawaii*,
    585 U.S. 667 (2018) ................................................................................ 15

*Youngstown Sheet and Tube Co. v. Sawyer*,
    343 U.S. 579 (1952) ................................................................................ 15

*Zhu v. Gonzales*,
    411 F.3d 292 (D.C. Cir. 2005) ............................................................... 12

## STATUTES

5 U.S.C. § 701(a)(1) ..................................................................................... 1, 7

5 U.S.C. § 701(a)(2) ................................................................................... 2, 12

5 U.S.C. § 706(2)(C) ...................................................................................... 13

6 U.S.C. § 202(1)-(5) ..................................................................................... 15

28 U.S.C. § 2201 ............................................................................................ 12

## Immigration and Nationality Act of 1952:

Section 103(a),
    8 U.S.C. § 1103(a) ................................................................................. 13

Section 103(a)(1),
    8 U.S.C. § 1103(a)(1) ............................................................................ 15

Section 103(a)(3),
    8 U.S.C. § 1103(a)(3) ............................................................................ 15

Section 242(a)(1),
    8 U.S.C. § 1252(a)(2)(B) ....................................................................... 11

Section 242(a)(2)(D),
   8 U.S.C. § 1252(a)(2)(D) ...................................................................................11

Section 242(f)(1),
   8 U.S.C. § 1252(f)(1) ................................................................................. 1, 12

Section 243,
   8 U.S.C. § 1254a ................................................................... 12, 13, 14, 15

Section 243(a),
   8 U.S.C. § 1254a(a) ...................................................................................... 4

Section 243(c),
   8 U.S.C. § 1254a(c) ...................................................................................... 4

Section 243(b)(1),
   8 U.S.C. § 1254a(b)(1) .................................................................................. 3

Section 243(b)(1)(C),
   8 U.S.C. § 1254a(b)(1)(C) ....................................................................... 1, 14

Section 243(b)(2),
   8 U.S.C. § 1254a(b)(2) .................................................................................. 4

Section 243(b)(3),
   8 U.S.C. § 1254a(b)(3) .............................................................................. 5, 17

Section 243(b)(3)(A),
   8 U.S.C. § 1254a(b)(3)(A) ............................................................................. 4

Section 243(b)(3)(A)-(C),
   8 U.S.C.§ 1254a(b)(3)(A)-(C) .................................................................. 13, 14

Section 243(b)(3)(B),
   8 U.S.C. § 1254a(b)(3)(B) ........................................................................ 4, 17

Section 243(b)(3)(C),
   8 U.S.C. § 1254a(b)(3)(C) ........................................................................ 4, 18

Section 243(b)(5)(A),
   8 U.S.C. § 1254a(b)(5)(A) ................................................................. 1, *passim*

Section 243(b)(5)(B),
   8 U.S.C. § 1254a(b)(5)(B) ........................................................................... 18

# **RULES**

Fed. R. Civ. P. 56(a) ................................................................................................ 6

Pub. L. No. 101-649,
   104 Stat. 4978.................................................................................................. 3

# **REGULATIONS**

87 Fed. Reg. 55,024 (Sept. 8, 2022) ...................................................................... 4

88 Fed. Reg. 40,282 (June 21, 2023) ............................................................... 14, 16

88 Fed. Reg. 68,130 (Oct. 3, 2023)..................................................................... 4, 5

90 Fed. Reg. 5,961 (Jan. 17, 2025) .................................................................... 5, 16

90 Fed. Reg. 9,040 (Feb. 5, 2025) ................................................................. 2, 5, 17

## INTRODUCTION

This case concerns Secretary of Homeland Security Kristi Noem's authorized vacatur of her predecessor's extension of Venezuela's 2023 Temporary Protected Status ("TPS") designation, and later termination of that designation. TPS is a humanitarian program that affords temporary relief from removal to certain aliens who are in the United States when their country of nationality experiences armed conflict, a natural disaster, or other extraordinary and temporary conditions and who are thus temporarily unable to return home safely. The TPS statutes vest the Secretary with broad discretion to designate a foreign state for TPS, unless the Secretary determines that permitting the nationals to remain temporarily in the United States is "contrary to the national interest." 8 U.S.C. § 1254a(b)(1)(C).

Here, Plaintiffs CASA de Maryland, Inc., ("CASA") and Make the Road New York ("MRNY"), (collectively "Plaintiffs") seek partial summary judgment, alleging that Secretary Noem's Vacatur and Termination of the 2023 TPS designation for Venezuela were unlawful and seek to set aside these actions under Administrative Procedure Act ("APA"). *See* ECF No. 8-1 ("Pls.' MSJ"). Plaintiffs are not entitled to partial summary judgment for several reasons. First, as explained in Defendants' motion to dismiss, *see* ECF No. 54 ("Defs' Mot."), Plaintiffs' claims are not reviewable under the APA because Congress has explicitly barred judicial review of TPS determinations. Indeed, words that Congress chose to establish the jurisdictional bar could hardly be clearer here: "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS. 8 U.S.C. § 1254a(b)(5)(A); *see also* 5 U.S.C. § 701(a)(1) (precluding review under the APA "to the extent" that other "statutes preclude judicial review."). Plaintiffs' claims are also foreclosed by another section of the INA—section 1252(f)(1)—which bars district courts from "enjoin[ing] or

restrain[ing]" certain provisions of the INA. Moreover, Plaintiffs' claims are inconsistent with the principle that the APA does not allow for review of agency action that is committed to agency discretion by law. 5 U.S.C. § 701(a)(2).

Even assuming the Court's jurisdiction, Plaintiffs have not shown that the determinations they challenge were contrary to law. Rather, these determinations were consistent with the Secretary's broad statutory authority and were based on a finding that her predecessor's extension contained flaws warranting reconsideration, particularly in light of evidence that it was "contrary to national interest to permit Venezuelan nationals to remain temporarily in the United States." Termination of the October 3, 2023, Designation of Venezuela for [TPS], 90 Fed. Reg. 9,040 (Feb. 5, 2025).

The Supreme Court's May 19, 2025 order in *Noem v. National TPS Alliance*, No. 24A1059 (S. Ct. May 19, 2025), which granted the government's application for a stay of a district court order in a nearly identical lawsuit, *National TPS Alliance*, --- F.Supp.3d ----, 2025 WL 957677, at *47 (N. D. Cal. Mar. 31, 2025), underscores the strength of the government's position in this case. The Supreme Court held in *National TPS Alliance*, with only one justice publicly dissenting, that the government is likely to succeed in challenging the district court's order, which was premised on the same legal theories advanced by Plaintiffs in this case. *See Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curium) (in order to "obtain a stay pending the filing and disposition of a petition for writ of certiorari, an applicant must show," among other things, "a fair prospect that a majority of the Court will vote to reverse the judgment below."). By the same measure, the Plaintiffs in this case are not entitled to partial summary judgment, and the Court should instead dismiss this case for lack of jurisdiction.

## STATEMENT OF FACTS

**I.    Statutory Background**

The Immigration Act of 1990 established a program for providing temporary shelter in the United States on a discretionary basis for aliens from designated countries experiencing ongoing armed conflict, environmental disaster, or "extraordinary and temporary conditions" that temporarily prevent the aliens' safe return or, in the case of environmental disasters, temporarily render the country unable to handle adequately the return of its nationals. Pub. L. No. 101-649, 104 Stat. 4978. The statute authorizes the Secretary of Homeland Security, "after consultation with appropriate agencies of the Government," to designate countries for "Temporary [P]rotected [S]tatus," if she finds:

> (A) … that there is an ongoing armed conflict within the state and, due to such conflict, requiring the return of aliens who are nationals of that state to that state (or to the part of the state) would pose a serious threat to their personal safety;
>
> (B) … that—
> (i) there has been an earthquake, flood, drought, epidemic, or other environmental disaster in the state resulting in a substantial, but temporary, disruption of living conditions in the area affected,
> (ii) the foreign state is unable, temporarily, to handle adequately the return to the state of aliens who are nationals of the state, and
> (iii) the foreign state officially has requested designation under this subparagraph; or
>
> (C)  … there exist extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety, unless the [Secretary] finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States.

8 U.S.C. § 1254a(b)(1).

When the Secretary designates a country for TPS, eligible aliens who are granted TPS may not be removed from the United States and are authorized to work for the duration of the country's

3

TPS designation, so long as they remain in valid temporary protected status. 8 U.S.C. § 1254a(a), (c); *see Sanchez v. Mayorkas*, 593 U.S. 409, 412 (2021). Initial designations may not exceed eighteen months. *Id*. § 1254a(b)(2). The Secretary must consult with appropriate agencies and review each designation before it ends to determine whether the conditions for the country's designation continue to be met. *Id*. § 1254a(b)(3)(A). If the Secretary finds that the foreign state "no longer continues to meet the conditions for designation," she "shall terminate the designation" by publishing notice in the Federal Register of the determination and the basis for the termination. *Id*. § 1254a(b)(3)(B). If the Secretary "does not determine" that the foreign state "no longer meets the conditions for designation," then "the period of designation of the foreign state is extended for an additional period of 6 months (or, in the discretion of the [Secretary], a period of 12 or 18 months)." *Id*. § 1254a(b)(3)(C).

Finally, the statute makes the Secretary's TPS determinations unreviewable. "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." *Id*. § 1254a(b)(5)(A).

## II.    Factual Background

On March 9, 2021, former Secretary of Homeland Security Alejandro Mayorkas designated Venezuela for TPS based on extraordinary and temporary conditions that prevented nationals of Venezuela from returning in safety. The former Secretary extended Venezuela's TPS designation twice.[1] On October 3, 2023, in addition to extending the 2021 Venezuela TPS designation through September 2025, the former Secretary redesignated Venezuela for TPS, effective from October 3,

---

[1] *See Extension of the Designation of Venez. for [TPS]*, 87 Fed. Reg. 55,024 (Sept. 8, 2022); *see also Extension and Redesignation of Venez. for [TPS]*, 88 Fed. Reg. 68,130 (Oct. 3, 2023) ("2023 Venez. Designation").

2023, through April 2, 2025. *2023 Venez. Designation*, 88 Fed. Reg. 68,130. This notice not only provided procedures for initial applicants registering for TPS under the 2023 Venezuela Designation but also allowed Venezuelan nationals who had previously registered for TPS under the 2021 Venezuela Designation to re-register for TPS and apply to renew their Employment Authorization Document (EAD) with USCIS. *Id*. On January 10, 2025, former Secretary Mayorkas issued a notice extending the 2023 Venezuela Designation for 18 months, allowing a consolidation of filing processes such that all eligible Venezuela TPS beneficiaries (whether under the 2021 or 2023 designations) could obtain TPS through October 2, 2026.[2]

On January 28, 2025, Secretary Noem vacated the 2025 Venezuela Extension and restored the status quo that preceded that decision. *See* 2025 Venez. Vacatur, 90 Fed. Reg. at 8,805. She explained that the 2025 Venezuela Extension "did not acknowledge the novelty of its approach" or "explain how it is consistent with the TPS statute." *Id*. at 8,807; *see* 8 U.S.C. § 1254a(b)(3). The Secretary determined that the "lack of clarity" warranted a vacatur to "untangle the confusion and provide an opportunity for informed determinations regarding the TPS designations and clear guidance." *Id*.

After reviewing the Venezuelan country conditions and consulting with the appropriate U.S. Government agencies, on February 1, 2025, Secretary Noem determined that Venezuela no longer continued to meet the conditions for the 2023 Venezuela Designation and that it was "contrary to the national interest to permit the covered Venezuelan nationals to remain temporarily in the United States." *2025 Venez. Termination*, 90 Fed. Reg. at 9,040-41. Accordingly, Secretary Noem terminated the 2023 Designation of Venezuela, effective April 7, 2025. *Id*. In making this

---

[2] *Extension of the 2023 Designation of Venez. for [TPS]*, 90 Fed. Reg. 5,961 (Jan. 17, 2025) ("2025 Venez. Extension").

determination, she highlighted the "notable improvements in several areas, such as the economy, public health, and crime," that allow for Venezuelan nationals to be "safely returned to their home country." *Id*. at 9042. However, even assuming extraordinary and temporary conditions remained, the Secretary explained that that the termination of the 2023 Venezuela TPS designation is necessary because it is contrary to the national interest to permit the Venezuelan nationals to remain temporarily in the United States. *Id*. The national interest is "an expansive standard that may encompass an array of broad considerations" which "calls upon the Secretary's expertise and discretionary judgment." *Id*. Secretary Noem explained that the significant population of TPS holders has resulted in "associated difficulties in local communities where local resources have been inadequate to meet the demands cause by increased numbers," and further underscored that, across the United States, "city shelters, police stations and aid services are at maximum capacity." *Id*. In considering national interests, she found that this population includes members of Tren de Aragua, a transnational criminal organization recently determined to "pos[e] threats to the United States." *Id*. at 9,042-43. Secretary Noem also observed that "U.S. foreign policy interests, particularly in the Western Hemisphere, are best served and protected by curtailing policies that facilitate or encourage illegal and destabilizing migration." *Id*. at 9,043.

## **STANDARD OF REVIEW**

Summary judgment is warranted if "there is no genuine dispute of material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a case involving an agency action under the APA, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA." *Ctr. for Sci. in the Pub. Interest v. Perdue*, 438 F. Supp. 3d 546, 556 (D. Md. 2020). Therefore, "the focal point for judicial review should be the administrative record

already in existence." *Sanitary Bd. of Charleston v. Wheeler*, 918 F.3d 324, 334 (4th Cir. 2019) (citation omitted). As a result, federal courts should "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.* at 333 (*citing Nat'l Ass'n of Home Builders v. Defs'. of Wildlife*, 551 U.S. 644, 658 (2007)).

## ARGUMENT

I.    **Secretary Noem's Challenged Actions Are Not Reviewable Under The Administrative Procedure Act**

A.    **Plaintiffs' Claims are Unreviewable Under the APA Because the TPS Statute Precludes Judicial Review.**

Under the Administrative Procedure Act, judicial review is not available "to the extent that…statutes preclude judicial review." 5 U.S.C. § 701(a)(1). The TPS statute unambiguously precludes review here in the plainest possible language: "*There is no judicial review of any determination of the [Secretary]* with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS relief. 8 U.S.C. § 1254a(b)(5)(A) (emphasis added). The statute commits to the Secretary's unreviewable authority any and all determinations concerning TPS designation, extension, and termination. Like the decision to terminate TPS for Venezuela itself, the Secretary's Vacatur of the extension is plainly a determination "*with respect to*" an extension—i.e., it was a determination that former Secretary Mayorkas's extension was improper and should be vacated.  8 U.S.C. § 1254a(b)(5)(A) (emphasis added).

As discussed in Defendants' motion to dismiss, several features of 8 U.S.C. § 1254a(b)(5)(A) reflect Congress' intent that the statute sweep broadly. *See* Defs'' Mot. at 8-10. First, in describing which "determinations" should be shielded from judicial review, Congress chose the word "any," which the Supreme Court has long recognized as having an "expansive meaning." *Patel v. Garland*, 596 U.S. 328, 338 (2022). The provision thus captures determinations

"of whatever kind." *Id.* (quoting Webster's Third International Dictionary 97 (1993)); *see Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) (same). Likewise, Congress's use of the phrase "with respect to," has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717 (2018); *see also Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (the similar phrase "related to" means "having a connection with or reference to . . . whether directly or indirectly"); Webster's New Collegiate Dictionary 1004 (9th ed. 1990) (defining "respect" as "a relation to or concern with something usually specified").

Reinforcing this interpretation, "the Government's political departments [are] largely immune from judicial control" in the immigration context, *Fiallo* v. *Bell*, 430 U.S. 787, 792 (1977), particularly when making the sensitive foreign-policy judgments at issue here. The Executive Branch has long exercised inherent authority to afford temporary immigration status based on its assessment of conditions in foreign states, even before there was any "specific statutory authority" for such relief. *See Hotel & Rest. Emps. Union, Loc. 25* v. *Smith*, 846 F.2d 1499, 1510 (D.C. Cir. 1988). That authority includes the discretion "*not* to extend [protected] status to a particular class of aliens," and the D.C. Circuit had recognized that the Executive Branch's decision in that respect was "unreviewable" by courts. *Id.* Congress legislated against that backdrop when it enacted the TPS program, and codified in Section 1254a(b)(5)(A) the understanding that "[t]here is no judicial review" of such determinations. 8 U.S.C. § 1254a(b)(5)(A).

In support of their motion for partial summary judgment, Plaintiffs attempt to obfuscate Section's 1254a(b)(5)(A)'s clear meaning by redefining the term "determination." *See* Pls.' MSJ, at 11. According to Plaintiffs, "determination" is a "term of art," and they cite *McNary v. Haitian Refugee Ctr.* for the proposition that it "describes a single act rather than a group of decisions or a

8

practice or procedure employed in making decisions." *Id.* (citing 498 U.S. 479, 492 (1991)). As an initial matter, Plaintiffs do not explain why the Secretary's vacatur would *not* constitute "a single act" as per the quoted passage from *McNary*. 498 U.S. at 492. More fundamentally though, the passage from *McNary* cited above reflects the Court's examination of the specific statutory language at issue in *that case*, which precluded "judicial review of *a determination* respecting *an application* for adjustment of status." *Id.* (original emphasis). In the course of concluding that the judicial review statute did not preclude the plaintiffs' broad challenges to "practices and polices used by the agency in processing applications," the Court in *McNary* explained that the word "determination" —again, as used in context in *that* statute—"describes a single act" such that the bar to judicial review applied "only to review of denials of individual . . . applications." *Id.*, at 492, 494. *McNary* did not purport to define the word "determination" as it appears in *every* statute. Rather, the Court's analysis was informed by the manner in which "determination" was modified by other words in statute it considered, as well as the broader context in which Congress enacted that statute. *Id.* at 491-94. *McNary* thus does not support Plaintiffs' position. To the contrary, the same analytical tools employed by the Court in *McNary* lead here to the straightforward conclusion the Secretary's Vacatur falls squarely within the ambit of "any determination . . . with respect to the designation, or termination or extension of a designation." 8 U.S.C. § 1254a(b)(5)(A).

To the extent Plaintiffs also rely on *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261 (2016), *see* Pls.' MSJ, at 11, the holding in that case also supports the government's position. The plaintiffs in *Cuozzo*, like Plaintiffs here, relied on a presumption in favor of judicial review in their effort to sidestep a barrier to judicial review. *See Cuozzo*, 579 U.S. at 273-74; Pls.' MSJ, at 13. But *Cuozzo* acknowledged that "[t]his presumption . . . may be overcome by 'clear and convincing indications, drawn from specific statutory language, specific legislative history, and inferences of intent drawn

from the statutory scheme as a whole that Congress intended to bar review." *See Cuozzo*, 579 U.S. at 273. Like the judicial review statute in *Cuozzo*—which rendered certain determinations by the Director of the Patent Office "final and non-appealable"—Section 1254a(b)(5)(A)'s bar on judicial review is expressed in exceedingly clear terms. It is also supported by legislative history, *see* H.R. Rep. No. 101-245, at 14 (1989) ("Moreover, none of the [Secretary's] decisions with regard to granting, extending, or terminating TPS will be subject to judicial review"), and was enacted as part of a statutory scheme that provides the Executive Branch with "broad latitude in enforcing the immigration laws," *Hotel & Rest. Emps. Union*, 846 F.2d at 1510; *see Fiallo*, 430 U.S. at 792. The commonsense reading of Section 1254a(b)(5)(A) that Defendants advance thus "reserve[s] the agency's primacy over its core statutory function in accord with Congress' intent." *Cuozzo*, 579 U.S. at 274. The Court's statements in *Cuozzo* discussing the possibility that certain claims, such as constitutional claims, may *not* be covered by judicial review statute, *see id*. at 275, were unnecessary to the Court's holding and should thus be regarded as dicta. *See Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 349 n.12 (2005) ("Dictum settles nothing, even in the court that utters it.").[3]

Plaintiffs also argue that they are not asking this Court "to review or set aside any 'determination' by Secretary Noem or DHS, but rather to find that her actions were not authorized by law." Pls.' MSJ at 12. The Court should reject Plaintiffs' attempt to "artfully recast [their] complaint to circumvent" barriers to the Court's review. *Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Housing and Urban Dev.*, 480 F.3d 1116, 1124 (Fed. Cir. 2007). Were it the case that a

---

[3] To the extent Plaintiffs rely on the district court's decision in *Casa de Maryland v. Trump*, 355 F. Supp. 3d 307, 321-22 (D. Md. 2018), *see* ECF No. 8-1, at 20, that decision was principally informed by an erroneous reading of *McNary* and *Cuozzo*. For the reasons discussed above, applying Section 1254a(b)(5)(A) to bar Plaintiffs' claims is fully consistent with, and in fact supported by, *McNary* and *Cuozzo*.

litigant could sidestep Section 1254a(b)(5)(A) by simply characterizing a designation, termination, or extension of TPS as "not authorized by law," there would be little left of Congress's clear, broad bar to review. Moreover, if Congress had wished to preserve judicial review over questions of law or constitutional claims, it could have provided those exceptions, as it did elsewhere in the Immigration and Nationality Act. *See* 8 U.S.C. § 1252(a)(2)(D) (providing that certain provisions eliminating judicial review should not be construed as "precluding review of constitutional claims or questions of law").[4]

In sum, the Secretary Vacatur of her predecessor's TPS extension is a determination "with respect to" a TPS extension—*i.e.*, a determination that an extension was improper and should have no legal effect—that is not subject to judicial review. 8 U.S.C. 1254a(b)(5)(A). By contrast, Plaintiffs' reading of the statute would create the bizarre result that a Secretary's decision to extend TPS is unreviewable, but the rationale for vacating that same extension would be subject to full arbitrary-and-capricious review. Neither the statutory text nor context supports that disparity. Because judicial review is foreclosed by § 1254a(b)(5)(A), Plaintiffs' APA claims are barred, and Defendants are entitled to judgment on these claims.

### B.     Additional Barriers to Review of Plaintiffs' Claims

As explained in Defendants' motion to dismiss, there are other barriers to this Court's review of Plaintiffs' claims as well.  Defs'' Mot. at 10-14. First, the APA precludes review of

---

[4] In their own memorandum, Plaintiffs cite 8 U.S.C. § 1252(a)(2)(B) and argue that Congress could have been clearer if it truly meant to preclude review in the manner proposed by the government.  Pls.' MSJ at 14. The fact that Section 1252(a)(2)(B) uses the phrases "any judgment . . . or any other decision" is attributable to that statute's distinct structure and subject matter, foreclosing review of various listed forms of "denials of discretionary relief." The more telling part of the comparison with Section 1252(a)(2), as noted above, is the fact that Section 1254a(b)(5)(A) includes *no* language preserving review over constitutional claims or questions of law. *Compare* 8 U.S.C. § 1252(a)(2)(D).

agency action that is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The Secretary's determination that continuing to extend TPS for Venezuela is no longer in the "national interest" is precisely the kind of judgment call that depends upon the Secretary's "expertise and judgment" such that there is no manageable legal standard. Defs'' Mot. at 10 (citing *Zhu v. Gonzales*, 411 F.3d 292, 295 (D.C. Cir. 2005)); *see Poursina v. USCIS*, 936 F.3d 868, 872 (9th Cir. 2019) ("the invocation of 'national interest' is a core example of a consideration that lacks a judicially manageable standard"). Second, Plaintiffs' request that the Court "set aside and declare inoperative" the Secretary's determinations, *see* Compl. ¶¶ 127, 135, cannot be squared with 8 U.S.C. § 1252(f)(1), which bars district courts and courts of appeals from entering an order that "enjoin[s] or restrain[s]" the operation of the statutory provisions § 1252(f)(1) covers, including § 1254a. *See* Defs'' Mot. at 11-14. Moreover, while recognizing that the Fourth Circuit has held otherwise, the government maintains the view that § 1252(f)(1) also bars declaratory relief. *See* Defs' Mot. at 14.

To the extent Plaintiffs rely on the Declaratory Judgment Act, *see* Pls.' MSJ, at 10, 28 U.S.C. § 2201 does not create a freestanding cause of action, but instead merely defines the scope of relief available to a plaintiff with a cognizable claim. *See Profiles, Inc. v. Bank of America Corp.*, 453 F. Supp. 3d 742, 752 (D. Md. 2020) ("The Declaratory Judgment Act 'provides a remedy in cases otherwise in the Court's jurisdiction; it does not create an independent cause of action.'"); *see also Medical Mutual Ins. Co. of N.C. v. Littaua*, 35 F.4th 205, 208 (4th Cir. 2022) ("Thus, the Declaratory Judgment Act "'merely permits' federal courts to hear those cases rather than granting litigants a right to judgment."). Because the Court lacks jurisdiction over all of Plaintiffs' claims for the reasons described above, it likewise follows that the Court should dismiss their claims under the Declaratory Judgment Act.

## II.     The Secretary's Vacatur Of The January 2025 Extension Was In Accordance With Law

Plaintiffs allege that the Vacatur determination was "not in accordance with law," in violation of 5 U.S.C. § 706(2)(C).  Pls.' MSJ at 20. Specifically, Plaintiffs contend that the TPS statute does not authorize a vacatur and that the determination "conflicts with the procedure for termination specified in the INA." Pls.' MSJ at 19-26. Even assuming the Court has jurisdiction to consider these claims, the Court should reject them because they are meritless.

### A.     The Secretary Has Statutory Authority to Vacate a Prior Extension of a Country's TPS Designation and Terminate TPS.

The Secretary has implicit authority under 8 U.S.C. §§ 1103(a) and 1254a to reconsider past actions. Plaintiffs argue that "there is no express grant of DHS authority under the INA to reconsider a TPS extension." Pls.' MSJ. at 21. Statutory authorization to make a decision, however, "must be understood as carrying with it an implied incidental authority" to revoke that decision, *China Unicom (Ams.) Ops. Ltd. v. FCC*, 124 F.4th 1128, 1143 (9th Cir. 2024), especially because the TPS statute gives the Secretary discretion over both the length of a TPS designation and the timing of periodic review. 8 U.S.C. § 1254a(b)(3)(A)-(C); *see Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014) (collecting cases and explaining that "administrative agencies are assumed to possess at least some inherent authority to revisit their prior decisions..."). Indeed, courts have long recognized that an administrative agency has inherent or statutorily implicit authority to reconsider and change a decision within a reasonable period if Congress has not foreclosed this authority by requiring other procedures. *See Albertson v. FCC*, 182 F.2d 397, 399 (D.C. Cir. 1950) ("The power to reconsider is inherent in the power to decide."); *Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 229 n. 9 (2d Cir. 2002) (agency's power to reconsider "applies regardless of whether the applicable statute and agency regulations expressly provide for

13

such review, but not where there is contrary legislative intent or other affirmative evidence") (emphasis in original) (quotations omitted); *see also The Last Best Beef, LLC v. Dudas*, 506 F.3d 333, 340 (4th Cir. 2007) (federal agencies have broad authority to reconsider their prior decisions, particularly when the prior decision contained an error); *Macktal v. Chao*, 286 F.3d 822, 825-26 (5th Cir. 2002) (holding agency acted lawfully by exercising inherent authority to reconsider decisions) (collecting cases); *Gun South, Inc. v. Brady*, 877 F.2d 858, 862 (11th Cir. 1989) ("[T]he Supreme Court and other courts have recognized an implied authority in other agencies to reconsider and rectify errors even though the applicable statute and regulations do not expressly provide for such reconsideration."). Indeed, the Secretary has asserted and exercised this authority previously. *See 2023 El Salvador Reconsideration, Rescission, and Extension*, 88 Fed. Reg. 40,282, 40,285 (2023) (Secretary Mayorkas exercising "inherent authority to reconsider any TPS-related determination, and upon reconsideration, to change the determination" to vacate his predecessor's termination of El Salvador's TPS designation).

Congress provided the Secretary "undoubtedly broad" authority to "make TPS determinations" and ensure the continued designation of a country complies with the law. *Ramos v. Wolf*, 975 F.3d 872, 890 (9th Cir. 2020) (finding statutory constraints "on the Secretary's discretion, [are] in favor of limiting unwarranted designations or extensions…") (cleaned up). Section 1254a requires the Secretary to review conditions within foreign states designated for TPS periodically, but any subsequent action turns on the Secretary's findings about whether the conditions for such designation continue to exist. 8 U.S.C.§ 1254a(b)(3)(A)-(C). The statute also requires the Secretary to determine whether "permitting aliens to remain temporarily in the United States is contrary to the national interest of the United States." 8 U.S.C. § 1254a(b)(1)(C); *cf. Poursina v. USCIS*, 936 F.3d 868, 874 (9th Cir. 2019) (observing, in an analogous INA context,

"that the 'national interest' standard invokes broader economic and national-security considerations, and such determinations are firmly committed to the discretion of the Executive Branch—not to federal courts" (citing *Trump v. Hawaii*, 585 U.S. 667, 684-86 (2018)).

Flexibility to reconsider decisions makes especially good sense in the TPS context. The Secretary's TPS authority inevitably requires her to make sensitive assessments affecting United States foreign policy. *See Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952) ("[A]ny policy toward aliens is vitally and intricately interwoven with contemporary policies in regard to the conduct of foreign relations [and] the war power."). When the Executive Branch acts in the field of foreign policy "pursuant to an express or implied authorization of Congress, [its] authority is at its maximum, for it includes all that [it] possesses in [its] own right plus all that Congress can delegate." *Youngstown Sheet and Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring) (cleaned up).

In their motion, Plaintiffs incorrectly argue that "the TPS statute does not authorize Secretary Noem to vacate a prior determination or extension, only to terminate it." Pls.' MSJ. at 21. But interpreting Section 1254a to bar such reconsideration would mean that no Secretary of Homeland Security could *ever* vacate a designation or extension of a designation, no matter the type of national security threat posed or the seriousness of the error or legal defect in a prior determination. Section 1254a does not mandate such an unworkable and potentially detrimental limitation of the Secretary's ability to fulfill her border security, national security, and foreign policy responsibilities by exercising her broad authority to administer and enforce the immigration laws, *see, e.g.*, 6 U.S.C. § 202(1)-(5), 8 U.S.C. § 1103(a)(1), (a)(3), and to do so consistent with the President's Executive Orders.

Here, Secretary Noem acted promptly to reconsider Secretary Mayorkas's last-minute TPS extension and did so months before the extension's effective date of April 3, 2025. If agencies hold any inherent power to reconsider their past actions—as indeed former Secretary Mayorkas previously recognized, *see 2023 El Salvador Reconsideration*, 88 Fed. Reg. 40,282, 40,285 & n.16 (June 21, 2023)—this was a quintessential exercise of that power. The steps Secretary Noem took to vacate what she deemed an ill-considered decision by her predecessor were entirely consistent with her inherent authority under the statute governing TPS determinations. The fact that Plaintiffs disagree with the Secretary's determination does not render it unlawful.

### B.      The Vacatur Does Not Conflict with the TPS Statute

Plaintiffs also contend that the 2025 Vacatur was unlawful because it "conflicts with the procedure for termination specified by the INA." Pls.' MSJ. at 25. But the Vacatur was not a termination under the statute. Rather, it was a reconsideration of a prior TPS extension, which is an exercise of the Secretary's authority. Here, Secretary Noem carefully reviewed the decision of former Secretary Mayorkas to extend the 2023 designation of Venezuela for TPS for 18 months, which further resulted in an extension of the 2021 Venezuela TPS designation by consolidating filing processes and allowing all eligible TPS beneficiaries (under either the 2021 or 2023 designations) to obtain TPS through the same extension date of October 2, 2026. *See 2025 Venez. Extension,* 90 Fed. Reg. 5,961. Following this review, Secretary Noem reasonably found that the extension "did not acknowledge the novelty of its approach or explain how it is consistent with the TPS statute." 2025 Venez. Vacatur, 90 Fed. Reg. at 8,807. Thus, consistent with her statutory authority, she determined that vacatur was "warranted to untangle the confusion," and to provide an "opportunity for informed determinations regarding the TPS designations and clear guidance."

*Id.* As a result, Secretary Noem vacated her predecessor's decision, restoring the status quo preceding that determination.

Plaintiffs further contend that the Vacatur was contrary to Section 1254a(b)(3)(B) in that it terminates an extension prior to the "expiration of the most recent previous extension," which, in Plaintiffs' view, is October 2, 2026. Pls.' MSJ at 25. Not only does this argument, again, rely solely on Plaintiffs' incorrect characterization of the Vacatur as a "termination," but it is also patently false. As noted, the Vacatur restored the status quo preceding former Secretary Mayorkas' decision. Accordingly, the initial statutory deadline for the 2023 Venezuela TPS designation remained in effect, which required Secretary Noem to determine whether to extend or terminate the TPS designation by February 1, 2025. And she did so, consistent with the requirements under 8 U.S.C. § 1254a(b)(3). *See 2025 Venez. Termination*, 90 Fed. Reg. at 9,040-41. [5] Therefore, Plaintiffs cannot plausibly show that Secretary Noem "circumvent[ed] the statutory procedure for termination of TPS." Pls.' MSJ at 25.

### III. The Secretary's Termination Of The 2023 Designation Was Issued In Accordance With The Law

Plaintiffs' argument that the Termination "unlawfully seeks to circumvent the effective date provided by a statute for a termination" is likewise without merit in that it ignores the effect of the 2025 Vacatur. Pls.' MSJ. at 26. The 2025 Vacatur served to restore the status quo preceding the 2025 Extension such that the "expiration of the most recent previous extension" for the 2023 Venezuela TPS designation was April 2, 2025, not October 2, 2026, as claimed by Plaintiffs.

---

[5] Pursuant to 8 U.S.C.§ 1254a(b)(3)(B), if the Secretary finds that the foreign state "no longer continues to meet the conditions for designation," she "shall terminate the designation" by publishing notice in the Federal Register of the determination and the basis for the termination. *Id.* § 1254a(b)(3)(B). Here, Secretary Noem made her determination to terminate TPS for Venezuela on February 1, 2025 and notice was published in the Federal Register on February 5, 2025, providing an effective date of April 7, 2025, which comports with the procedural requirements for timing and notice.

8 U.S.C. § 1254a(b)(3)(B); *see* 90 Fed. Reg. 8807. The Termination was then published on February 5, 2025, and became effective on April 7, 2025, *2025 Venez. Termination*, 90 Fed. Reg. at 9,040-41, in accordance with the statutory requirement that termination "shall not be effective earlier than 60 days after the date the notice is published." 8 U.S.C. § 1254a(b)(3)(B).

Plaintiffs also contend that the Termination "does not rely on any findings regarding country conditions in Venezuela, as required by statute." Pls.' MSJ. at 27. Putting aside the fact that this argument urges a quintessential re-weighing of the evidence, which is barred by § 1254a(b)(5)(A), Plaintiffs are simply wrong. Contrary to Plaintiffs' assertion, the Termination reflects that Secretary Noem *did* review Venezuela's 2023 TPS designation and, after consulting with the appropriate Government agencies, determined that Venezuela no longer continues to meet the conditions for 2023 designation. *See 2025 Venezuela Termination*, 90 Fed. Reg. at 9,042. Specifically, Secretary Noem identified that there were "improvements in several areas such as the economy, public health and crime that allow for [Venezuelan] nationals to be safely returned to their home country," and that these findings were based on information provided by U.S. Citizenship and Immigration Services and the U.S. Department of State. *Id*. She then noted, however, that "even assuming the relevant conditions remain both 'extraordinary and temporary,'" termination of the 2023 TPS designation for Venezuela is required because it is contrary to the national interest to permit Venezuelan nationals to remain temporarily in the United States, in accordance with her statutory authority under 8 U.S.C.§ 1254a(b)(3)(C). *Id*. Secretary Noem thus appropriately considered the country conditions for Venezuela, consulted with the relevant government agencies, and provided her reasons for terminating the 2023 Designation, including valid concerns for the safety of the U.S. communities, impact that the TPS designation has had on local community resources, and adverse impacts on border security and foreign relations. *Id*. at

9,042-43. Consistent with the statutory guideline, Secretary Noem's reasonably determined that, for the reasons above, Venezuela "no longer continues to meet the conditions for designation." *Id*. It is clear that the Secretary "considered the pertinent evidence, examined the relevant factors, and articulated a satisfactory explanation for" her action "including whether there is a rational connection between the facts found and the choice made." *Ru Jun Zhang v. Lynch*, 2018 WL 1157756, at *6 (E.D.N.Y. Mar. 1, 2018) (citation omitted). Accordingly, the 2025 Termination complied with the procedures and timeframe laid out in the TPS statute, and Plaintiffs are not entitled to judgment on that claim.

## CONCLUSION

Defendants respectfully request that the Court deny Plaintiffs' cross-motion for summary judgment. Multiple provisions of the INA bar review of Plaintiffs' claims. But even if they did not, Plaintiffs have not made even a plausible showing that the 2025 Vacatur or the 2025 Termination determinations were contrary to law. For these reasons, the Court should deny Plaintiffs' motion for partial summary judgment and should dismiss this case for lack of jurisdiction.

 Dated: June 2, 2025

YAAKOV M. ROTH
Acting Assistant Attorney General

SARAH L. VUONG
Assistant Director
WILLIAM H. WEILAND
Senior Litigation Counsel

LAUREN BRYANT
CARLTON SHEFFIELD
ERIC SNYDERMAN
ANNA L. DICHTER
JEFFREY HARTMAN
AMANDA SAYLOR
Trial Attorneys

s/__*Catherine Ross*_____ _____
CATHERINE ROSS
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station

Washington, D.C. 20044

*Counsel for Defendants*

TO:   Raymond Audain
*Counsel for Plaintiff*
GISKAN, SOLOTAROFF & ANDERSON, LLP
New York
90 Broad Street
Second Floor
New York, NY 10004
646-835-0773

Ira J Kurzban
*Counsel for Plaintiffs*
KURZBAN, KURZBAN, TETZELI & PRATT, P.A.
131 Madeira Avenue
Coral Gables, FL 33134
305-444-0060

Madisen Hursey
Geoffrey Pipoly
Alexa Jane Thein
*Counsel for Plaintiffs*
BRYAN CAVE LEIGHTON PAISNER
161 N Clark St
Ste 4300
Chicago, IL 60607
847-894-3712

Andrew Tauber
*Counsel for Plaintiffs*
BRYAN CAVE LEIGHTON PAISNER LLP
1155 F Street, NW
Washington, DC 20004
202-508-6111

Sejal Zota
*Counsel for Plaintiffs*
JUST FUTURES LAW
1629 K Street N.W.
Suite 300
District of Columbia, DC 20006
919-698-5015

20