**UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| CASA, INC. and MAKE THE ROAD NEW YORK<br><br>      *Plaintiffs*,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, and UNITED STATES DEPARTMENT OF HOMELAND SECURITY<br><br>      *Defendants*. | Case No. 8:25-cv-00525-GLR<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## **TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ................................................................................................ 1

    I.      SECRETARY NOEM'S UNLAWFUL ACTIONS ARE REVIEWABLE. .......... 2

    II.     THE VACATUR AND TERMINATION ARE UNLAWFUL. ............................ 7

          A.     The Vacatur Is Not in Accordance With Law (Count I)............................ 7

          B.     The Termination Is Not in Accordance With Law (Count II). ................. 13

CONCLUSION.................................................................................................... 15

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>Cases</u>

*Albertson v. FCC,*
182 F.2d 397 (D.C. Cir. 1950) ........................................................................... 9

*Alexandria Hosp. v. Heckler,*
586 F. Supp. 581 (E.D. Va. 1984) ..................................................................... 14

*Am. Methyl Corp. v. EPA,*
358 U.S. 133 (1958) ............................................................................................ 8

*Am. Trucking Ass'ns v. Frisco Transp. Co.,*
749 F.2d 826 (D.C. Cir. 1984) ......................................................................... 11

*Arbaugh v. Y&H Corp.,*
546 U.S. 500 (1986) ............................................................................................ 3

*Bowen v. Mich. Acad. of Fam. Physicians,*
476 U.S. 667 (1986) ............................................................................................ 5

*CASA de Maryland v. Trump,*
355 F. Supp. 3d 307 (D. Md. 2018) ............................................................... 4, 5

*Centro Presente v. U.S. Dep't of Homeland Sec.,*
332 F. Supp. 3d 393 (D. Mass. 2018) ................................................................ 5

*Chao v. Russell P. Le Frois Builder, Inc.,*
291 F.3d 219 (2d Cir. 2002) ............................................................................... 8

*China Unicom (Americas) Ops. Ltd. v. FCC,*
124 F.4th 1128 (9th Cir. 2024) ........................................................................... 9

*Commissioner v. Zuch,*
No. 24-416, slip op. 6 (S. Ct. June 12, 2025) ..................................................... 5

*Ctr. For Sci. in the Pub. Interest v. Perdue,*
438 F. Supp. 3d 546 (D. Md. 2020) .................................................................. 15

*Cuozzo Speed Tech. v. Commerce for Intell. Prop.,*
579 U.S. 261 (2016) ............................................................................................ 4

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000)......................................................................................... 12

*Gun South, Inc. v. Brady*,
877 F.2d 858 (11th Cir. 1989) ......................................................................... 9

*Harisiades v. Shaughnessy*,
342 U.S. 580 (1952)...................................................................................... 12–13

*Hotel and Restaurant Employees Union, Local 25 v, Smith*,
846 F. 2d 1499 (D.C. Cir. 1988) ................................................................... 5–6

*IBP, Inc. v. Alvarez*,
546 U.S. 21 (2005)............................................................................................. 5

*Ivy Sports Med., LLC v. Burwell*,
767 F.3d 81 (D.C. Cir. 2014) ...................................................................... 8, 9

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) ........................................................................................ 12

*Macktal v. Chao*,
286 F.3d 822 (5th Cir. 2002) ........................................................................ 9

*McNary v. Haitian Refugee Ctr.*,
498 U.S. 479 (1991)....................................................................................... 4, 5

*Nat. Res. Def. Council v. Regan*,
67 F.4th 397 (D.C. Cir. 2023)..................................................................... 9–10

*Nat'l TPS All. v. Noem*,
No. 3:25-cv-01766, 2025 WL 957677 (N.D. Cal. Mar. 31, 2025) ................ 4–5

*New Jersey v. EPA*,
517 F.3d 574 (D.C. Cir. 2008)...................................................................... 8

*Nken v. Holder*,
556 U.S. 418 (2009)........................................................................................ 3

*Noem v. Nat'l TPS All.*,
No. 24A1059, 2025 WL957677 (S. Ct. May 19, 2025)................................. 2

*Ohio Valley Env't Coal., Inc. v. Apogee Coal Co., LLC*,
555 F. Supp. 2d 640 (S.D. W.Va. 2008) ...................................................... 11

*Poursina v. USCIS,*
936 F.3d 868 (9th Cir. 2019) ............................................... 12–13

*Ramos v. Nielsen,*
321 F. Supp. 3d 1083 (N.D. Cal. 2018) ............................................... 5

*Ramos v. Nielsen,*
336 F. Supp. 3d 1075 (N.D. Cal. 2018) ............................................... 12, 15

*Ramos v. Wolf,*
975 F.3d 872 (9th Cir. 2020) ............................................... 10

*Ru Jun Zhang v. Lynch,*
No. 16-cv-4889, 2018 WL 1157756 (E.D.N.Y. March 1, 2018) ............................................... 10

*Sanitary Bd. Of Charleston v. Wheeler,*
918 F. 3d 324 (4th Cir. 2019) ............................................... 15

*Shellman v. Colvin,*
No. 2:14-cv-382, 2015 WL 731631 (E.D. Va. Feb. 18, 2015) ............................................... 11

*Sierra Club v. U.S. Army Corps. Of Eng'rs,*
909 F.3d 635 (4th Cir. 2018) ............................................... 10

*The Last Best Beef, LLC v. Dudas,*
506 F.3d 333 (4th Cir. 2007) ............................................... 10

*Youngstown Sheet & Tube Co. v. Sawyer,*
343 U.S. 579 (1952) (Jackson, J., concurring) ............................................... 13

## Rules and Statutes

5 U.S.C. §§ 551 et seq. ............................................... 3

5 U.S.C. § 701(a)(2) ............................................... 2, 3, 6

5 U.S.C. § 706(2) ............................................... 2, 3, 7

8 U.S.C. § 1103(a) ............................................... 8

8 U.S.C. § 1158(b)(2)(A)(iv) ............................................... 12

8 U.S.C. § 1252 ............................................... *passim*

8 U.S.C. § 1254a ............................................... *passim*

28 U.S.C. § 1331 ................................................................... 3

28 U.S.C. § 1343(a) .............................................................. 3

28 U.S.C. § 2201 ................................................................... 3

Fed. R. Civ. P. 56 .................................................................. 14

Fed. R. Evid. 201(b) ............................................................. 11

**<u>Other Authorities</u>**

101 Cong. Rec. 25811 (Oct. 25, 1989) (statement of Rep. Bill Richardson) .................... 7

136 Cong. Rec. H8686 (daily ed. Oct. 2, 1990) (statement of Rep. Mary Rose Oakar) .... 8

90 Fed. Reg. 5961 .................................................................. 7,13

90 Fed. Reg. 8805 .................................................................. 11

90 Fed. Reg. 9040 .................................................................. 13

## INTRODUCTION

Secretary Noem's actions—the February 3, 2025 Vacatur and February 5, 2025 Termination—are unlawful under the INA.[1]  Allowing them to remain in effect imminently threatens the lives of hundreds of thousands of Venezuelans lawfully residing in the United States. Absent judicial intervention, these individuals and families face deportation to a country that successive U.S. government administrations have deemed unsafe.  The Vacatur and Termination run directly counter to the procedures established by 8 U.S.C. § 1254a(b)(3), and there is no other legal authority that justifies them.  Summary judgment for Plaintiffs therefore should be entered on Counts I and II of the Complaint, which would effectively dispose of this case without the need to reach the admittedly more fact-bound questions regarding Defendants' unconstitutional motivations for taking these unlawful acts.

Defendants concede that the facts relevant to this motion are a matter of public record, judicially noticeable, and not subject to any genuine dispute.  They also do not challenge Plaintiffs' standing.  It is thus common ground that this motion presents two very narrow, purely legal questions:  First, can the Court review Secretary Noem's actions?  Second, did the Secretary's actions comply with established statutory procedures?  For straightforward reasons, the actions are reviewable and must be declared to have violated the INA.

*First*, the Vacatur and Termination are reviewable under the APA.  As Plaintiffs have repeatedly pointed out, and Defendants seem intent on ignoring, this lawsuit does not challenge any "determination" by Secretary Noem. Counts I and II challenge the *procedures* she followed, not the conclusion she reached.  The limitation on judicial review under Section 1254a(b)(5)(A)

---

[1]    Terms are defined in Pls.' Mot. for Partial Summary Judgment (March 3, 2025), ECF No. 8 ("Br."). "Opp." is Defs.' Opp. to Pls' Mot. for Partial Summary Judgment (June 2, 2025), ECF No. 61.

of the INA, which in any event is non-jurisdictional, is therefore inapplicable. Defendants, notably, have already conceded in parallel litigation that "Vacatur" is not covered, but nonetheless continue to argue it here. As for 5 U.S.C. § 701(a)(2) and 8 U.S.C. § 1252(f)(1), neither bars relief here because Plaintiffs neither seek review of discretionary authority nor an injunction. Instead, Plaintiffs seek an order declaring that Secretary Noem's actions were illegal and are thus of no effect—an ordinary-course ruling specifically authorized by the APA.

*Second*, it is equally clear that Secretary Noem did not follow the law when she issued the Vacatur and Termination. Defendants do not and cannot identify any legal authorization for a "vacatur" of a prior extension of TPS. There is none. The Termination is also unlawful because its purported effective date contravenes the statutory requirements, as does the procedure through which it was effected.

The Court should therefore declare the Vacatur and Termination inoperative and declare instead that TPS for Venezuela remains in effect through October 2, 2026.[2]

## ARGUMENT

### I.    SECRETARY NOEM'S UNLAWFUL ACTIONS ARE REVIEWABLE.

Federal courts "shall" declare unlawful and set aside agency actions where, as here, they are not in accordance with the law. *See* Br. 9–10. Defendants do not dispute that, under the APA, agency action "not in accordance with law" is subject to judicial review and shall be set aside. *See* 5 U.S.C. § 706(2). Defendants also concede that Secretary Noem's actions were final agency actions. Opp. 10–11. Their contentions that judicial review is nevertheless barred by various statutory provisions, *id.* at 7–12, are tired and easily rebutted.

---

[2]        Defendants point to the Supreme Court's May 19, 2025 order in *Noem v. National TPS Alliance*, No. 24A1059 (S. Ct. May 19, 2025), Opp. 2, but that two-paragraph ruling made no findings, much less the ones Defendants seek to attribute to it. *See also* Pls.' Response to Defs.' Notice of Decision (May 23, 2025), ECF No. 59.

To start, none of the statutory provisions on which Defendants rely divest the Court of jurisdiction to hear the matter. *See* Pls.' MTD Opp. 6–8 (May 19, 2025), ECF No. 57 ("MTD Opp.") (discussing Sections 1254a(b)(5)(A), 701(A)(2), and 1252(f)(1)); Compl. ¶¶ 10–11 (basis for jurisdiction is federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) over claims arising under the APA, 5 U.S.C. §§ 551 et seq., the Declaratory Judgment Act, 28 U.S.C. § 2201, and 5 U.S.C. § 706(2)).[3] Defendants have conceded in parallel litigation that the statutes do not preclude the Court's jurisdiction to decide the legality of the Vacatur. *See* ECF No. 46 (citing ECF No. 46-1 ("Tr.") at 50:12–15).

Statutory provisions restrict jurisdiction only where Congress has "clearly stat[ed]" so. MTD Opp. 7 (citing *Arbaugh v. Y& H Corp.*, 546 U.S. 500, 516 (1986)). Elsewhere in the INA, Congress has included such a clear statement. *See* 8 U.S.C. § 1252(a)(2)(B)(i) ("[N]o court shall have *jurisdiction* to review any judgment regarding the granting of relief under [various sections] of this title[.]" (emphasis added)). By contrast, Section 1254a(b)(5)(A) and Section 701(a)(2) only create limitations on "judicial review," and Section 1252(f)(1) only sets out the "scope of relief." *See Nken v. Holder*, 556 U.S. 418, 430 (2009) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

As to reviewability, as opposed to jurisdiction, none of the statutory provisions on which Defendants rely bars judicial review of the claims here. Any ambiguity should be resolved in favor of permitting judicial review. Br. 13–14 (collecting cases); Opp. 9–10 (conceding there is a presumption in favor of judicial review overcome only by "clear and convincing indications").

---

[3]    The Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA") does not, and need not, create a separate basis for jurisdiction. *Cf.* Opp. 12. The DJA sets out the scope of relief, establishing as relevant here that a declaratory judgment is appropriate relief for the claims at issue.

***Section 1254a(b)(5)(A).***    Section 1254a(b)(5)(A) limits judicial review of any "determination" regarding "designation," "termination," or "extension" of TPS.  8 U.S.C. § 1254a(b)(5)(A).  While Defendants argue that it bars relief here, *see* Opp. 7–8, they conceded in parallel litigation in the Northern District of California that this provision does not preclude procedural challenges to agency action under the statute.  *Nat'l TPS All. v. Noem*, 2025 WL 957677, at *15 (N.D. Cal. Mar. 31, 2025) ("[T]he government explicitly conceded that § 1254a(b)(5)(A) does *not* bar the Court from entertaining Plaintiffs' contention that the Secretary lacked the inherent authority [for the Vacatur]." (emphasis in original)).  They were right to do so, as courts in this District have likewise recognized.  *See* Br. 10–12 (citing *CASA de Maryland v. Trump*, 355 F. Supp. 3d 307, 321–22 (D. Md. 2018)).

In this case, Defendants appear to have ginned up a new and broader reading of Section 1254a(b)(5)(A) that would effectively preclude *any* judicial review of *any* action with respect to TPS because—in effect—every action is the result of a "determination" to act.  Opp. 8–9.  But that interpretation cannot be reconciled with the statutory language Congress chose when it enacted the relevant INA provisions.  Congress chose to insulate the Secretary's *determinations* under the TPS provisions from judicial second-guessing, but it did not excuse her from following the law more generally.  Both under the INA and more generally, a "determination" is a legal term of art of limited scope—meaning a "single act rather than a group of decisions or a practice or procedure employed in making decisions"—and not the all-encompassing provision Defendants contend.  *See* Br. 11–13 (citing *McNary v. Haitian Refugee Ctr.*, 498 U.S. 479, 492 (1991); *Cuozzo Speed Tech. v. Commerce for Intell. Prop.*, 579 U.S. 261, 275 (2016));[4] *see, e.g.*, *Nat'l TPS All.*, 2025

---

[4]    Contrary to Defendants' arguments, *Cuozzo*'s statement that a statutory limitation on review of "determinations" did not preclude APA review of procedural defects is not "dicta."  Opp. 10.  It is part of the Court's explanation of the scope of its holding and in any event reflects the Court's longstanding understanding of the

WL 957677, at *16–18 (rejecting Defendants' argument that Section 1254a(b)(5)(A) bars review of constitutional and statutory claims); *CASA de Maryland*, 355 F. Supp. 3d at 320–22 (same); *Ramos v. Nielsen*, 321 F. Supp. 3d 1083, 1101–08 (N.D. Cal. 2018) (same); *Centro Presente v. U.S. Dep't of Homeland Sec.*, 332 F. Supp. 3d 393, 407–09 (D. Mass. 2018) (same); *see also Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 675–76 (1986) (statutory bar on review of "determinations" in Medicare statute "simply does not speak to challenges mounted against the *method* by which such amounts are to be determined rather than the *determinations* themselves" (emphases in original)).  Just last week, the Supreme Court held that, when a statutory scheme expressly distinguishes between the "considerations that inform [a] determination" and the "determination" itself, the two must be viewed separately and distinctly.  *Commissioner v. Zuch*, No. 24-416 (S. Ct. June 12, 2025), slip op. 6 (cleaned up).  So too here: to the extent that the Court considers the Vacatur (notwithstanding Defendants' concession) or Termination to be a relevant "determination," the Court should view it as separate from the procedures employed in making that determination.  Section 1254a(b)(5)(A) simply does not bar the Court's review of those procedures here.

Defendants try to distinguish *McNary* on the basis that it considered another provision within the INA, Opp. 8–9, but *McNary*'s holding regarding the meaning of "determination" was not cabined to that provision or based on other language in that provision.  *McNary*, 498 U.S. at 492; *see IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005) ("[I]dentical words used in different parts of the same statute are generally presumed to have the same meaning.").  Defendants' own cases— far from construing Section 1254a(b)(5)(A) itself—do not even concern Section 1254a or any review-limiting provision.  *See* Opp. 8 (citing *Fiallo* and *Hotel and Rest.*).  And *Hotel and*

---

distinction between judicial review of a "determination" and of the procedures by which that determination was (or was not) made.

*Restaurant Employees Union, Local 25*, 846 F.2d 1499, 1500 (D.C. Cir. 1988), itself teaches that "broad latitude in enforcing [the INA]" does not override procedural protections expressly mandated by statute, which is precisely the fatal defect in Defendants' actions here. Just because the Secretary decided—"determined"—that she would violate express statutory requirements by making up a "vacatur" procedure does not insulate that procedure from review.

*5 U.S.C. § 701(a)(2).* As Defendants concede, preclusion of judicial review under Section 701(a)(2) on the basis that agency action was committed to agency discretion by law is "rare." *See* MTD Opp. 27 (citing MTD 10 and collecting cases). The provision self-evidently does not preclude relief here, because the "law" (that is, the INA) does not confer discretion on the Secretary to "vacate" a TPS designation or extension, but rather establishes a very clear and carefully-orchestrated set of procedures that must be followed for designations, extensions, and terminations. Indeed, Congress enacted TPS to limit the boundless executive discretion for which Defendants advocate. *See* MTD Opp. 2 (quoting H.R. Rep. No. 100-627, at 4). Defendants argue that the Vacatur and Termination are insulated from review under the APA because they relate to the "national interest" and therefore cannot be evaluated under a "manageable legal standard." Opp. 11–12. But that argument elides what this Motion is about. Counts I and II are agnostic as to whether Secretary Noem's determination of the national interest was right, wrong, or even relevant. Whether she followed the law in issuing the Vacatur and Termination is plainly subject to a "manageable legal standard"—whether she followed the procedures under Section 1254a. MTD Opp. 28–29.[5] These counts seek nothing more or less than what courts do every day under the APA: evaluate whether the procedures that led to agency action complied with the law.

*Section 1252(f)(1).* Finally, Section 1252(f)(1) is inapplicable to Section 1254a or

---

[5]    *Zhu* and *Poursina*, cited in Opp. 12, are inapposite as neither reaches nor even raises the 701(a)(2) question.

declaratory relief, and even if it did apply, would only limit the permissible scope of relief.  MTD Opp. 29.  While Defendants argue that Section 1252(f)(1) bars this Court from setting aside Secretary Noem's actions, Defendants fail to cite a single case that adopts their position as to APA review.  *See* MTD Opp. 29–30.  Instead, Defendants concede that the Fourth Circuit has held that 1252(f)(1) does *not* bar declaratory relief, Opp. 12, but still (without explanation) state that they take the opposite position.

## II.    THE VACATUR AND TERMINATION ARE UNLAWFUL.

Because no statute precludes judicial review, the Court should reach the merits of Plaintiffs' arguments under Counts I and II.  Plaintiffs have established the requisite elements for each.

### A.    The Vacatur Is Not in Accordance With Law (Count I).

Plaintiffs' argument in support of Count I is straightforward: neither the INA nor any other statute grants Secretary Noem the authority to vacate the January 2025 Extension, so the Vacatur was "not in accordance with law" and must be set aside under 5 U.S.C. § 706(2)(A).  Br. 19–20.

Secretary Mayorkas' January 2025 Extension went into effect upon its publication in the Federal Register on January 17, 2025.  90 Fed. Reg. 5961; *see* 8 U.S.C. § 1254a(b)(2).  Defendants do not challenge, and in fact concede in parallel litigation, that the January 2025 Extension was lawfully issued in accordance with the timeframe and procedures required by the INA.  Br. 5–6; 20–21; Tr. at 95:21–96:14.  As Plaintiffs demonstrated, and Defendants do not contest, the INA itself does not provide express authority to vacate a duly granted extension of TPS.  That is consistent with the policy choice Congress made to create an orderly, predictable set of rules for TPS in place of the former system of *ad hoc* determinations.  Br. 21–23; 101 Cong. Rec. 25811, 25837 (Oct. 25, 1989) (statement of Rep. Bill Richardson) (arguing that a precursor to the TPS statute would "establish an orderly, systematic procedure for providing temporary protected status" and replace the prior "ad hoc, haphazard regulations" pursuant to which beneficiaries were "never

certain . . . how long they will be able to stay"); 136 Cong. Rec. H8686 (daily ed. Oct. 2, 1990) (statement of Rep. Mary Rose Oakar) ("An orderly, systematic procedure for providing temporary protected status . . . is needed to replace the current ad hoc haphazard procedure.").  Indeed, the purported ability to effect a vacatur would be wholly incongruent with Congress's prescribed regime for termination, allowing the Secretary to circumvent Congress's intent to establish fixed periods of protection by merely "vacating" a prior extension.  Br. 25–26.

The only purported basis for the Vacatur asserted by Defendants is that 8 U.S.C. §§ 1103(a) or 1254a provides some "inherent" authority for a vacatur.  *See* Opp. 13–16.  Not so.  Section 1103 merely grants the Secretary general administrative and enforcement authority and would require Secretary Noem to *follow* the law by enforcing (and following) the INA's procedural requirements. Br. 24; *see* 8 U.S.C. § 1103(a)(3).  At most, "broad enabling statute[s]" like Section 1103 provide authority to correct "inadvertent ministerial errors."  Br. 24 (citing *Am. Trucking Ass'ns v. Frisco Transp. Co.*, 358 U.S. 133, 145–46 (1958) (noting such power "may not be used as a guise for changing previous decisions because the wisdom of those decisions appears doubtful in the light of changing policies")).  Such authority cannot be invoked to reverse Secretary Mayorkas's lawful and intentional TPS extension.  *Id.*  At issue here is not a ministerial error but a policy disagreement.

As for Section 1254a, the statutory scheme forecloses any such inherent vacatur authority. Br. 25–26.  Congress "undoubtedly can limit an agency's discretion to reverse itself."  *New Jersey v. EPA*, 517 F.3d 574, 583 (D.C. Cir. 2008).  As Defendants' own cases recognize, Opp. 13–14, "[a]ny inherent reconsideration authority does not apply in cases where Congress has spoken."  *Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014) (FDA lacked inherent authority to rescind classification where the statute provided a reclassification process); *Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 229 n.9 (2d Cir. 2002) (agency lacked inherent authority to

reconsider "where there is contrary legislative intent or other affirmative evidence" (cleaned up));
*see China Unicom (Americas) Ops. Ltd. v. FCC*, 124 F.4th 1128, 1145 (9th Cir. 2024) (recognizing
that whether Congress granted inherent authority to reconsider "will turn . . . on the details of the
statutory scheme," and finding implied revocation authority where there was no "procedural
provision in the Act that the [agency] would supposedly evade if it were held to have implied
revocation authority"); *Albertson v. FCC*, 182 F.2d 397, 399 (D.C. Cir. 1950) (same); *Macktal v.
Chao*, 286 F.3d 822, 825–26 (5th Cir. 2002) (same); *Gun South, Inc. v. Brady*, 877 F.2d 858, 861–
64 (11th Cir. 1989) (same).

Congress *has* spoken here.  As already demonstrated, the INA sets forth specific procedures
for terminating a TPS designation.  *See* Br. 25.  Once an extension, like the January 2025 Extension,
is published in the Federal Register, that extension *shall* remain in force until, at the earliest, the
date on which it is terminated pursuant to the statutory provisions.  8 U.S.C. § 1254a(b)(2)(B) (a
designation "shall remain in effect until the effective date of the termination"); *id.* § 1254a(b)(3)(B)
(any termination "shall not be effective earlier than . . . the expiration of the most recent previous
extension").  "It is well established that the word 'shall' generally indicates a command that admits
of no discretion on the part of the person instructed to carry out the directive."  *Nat. Res. Def.
Council v. Regan*, 67 F.4th 397, 402 (D.C. Cir. 2023) (cleaned up).  The result is that a TPS
designation or extension must stay in effect for the entirety of a fixed term, and the "use of a fixed
term is . . . inconsistent with . . . an implied power to revoke a [designation] at any time."  Br. 24
(quoting *China Unicom*, 124 F.4th at 1148).  Purported implied authority for vacatur would "short-
circuit or end-run" this statutory scheme by allowing the Secretary to vacate and then terminate a
TPS designation at any time.  *See Ivy Sports Med.*, 767 F.3d at 87; Br. 23–26; *Nat. Res. Def.
Council*, 67 F.4th at 398 ("To read into the statute another course of action . . . would be to

contravene the statute's clear language and structure and 'nullif[y] textually applicable provisions meant to limit [agency] discretion.'").  While Defendants appear to object to being constrained by the statute, there is nothing novel about a statutory regime in which the conferral of benefits is discretionary, but benefits once conferred are protected by law.[6]

Defendants' retort that the Vacatur is "not a termination" of the 2023 Designation misses the mark.  Opp. 16–17.  Defendants do not dispute that the Vacatur terminated the January 2025 Extension, and only by virtue of the Vacatur could the Secretary terminate the 2023 Designation. *See* Opp. 17.  Thus, the Vacatur was a "back-door mechanism" used to "circumvent Congress's intended [processes]" for terminating a TPS designation.  Br. 25–26 (quoting *Sierra Club v. U.S. Army Corps. of Eng'rs*, 909 F.3d 635, 654 (4th Cir. 2018)); *see* Opp. 17–18.  Regardless of how the Secretary chooses to label her extra-statutory actions, their effect is to undermine the careful procedures that Congress prescribed.

Defendants cite *The Last Best Beef, LLC v. Dudas*, Opp. 14, but that case involved a different statute and, in any event, only provided for authority to correct an "erroneous or unlawful action."  506 F.3d 333, 340 (4th Cir. 2007) (U.S. Patent Office had authority to cure legal deficiency after it unknowingly issued a trademark hours after enactment of legislation prohibiting the trademark).  That does not help Defendants here, as they concede that the Vacatur was not intended to correct any legal error in the January 2025 Extension.  *See* Tr. at 69:25–70:2 (conceding that "Plaintiffs are correct that these overlapping registrations . . . [are] within the discretion of the Secretary").  The stated reason in the Vacatur itself, i.e., concerns about the "novelty" of the consolidation of the 2021 and 2023 Designation registrations, 90 Fed. Reg. 8805, 8807, is a policy

---

[6]    *Ramos v. Wolf*, 975 F.3d 872 (9th Cir. 2020), *reh'g en banc granted, opinion vacated*, 59 F.4th 1010 (9th Cir. 2023), cited in Opp. 14, is inapposite as it speaks to the Secretary's discretion to "consider and weigh various conditions in a foreign country in reaching her TPS determinations."  975 F.3d at 37.  It did not address a challenge to the *procedural requirements* of the actions at issue here.

objective, and that is not a permitted basis for reconsideration.  *See Ohio Valley Env't Coal., Inc. v. Apogee Coal Co., LLC*, 555 F. Supp. 2d 640, 647 (S.D. W.Va. 2008) (distinguishing *Last Best Beef* and finding permit modification ineffective where "[a]ny mistake made by the agency was to issue a permit inconsistent not with the law, but with a policy choice"); *Am. Methyl Corp. v. EPA*, 749 F.2d 826, 838 (D.C. Cir. 1984) ("EPA's primary reason for revoking American Methyl's waiver does not relate to a defect in the original grant; thus, under EPA's own interpretation of its powers, a revocation proceeding is not warranted in this case.").  Beyond that, the "novelty" concern is not supported or addressed by the Certified Administrative Record ("CAR") for the Vacatur,[7] which only spoke to the Secretary's desire to terminate the prior designations, which the agency conceded she could not do under the statute because of the January 2025 Extension.  *See* Opp. 16–17.

Moreover, DHS has never exercised purported inherent authority to vacate a TPS *designation*.  Opp. 14.  Over the course of the TPS program's 35-year history, Defendants can point only to Secretary Mayorkas's rescission of a *termination* of TPS.  *Id.* (citing 88 Fed. Reg. 40,282, 40,285).  This case is not about whether that action was lawful when taken, but notably the decision to continue TPS protection was consistent with the statutory discretion afforded to the Secretary.  8 U.S.C. § 1254a(b)(1) (authorizing the Secretary to designate a country for TPS benefits at any time).  Vacating an *extension*, on the other hand, would circumvent the TPS statute's carefully regulated termination process.  *See id.* § 1254a(b)(3)(B).  Additionally, that sole rescission took place in the unique context of a termination that had never even gone into effect

---

[7]    *See generally* Declaration of Nowell Bamberger ("Bamberger Decl."), Exs. VAC-01–VAC-49.  Pursuant to Fed. R. Evid. 201(b), the administrative record is judicially noticeable.  *Shellman v. Colvin*, No. 2:14-cv-382, 2015 WL 731631, at *1 n.2 (E.D. Va. Feb. 18, 2015) (collecting cases).

due to longstanding injunctions.[8]  Regardless, even consistent prior agency practice would not render a vacatur lawful when the vacatur violates express statutory requirements.  *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391–92 (2024) ("[The APA] specifies that courts, not agencies, will decide '*all* relevant questions of law' arising on review of agency action . . . [and] [i]t prescribes no deferential standard for courts to employ in answering those legal questions[.]").

Unable to identify any actual authority for the Vacatur, Defendants invoke foreign policy and national security.  Opp. 15–16.  But the Vacatur did not even purport to address foreign policy or national security concerns.  *See* 90 Fed. Reg. at 8807.  In any event, an agency's purported national security concerns do not override a deliberate statutory scheme enacted by Congress.  *See* Br. 25 ("Regardless of how serious the problem an administrative agency seeks to address, . . . it may not exercise its authority 'in a manner that is inconsistent with the administrative structure that Congress enacted into law.'" (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125 (2000)).  To the extent that any actual national security concerns arise, the INA expressly provides that the Secretary may withdraw TPS from any individual later determined to lack eligibility, 8 U.S.C. § 1254a(c)(2)–(3), including where the Secretary determines "reasonable grounds" exist to view the individual as "a danger to the security of the United States," 8 U.S.C. § 1158(b)(2)(A)(iv).  Ultimately, although Defendants cite several inapposite cases in support of their "flexibility" to make decisions related to foreign policy and the national interest, Opp. 14–16, no caselaw permits clear statutory limits to yield to an agency's desire for flexibility.[9]

---

[8]     *See Ramos v. Nielsen*, 336 F. Supp. 3d 1075, 1082–84, 1108 (N.D. Cal. 2018) *vacated and remanded sub nom.*, *Ramos v. Wolf*, 975 F.3d 872 (9th Cir. 2020), *reh'g en banc granted*, 59 F.4th 1010 (2023), *appeal dismissed sub nom.*, *Ramos v. Mayorkas*, 2023 WL 4363667.

[9]     In *Harisiades v. Shaughnessy*, the Court considered a constitutional challenge to a *statute* and explained that "nothing in the structure of our Government or the text of our Constitution would warrant judicial review by standards which would require [the Court] to equate our political judgment with that of Congress."  342 U.S. 580, 588–90 (1952).  Plaintiffs here do not ask the Court to substitute its political judgment for that of Congress, but instead to further Congress's judgment by requiring compliance with the INA.  Similarly, unlike the plaintiff in *Poursina v.*

**B.    The Termination Is Not in Accordance With Law (Count II).**

The Termination likewise must be set aside because it (i) seeks to circumvent the effective date provided by statute for terminating the January 2025 Extension and (ii) does not rely on any findings regarding country conditions in Venezuela, as required by statute.  *See* Br. 26–27.

*First*, as to the effective date, Defendants acknowledge that the Termination's effective date would be unlawful but for the Vacatur.  Opp. 17–18; *see* 8 U.S.C. § 1254a(b)(3)(B) ("Such termination . . . shall not be effective earlier than . . . the expiration of the most recent *previous* extension." (emphasis added)).  Defendants argue that their unlawful termination is cured by the Vacatur.  *Id.*  But this is wrong for the simple reason that the Vacatur was unlawful and null.  Moreover, the January 2025 Extension provided for an extension of Venezuela's TPS designation through October 2, 2026, 90 Fed. Reg. 5961, so under Section 1254a(b)(3)(B), the earliest a termination could take effect was October 3, 2026.  Even if the Secretary could vacate the extension (and she cannot), nothing in the statute permits her to simply pretend that it never existed in the first place.  Nor does the statute permit the Secretary to shorten the timeline for terminating a TPS designation through a vacatur.  Accepting Defendants' argument would effectively render the termination provisions of the INA null: the Secretary could avoid the statutory durations for a designation or an extension by simply vacating them.

*Second*, Secretary Noem issued the Termination without even considering whether the relevant country conditions no longer warranted a TPS designation, as the INA requires.  *See* Br. 27 (citing 8 U.S.C. § 1254a(b)(3)(A)–(B)); 90 Fed. Reg. 9040, 9042 (concluding that termination

---

*USCIS*, 936 F.3d 868, 874 (9th Cir. 2019), Plaintiffs' motion does not challenge the Secretary's judgment regarding the national interest, but instead argues that the Secretary lacked discretion under the statute to make such a determination in the first place.  Finally, because the Vacatur is "incompatible with the expressed or implied will of Congress," Defendants' reliance on *Youngstown* is misplaced.  *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring).

was warranted "*even assuming* the relevant conditions in Venezuela remain both 'extraordinary and temporary'" (emphasis added))).  Secretary Noem's sole rationale for the Termination was that it was "contrary to the national interest to permit Venezuelan nationals" to remain in the United States.  90 Fed. Reg. at 9042.  Although Section 1254a(b)(1) directs the DHS Secretary to consider the national interest when initially designating a country for TPS, the national interest is not a statutory consideration during periodic review.  Instead, the statute requires that the Secretary review "the conditions in the foreign state" and determine whether that state "continues to meet the conditions for designation under paragraph (1)." *Id.* § 1254a(b)(3)(A), (B).  Thus, Plaintiffs do not ask the Court to "re-weigh" evidence or second-guess the Secretary's findings.  Opp. 18. To the contrary, the record suggests that Secretary Noem did not weigh *any* evidence, let alone make findings as to changed country conditions.  *See* Br. 27; Bamberger Decl., Exs. VAC-01– VAC-49, TERM-01–TERM-50.[10]

Defendants continue to assert that the requisite review was conducted, Opp. 18–19, but provide no basis for this assertion.  Nor can they.  Defendants' failure to point to *any* materials— besides the Termination notice itself—as support means that this court can "consider the fact undisputed for purposes of this motion."  Fed. R. Civ. P. 56(e)(2); *id.* at 56(c)(1)(A) (a party asserting that a fact is genuinely disputed "*must* support this assertion by citing to particular parts of materials in the record") (emphasis added).  As Defendants concede, the question for the Court at this stage is, "as a matter of law, whether the agency action is supported by the administrative

---

[10]    Indeed, the Termination went into effect just one week after Secretary Noem was sworn in as DHS Secretary, further undercutting any inference that the proper review was conducted.  *See* Bamberger Decl., Ex. TERM-02 (Termination decision document dated February 1, 2025); *Secretary of Homeland Security*, DHS (Feb. 3, 2025). https://www.dhs.gov/topics/secretary-homeland-security (Secretary Noem sworn in January 25, 2025); *Alexandria Hosp. v. Heckler*, 586 F. Supp. 581, 588 (E.D. Va. 1984) ("Common sense suggests that adequate consideration could not take place" where a final rule was published just 15 days after the close of a comment period where over 600 comments were received); *cf. Ru Jun Zhang v. Lynch*, 2018 WL 1157756 at *1–4, 9 (E.D.N.Y. Mar. 1, 2018) (cited in Opp. 19) (denial of application not arbitrary or capricious where it followed a twelve-year process that involved review of application materials, interviews, subsequent requests for evidence and two appeals).

record and otherwise consistent with the APA." Opp. 6 (quoting *Ctr. for Sci. in the Pub. Interest v. Perdue*, 438 F. Supp. 3d 546, 556 (D. Md. 2020)); *see id.* (noting administrative record is the "focal point for judicial review" (quoting *Sanitary Bd. Of Charleston v. Wheeler*, 918 F.3d 324, 334 (4th Cir. 2019)). In the more than 500-page CAR for the Termination, *see generally* Bamberger Decl., Exs. TERM-01–TERM-50, there is no evidence indicating consideration or analysis of country conditions in Venezuela, let alone any finding that changed conditions warrant termination of TPS. Further, the TPS designation review process typically requires input from multiple government sources who provide a country conditions report and formalized recommendations based on such report. *See Ramos v. Nielsen*, 336 F. Supp. 3d 1075, 1082 (N.D. Cal. 2018). But here, the only evidence of inter-agency consultation in the CAR is a one-and-a-half page letter from Secretary of State Marco Rubio recommending termination based on conclusory statements about national security, without providing *any* information about conditions in Venezuela or a country conditions report. Bamberger Decl., Ex. TERM-26. Plainly, the Court need look no further than the record to debunk Defendants' claims.

<u>**CONCLUSION**</u>

For these reasons and those in the opening memorandum in support, the Court should declare inoperative the Vacatur and subsequent Termination and declare instead that TPS for Venezuela remains in effect through October 2, 2026.

Date: June 17, 2025

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By:   */s/  Nowell D. Bamberger*
Nowell D. Bamberger (21111)
Matthew D. Slater (05582)
Rathna J. Ramamurthi (*pro hac vice*)
Madeline Hundley (*pro hac vice*)
Gillian Isabelle (*pro hac vice*)
Ava Kazerouni (*pro hac vice*)
2112 Pennsylvania Ave NW
Washington, D.C. 20037
Tel. (202) 974-1500
Fax (202) 974-1999
nbamberger@cgsh.com
mslater@cgsh.com
rramamurthi@cgsh.com
mhundley@cgsh.com
gisabelle@cgsh.com
akazerouni@cgsh.com


WASHINGTON LAWYERS' COMMITTEE FOR CIVIL
RIGHTS AND URBAN AFFAIRS

Ryan Downer (*pro hac vice*)
Sarah L. Bessell (30969)
Madeleine Gates (seeking admission to D.Md.)
Ellie M. Driscoll (*pro hac vice*)
700 14th St. #400
Washington, D.C. 20005
Tel. (202) 319-1000
Fax (202) 319-1010
ryan_downer@washlaw.org
sarah_bessell@washlaw.org
madeleine_gates@washlaw.org
ellie_driscoll@washlaw.org


CASA, INC.

Nicholas Katz, Esq. (21920)
Hyattsville, MD 20783

16

Tel. 240-491-5743
nkatz@wearecasa.org


MAKE THE ROAD NEW YORK

Harold A. Solis (*pro hac vice*)
Paige Austin (*pro hac vice*)
301 Grove Street
Brooklyn, NY 11237
Tel. (718) 418-7690
Fax (866) 420-9169
harold.solis@maketheroadny.org
paige.austin@maketheroadny.org

*Attorneys for Plaintiffs*